1 | Michael J. Gomez  (State Bar No. 251571)
   |  mgomez@frandzel.com
2 | Reina Jean Clark (State Bar No. 300011)
   |  rclark@frandzel.com
3 | FRANDZEL ROBINS BLOOM & CSATO, L.C.
   | 1000 Wilshire Boulevard, Nineteenth Floor
4 | Los Angeles, California 90017-2427
   | Telephone: (323) 852-1000
5 | Facsimile: (323) 651-2577

6 | Attorneys for Secured Creditor,
   | MHC ALMONDS, LLC, a Delaware limited
7 | liability company

8 **UNITED STATES BANKRUPTCY COURT**

9 **NORTHERN DISTRICT OF CALIFORNIA**

10 **SAN JOSE DIVISION**

11 | In re: | Case No. 25-50765
12 |      S3 GROUP, LLC, | Chapter 11
13 |      Debtor. | R.S. No. 1
14 | | **DECLARATION OF JOHN C.**
15 | | **COVINGTON IN SUPPORT OF MOTION TO CONFIRM THAT THE AUTOMATIC STAY DOES NOT APPLY PURSUANT TO**
16 | | **11 U.S.C. § 362(b)(3), OR, IN THE ALTERNATIVE, FOR RELIEF FROM**
17 | | **THE AUTOMATIC STAY AND ANNULMENT OF THE STAY**
18 | | **PURSUANT TO 11 U.S.C. § 362(d)(1)**
19 | | Date:   June 2, 2025
20 | | Time:  11:00 a.m.
   | | Ctrm:  11
21

22

23

24

25

26

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

I, John C. Covington, declare:

1.    I am a Senior Director at AgAmerica Lending LLC, a Florida limited liability company, which is responsible for certain administrative duties for the loan described in this declaration on behalf of MHC Almonds, LLC, a Delaware limited liability company ("MHC"), which is the current holder, as assignee, of all and each of the loan documents referenced herein below by way of recorded assignments and an allonge from Original Lender (defined below), as assignor, with the referenced assignment documents attached hereto collectively as **Exhibit 5** and incorporated herein by this reference. I have personal knowledge of the facts set forth herein, which are known by me to be true and correct, and if called as a witness, I could and would competently thereto.

2.    Among other things, AgAmerica Lending LLC and I, myself, as a Senior Director for AgAmerica Lending LLC, are charged with the responsibility for the administration, monitoring and collection of the loan described below on behalf of MHC. I am required to know and, in fact, am familiar with the jobs of the AgAmerica Lending LLC employees and the methods they use in making bookkeeping entries and maintaining the records for which I am ultimately responsible. I am one of the custodians of the books, records, and files of AgAmerica Lending LLC that pertain to the loan described herein. I have personally worked on books, records, and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records, which were made at or about the time of the events recorded, and which are maintained in the ordinary course business at or near the time of the acts, conditions, or events to which they relate. Any such document was prepared in the ordinary course of business by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.

## LOAN OBLIGATION

3.    By a Loan Agreement dated December 20, 2022 (the "Loan Agreement"), S3 Group, LLC ("Debtor") and its affiliates agreed to borrow, and Morgan Hills Capital, LLC, a Delaware limited liability company c/o AgAmerica Lending LLC, a Florida limited liability company ("Original Lender"), agreed to lend, the original principal amount of $101,268,000.00, to

be used to refinance agricultural debt and pay accrued interest on existing agricultural debt (the "Loan"). A true and correct copy of the Loan Agreement is attached hereto as **Exhibit 1** and incorporated herein by this reference.

4.  In connection with the Loan, the Debtor and the others executed and delivered to Original Lender a Promissory Note dated December 20, 2022, in the principal amount of $101,268,000.00 (the "Note"). A true and correct copy of the Note is attached hereto as **Exhibit 2** and incorporated herein by this reference.

5.  To secure the obligations of the Loan, the Debtor and other trustors executed and delivered to Original Lender, as beneficiary, six Deeds of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing dated as of December 20, 2022 (together, the "Deeds of Trust" and individually "Deed of Trust") encumbering parcels of real property located in the Counties of Fresno, Merced, Madera, Kern, Kings, and Stanislaus, all as more specifically stated in the Deeds of Trust. For purposes of brevity, the following deeds of trust were recorded in Kings and Kern Counties:

- Deed of Trust recorded in the Office of the County Recorder of Kern County on December 28, 2022, as instrument number 222189115, a true and correct copy of which is attached hereto as **Exhibit 3** and incorporated herein by this reference.

- Deed of Trust recorded in the Office of the County Recorder of Kings County on December 29, 2022, as instrument number 2224395, a true and correct copy of which is attached hereto as **Exhibit 4** and incorporated herein by this reference.

6.  MHC is the current holder, as assignee, of all and each of the loan documents referenced herein above by way of recorded assignments and an allonge from Original Lender, as assignor, with the referenced assignment documents attached hereto collectively as **Exhibit 5** and incorporated herein by this reference.

///
///
///
///

7.     The Debtor defaulted on the Loan by, among other things, failing to make quarterly payments due on March 1, 2024 and every payment thereafter.  The Debtor also defaulted under various loan covenants.  As a result, the Loan was accelerated.  As of early May 2025, the Debtor owed over $100 million on the Loan.

Executed on May 31, 2025, at Lakeland, Florida.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

JOHN C. COVINGTON

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

# EXHIBIT 1

<u>**LOAN AGREEMENT**</u>

This Agreement, made this December 20, 2022 between **SRAN FAMILY ORCHARDS, INC.,** a California corporation, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, **N.S. FARMS, INC.,** a California corporation, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, **S3 GROUP, LLC,** a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, **NAVDEP SRAN dba NAVDEP SRAN FARMS,** a sole proprietorship, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, **SRAN ALMONDS, LLC,** a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, **SRAN VINEYARDS, LLC,** a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, **SRAN CHILDREN ALMONDS, LLC,** a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, and **DIAMOND WEST FARMING COMPANY, INC.,** a California corporation, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630 (whether one or more hereinafter called "Borrower"), and NAVDEP SINGH SRAN AND SUKHWINDER KAUR SRAN, Co-Trustees, as community property, or their successors in trust, under the **2005 SRAN FAMILY REVOCABLE TRUST,** dated August 10, 2005, and any amendments thereto, whose address is 1758 Siskiyou Ave., Kerman, California 93630 (the "Trust"), **NAVDEP SINGH SRAN,** a married man, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630 ("Navdep"), **LAKHVIR SINGH SRAN,** a married man, whose address is 8045 N. Rivers Edge Rd., Fresno, California 93711 ("Lakhvir"), **SAVDEEP SINGH SRAN,** a married man, whose address is 7142 N. Forkner, Fresno, California 93711 ("Savdeep"), and **SUKHJIVAN SINGH SRAN,** a married man, whose address is 7360 Creston Rd., Paso Robles, California 93446 ("Sukhjivan," and together with Savdeep, Lakhvir, Navdep, and the Trust, individually and collectively, the "Guarantor", and Borrower and Guarantor are collectively herein the "Obligor(s)"), and **MORGAN HILLS CAPITAL, LLC,** a Delaware limited liability company, c/o AgAmerica Lending LLC, a Florida limited liability company, whose address is 4030 South Pipkin Road, Lakeland, Florida 33811 (hereinafter called "Lender").

<u>**W I T N E S S E T H:**</u>

**WHEREAS**, Borrower has applied to Lender for a loan in the amount of One Hundred One Million Two Hundred Sixty-Eight Thousand and 00/100 ($101,268,000.00) Dollars to be used to refinance agricultural debt and pay accrued interest on existing agricultural debt.

**WHEREAS**, Lender has agreed to provide one or more loans in the amount stated above, the use and repayment of which and the provisions of security therefore are to be controlled by the terms and provisions of this Loan Agreement (herein "Loan Agreement" or "Agreement"), the promissory notes of even date herewith, and the collateral documents associated herewith (collectively herein the "Loan Documents").

**NOW, THEREFORE**, in consideration of the mutual promises herein contained and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

<u>**ARTICLE I**</u>
<u>**Conditions Precedent and Definitions**</u>

1.    Borrower understands and agrees that Lender's willingness to enter into this Agreement and make the Loan (as defined below) is expressly conditioned upon:

        a.    Lender's receipt and prior approval of a complete appraisal, summary report, or collateral evaluation meeting Lenders' requirements and completed by an appraiser licensed to conduct agricultural appraisals in the state in which the

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 6 of 261

Property (hereinafter defined) is located, indicating a value of the Property of at least $168,780,000.00. Borrower understands that Lender's review of the appraisal may result in additional required conditions, in Lender's sole discretion.

b. Lender's receipt and satisfactory review of Borrower's signed application, financial statements, and income tax returns.

c. Lender's receipt and satisfactory review of a current pump and well report (showing depth, standing water level, and current draw) or other evidence showing sufficient available water for the property's agricultural uses.

d. Lender's receipt and review of all long-term leases or rental agreements and all leases and rental agreements of any term that contain a right or option for purchase, first refusal, or first offer for the property that will secure the Loan, which leases shall be assigned to Lender or subordinated to the Loan, as applicable.

e. Lender's receipt of fully executed Non-Participating Spouse's Estoppel Certificates for Sukhwinder Kaur Sran, Susan Kaur Sran, Kirindeep Kaur Sanghera-Sran, and Meghan Satterlee.

f. Lender's receipt and satisfactory review of the 2022 UCC Filings and Office of Foreign Assets Control (OFAC) results.

g. Lender's receipt and satisfactory review of an environmental disclosure completed and signed by Borrower indicating there are no known environmental hazards present on the Property.

2. "Security Instruments" shall include any deed(s) of trust or real estate mortgage(s), collateral assignment(s), security agreement(s), and any other agreement pledging collateral to secure the payment of the loans provided for herein.

3. The "Loan" shall mean that certain loan in the amount of One Hundred One Million Two Hundred Sixty-Eight Thousand and 00/100 ($101,268,000.00) Dollars evidenced by that certain promissory note executed on even date herewith (herein "Note").

4. The "Loan Term" shall commence on the 20th day of December 2022 and shall end on December 1, 2026, unless the Loan Term is extended for an additional one-year term pursuant to the terms of the Note and this Loan Agreement, in which case the maturity date may be extended to December 1, 2027.

5. The "Note" shall include the original Note of even date herewith and all renewals, modifications, substitutions and consolidations thereto.

6. "Indebtedness" shall mean all amounts due from Borrower to Lender under this Loan Agreement, and any loan documents, including without limitation, principal, interest, costs of collection, attorney's fees, and other expenses of the Lender which Borrower is obligated to pay, and any such amounts advanced by Lender in the discharge of obligations of the Borrower, whether such amounts are now due or hereafter incurred, whether direct or indirect, and whether such amounts are from time to time reduced and thereafter increased or entirely extinguished and thereafter reincurred.

7. "Property" shall mean all real property and personal property in or on which Borrower has given Lender a security interest or lien, whether in a Security Instrument or otherwise, to secure this Agreement, the Note, or Borrower's obligations to repay the Indebtedness. The term "Property" includes, without limitation, all real property and personal property described in any Security Instruments of even date herewith by Borrower for the benefit of Lender.

8. To "Divide" means to file a certificate of division, adopt a plan of division, amend any organizational documents, or take any other actions, or permit or consent to the taking of such actions, in

order to divide any entity (whether a limited liability company, corporation, partnership or other organization or entity) into two or more entities pursuant to a plan of division.

**ARTICLE II**
**Affirmative Covenants**

1. <u>Financial Reporting</u>. Obligors shall keep proper books of record and account, in which full and correct entries shall be made of all financial transactions and the assets and businesses of the Obligors in accordance with generally accepted accounting principles (GAAP) consistently applied, unless prior written consent has been obtained from Lender, in which event such books of account shall be maintained in accordance with Income Tax Basis of Accounting Principles, consistently applied.

☒    If this box is checked, the following shall apply:

Annually, beginning with fiscal year end 2022, and in any event within 180 days thereafter, CPA Audit Quality financial statements prepared on a consolidated and consolidating basis, including income statement, balance sheet, and statement of cash flows for each Borrower and, in Lender's discretion, each entity owned by each Borrower in the future, as of the end of such year, all in reasonable detail, prepared in accordance with generally accepted review standards and reviewed by an independent certified public accountant selected by Borrower and satisfactory to the Lender.

Beginning October 15, 2022, and annually thereafter, each individual Obligor shall deliver, or cause to be delivered, to Lender copies of the respective Obligor's Federal Income Tax Returns, together with any and all supporting schedules. If any extension is filed, proof of extension shall be provided, and tax returns shall be remitted to Lender no later than fifteen (15) days following such filing.

☐    If this box is checked, financial statements shall be provided as may be reasonably requested by Lender.

2. <u>Option to Extend Maturity Date</u>. The initial Term of this Loan will be four (4) years, with an Initial Maturity Date of December 1, 2026. Upon written notice to Lender not earlier than sixty (60) days prior to, nor later than ten (10) business days prior to, the Initial Maturity Date, Borrower may extend the term of the Loan beyond the Initial Maturity Date for one (1) additional term of one (1) year (the "Extension Option"), subject to Borrower meeting the debt-service-coverage-ratio covenant set forth in Article II(3), below. Should Borrower exercise the Extension Option, the entire outstanding principal balance of the Note and any outstanding accrued interest shall be due and payable in full on December 1, 2027 (the "Extended Maturity Date").

3. <u>Debt Service Coverage ("DSC") Ratio</u>. As a condition to exercising the option to extend the Maturity Date as provided in Article II(2) above, Borrower shall meet a DSC ratio of 1.35:1 as of December 31, 2025. The year-end audit quality financial statements will be used to calculate this ratio, which shall be calculated as (i) the sum of net income, interest expense, depreciation, amortization, and cash contributions (ii) less any depreciation on cultural expenses, capital gains, distributions, and dividends (iii) divided by interest expense, based on a trailing twelve-month basis, and required principal payments. If Borrower does not meet a DSC ratio of 1:35:1 by December 31, 2025, Lender reserves the right to deny the extension or amend the interest rate or other terms, at the discretion of Lender.

Page 3

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 8 of 261

**4.** <u>Origination Fee</u>. Borrower agrees to pay to Lender an origination fee equal to 0.40% of the amount of the Loan, due and payable at closing out of the Loan Proceeds.

**5.** <u>Organic Produce Certifications</u>. Commencing on May 31, 2023, and annually thereafter for the life of the Loan, Borrower agrees to provide to Lender, in the form required by Lender in its sole and absolute discretion, verification and certification that the United States Department of Agriculture ("USDA") or a certifying agent accredited by the USDA has certified all crops grown on the Property as organic.

**6.** <u>Assignment of Water Rights</u>. Borrower agrees to assign to Lender all water rights and entitlements, and agrees that Lender will take a security interest in any rights or entitlements associated with Arroyo Pasajero Mutual Water Co.

### ARTICLE III
### Representations, Covenants and Warranties

Obligors hereby represent and warrant to Lender, such representations and warranties being continuing as long as any Indebtedness is outstanding under the terms of the Note or this Agreement, as follows:

**1.** Obligors, as applicable, shall maintain adequate insurance coverage with insurance companies reasonably acceptable to Lender with coverage normally obtained but covering at least damage to the property and the Obligor's other physical property from fire and other hazards for the full insurable value of such property and liability on the account of injury to persons or persons and property in such amounts and coverage satisfactory to Lender. All such insurance policies shall name Lender as an additional insured as its interest appears and shall provide that the Lender shall receive a certificate of such insurance and shall not be canceled except on thirty (30) days written notice to Lender.

**2.** That entity Obligors use no trade names in the conduct of its business, other than as set forth in the preamble to this Agreement, has not changed its name, been the surviving entity in a merger, or acquired any new business.

**3.** That Mortgagor, Grantor, or Pledgor, as applicable, as defined in the Security Instrument, owns all of the collateral pledged under any Security Instrument free and clear of any other security interest, encumbrances, or liens, other than as set forth herein or within said Security Instrument, and except as to those liens that arise by operation of law with respect to the obligations of Mortgagor, Grantor, or Pledgor that are not yet due and payable, and Obligors, as applicable, will defend all such collateral against such claims and demands of any and all persons at any time claiming an interest therein.

**4.** That no representation, warranty, or statement by any Obligor contained herein or in any certificate or document furnished or to be furnished by any Obligor pursuant hereto contains or at the time of delivery shall contain any untrue statement of material facts, or omits, or shall omit at the time of delivery, to state a material fact necessary to make it not misleading.

**5.** That the execution of this document and all associated Loan Documents have been duly authorized by all requisite action, and do not require any consent or approval of any other person; will not violate any provision of any agreement; will not violate any other provisions of any partnership, joint venture, or other written agreement governing the operation of the entity, as amended to the date hereof, of any such Obligor; will not violate or be in conflict with, result in a breach of, or constitute a default under, any indenture, agreement or other instrument to which any Obligor is a party or by which any Obligor or any of its properties are bound, or any order, writ, injunction, or decree of any court or governmental institution; will, when executed and delivered for value, be legal, valid and binding obligations of any Obligor.

Page 4

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 9 of
261

6.      Obligors upon request by Lender will execute, acknowledge, and deliver to Lender such Security Agreements, Financing Statements or other similar security instrument, in form satisfactory to Lender, covering such property owned by such Obligor, which, in the opinion of Lender, is essential to the operation of or use of the collateral pledged under any Security Instrument and will further execute, acknowledge, and deliver such additional financing statements, affidavits, continuation statements, certificates or other documents as Lender may request in order to perfect, preserve, maintain, continue, and extend the security interest under and the priority of such Security Instrument. The Borrower further agrees to pay to Lender on demand all costs and expenses incurred by Lender (including reasonable attorney fees) in connection with the preparation, execution, recording, filing, and refiling of any such document and in connection with the exercise of any right or remedy hereunder.

7.      Obligors have heretofore furnished the Lender balance sheets, annual statements, or other financial information which are correct and complete, and accurately present the financial condition and results of operation of same as of the dates and for the periods indicated, and said financial statements show all known liabilities, direct or contingent, as of the dates of said financial statements, and have been prepared in accordance with generally accepted accounting principles consistently applied, unless prior written consent has been obtained from Lender, in which event such financial statements have been prepared in accordance with Income Tax  Basis of Accounting Principles, consistently applied.  Since the date of furnishing of the most recent financial statements, there has been no material adverse change in the financial condition of such Obligors.

8.      The Borrower is not in default in any material respect under, or with respect to any contract, any agreement, or other instrument to which it is a party or by which it is or its assets may be bound and no default or event of default has occurred and is continuing.

9.      Each entity Obligors' chief place of business is the addresses shown elsewhere herein, and they shall promptly give Lender written notice of any change.  Each Obligor's business records shall be kept at said address unless prior written consent of Lender is obtained to change to a new location.

10.     At its own expense, Obligors shall supply any financial information to Lender upon request including audits by independent public accountants.  All information supplied and statements made by or on behalf of Obligor in any financial, credit or accounting statement or application for credit prior to, contemporaneous with, or subsequent to the execution of this agreement shall be true, correct, complete, valid and genuine.

11.     That Obligors filed all requisite tax returns (Federal, state and local) required to be filed, or has secured extensions thereof, and has paid all taxes shown thereon to be due, including interest and penalties, or has otherwise provided adequate reserves for the payment thereof.

12.     That the Loan disbursed hereunder shall be used solely for business purposes, no monies shall be diverted to any other purpose, and no part of the Loan shall be used for personal, family, or household purposes.

13.     That the Loan Documents are in all respects legal, valid, and binding according to their terms and grant to Lender a direct, valid and enforceable lien and security interest in the collateral and the personalty located and to be located thereon, subject only to the Permitted Exceptions as set forth on Title Commitment No. FWFM-45004174-MW dated October 20, 2022 at 12:00 AM issued by Chicago Title Company (herein throughout referenced as "Permitted Exceptions").

14. That the consummation of the transactions hereby contemplated and the performance of Obligors under the Loan Documents will not result in any breach of, or constitute a default under, any mortgage, security deed, deed of trust, lease, bank loan or credit agreement, contract, corporate charter or bylaws, partnership agreement or other instrument to which any Obligor is a party or by which it may be bound or affected.

15. That there are no actions, suits, or proceedings pending, or to the knowledge of any Obligor threatened against or affecting any Obligor or the Property, or involving the validity or enforceability of any of the Loan Documents or the priority of the lien thereof, at law or in equity, or before or by any governmental authority, except actions, suits and proceedings which are fully covered by insurance and which, if adversely determined, would not impair the ability of any Obligor to perform each and every one of its obligations under and by virtue of the Loan Documents; and to the best of each Obligor's knowledge, no Obligor is in default with respect to any order, writ, injunction, decree, or demand of any court or any governmental authority.

16. That Obligors have no knowledge of any material violations or notices of violations of any federal or state law or regulation or municipal ordinance or order or requirement of the town in which the Property is located or any municipal department or other governmental authority having jurisdiction affecting the Property, which violations in any way relate to or affect the Property.

17. All representations and warranties contained herein or made in writing by Obligor in connection herewith shall survive the execution and delivery of the Loan Documents.

18. Obligor shall continue, in substantially the same manner and degree as at present, the Borrower's operation of the Property. Prior to any material change in Borrower's operation of the Property, Borrower shall provide, at their sole expense, any and all information Lender requests relating to any proposed change of operation and any assurances Lender may request relating to any such proposed change of operation including, without limitation, an opinion of counsel providing assurances that such proposed change of operation will comply with all applicable laws and regulations.

19. Obligor shall promptly notify the Lender in writing of any default, litigation, claim, regulatory proceeding or other matter commenced or threatened against an Obligor or in which an Obligor is named which would have a material adverse effect on the ability of the Obligors to comply with or carry out the terms and conditions of the Notes or the other Loan Documents or which, if litigated to conclusion, would result in the creation of additional liens or encumbrances with respect to any of the real property securing the Indebtedness or which may cause the Obligors to lose possession of the same. The Borrower shall promptly notify the Lender in writing of any litigation, claim or other matter which may have a material adverse effect on any Obligor or its ability to comply with the terms and conditions hereof, including without limitation any material default of any indebtedness other than owing to the Lender or any legal action that may affect the real property securing the Indebtedness.

20. That no Obligor is contingently liable for any debt not disclosed to Lender in writing.

21. Environmental Regulations.

    a. To the best of the Obligor's knowledge, other than as stated in subsection b, below, there is no hazardous waste, toxic substance or related material on or beneath any of the real property collateral included in the Security Instruments, including, but not limited to, substances defined as "hazardous substances" or "toxic substances" in the Comprehensive Environmental Response and Liability Act of 1980, as amended, (42 U.S.C. § 9061, et seq.); the Hazardous Material Transportation Act (49 U.S.C. § 1802, et seq.); and the

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 11 of 261

Resource Conservation Recovery Act (42 U.S.C. § 6901, et seq.); or any similar act or law, or any regulations promulgated pursuant to any such laws.

    b.  To the best of the Obligor's knowledge, those pesticides, herbicides and other agricultural chemicals customarily used in agricultural operations of the type currently conducted on the real property collateral included in the Security Instruments have been used in accordance with all applicable laws and regulations

    **22.**    It is in the best interest of the Obligors to enter into this Agreement and the other Loan Documents, and the amounts loaned to the Borrower under the Note will directly or indirectly inure to the benefit of such Obligor.

    **23.**    All agreements, covenants, representations, and warranties contained herein or made in writing by Obligors in connection herewith or in any of the Loan Documents shall survive the execution and delivery of the Loan Documents.

**ARTICLE IV**
**Prohibited Transactions by Borrower**

During the term of this Agreement, Obligors shall not:

1.    Merge, divide, dissolve, or wind up its affairs.

2.    Incorporate a new entity to operate the business relating to the collateral pledged under any security instrument.

3.    Make any assignment for the benefit of creditors.

4.    Sell, assign, lease, or otherwise dispose of any part or all of its assets other than in the ordinary course of business.

5.    Further encumber, mortgage, or pledge or allow to be placed any subordinate liens or encumbrances upon the real property securing the Indebtedness.

**ARTICLE V**
**Events of Default**

The following shall be considered an event of default:

**1.**    The failure of Borrower to pay any installment of principal or interest in accordance with the terms and conditions of the Note.

**2.**    The failure of any Obligor to perform any of the other terms and conditions of this Agreement, any Security Instrument or any other document evidencing and/or securing the Loan.

**3.**    The failure of any Obligor to perform or observe any of the obligations contained in this Agreement.

Page 7

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 12 of 261

**4.**     Any warranty or representation made by any Obligor hereunder at the time of execution of this Agreement or at the time of a request for any additional advance, if applicable, shall prove to be untrue or incorrect in any material respect.

**5.**     The failure of any Obligor to generally pay their debts as such debts become due in the normal course of business; the admission by any Obligor of its inability to pay its debts as they generally come due; the execution of a general assignment for the benefit of creditors by any Obligor; the institution by or against any Obligor of any bankruptcy proceeding remaining undismissed for 30 days after filing; the liquidation, winding up, reorganization, or adjustment of debts of any Obligor; the suffering of a monetary judgment against any Obligor in excess of $25,000.00 which is not bonded off or discharged within 30 days from its entry; or the execution of any judgment against any property owned by any Obligor.

**6.**     A default or event of default by any Obligor under any other promissory note, guarantee, or Security Instrument held by or originated by Lender or any Loan Document.

**7.**     The occurrence of any prohibited transaction under this Agreement.

**8.**     The death of any individual Obligor.

## ARTICLE VI
## Remedies

If any event of default as defined hereunder, other than one involving the payment of money, is not cured by any Obligor after 10 days written notice from Lender, Lender shall have the right, at its option, to declare the entire outstanding principal balance of the Loan and all sums due including unpaid and accrued interest thereon immediately due and payable and/or foreclose on any security given for this Agreement and the Loan.  If the event of default is one involving the failure to pay money, Lender need not give the 10-day notice hereunder but may immediately declare all sums due and owing and Borrower waives any notice and demand in connection with such a default involving the failure to pay money owing under this Agreement or the Loan.

Nothing contained herein shall be construed to permit the total interest rate charged under the Loan and this Agreement to exceed the maximum rate of interest permitted under applicable law (the "Lawful Rate"), and in the event such adjusted rate shall exceed the maximum Lawful Rate, the effective rate shall be deemed reduced to and shall be such maximum Lawful Rate, and any sums of interest which have been collected in excess of such maximum Lawful Rate shall be applied as a credit against the unpaid balance due hereunder.

The failure of Lender to exercise any of its rights granted hereunder shall not be deemed a waiver thereof nor shall Lender be estopped from asserting such rights for any subsequent defaults.  The remedies provided herein are cumulative and are not exclusive to any remedies that Lender may otherwise be provided by law.

## ARTICLE VII
## Miscellaneous

**1.**     All Obligors agree that within ninety (90) days of the date of this Agreement, all underground storage tanks situated on the real property securing the Loan of less than 1,100 gallons in size must be removed. If an underground tank is larger than 1,100 gallons in size, a current EPA certificate will be provided to Lender for any such tanks remaining on the real property securing the Loans.

**2.** All Obligors agree, whether or not the transaction hereby contemplated shall be consummated, to pay and save Lender harmless against liability for the payment of all reasonable out of pocket expenses and rises in connection with this transaction, including documentary stamp taxes or other taxes which may be determined to be payable in respect to the execution and delivery of any loan documents executed in connection with this agreement, and the reasonable fees and expenses of Lender's counsel.

**3.** This Agreement shall not be amended or modified unless in writing and signed by all the parties hereto.

**4.** All notices to be mailed shall be sent to:

| | |
|---|---|
| Addresses for Notices to any Obligor: | 1758 N. Siskiyou Ave. Kerman, California 93630 |

With a copy to:

| | |
|---|---|
| Address for Notices to Lender: | AgAmerica Lending LLC 4030 South Pipkin Road Lakeland, Florida 33811 Attn: Servicing Telephone: 863-607-9500 Facsimile: 863-607-9522 |

| | |
|---|---|
| With a copy to: | Meredith L. Kohler Samuel A. Diddle Elam & Burke, PA P.O. Box 1539 Boise, ID 83701 Telephone: 208-343-5454 Facsimile: 208-384-5844 |

**5.** In the event any action becomes necessary to enforce the terms and conditions of this Agreement or to foreclose on any security for this Agreement or the Loans, the Obligor(s) shall pay all costs incurred in connection therewith, including a reasonable attorney's fee, whether at trial, in any bankruptcy proceeding, and at any appellate level. As used herein attorney's fees shall be deemed to include a separate award for paralegal or legal assistant fees.

**6.** This Agreement may not be assigned by the Obligor(s) and any attempted assignment by any Obligor shall be null and void.

**7.** This Agreement shall be governed by and construed in accordance with the laws of California.

**8.** In the event that any provision of this Agreement is declared unenforceable by a court of competent jurisdiction, then such unenforceability shall not affect the remaining provisions hereunder.

Page 9

Loan Agreement
SRAN [Loan No. 1503]

**9.** As the context requires, the singular shall include the plural and the plural the singular, and any one gender shall include all genders.

**10.** Lender may assign this Agreement together with the Note or any part or all of the Loan Documents securing the Note.

**11.** Each Obligor represents and warrants that they are fully aware of the terms contained in this Agreement, and have voluntarily and without coercion or duress of any kind entered into this Agreement.

**12.** The relationship between Lender and Obligors is that of creditor and debtor or guarantor. Nothing contained in this Agreement will be deemed to create a partnership or joint venture between the Lender and any other party, or to cause the Lender to be liable or responsible in any way for the actions, liabilities, debts or obligations of any Obligor or any other party.

**13.** Obligors shall be jointly and severally liable for the payment of the Loan and the performance of all obligations arising under this Agreement.

**14.** This Agreement may be executed in counterparts, each of which shall constitute an original and all of which together shall constitute one and the same instrument.

**15.** A facsimile, electronic, or portable document format (pdf) copy of this Agreement and any signatures hereon shall be considered for all purposes as an original.

**16.** This Agreement shall not be construed more strongly against any party regardless who is responsible for its preparation. The parties acknowledge that each contributed and is equally responsible for its preparation.

**17.** **WAIVER OF JURY TRIAL AND PUNITIVE AND EXEMPLARY DAMAGES. TO THE FULLEST EXTENT PERMITTED BY LAW, OBLIGORS AND LENDER KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE THE RIGHT TO A JURY TRIAL IN ANY ACTION, PROCEEDING, OR LITIGATION RELATED TO, CONCERNING, OR IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE NOTE, ANY SECURITY INSTRUMENT AND ANY OTHER LOAN DOCUMENT EXECUTED IN CONNECTION HEREWITH OR INCIDENTAL HERETO OR THE LOAN EVIDENCED THEREBY OR THE NEGOTIATIONS AND DISCUSSIONS CONCERNING SUCH LOAN (WHETHER BASED ON CONTRACT, TORT, INTENTIONAL MISCONDUCT OR ANY OTHER THEORY OF LIABILITY) (EACH BEING REFERRED TO HEREIN AS A "DISPUTE"), AND WAIVE THE RIGHT TO A JURY TRIAL OF ANY DEFENSE, CLAIM, CROSS-CLAIM, COUNTERCLAIM, CLAIM OF SET-OFF, OR SIMILAR CLAIM OF ANY NATURE THAT ANY PARTY COULD OR MAY ASSERT AGAINST THE OTHER IN CONNECTION WITH A DISPUTE, AND AGREE THAT ANY SUCH ACTION, PROCEEDING, LITIGATION SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. OBLIGORS AND LENDER EACH AGREE THAT IT SHALL NOT HAVE THE REMEDIES OF PUNITIVE DAMAGES OR EXEMPLARY DAMAGES AGAINST THE OTHER IN ANY DISPUTE AND EACH HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THAT SUCH PARTY NOW HAS OR WHICH SUCH PARTY MAY HAVE IN THE FUTURE IN CONNECTION WITH ANY DISPUTE. THE PROVISIONS OF THIS PARAGRAPH ARE A MATERIAL INDUCEMENT TO THE PARTIES TO ENTER INTO THIS TRANSACTION.**

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 15 of 261

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement or caused this Agreement to be executed on the date first written above.

Signed, sealed, and delivered in the presence of:

**AGAMERICA LENDING LLC,**
a Florida limited liability company

_____
Witness Signature

_____
Print Witness Name    Chloe Allen

_____
By:  Theodore R. M. Miller
Its:  Director of Closing

_____
Witness Signature

_____
Print Witness Name    Trevor Atchison

**STATE OF FLORIDA**
**COUNTY OF POLK**

The foregoing was acknowledged before me  by means of ☑ physical presence or ☐ online notarization, on this ____20____ day of December 2022 by Theodore R. M. Miller, as Director of Closing of AgAmerica Lending LLC, a Florida limited liability company, on behalf of the company, they are __✗__ personally known to me or _____ produced _____ as identification.

_____
Notary Public

CHLOE ALLEN
Notary Public - State of Florida
Commission # GG 291429
My Comm. Expires Jan 15, 2023
Bonded through National Notary Assn.

Loan Agreement
SRAN [Loan No. 1503]

Signed, sealed, and delivered in the presence of:

**BORROWER:**

**SRAN FAMILY ORCHARDS, INC.,**
a California corporation

_____
Witness Signature

By: Navdep Singh Sran
Its: Chief Executive Officer and
     Chief Financial Officer

_____
Print Witness Name

_____
Witness Signature

By: Sukhwinder Kaur Sran
Its: Secretary

_____
Print Witness Name


Signed, sealed, and delivered in the presence of:

**BORROWER:**

**N.S. FARMS, INC.,**
a California corporation

_____
Witness Signature

By: Navdep Singh Sran
Its: President, Chief Executive Officer and
     Secretary

_____
Print Witness Name

_____
Witness Signature

By: Sukhwinder Kaur Sran
Its: Secretary

_____
Print Witness Name


Signed, sealed, and delivered in the presence of:

**BORROWER:**

**S3 GROUP, LLC,**
a California limited liability company

_____
Witness Signature

By: Lakhvir Singh Sran
Its: Member

_____
Print Witness Name

By: Savdeep Singh Sran
Its: Member

_____
Witness Signature

By: Sukhjivan Singh Sran
Its: Member

_____
Print Witness Name

Page 12

Loan Agreement
SRAN [Loan No. 1503]

Signed, sealed, and delivered in the presence of:

**BORROWER:**

**NAVDEP SRAN dba NAVDEP SRAN FARMS**, a sole proprietorship

_____
Witness Signature

By:  Navdep Singh Sran
Its:  Proprietor

_____
Print Witness Name

_____
Witness Signature

_____
Print Witness Name

Signed, sealed, and delivered in the presence of:

**BORROWER:**

**SRAN ALMONDS, LLC,**
a California limited liability company

_____
Witness Signature

By: Lakhvir Singh Sran
Its:  Member

_____
Print Witness Name

By: Savdeep Singh Sran
Its:  Member

_____
Witness Signature

By: Sukhjivan Singh Sran
Its:  Member

_____
Print Witness Name

Signed, sealed, and delivered in the presence of:

**BORROWER:**

**SRAN VINEYARDS, LLC,**
**a California limited liability company**

_____
Witness Signature

By: Lakhvir Singh Sran
Its:  Member

_____
Print Witness Name

By: Savdeep Singh Sran
Its:  Member

_____
Witness Signature

By: Sukhjivan Singh Sran.
Its:  Member

_____
Print Witness Name

Signed, sealed, and delivered in the presence of:

**BORROWER:**

**SRAN CHILDREN ALMONDS, LLC,**
a California limited liability company

_____
Witness Signature

By: Lakhvir Singh Sran
Its: Member

_____
Print Witness Name

By: Savdeep Singh Sran
Its: Member

_____
Witness Signature

By: Sukhjivan Singh Sran
Its: Member

_____
Print Witness Name


Signed, sealed, and delivered in the presence of:

**BORROWER:**

**DIAMOND WEST FARMING COMPANY, INC.,** a California corporation

_____
Witness Signature

By: Navdep Singh Sran
Its: Chief Executive Officer and
    Chief Financial Officer

_____
Print Witness Name

By: Sukhwinder Kaur Sran
Its: Secretary

_____
Witness Signature

_____
Print Witness Name


Signed, sealed, and delivered in the presence of:

**GUARANTOR:**

**NAVDEP SINGH SRAN,**
a married man

_____
Witness Signature

By: Navdep Singh Sran

_____
Print Witness Name

_____
Witness Signature

_____
Print Witness Name

Page 14

Signed, sealed, and delivered in the presence of:

**GUARANTOR:**

**LAKHVIR SINGH SRAN,**
a married man

_____

Witness Signature

By: Lakhvir Singh Sran

_____

Print Witness Name

_____

Witness Signature

_____

Print Witness Name


Signed, sealed, and delivered in the presence of:

**GUARANTOR:**

**SAVDEEP SINGH SRAN,**
a married man

_____

Witness Signature

By: Savdeep Singh Sran

_____

Print Witness Name

_____

Witness Signature

_____

Print Witness Name


Signed, sealed, and delivered in the presence of:

**GUARANTOR:**

**SUKHJIVAN SINGH SRAN,**
a married man

_____

Witness Signature

By: Sukhjivan Singh Sran

_____

Print Witness Name

_____

Witness Signature

_____

Print Witness Name

Signed, sealed, and delivered in the presence of:

**GUARANTOR:**

**2005 SRAN FAMILY REVOCABLE TRUST,**
Dated August 10, 2005

_____

Witness Signature

By: Navdep Singh Sran
Its: Co-Trustee

_____

Print Witness Name

By: Sukhwinder Kaur Sran
Its: Co-Trustee

_____

Witness Signature

_____

Print Witness Name

Loan Agreement
SRAN [Loan No. 1503]

**ACKNOWLEDGMENT**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**STATE OF CALIFORNIA** )
)ss.
**COUNTY OF** Fresno )

On December 20th , 2022, before me, Natalie P. Fagundes , a Notary Public, personally appeared **Navdep Singh Sran**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Natalie Fagundes_
Signature

NATALIE P. FAGUNDES
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2294527
FRESNO COUNTY
My Comm. Exp. June 22, 2023

(Notary Public Seal)

**ACKNOWLEDGMENT**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**STATE OF CALIFORNIA** )
)ss.
**COUNTY OF** Fresno )

On December 20th , 2022, before me, Natalie P. Fagundes , a Notary Public, personally appeared **Sukhwinder Kaur Sran**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Natalie Fagundes_
Signature

NATALIE P. FAGUNDES
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2294527
FRESNO COUNTY
My Comm. Exp. June 22, 2023

(Notary Public Seal)

Loan Agreement
SRAN [Loan No. 1503]

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA    )
                               )ss.

COUNTY OF _Fresno_    )

On _December 20th_, 2022, before me, _Natalie P. Fagundes_, a Notary Public, personally appeared **Lakhvir Singh Sran**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_(signature)_
Signature

NATALIE P. FAGUNDES
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2294527
FRESNO COUNTY
My Comm. Exp. June 22, 2023

(Notary Public Seal)

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA    )
                               )ss.

COUNTY OF _Fresno_    )

On _December 20th_, 2022, before me, _Natalie P. Fagundes_, a Notary Public, personally appeared **Sukhjivan Singh Sran**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_(signature)_
Signature

NATALIE P. FAGUNDES
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2294527
FRESNO COUNTY
My Comm. Exp. June 22, 2023

(Notary Public Seal)

Loan Agreement
SRAN [Loan No. 1503]

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**STATE OF CALIFORNIA** )
)ss.
**COUNTY OF** Fresno )

On December 20th , 2022, before me, Natalie P. Fagundes , a Notary Public, personally appeared **Savdeep Singh Sran**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature

NATALIE P. FAGUNDES
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2294527
FRESNO COUNTY
My Comm. Exp. June 22, 2023

Loan Agreement
SRAN [Loan No. 1503]

# EXHIBIT 2

<u>**PROMISSORY NOTE**</u>

Loan Amount: $101,268,000.00

Place of Execution:
Kerman, California

Loan Number: 1503

Date of Execution:
December 20, 2022

FOR VALUE RECEIVED, **SRAN FAMILY ORCHARDS, INC.,** a California corporation, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, **N.S. FARMS, INC.,** a California corporation, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, **S3 GROUP, LLC,** a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630 **NAVDEP SRAN dba NAVDEP SRAN FARMS,** a sole proprietorship, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, **SRAN ALMONDS, LLC,** a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, **SRAN VINEYARDS, LLC,** a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, **SRAN CHILDREN ALMONDS, LLC,** a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, and **DIAMOND WEST FARMING COMPANY, INC.,** a California corporation, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630 (individually and collectively the "Borrower"), jointly and severally, promise to pay to the order of **MORGAN HILLS CAPITAL, LLC,** a Delaware limited liability company, c/o AgAmerica Lending LLC, a Florida limited liability company (the "Lender"), at 4030 South Pipkin Road, Lakeland, Florida, 33811, or at such other place or to such other party or parties as Lender may from time to time designate, the principal sum of **ONE HUNDRED ONE MILLION TWO HUNDRED SIXTY EIGHT THOUSAND AND NO/100 DOLLARS ($101,268,000.00)** (herein the "Note Amount"), with interest thereon computed from the Date of Execution on the outstanding principal balance at the rate of interest as provided herein.

☐      If this box is checked, this Note is a revolving line of credit promissory note and as such, all or part of the principal amount evidenced by this Note may be borrowed (and to the extent any principal amount advanced is repaid by Borrower, such sum may be borrowed again) prior to the Maturity Date (as hereinafter defined) or prior to demand being made by Lender, whichever occurs first, but only in accordance with the terms and conditions of the Loan Agreement between Lender and Borrower of even date herewith (collectively, the "Loan Agreement"), provided that such amounts advanced shall never at any time result in the Loan exceeding the Note Amount above.

☐      If this box is checked, this Note is a non-revolving line of credit promissory note and as such, all or part of the principal amount evidenced by this Note may be borrowed prior to the Maturity Date (as hereinafter defined) or prior to demand being made by Lender, whichever occurs first, but only in accordance with the terms and conditions of the Loan Agreement between Lender and Borrower of even date herewith (collectively, the "Loan Agreement"), provided that such amounts advanced shall never at any time result in the Loan exceeding the Note Amount above. Any principal amount advanced that is repaid by Borrower may NOT be re-borrowed.

<u>**INTEREST RATE**</u>

     Interest on this Note shall be payable for the day a disbursement of proceeds of the Loan is made. Regularly scheduled payments of interest on this Note shall include interest accrued to but not including the stated payment date (as herein defined). Payments of principal on this Note shall include interest on the

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 26 of 261

amount paid to but not including the stated payment date, and if payment is received after such day, payment of principal on this Note shall include interest to but not including the next stated payment date.

☒ If this box is checked, this Note shall be a fixed interest rate note, and interest on all sums advanced herein shall accrue at the fixed rate of **six and three quarters percent** (**6.75%**) per annum. Interest shall be computed on a 30-day month divided by a 360-day year. For the month in which the loan settlement date occurs, interest shall accrue on a "30/360" basis from and including the settlement date to and including the last day of such month, calculated as if such month had 30 days. (For example, if this Note had settled on either February 15 or March 15, in either case there would be 16 days of interest for that first month, including the settlement date.)

☐ If this box is checked, this Note shall be a variable interest rate note, and interest on the Loan shall accrue on the outstanding principal balance of this Note from the date funds are advanced through the Maturity Date (as hereinafter defined), at an annual rate equal to the Adjusted Term SOFR Rate (as hereinafter defined). Interest shall be computed on the actual number of days in the Interest Period (as hereinafter defined) divided by a 360-day year. The following terms shall have the following meanings when used in this Note. All capitalized terms used in this Note and not otherwise defined shall have the meanings ascribed thereto in the Loan Agreement.

(i) SOFR Rate Margin: The initial annual rate of margin to be added on the SOFR Base Rate (the "SOFR Rate Margin") is equal to _____% per annum. Lender may modify the Rate Margin in the event that an Event of Default has occurred.

(ii) "Business Day" shall mean any day other than a Saturday, Sunday or a legal holiday on which banks are authorized or required to be closed for the conduct of commercial banking business in Lakeland, Florida.

(iii) "Interest Period" shall mean, other than for the first Interest Period, the [check applicable box] ☐ one (1) month or ☐ three (3) month period (the "Reset Period") commencing on the Rate Change Date through the day immediately preceding the next Rate Change Date. The first Interest Period shall commence on the date of this Note through, but not including the [check applicable box] ☐ First Payment Date or ☐ the date that is [check applicable box] ☐ one (1), ☐ two (2), or ☐ three (3) Reset Period(s) prior to the First Payment Date.

(iv) "Rate Change Date" shall mean the first day of any Interest Period, exclusive of the initial Interest Period. The day of the month of the Rate Change Date shall coincide with the day of the month of the Payment Date.

(v) <u>CME 3-Month Term SOFR Base Rate:</u> The "SOFR Base Rate" is an interest rate per annum equal to the CME 3-Month Term SOFR with 2-day lookback. The interest rate shall be adjusted every three months on the first day of the month. The index for adjustments is the CME 3-Month Term SOFR Index published by CME at https://www.cmegroup.com/market-data/cme-group-benchmark-administration/term-sofr.html?redirect=/termsofr on the day that is two business days preceding the interest rate change date. If the CME 3-Month Term SOFR Index is not reported on such day, the CME 3-Month Term SOFR Index reported on the first business day preceding such day will be used. In the event that CME 3-Month Term SOFR Index is less than zero percent per annum the index shall be

deemed to be zero percent (0.00%) per annum. If this index is no longer available for any reason, is no longer posted through electronic transmission or through a source providing such information, or the Lender determines that the index is unreliable or no longer adequately covers Lender's costs of making loans using this index, Lender will select a replacement index in its sole discretion which index may be based upon comparable information and may include an interest rate spread or other price adjustment to compensate Lender for costs incurred in making or maintaining the loan.

1 The market data is the property of Chicago Mercantile Exchange Inc. ("CME") or its licensors as applicable. All rights reserved, or otherwise licensed by Chicago Mercantile Exchange Inc.

## PREPAYMENTS

Borrower shall only make payments on a Payment Date as defined herein. Borrower shall provide ten (10) business days' written notice prior to making any principal reduction. Any principal reduction not made on a Payment Date as defined herein shall be subject to interest accruing through the next Payment Date.

☐     If this box is checked, during the Term, this Note may not be prepaid through _____ (the "Prepayment Date"). If principal is prepaid any time prior to such Prepayment Date, interest shall be due on the full amount of prepaid principal through the Prepayment Date as though the prepaid principal had remained outstanding through the Prepayment Date.

Subject to these limitations, Borrower shall have the option of prepaying the principal amount due under this Note in whole or in part without premium or penalty after the Prepayment Date.

☒     If this box is checked, notwithstanding anything herein to the contrary, during the Term, the principal balance on this Note may not be prepaid prior to the Maturity Date (the "Prepayment Date") if the source of such prepayment does not involve another loan from Lender or the sale of the collateral associated with this Note. Prepayment of principal prior to such Prepayment Date using a source of prepayment that does not involve another loan from Lender or the sale of the collateral associated with this Note shall be subject to a prepayment premium equal to one percent (1.00%) of the prepaid principal amount.

## REPAYMENT TERMS

☒     If this box is checked, during the Term, interest only shall be payable quarterly in arrears, commencing on March 1, 2023, ("First Payment Date") and on the same day of each quarter thereafter (i.e., June 1, September 1, December 1; each a "Payment Date"), unless otherwise accelerated in accordance with the terms hereof. The entire outstanding principal balance of this Note and any outstanding accrued interest shall be due and payable in full on December 1, 2026 (the "Initial Maturity Date"), unless otherwise accelerated or extended in accordance with the terms and conditions herein. Upon written notice to Lender not earlier than sixty (60) days prior to, nor later than ten (10) business days prior to, the Initial Maturity Date, Borrower may extend the term of the Loan beyond the Initial Maturity Date for one (1) additional term of one (1) year (the "Extension Option"), subject to the terms and conditions set forth in the Loan Agreement. Should Borrower exercise the Extension Option, the entire outstanding principal balance of this Note and any outstanding accrued interest shall be due and payable in full on December 1, 2027 (the "Extended Maturity Date").

Case: 25-50765     Doc# 30     Filed: 06/01/25     Entered: 06/01/25 20:57:11     Page 28 of 261

☐ If this box is checked, during the Term, interest only shall be payable semi-annually in arrears, commencing on _____ (the "First Payment Date") and on the same day of each semi-annual period thereafter (i.e., December 20 and June 20; each a "Payment Date"), unless otherwise accelerated in accordance with the terms hereof. The entire outstanding principal balance of this Note and any outstanding accrued interest shall be due and payable in full on _____ (the "Maturity Date"), unless otherwise accelerated in accordance with the terms and conditions herein.

☐ If this box is checked, during the Term, interest only shall be payable monthly in arrears, commencing on _____, ("First Payment Date") and on the same day of each month thereafter (each a "Payment Date"), unless otherwise accelerated in accordance with the terms hereof. The entire outstanding principal balance of this Note and any outstanding accrued interest shall be due and payable in full on _____ (the "Maturity Date"), unless otherwise accelerated in accordance with the terms and conditions herein.

☐ If this box is checked, commencing on the _____, ("First Payment Date") and continuing quarterly on the same date of each three (3) month period thereafter (i.e., March 20, June 20, September 20 and December 20; each a "Payment Date"), unless otherwise accelerated in accordance with the terms hereof, Borrower shall make payments of principal and interest, which are based upon a _____ (____) year amortization and the Adjusted Term SOFR Rate for the applicable Interest Period. The entire outstanding principal balance of this Note and any outstanding accrued interest shall be due and payable in full on _____ (the "Maturity Date").

All payments under this Note shall be applied first to fees and late charges, if any, then to interest, and then to principal. All installments of principal and all interest are payable in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment.

Lender may collect a late charge of five (5%) percent of any installment of principal or interest which is not paid within ten (10) days of the due date thereof to cover the extra time and expense involved in handling delinquent payments. Such late charge shall apply to late payments prior to maturity or acceleration. Upon maturity or acceleration, no further late charges shall be assessed, but Borrower shall pay the Default Interest Rate (as hereinafter defined) on all amounts due from the date of maturity or acceleration until the Note is paid in full. The collection of the late charge shall not be deemed a waiver by Lender of interest accruing after the due date of any installment or of any of Lender's other rights under this Note.

If the Payment Dates provided for herein occur on a quarterly basis or less frequently, all delinquent principal and installments of interest not paid within thirty (30) days of the due date thereof, shall bear interest beginning on the thirty-first (31st) day from the applicable due date at a rate equal to five percent (5%) per annum above the applicable interest rate stated above (the "Default Interest Rate"), provided, however, in no event shall such rate exceed the highest rate authorized by applicable law. Further, any required payment not made on the Maturity Date shall be subject immediately to the Default Interest Rate.

If the Payment Dates provided for herein occur on a monthly basis, all delinquent principal and installments of interest not paid within ninety (90) days of the due date thereof, shall bear interest beginning on the ninety-first (91st) day from the applicable due date at a rate equal to five percent (5%) per annum above the applicable interest rate stated above (the "Default Interest Rate"), provided, however, in no event shall such rate exceed the highest rate authorized by applicable law. Further, any required payment not made on the Maturity Date shall be subject immediately to the Default Interest Rate.

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 29 of 261

Borrower agrees that the late charge provided above is fair and reasonable compensation to Lender for the additional administrative time and effort incurred in collecting and processing delinquent payments. Borrower further agrees that the Default Interest Rate is a fair and reasonable rate of interest to be charged after maturity or acceleration of this Note in light of the increased risks to Lender inherent in a past due loan and the administrative time and effort incurred in collecting a past due loan.

Should any default occur in the payment as stipulated above of either the interest or principal, and continue for ten (10) days thereafter, then and in that event, the principal of this Note or any unpaid part thereof and all accrued interest thereon shall, in the sole discretion of Lender, at once become due and payable and may be collected forthwith without notice to the undersigned, regardless of the stipulated date of maturity. However, Lender may, in the sole discretion of Lender, accept payments made by Borrower after any default has occurred, without waiving any of Lender's rights herein.

If this Note is placed in the hands of an attorney for collection or is collected through any legal proceedings, Borrower promises to pay all expenses of collection and reasonable attorney's fees incurred by Lender, including fees incurred prior to trial, at trial, on appeal and in any bankruptcy or creditors reorganization proceedings.

In the event the interest provisions hereof or any exactions provided for herein or in the lien documents or any other instruments securing this Note shall result, because of the deduction of principal or any other reason related or unrelated to the interest provisions, at any time during the life of the loan, in an effective rate of interest which, for any period of time, transcends the limit of the usury or any other law applicable to the loan evidenced hereby, all sums in excess of those lawfully collectible as interest for the period in question shall, without further agreement or notice between or by any party hereto, be applied to principal immediately upon receipt of such monies by Lender with the same force and effect as though the payor had specifically designated such and agreed to accept such extra payment(s) as a premium free payment. Notwithstanding the foregoing, however, Lender may at any time and from time to time elect, by notice in writing to the owners of the property affected by the lien document securing this Note, if any, to reduce or limit the collection of any interest to such sums, which, when added to the said first-stated interest, shall not result in any payments toward principal in accordance with the requirement of the preceding sentence. In no event shall any agreed to or actual exaction as consideration for this loan transcend the limits imposed or provided by the law applicable to this transaction or Borrower in the jurisdiction in which the land is located for the use or detention of money or for forbearance in seeking its collection.

This Note is secured by one or more deed(s) of trust or real estate mortgage(s), collateral assignment(s), security agreement(s), or other agreement(s) pledging collateral (the "Security Instrument"), to which reference is made from the terms thereof, and the same are made a part of this Note.

A default under any other promissory note now or hereafter secured by the Security Instrument or under any loan document related to the loan evidenced hereby or such other promissory note constitutes a default under this Promissory Note and under the other documents securing this Promissory Note. When the default under the other promissory note constitutes an event of default under that other promissory note or the related loan document, an event of default also will exist under this Promissory Note and the other loan documents.

Borrower and all endorsers, guarantors and all persons liable or to become liable on this Note waive presentment, protest and demand, notice of protest, demand and dishonor and nonpayment of this Note, and consent to any and all renewals and extensions of the time of payment hereof.

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 30 of
261

Lender is not required to rely on any item of collateral for the payment of the Note in the event of default by Borrower, but may proceed directly against Borrower and/or any endorsers or guarantors, if any, in such manner as it deems desirable. None of the rights and remedies of Lender hereunder is to be waived or affected by failure or delay to exercise them. All remedies conferred on Lender by this Note or any other instrument or agreement shall be cumulative, and none is exclusive. Such remedies may be exercised concurrently or consecutively at Lender's option.

This Note shall be governed as to validity, interpretation, construction, effect, and in all other respects by the laws and decisions of the State of California.

Wherever possible each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note or portion thereof shall be prohibited by or be invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note.

This Note may be assigned by Lender with or without recourse.

Borrower submits to the jurisdiction of any court of competent jurisdiction within the State of California. Borrower further agrees to comply with all requirements necessary to give such court *in personam* jurisdiction and agrees that service of process may be accomplished by, in addition to any other lawful means, certified mail, return receipt requested.

**BORROWER AND LENDER BY ACCEPTANCE OF THIS NOTE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ENTERING INTO THIS AGREEMENT.**

[SIGNATURE PAGES FOLLOW]

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 31 of 261

IN WITNESS WHEREOF, Borrower has executed or caused to be executed these presents on the day and year first above written.

**BORROWER:**

**SRAN FAMILY ORCHARDS, INC.,**
a California corporation

By: Navdep Singh Sran
Its: Chief Executive Officer and
    Chief Financial Officer

By: Sukhwinder Kaur Sran
Its: Secretary

**BORROWER:**

**S3 GROUP, LLC,**
a California limited liability company

By: Lakhvir Singh Sran
Its: Member

By: Savdeep Singh Sran
Its: Member

By: Sukhjivan Singh Sran
Its: Member

**BORROWER:**

**N.S. FARMS, INC.,**
a California corporation

By: Navdep Singh Sran
Its: President, Chief Executive Officer and
    Secretary

By: Sukhwinder Kaur Sran
Its: Secretary

**BORROWER:**

**NAVDEP SRAN dba NAVDEP SRAN FARMS,**
a sole proprietorship

By: Navdep Singh Sran
Its: Proprietor

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 32 of 261

**BORROWER:**

**SRAN ALMONDS, LLC,**
a California limited liability company

By: Lakhvir Singh Sran
Its: Member

By: Savdeep Singh Sran
Its: Member

By: Sukhjivan Singh Sran
Its: Member

**BORROWER:**

**SRAN CHILDREN ALMONDS, LLC,**
a California limited liability company

By: Lakhvir Singh Sran
Its: Member

By: Savdeep Singh Sran
Its: Member

By: Sukhjivan Singh Sran
Its: Member

**BORROWER:**

**SRAN VINEYARDS, LLC,**
a California limited liability company

By: Lakhvir Singh Sran
Its: Member

By: Savdeep Singh Sran
Its: Member

By: Sukhjivan Singh Sran
Its: Member

**BORROWER:**

**DIAMOND WEST FARMING COMPANY, INC.**, a California corporation

By: Navdep Singh Sran
Its: Chief Executive Officer and
     Chief Financial Officer

By: Sukhwinder Kaur Sran
Its: Secretary

## ALLONGE TO PROMISSORY NOTE

This endorsement is to be attached to and made a part of that certain Promissory Note dated December 20, 2022, in the original principal amount of $101,268,000.00, made by SRAN FAMILY ORCHARDS, INC., a California corporation, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, N.S. FARMS, INC., a California corporation, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, S3 GROUP, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, NAVDEP SRAN dba NAVDEP SRAN FARMS, a sole proprietorship, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, SRAN ALMONDS, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, SRAN VINEYARDS, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, SRAN CHILDREN ALMONDS, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, and DIAMOND WEST FARMING COMPANY, INC., a California corporation, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, and payable to MORGAN HILLS CAPITAL, LLC, a Delaware limited liability company, c/o AgAmerica Lending LLC, a Florida limited liability company (the "Note").

The Note is hereby transferred pursuant to the following endorsement with the same force and effect as if such endorsement were set forth at the end of the Note.

PAY TO THE ORDER OF:

**MHC Almonds, LLC**, a Delaware limited liability company
C/O AMHERST CAPITAL MANAGEMENT
452 FIFTH AVENUE
29TH FLOOR, NEW YORK, NY 10018

> **MORGAN HILLS CAPITAL, LLC,**
> a Delaware limited liability company
>
> By: AgAmerica Lending LLC, a Florida limited
> liability company, its authorized representative
>
> By: Theodore R. M. Miller
> Its: Director of Closing

Dated as of the 21st day of October, 2024.

**This Allonge is to be attached to the Promissory Note
and is hereby made a part of the Promissory Note.**

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 34 of 261

# EXHIBIT 3

Recording Requested by
Chicago Title Company

45004174-sm

Laura Avila, Assessor-Recorder
Kern County Official Records

TP
12/28/2022
11:10 AM

Recorded Electronically by:
56A Chicago Title Co CA Multi



DOC #: 222189115

| Stat Types: 3 | Pages: 76 |
| --- | --- |
| FEES | 291.00 |
| TAXES | .00 |
| OTHER | 225.00 |
| PAID | 516.00 |

222189115

**RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:**

Morgan Hills Capital, LLC
c/o AgAmerica Lending LLC
4030 South Pipkin Road
Lakeland, Florida, 33811

Assessor's Parcel Nos.: (Fresno County): 015-315-25s, 001-300-10, 003-020-04, 003-040-01, 003-060-13, 001-280-26, 003-040-04, 003-030-15s, 003-030-24s, 003-020-09, 003-020-08, 045-170-62s, 045-170-86s, 065-110-06s, 065-110-17s, 085-050-39s, 085-090-91s, 085-090-93s, 085-090-95s, 085-090-97s, 033-200-13s, 033-200-14s, 033-200-03s, 033-200-04s, 075-020-38s, 085-090-26s, 085-090-90s, 085-090-92s, 085-090-94s, 085-090-96s, 085-090-04, 027-050-11, 017-070-17, 027-050-01, 027-050-02s, 027-050-07, 033-020-73s, 033-020-74s, 020-200-01, 028-041-01, 028-041-02, (Merced County): 091-160-006, 091-170-001, 091-170-006, 091-053-001, 091-190-005, 091-190-006, 083-230-036, (Madera County): 041-190-006, 042-010-003, (Kern County): 059-160-42, 059-160-43, 059-160-44, 059-180-01, 059-180-03, 059-180-11, 059-180-12, 059-180-13, 059-180-14, 059-180-27, (Kings County): 004-070-026, 004-070-079, 004-100-004, 004-100-022, 004-100-023, 004-100-039, 004-100-055, 004-171-078, 004-172-001, 036-180-063, (Stanislaus County): 057-026-008 and 057-026-009

Space Above This Line for Recorder's Use

# DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND FIXTURE FILING

This Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (this **"Deed of Trust"**), is given as of December 20, 2022, by **NAVDEP SINGH SRAN and SUKHWINDER KAUR SRAN, Co-Trustees, as community property, or their successors in trust, under the 2005 SRAN FAMILY REVOCABLE TRUST dated 8/10/05 and any amendments thereto**, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, as to Parcels 1, 12, 25, 26, 27 and 40, and as to an undivided one-third interest in Parcels 38-39 and 64-66 as Tenants in Common with S3 Group and Sran Vineyards, and who took title to Parcels 12 and 40 as NAVDEP SINGH SRAN and SUKHWINDER KAUR SRAN, Co-Trustees, under the 2005 SRAN FAMILY REVOCABLE TRUST, and who took title to the undivided one-third interest in Parcels 38-39 and 64-66 as NAVDEP SINGH SRAN and SUKHWINDER KAUR SRAN, Co-Trustees as community property under the 2005 SRAN FAMILY REVOCABLE TRUST dated 8/10/05 (collectively, the "Trust"); **S3 GROUP, LLC**, a California limited

Page - 1

Deed of Trust
SRAN [Loan No. 1503]

Recording Requested by
Chicago Title Company

45004174-5m

**RECORDING REQUESTED BY**
**AND WHEN RECORDED MAIL TO:**

Morgan Hills Capital, LLC
c/o AgAmerica Lending LLC
4030 South Pipkin Road
Lakeland, Florida, 33811

This Document Was
Recorded Electronically

---

Assessor's Parcel Nos.: (Fresno County): 015-315-25s, 001-300-10, 003-020-04, 003-040-01, 003-060-13, 001-280-26, 003-040-04, 003-030-15s, 003-030-24s, 003-020-09, 003-020-08, 045-170-62s, 045-170-86s, 065-110-06s, 065-110-17s, 085-050-39s, 085-090-91s, 085-090-93s, 085-090-95s, 085-090-97s, 033-200-13s, 033-200-14s, 033-200-03s, 033-200-04s, 075-020-38s, 085-090-26s, 085-090-90s, 085-090-92s, 085-090-94s, 085-090-96s, 085-090-04, 027-050-11, 017-070-17, 027-050-01, 027-050-02s, 027-050-07, 033-020-73s, 033-020-74s, 020-200-01, 028-041-01, 028-041-02, (Merced County): 091-160-006, 091-170-001, 091-170-006, 091-053-001, 091-190-005, 091-190-006, 083-230-036, (Madera County): 041-190-006, 042-010-003, (Kern County): 059-160-42, 059-160-43, 059-160-44, 059-180-01, 059-180-03, 059-180-11, 059-180-12, 059-180-13, 059-180-14, 059-180-27, (Kings County): 004-070-026, 004-070-079, 004-100-004, 004-100-022, 004-100-023, 004-100-039, 004-100-055, 004-171-078, 004-172-001, 036-180-063, (Stanislaus County): 057-026-008 and 057-026-009

Space Above This Line for Recorder's Use

---

# DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND FIXTURE FILING

This Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (this "**Deed of Trust**"), is given as of December 20, 2022, by **NAVDEP SINGH SRAN and SUKHWINDER KAUR SRAN, Co-Trustees, as community property, or their successors in trust, under the 2005 SRAN FAMILY REVOCABLE TRUST dated 8/10/05 and any amendments thereto**, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, as to Parcels 1, 12, 25, 26, 27 and 40, and as to an undivided one-third interest in Parcels 38-39 and 64-66 as Tenants in Common with S3 Group and Sran Vineyards, and who took title to Parcels 12 and 40 as NAVDEP SINGH SRAN and SUKHWINDER KAUR SRAN, Co-Trustees, under the 2005 SRAN FAMILY REVOCABLE TRUST, and who took title to the undivided one-third interest in Parcels 38-39 and 64-66 as NAVDEP SINGH SRAN and SUKHWINDER KAUR SRAN, Co-Trustees as community property under the 2005 SRAN FAMILY REVOCABLE TRUST dated 8/10/05 (collectively, the "Trust"); **S3 GROUP, LLC**, a California limited

Page - 1

Deed of Trust
SRAN [Loan No. 1503]

liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, as to Parcels 2-11, 13-14, 24, 41-53, 54A, 54B, 54C, and 55-62, and as to an undivided one-third interest in Parcels 38-39 and 64-66 as Tenants in Common with the Trust and Sran Vineyards ("S3 Group"); **SRAN CHILDREN ALMONDS, LLC**, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, as to Parcels 15, 16, 16A, 16B, 17, 17A, 17B, 18, 18A, 18B, 19, 19A 19B and 63, subject to Item No. 283 ("Sran Children"); **SRAN ALMONDS, LLC**, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, as to Parcels 28A, 28B, 29, 29A, 30, 30A, 30B, 31, 31A, 31B, 32, 32A, 32B, 33 thru 37 ("Sran Almonds"); and **SRAN VINEYARDS, LLC**, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, as to an undivided one-third interest in Parcels 38-39 and 64-66 as Tenants in Common with the Trust and S3 Group, which took title as SRAN VINEYARDS, LLC, a California limited liability company a California limited liability company ("Sran Vineyards") (the Trust, S3 Group, Sran Children, Sran Almonds and Sran Vineyards are hereinafter collectively referred to as "**Trustor**"), to **Chicago Title Company**, whose address is 2540 West Shaw Lane, #112, Fresno, California 93711 ("**Trustee**"), for the benefit of **Morgan Hills Capital, LLC**, a Delaware limited liability company, c/o AgAmerica Lending LLC, a Florida limited liability company, whose address is 4030 S. Pipkin Road, Lakeland, Florida 33811 (together with its successors and assigns, "**Beneficiary**").

## ARTICLE I
## DEFINITIONS

For purposes of this Deed of Trust, the following terms shall have the following meanings. Capitalized terms used in this Deed of Trust without definition shall have the meanings ascribed to such terms in the Loan Agreement (as defined below).

"**Accounts**" has the meaning set forth in Section 2.01(q).

"**Applicable Law**" means all applicable existing and future federal, state, and local laws, orders, ordinances, governmental rules, and regulations and court orders.

"**Beneficiary**" has the meaning set forth in the introductory paragraph.

"**Compliance Notice**" has the meaning set forth in Section 7.14.

"**Condemnation**" has the meaning set forth in Section 5.14.

"**Deed of Trust**" has the meaning set forth in the introductory paragraph.

"**Default Rate**" has the meaning set forth in the Note.

"**Environmental Indemnity Agreement**" means that certain Unsecured Environmental Indemnity Agreement, of even date herewith by Trustor and Guarantor(s), as Indemnitors, in favor of Beneficiary, as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms.

"**Event of Default**" has the meaning set forth in the Loan Agreement.

"**Fixtures and Equipment**" has the meaning set forth in Section 2.01(b).

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 38 of 261

"**Guaranty Agreement(s)**" means those certain Continuing and Unconditional Guaranty agreements of even date herewith and executed by Navdep Singh Sran, Savdeep Singh Sran, Suhkkivan Singh Sran, Lakhvir Singh Sran, and Navdep Singh Sran and Sukhwinder Kaur Sran, Co-Trustees, as community property, or their successors in trust, under the 2005 Sran Family Revocable Trust, dated August 10, 2005, and any amendments thereto, respectively, guaranteeing the payment of the Indebtedness (as defined in the Guaranty Agreement(s)) and the performance of the Loan Agreement, as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms.

"**Improvements**" has the meaning set forth in Section 2.01(b).

"**Land**" means that certain real property located real property located in Fresno, Merced, Madera, Kern, Kings, and Stanislaus Counties, State of California, described in *__Exhibit A__* attached hereto and made a part hereof.

"**Leases**" has the meaning set forth in Section 2.01(g).

"**Loan**" means a certain loan in the original principal amount of One Hundred One Million Two Hundred Sixty-Eight Thousand and No/100ths Dollars ($101,268,000.00).

"**Loan Agreement**" means a certain Loan Agreement, of even date herewith, by and among SRAN FAMILY ORCHARDS, INC., a California corporation, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, N.S. FARMS, INC., a California corporation, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, S3 GROUP, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, NAVDEP SRAN dba NAVDEP SRAN FARMS, a sole proprietorship, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, SRAN ALMONDS, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, SRAN VINEYARDS, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, SRAN CHILDREN ALMONDS, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, and DIAMOND WEST FARMING COMPANY, INC., a California corporation, as the borrowers, NAVDEP SINGH SRAN, SAVDEEP SINGH SRAN, SUHKKIVAN SINGH SRAN, LAKHVIR SINGH SRAN, and Navdep Singh Sran and Sukhwinder Kaur Sran, Co-Trustees, as community property, or their successors in trust, under the 2005 SRAN FAMILY REVOCABLE TRUST dated August 10, 2005, and any amendments thereto, as the guarantors, and Beneficiary, as the lender (as amended, amended and restated, supplemented, renewed, or otherwise modified from time to time).

"**Note**" has the meaning set forth in the Loan Agreement.

"**Obligor**" means any Trustor, any Guarantor under the Guaranty Agreements, or any Indemnitor under the Environmental Indemnity Agreement, together with their respective successors and assigns.

"**Permitted Encumbrances**" means: (a) any matters set forth in any policy of lender title insurance issued to Beneficiary which are acceptable to Beneficiary as of the date hereof; (b) the liens and security interests evidenced by this Deed of Trust; (c) statutory liens for real estate taxes and assessments on the Property which are not yet delinquent; (d) other liens and security interests (if any) in favor of Beneficiary; (e) the rights of tenants in possession as of the date hereof, if any, pursuant to Leases

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 39 of 261

approved by Beneficiary and the rights of future tenants under any Leases made in accordance with the Loan Documents, and the assignment of such Leases pursuant to this Deed of Trust; and (f) any matters consented to in writing by Beneficiary in its sole and absolute discretion.

**"Personal Property"** has the meaning set forth in Section 4.01.

**"Proceeds"** has the meaning set forth in Section 2.01(l).

**"Property"** has the meaning set forth in Section 2.01.

**"Property Agreements"** has the meaning set forth in Section 2.01(h).

**"Receiver"** has the meaning set forth in Section 7.04.

**"Rents"** has the meaning set forth in Section 2.01(f).

**"Secured Indebtedness"** means the outstanding principal amount set forth in, and evidenced by, the Note and the Loan Agreement, together with all interest accrued and unpaid thereon and all other sums due to Beneficiary in respect of the Loan under the Note, the Loan Agreement, or this Deed of Trust and the performance and observance of all the provisions hereof, of the Loan Agreement and of all other documents, agreements, and certificates executed and/or delivered by Trustor in connection with the Loan Documents. The Secured Indebtedness specifically excludes the Environmental Indemnity Agreement. Secured Indebtedness also includes all other amounts owed by Trustor jointly or severally to Beneficiary under any other Note or Loan Agreement including.

**"Trustee"** has the meaning set forth in the introductory paragraph.

**"Trustor"** or **"Trustor"** has the meaning set forth in the introductory paragraph.

**"UCC"** has the meaning set forth in Section 2.01(b).

## ARTICLE II
## GRANT OF SECURITY

**Section 2.01    Grant.** In order to secure the due and punctual payment and performance of all of the Secured Indebtedness as and when the same becomes due and payable, whether at the stated maturity, by acceleration, or otherwise, Trustor does hereby GRANT, BARGAIN, SELL, ASSIGN, TRANSFER, WARRANT, CONVEY, AND MORTGAGE, to Trustee, in trust for Beneficiary, with power of sale and right of entry, the following property, rights, interests, and estates now owned, or hereafter acquired by Trustor (collectively, the **"Property"**):

(a)    The Land and all minerals, oil, gas, and other hydrocarbon substances, sand, gravel, and other materials that may be mined, produced, or extracted from the Land, in, on, or under the surface of the Land, as well as all development rights, permits, licenses, air rights, water, water rights, , ditches, ditch rights, storage rights, permits, licenses, certificates and shares of water stock, utility reservations, sanitary sewer, and other utility capacities relating to the Land.

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 40 of 261

(b)     All buildings, structures, fences, pipelines, pipes, tanks, dams, reservoirs, pumps, pumping equipment and all other improvements and fixtures now located or hereafter erected on the Land or used in connection therewith, including, but not limited to, the fixtures, attachments, equipment, machinery, and other articles attached to said buildings and improvements (collectively, the "**Improvements**"), all fixtures as defined in the Uniform Commercial Code in effect in the jurisdiction in which the Land and Improvements are located and/or where Trustor is located or organized (the "**UCC**") (collectively, the "**Fixtures and Equipment**"), and additions to the foregoing.

(c)     Irrigation equipment and wind machines of every kind and nature whatsoever now or hereafter situated on the Land, including without limitation wind machines, compressors, pumps, stanchions, equipment relating to power generation, wells, irrigation equipment, pivots, pumps, motors, sprinkler systems, mainlines, electric lines, hand lines, wheel lines, above and underground pipeline, siphon tubes, gated pipe, all allied equipment such as control panels, pivot controls, wiring, wiring switch panels, shafting, openers, tubing, bowls, suction pipe, cones, reducers, valves, valve openers, reducers, end plugs, risers, sterns, sprinkler heads, hoses and nozzles, and all other irrigation equipment used for the production or transportation of water on Land or for the irrigation or drainage thereof; embedded software relating to the foregoing, whether now owned or hereafter acquired, whether now existing or hereafter arising, and all accessions, parts, additions, replacements and substitutions for any of such property, and all proceeds (including without limitation insurance proceeds) from the sale or other disposition of any such property.

(d)     All the property and rights described in *Exhibit B* attached hereto and by this reference incorporated herein, whether now owned and in existence in connection with the real property on the date hereof or hereafter acquired.

(e)     All easements, rights-of-way or use, strips and gores of land, streets, ways, alleys, passages, sewer rights, utility reservations and capacity rights, waters, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, minerals, royalties, privileges, liberties, tenements, hereditaments, and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating, or pertaining to the Land or the Improvements, or any part thereof and the reversions, remainders, rents, issues, and profits thereof; and all land lying in the bed of any street, road, or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, rights of dower, rights of curtesy, property, possession, claim, and demand whatsoever, both at law and in equity, of Trustor of, in, and to the Land and the Improvements, and every part and parcel thereof, with the appurtenances thereto.

(f)     Any and all rents, revenues, issues, profits, royalties, income, cash proceeds, security deposits, accounts, moneys, and other benefits that are now due or may hereafter become due by reason of the renting, leasing, bailment of all or any portion of the Land or the Improvements, or the use or occupancy thereof (collectively "**Rents**").

(g)     Subject to the rights of Trustor hereunder and under the Loan Documents, all leasehold estate, right, title and interest of Trustor in, to or under all leases (including grazing permits, leases and oil and gas leases), subleases, sub-subleases, licenses, concessions, occupancy agreements, or other agreements (written or oral, now or at any time in effect and every modification, amendment, or other agreement relating thereto, including every guarantee of the performance and observance of the covenants, conditions, and agreements to be performed and observed by the other party thereto) which grant a possessory interest in, or the right to use or occupy, all or any part of the Land and/or

Deed of Trust
SRAN [Loan No. 1503]

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 41 of 261

Improvements, together with all related security and other deposits (in each case, as amended, amended and restated, supplemented, renewed, extended, substituted, or otherwise modified from time to time, collectively, "**Leases**").

(h)     All other contracts and agreements in any way relating to, executed in connection with, or used in, the development, construction, use, occupancy, operation, maintenance, enjoyment, acquisition, management, or ownership of the Land and/or Improvements or the sale of goods or services produced in or relating to the Land and/or Improvements (collectively, in each case as amended, amended and restated, supplemented, renewed, extended, substituted, or otherwise modified from time to time, the "**Property Agreements**") including: (i) all construction contracts, architects' agreements, engineers' contracts, utility contracts, letters of credit, escrow agreements, maintenance agreements, management, leasing and related agreements, parking agreements, equipment leases, service contracts, operating leases, catering and restaurant leases and agreements, agreements for the sale, lease, or exchange of goods or other property, agreements for the performance of services, permits, variances, licenses, certificates, and entitlements; (ii) all material agreements and instruments under which Trustor or any of its affiliates or the seller of the Land and/or Improvements have remaining rights or obligations in respect of Trustor's acquisition of the Land and/or Improvements or equity interests therein; (iii) business licenses, variances, entitlements, certificates, state or local health department licenses, liquor licenses, food service licenses, certificates of need, and all other permits, licenses, and rights obtained from any governmental authority or private person; (iv) all rights of Trustor to receive monies due and to become due under or pursuant to the Property Agreements; (v) all claims of Trustor for damages arising out of or for breach of or default under the Property Agreements; and (vi) all rights of Trustor to terminate, amend, supplement, modify, or waive performance under the Property Agreements, to compel performance and otherwise to exercise all remedies thereunder, and, with respect to Property Agreements that are letters of credit, to make any draws thereon.

(i)     All bushes groves, trees, plants, vines or other plantings upon or under the Land ("**Plantings**").  A Permanent Crop Rider is attached as *Exhibit C*, executed by Trustor and incorporated herein.

(j)     All crops grown, growing or to be grown on or under the Land, including crops produced on trees, vines, and bushes, including all such crops following severance from the Land, and seed and propagative portions of plants, and products of crops in their unmanufactured state, and harvested crops whether stored on or off the Land and whether such crops are considered "Inventory" or "Goods" as defined in the Uniform Commercial Code or the California Commercial Code ("**Crops**").  A Permanent Crop Rider is attached as *Exhibit C*, executed by Trustor and incorporated herein.

(k)     All Property securing any other Note or Loan Agreement, pursuant to the Loan Documents related thereto.

(l)     All insurance or other settlement proceeds relating to or arising out of the foregoing, all proceeds of a sale of all or any portion of the foregoing, and all causes of action, claims, compensation, awards, damages, proceeds, payments, relief, or recoveries, including interest thereon, as a result of any casualty or condemnation of all or any part of the Land and/or Improvements or for any damage or injury to it or for any loss or diminution in value of the Land and/or Improvements (collectively, the "**Proceeds**").

Deed of Trust
SRAN [Loan No. 1503]

(m)     All refunds, rebates, or credits in connection with reduction in real estate taxes and assessments charged against the Property as a result of tax *certiorari* or any applications or proceedings for reduction.

(n)     The right, in the name and on behalf of Trustor, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Beneficiary in the Property.

(o)     All agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications, and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management, or operation of the Land and any part thereof and any Improvements or any business or activity conducted on the Land and any part thereof and all right, title, and interest of Trustor therein and thereunder, including, without limitation, the right, upon the happening of any default hereunder, to receive and collect any sums payable to Trustor thereunder.

(p)     All tradenames, trademarks, service marks, logos, copyrights, goodwill, books and records, and all other general intangibles relating to or used in connection with the operation of the Property.

(q)     All reserves, escrows, and deposit accounts maintained by Trustor with respect to the Property, including without limitation, all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments, and other property held therein from time to time and all proceeds, products, distributions or dividends, or substitutions thereon and thereof (collectively, the "**Accounts**");

(r)     To the extent not included in the foregoing, all cash and non-cash proceeds, products, offspring, rents, revenues, issues, profits, royalties, income, benefits, additions, renewals, extensions, substitutions, replacements, and accessions of and to any and all of the foregoing.

(s)     Any and all other rights of Trustor in and to the items set forth in subsections (a) through (r) above.

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Trustee and its successors and assigns, forever; PROVIDED, HOWEVER, that if the entire Secured Indebtedness is paid, performed, and discharged in full, then the liens, security interests, estates, and rights granted by Trustor shall cease, terminate, and become void (except those obligations that expressly survive the reconveyance of this Deed of Trust shall continue), and shall be released or reconveyed by Trustee, at the cost and expense of Trustor.

## ARTICLE III
## ABSOLUTE ASSIGNMENT OF LEASES AND RENTS

### Section 3.01   Assignment of Leases and Rents.

(a)     In order to secure the due and punctual payment and performance of all of the Secured Indebtedness as and when the same becomes due and payable, whether at the stated maturity, by acceleration, or otherwise, Trustor hereby absolutely, presently, irrevocably, and unconditionally grants,

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 43 of 261

assigns, and transfers to Beneficiary all of Trustor's present and future right, title, interest, and estate in, to, and under all current and future Leases and Rents, and the absolute, present, irrevocable, and unconditional right to receive, collect, and possess all Rents.

(b)     This Article III shall be fully operative and effective to create a present security interest in existing and future Rents under California Civil Code § 2938 without any further action on the part of Trustor or Beneficiary and Beneficiary shall be entitled, at its option, to all Rents whether or not Beneficiary takes possession of the Property. Trustor hereby further grants to Beneficiary the right to: (i) enter and take possession of the Property for the purposes of collecting the Rents; (ii) dispossess by the usual summary proceedings of any tenant defaulting in the payment thereof to Beneficiary; (iii) let the Property or any part thereof; and (iv) apply the Rents, after payment of all necessary charges and expenses (including attorneys' fees and costs) to the Secured Indebtedness.

(c)     Trustor hereby irrevocably appoints Beneficiary its true and lawful attorney-in-fact to: (i) enforce in Trustor's name or Beneficiary's name or otherwise all rights of Trustor in the instruments, including without limitation, checks and money orders, tendered as payments of Rents; (ii) demand, receive, and enforce payment, to give receipts, releases, and satisfactions, and to sue, either in Trustor's or Beneficiary's name, for all Rents; and (iii) do any and all things necessary and proper to carry out the purposes of this Article III.

(d)     The execution of this Deed of Trust constitutes Trustor's irrevocable consent to Beneficiary's entry and taking possession of the Property pursuant to this Article III, whether or not sale or foreclosure has been instituted. Neither the exercise of any rights under this Article III by Beneficiary nor the application of the Rents to the Secured Indebtedness shall cure or waive an Event of Default or notice of default, and shall be cumulative with all other rights and remedies of Beneficiary.

(e)     Such grant, assignment, and transfer shall not be construed to: (i) bind Beneficiary to the performance of any of the covenants, conditions, or provisions contained in any Lease or otherwise impose any obligation upon Beneficiary; or (ii) create, or operate to place or impose, any responsibility, obligation, or liability upon Beneficiary for: (A) the control, care, maintenance, management, or repair of the Property; (B) any dangerous or defective condition of the Property, including, without limitation, the presence of any environmental contamination or conditions; (C) any waste committed on the Property by any Person; and/or (D) any negligence in the management, upkeep, repair, or control of the Property.

(f)     Any entering upon and taking and maintaining of control of the Property or the Rents by Beneficiary or the receiver and any application of Rents as provided herein shall not: (i) constitute Lender as a "mortgagee in possession" unless affirmatively elected by Lender in writing; (ii) make Beneficiary an agent of Borrower; (iii) constitute an action, render the Indebtedness unenforceable, violate Section 726 of the California Code of Civil Procedure, or otherwise limit any rights available to Beneficiary with respect to its security; or (iv) be deemed to create any bar to a deficiency judgment on the Secured Indebtedness. Beneficiary shall not be liable to Trustor, anyone claiming under or through Trustor or anyone having an interest in the Property by reason of anything done or left undone by Beneficiary hereunder, except as may be due to gross negligence or intentional acts of Beneficiary, its employees or agents. Neither Beneficiary's application nor Beneficiary's failure to apply the Rents in accordance with the terms hereof shall result in a loss of any lien or security interest which Beneficiary may have in the Property, render the Secured Indebtedness unenforceable, constitute a violation of Section 726 of the California Code of Civil Procedure, or otherwise limit any right available to Beneficiary with respect to its security.

Deed of Trust
SRAN [Loan No. 1503]

### Section 3.02    Revocable License.

(a)    Notwithstanding the grant, assignment, and transfer of Leases and Rents from Trustor to Beneficiary pursuant to Section 3.01, so long as no Event of Default shall occur and be continuing, Beneficiary grants to Trustor a revocable license to collect and receive Rents as they become due, and to retain, use, and apply Rents to the payment of the Secured Indebtedness and to the costs and expenses incurred in connection with the operation and maintenance of the Property, and to exercise all rights as landlord under any Lease, in each case subject to the terms of this Deed of Trust and the other Loan Documents. After the occurrence of an Event of Default, Beneficiary shall have the rights set forth in California Civil Code § 2938 without notice to or demand upon Trustor, and without regard to the adequacy of the security for the Secured Indebtedness.

(b)    From and after the occurrence of any Event of Default:

(i)    the revocable license granted to Trustor pursuant to Section 3.02(a) shall immediately and automatically, with or without notice from Beneficiary, cease and terminate and shall be void and of no further force or effect;

(ii)    Beneficiary shall immediately and automatically be entitled to receive, collect, and possess all Rents in accordance with California Civil Code § 2938;

(iii)    Beneficiary may, at its sole option, notify in writing all tenants under Leases that all Rents due thereunder from and after the date of such notice shall be paid to Beneficiary at its address set forth in this Deed of Trust, or at such other place as Beneficiary shall notify Trustor or the tenants in writing; and

(iv)    any portion of Rents then or thereafter received or held by Trustor shall be payable immediately upon written demand to Beneficiary for application by Beneficiary, at its option, to the payment of the Secured Indebtedness and/or expenses in connection with the operation and maintenance of the Property.

(c)    It is agreed that, if the Event of Default that gave rise to the termination of the revocable license pursuant to Section 3.02(a) is cured, then the revocable license granted pursuant to Section 3.02(a) shall be reinstated for so long as no other Event of Default shall occur, subject to the provisions of this Section 3.02.

(d)    Notwithstanding the license granted to Trustor herein, Trustor agrees that, at Beneficiary's sole option from time to time, Beneficiary, and not Trustor, shall be deemed to be the creditor of each tenant under each Lease in respect of any and all assignments for the benefit of creditors and bankruptcy, reorganization, insolvency, dissolution, or receivership proceedings affecting each tenant, with an option to apply in accordance with the Loan Documents any money received from such tenant in reduction of any amounts due under the Loan Documents. In each such case, Trustor at Beneficiary's direction shall be obligated to file or make timely filings of claims in such proceedings and to otherwise pursue creditor's rights in such proceedings.

### Section 3.03    Certain Rights of Beneficiary.
From and after any revocation of the license granted pursuant to Section 3.02(a), Beneficiary shall, at its option and in addition to its other rights and remedies provided in this Deed of Trust and the other Loan Documents and/or at law or in equity, have

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 45 of 261

the immediate and continuing right, power, and authority, either personally or by agent without bringing any foreclosure or other action or proceeding, or by a receiver appointed by a court and without the necessity of taking possession of the Property in its own name, and without the need for any other authorization or action by Trustor or Beneficiary, to take any or all of the following actions:

(a)     Notify any tenant or other person that Leases have been assigned to Beneficiary and that all Rents are to be paid directly to Beneficiary.

(b)     Settle, compromise, release, extend the time of payment for, and make allowances, adjustments, and discounts of, any Rents or other obligations in, to, and under Leases.

(c)     Lease all or any part of the Property and/or modify, amend, renew, or terminate any Leases.

(d)     Perform any and all obligations of Trustor under Leases and exercise any and all rights of Trustor therein contained to the full extent of Trustor's rights and obligations thereunder.

## ARTICLE IV
## SECURITY AGREEMENT AND FIXTURE FILING

**Section 4.01   Security Agreement.** This Deed of Trust shall also constitute a security agreement and fixture filing within the meaning of the UCC with respect to all of Trustor's present and future estate, right, title, and interest in, to, and under the Fixtures and Equipment and any portion of the Property that is not real property (the "**Personal Property**"). Trustor hereby grants to Beneficiary a security interest in and to the Personal Property and the Fixtures and Equipment and every component thereof, and hereby transfers and assigns to Beneficiary all of Trustor's present and future estate, right, title, and interest in, to, and under the Personal Property and the Fixtures and Equipment and every component thereof, to secure the due and punctual payment and performance of all of the Secured Indebtedness as and when the same becomes due and payable, whether at the stated maturity, by acceleration, or otherwise. Beneficiary shall have the remedies of a secured party under the UCC, in addition to, but not in limitation of, the other rights afforded Beneficiary by the Loan Documents. In exercising any of these remedies, Beneficiary may proceed against the items of Property and any items of Personal Property separately or together and in any order whatsoever, without in any way affecting the availability of Beneficiary's remedies under the UCC or of the remedies in the Loan Documents.

**Section 4.02   Financing Statements.** Trustor hereby authorizes Beneficiary, at the expense of Trustor, at any time and from time to time to file any initial financing statements, amendments thereto, and continuation statements under the UCC and as authorized by applicable law, as applicable to all or part of the Personal Property in such filing offices as may be necessary, advisable, or required by law in order to create, establish, perfect, preserve, and protect the security interest hereunder. For purposes of such filings, Trustor agrees to furnish any information requested by Beneficiary promptly upon request by Beneficiary. Trustor also ratifies its authorization for Beneficiary to have filed any like initial financing statements, amendments thereto, or continuation statements, if filed prior to the date of this Deed of Trust. Trustor hereby irrevocably constitutes and appoints Beneficiary and any officer or agent of Beneficiary, with full power of substitution, as its true and lawful attorneys-in-fact with full irrevocable power and authority in the place and stead of Trustor or in Trustor's own name to execute in Trustor's name any such documents and otherwise to carry out the purposes of this Section 4.02, to the extent that Trustor's

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 46 of 261

authorization above is not sufficient and Trustor fails or refuses to promptly execute such documents. To the extent permitted by law, Trustor hereby ratifies all acts said attorneys-in-fact have lawfully done in the past or shall lawfully do or cause to be done in the future by virtue hereof. This power of attorney is a power coupled with an interest and shall be irrevocable.

**Section 4.03 Fixture Filing.** The filing or recording of this Deed of Trust is intended to and will constitute a financing statement filed as a fixture filing under California Commercial Code §§ 9102(a)(40) and 9502(c) with respect to that portion of the Property which is or is to become Fixtures and Equipment. The **"Secured Party"** is Beneficiary and the **"Debtor"** is Trustor. The name, type of organization, jurisdiction of organization, and mailing addresses of the Secured Party and of the Debtor are set out in the preamble to this Deed of Trust. The land to which the Fixtures and Equipment are related is the Land, and Trustor is the record owner of the Land. Trustor agrees that Beneficiary may file this Deed of Trust, or a copy of it, in the real estate records or other appropriate index or in the Office of the Secretary of State of the State of California and such other states as the Beneficiary may elect, as a financing statement for any of the items specified above as part of the Property.

**Section 4.04 Other Security Agreement, Harmonization of Conflicts.** If Trustor has executed and delivered to Beneficiary one or more separate security agreements in connection with the Secured Indebtedness, such security agreements and the security interests created thereby are in addition to and not in substitution of this Deed of Trust and the liens and security interests created hereby, and this Deed of Trust shall be in addition to and not in substitution of such security agreements and security interests. In all cases, this Deed of Trust and the aforesaid security agreements shall be applied and enforced in harmony with and in conjunction with each other to the end that Beneficiary realizes fully upon its rights and remedies in each and the liens and security interests created by each. If conflicts exist among this Deed of Trust and such other security agreements, Beneficiary may elect which of such instruments govern with respect to each category of Property encumbered hereby and thereby.

## ARTICLE V
## TRUSTOR'S COVENANTS

Trustor hereby represents, covenants and agrees:

**Section 5.01 Payment of Secured Indebtedness.** Trustor shall pay the Secured Indebtedness at the time and in the manner provided in the Note, the Loan Agreement, and this Deed of Trust.

**Section 5.02 No Liens or Transfers.** Trustor shall not, without the Beneficiary's prior express written consent, its sole discretion, sell, transfer, convey, lease, let, deed of trust, pledge, encumber, create, or permit a lien on or security interest, or otherwise hypothecate all or any part of the Property except for: (a) Permitted Encumbrances; and (b) other liens, encumbrances, and transfers expressly permitted under the Loan Agreement. Trustor shall have the right to contest in good faith the validity of any such lien, encumbrance or charge, provided Trustor shall first deposit with Beneficiary a bond or other security satisfactory to Beneficiary in such amounts as Beneficiary shall reasonably require, but not more than one and one-half (150%) of the amount of the claim, and provided further that Trustor shall thereafter diligently proceed to cause such lien, encumbrance or charge to be removed and discharged. If Trustor shall fail to discharge any such lien, encumbrance or charge, then, in addition to any other right or remedy of Beneficiary, Beneficiary may, but shall not be obligated to, discharge the same, either by paying the amount claimed to be due, or by procuring the discharge or such lien by depositing in court a

Deed of Trust
SRAN [Loan No. 1503]

bond or the amount claimed or otherwise giving security for such claim, or in such manner as is or may be prescribed by law

**Section 5.03   Title.** That at the time of delivery hereof, Trustor is the lawful owner of the Property, and is seized of good, marketable and indefeasible title in fee simple therein, free and clear of all encumbrances, and that Trustor will warrant and defend the same in the quiet and peaceful possession of the Trustee or Beneficiary, its or their successors and assigns, forever, against the claims of all persons whomsoever.

**Section 5.04   Maintenance, Repair, Alterations and Good Standing.** To keep the Property in good condition and repair, not to remove, demolish or substantially alter (except such alterations as may be required by laws, ordinances or regulations) any of the Improvements; to complete promptly and in good and workmanlike manner any building or other improvement which may be constructed on the Property and promptly restore in like manner any Improvement which may be damaged or destroyed thereon, and to pay when due all claims for labor performed and materials furnished therefore, to comply with all laws, ordinances, regulations, covenants, conditions and restrictions now or hereafter affecting the Property or any part thereof; not to commit, suffer or permit any waste or deterioration of the Property; not to commit, suffer or permit any act to be done in or upon the Property in violation of any law, ordinance or regulation; in the event the Trustor is a corporation, partnership, limited liability company, cooperative, business trust or other entity, to keep the Trustor in existence and in good standing.

**Section 5.05   Required Insurance; Delivery of Policies; Payment of Premiums.** To at all times provide, maintain and keep in force all the insurance required under the Loan Documents. All policies of insurance shall be issued by companies and in amounts in each company satisfactory to Beneficiary. All policies of insurance shall have attached thereto a lender's loss payable endorsement for the benefit of Beneficiary in form satisfactory to Beneficiary. Trustor shall furnish Beneficiary copies of all policies of required insurance. All such policies shall contain a provision that such policies will not be canceled or materially amended, which term shall include any reduction in the scope or limits of coverage, without at least thirty (30) days' prior written notice to Beneficiary. In the event Trustor fails to provide, maintain, keep in force or deliver and furnish to Beneficiary the policies of insurance required by this Section, Beneficiary may procure such insurance or single-interest insurance for such risks covering Beneficiary's interest, and Trustor will pay all premiums thereon promptly upon demand by Beneficiary, and until such payment is made by Trustor the amount of all such premiums together with interest thereon at the rate provided in the Note shall be secured by this Deed of Trust.

**WARNING**

**UNLESS TRUSTOR PROVIDES BENEFICIARY WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY THE LOAN AGREEMENT, THIS DEED OF TRUST, THE NOTE, OR THE LOAN DOCUMENTS, BENEFICIARY MAY PURCHASE INSURANCE AT TRUSTOR'S EXPENSE TO PROTECT ITS INTEREST.   THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT TRUSTOR'S INTEREST.   IF THE PROPERTY BECOMES DAMAGED, THE COVERAGE BENEFICIARY PURCHASES MAY NOT PAY ANY CLAIM TRUSTOR MAKES OR ANY CLAIM MADE AGAINST TRUSTOR.   TRUSTOR MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT TRUSTOR HAS OBTAINED PROPERTY COVERAGE ELSEWHERE.**

Deed of Trust
SRAN [Loan No. 1503]

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 48 of 261

**TRUSTOR IS RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY BENEFICIARY. THE COST OF THIS INSURANCE MAY BE ADDED TO THE LOAN OR LOAN BALANCE. IF THE COST IS ADDED TO THE LOAN OR LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE TRUSTOR'S PRIOR COVERAGE LAPSED OR THE DATE TRUSTOR FAILED TO PROVIDE PROOF OF COVERAGE.**

**THE COVERAGE BENEFICIARY PURCHASES MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE TRUSTOR CAN OBTAIN ON TRUSTOR'S OWN AND MAY NOT SATISFY ANY NEED FOR PROPERTY DAMAGE COVERAGE OR ANY MANDATORY LIABILITY INSURANCE REQUIREMENTS IMPOSED BY APPLICABLE LAW.**

**Section 5.06   Insurance Proceeds.** That after the happening of any casualty to the Property or any part thereof, Trustor shall give prompt written notice thereof to Beneficiary.

(a)     In the event of any damage or destruction of the Improvements, Beneficiary shall have the option in its sole discretion of applying all or part of the insurance proceeds (i) to any indebtedness secured hereby and in such order as Beneficiary may determine, (ii) to the restoration of the Improvements, provided the Improvements are restored to good working condition, or (iii) to Trustor; provided  that at Trustor's election, the insurance proceeds shall be applied to restoration of the Improvements if Trustor is not then in default under the Note or the other Loan Documents and establishes to Beneficiary's reasonable satisfaction that the insurance proceeds together with Trustor's other resources, if required, would be sufficient to restore the Improvements to a condition satisfactory for operation of Trustor's agricultural business.

(b)     In the event of such loss or damage all proceeds of insurance shall be payable to Beneficiary, and Trustor hereby authorizes and directs any affected insurance company to make payment of such proceeds directly to Beneficiary. After applying the proceeds to all indebtedness secured hereby, the balance of such proceeds, if any, shall be promptly paid to Trustor. Beneficiary is hereby authorized and empowered by Trustor to settle, adjust or compromise any claims for loss, damage or destruction under any policy or policies of insurance.

(c)     Except to the extent that insurance proceeds are received by Beneficiary and applied to the indebtedness secured hereby, nothing herein contained shall be deemed to excuse Trustor from repairing or maintaining the Property or restoring all damage or destruction to the Property, regardless of whether or not there are insurance proceeds available or whether any such proceeds are sufficient in an amount, and the application or release by Beneficiary, of any insurance proceeds shall not cure or waive any default or notice of default under this Deed of Trust or invalidate any act done pursuant to such notice.

**Section 5.07   Assignment of Policies Upon Foreclosure.** That in the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Property in extinguishment, in whole or in part, of the debt secured hereby, all right, title and interest of Trustor in and to all policies of insurance required by this Article V shall inure to the benefit of and pass to the successor in interest to Trustor or the purchaser or grantee of the Property.

Deed of Trust
SRAN [Loan No. 1503]

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 49 of 261

## Section 5.08   Indemnification; Subrogation; Waiver:

(a)      If Trustee, Beneficiary or any of its members, officers, employees and agents (each in its capacity as an indemnified party, a "Beneficiary Indemnitee") is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, concerning this Deed of Trust or the Property or any part thereof or interest therein or the occupancy thereof by Trustor, then Trustor shall indemnify, defend, protect and hold harmless each Beneficiary Indemnitee from and against any and all claims, losses, liabilities, damages, assessments, adjustments, costs and expenses (including specifically, but without limitation, attorneys' fees and expenses of investigation incurred by counsel of such Beneficiary Indemnitee's choosing) (collectively, "Damages") incurred by such Beneficiary Indemnitee in connection with such suit or proceeding, unless such Damages arise as a direct result of the gross negligence or willful misconduct of the Beneficiary. If Trustee or Beneficiary commences any action against Trustor to enforce any of the terms hereof or because of the breach by Trustor of any of the terms hereof, or for the recovery of any such secured hereby, Trustor shall pay to the Trustee or Beneficiary (as applicable) such party's attorney's fees and expenses, and the right to such attorney's fees and expenses shall be deemed to have accrued whether or not incurred in connection with litigation, and if incurred in connection with litigation, shall include but not be limited to such fees, expenses, and costs as are incurred at trial and on appeal or discretionary review, and shall be enforceable whether or not such action is prosecuted to judgment.  If Trustor breaches any term of this Deed of Trust, Trustee and Beneficiary may employ an attorney or attorneys to protect its respective rights hereunder, and in the event of such employment following any breach by Trustor, Trustor shall pay Trustee or Beneficiary (as applicable) such party's attorney's fees and expenses incurred by Beneficiary, whether or not an action is actually commenced against Trustor by reason of breach.

(b)      Trustor waives any and all right of claim or recovery against Trustee, Beneficiary, its members, officers, employees and agents, for loss of or damage to Trustor, the Property, Trustor's property or the property of others under Trustor's control from any cause insured against or required to be insured against by the provisions of this Deed of Trust.

(c)      All sums payable by Trustor hereunder shall be paid without notice, demand counterclaim, setoff, deduction or defense and without abatement, suspension, deferment, diminution or reduction, and the obligations and liabilities of Trustor hereunder shall in no way be released, discharged or otherwise affected (except as expressly provided herein) by reason of: (i) any damage to or destruction of or any condemnation or similar taking of the Property or any part thereof; (ii) any restriction or prevention of or interference with any use of the Property or any part thereof; (iii) any title defect or encumbrance or any eviction from the Property or the improvements or any part thereof by title paramount or otherwise; (iv) subject to provisions of applicable law, any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating to Beneficiary, or any action taken with respect to this Deed of Trust by the Trustee or any other trustee or receiver of Beneficiary, or by any court, in any such proceeding; (v) any claim which Trustor has or might have against Trustee, Beneficiary or Borrower (or any of them); (vi) any default or failure on the part of Trustee or Beneficiary to perform or comply with any of the terms hereof or of any other agreement with Trustor or any Borrower; or (vii) any other occurrence whatsoever, whether similar or dissimilar to the foregoing, whether or not Trustor shall have notice or knowledge of any of the foregoing. Except as expressly provided herein, and except as otherwise prohibited by applicable law, Trustor waives all rights now or hereafter conferred by statute or otherwise to any abatement, suspension, deferment, diminution or reduction of any sum secured hereby and payable by Trustor.

Deed of Trust
SRAN [Loan No. 1503]

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 50 of 261

(d)     To the extent permitted by law, the Trustor expressly agrees that the Note, or any payment thereunder, may be extended from time to time, or the terms of payment or interest may otherwise be varied by agreement with any person now or hereafter liable for payment of the Note (including without limitation conversion of the Note to another product in accordance with the terms and provisions thereof), without in any way affecting the obligations of the Trustor hereunder or the lien, encumbrance and security interest created hereby.

### Section 5.09    Taxes and Impositions:

(a)     Trustor agrees to pay, prior to delinquency, all real property taxes and assessments, general and special, and all other taxes and assessments of any kind or nature whatsoever, including without limitation payments with respect to water rights (collectively, the "Impositions"); provided, however, that if, by law, any such Imposition is payable, or may at the option of the taxpayer be paid, in installments, Trustor may pay the same together with any accrued interest on the unpaid balance of such Imposition in installments as the same become due and before any fine, penalty, interest or cost may be added thereto for the nonpayment of any such installment and interest.

(b)     Trustor covenants to furnish Beneficiary within forty-five (45) days after the date upon which any such Imposition is due and payable by Trustor, official receipts of the appropriate taxing authority, or other proof satisfactory to Beneficiary, evidencing the payments thereof.

(c)     Trustor shall have the right before any delinquency occurs to contest or object to the amount or validity of any such Imposition by appropriate legal proceedings, but this shall not be deemed or construed in any way as relieving, modifying or extending Trustor's covenant to pay any such Imposition at the time and in the manner provided in this Section.

### Section 5.10    Power and Utilities. Trustor agrees to pay when due all power and utility charges which are incurred by Trustor for the benefit of the Property or which may become a charge or lien against the Property.

### Section 5.11    Water Rights. Trustor represents and warrants that the water, water rights, water appropriations appurtenant to or otherwise serving, benefiting or being used upon the Property presently does afford, and shall be maintained during the Loan Term as defined in the Loan Documents at a level and of a nature sufficient to provide, the continuing, enforceable right to receive water on the Property from such sources, in such quantities and at such times and locations as has historically been available to the Property without interruption or substantially increased cost and in any event, based on current projections, sufficient to provide adequate water and/or drainage to continue the current and proposed operations on the Property. All existing water, water rights, water appropriations benefiting or available to the Property shall be maintained in full force and effect for the benefit of the Property by Trustor and applied to beneficial use so as to maintain the validity and priority of such rights. Trustor shall fully comply with, and not permit a default to occur under any water licenses, permits or delivery contracts used to provide water to the Property, and shall timely exercise all renewal or extension rights in such contracts.    Trustor shall not modify, amend or terminate any water, water rights, water appropriations benefiting the Property without Beneficiary's prior written consent. Trustor shall comply with the rules, regulations and ordinances of any water district, water agency or groundwater management agency in which the Property or any portion thereof is located and pay all related fees and assessments prior to delinquency. All irrigation wells and related facilities used to deliver irrigation water to any portion of the Property shall remain physically located within the boundaries of such Property or the

Deed of Trust
SRAN [Loan No. 1503]

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 51 of 261

subject of valid, enforceable easements appurtenant to the Property and encumbered hereby. If the use of any irrigation facilities or water serving the Property requires consent or the use of other property, Trustor shall maintain in effect all requisite easements or other legally enforceable and assignable rights to use such facilities and/or water to service the Property. Trustor shall notify Beneficiary if the irrigation water supply to any portion of the Property is interrupted or subject to interruption for any reason other than temporarily for routine maintenance or repairs in a manner that does not impair the operation of the Property.

**Section 5.12    Actions by Beneficiary to Preserve Property.** That should Trustor fail to make any payment or to do any act as and in the manner provided in the Loan Documents, Beneficiary, in its own discretion, without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation, may reasonably make or do the same is such manner and to such extent as it may deem necessary to protect the security hereof. Trustor shall, immediately upon demand therefore by Beneficiary, pay all reasonable costs and expenses incurred by Beneficiary in connection with the exercise by Beneficiary of the foregoing rights, including without limitation costs of evidence of title, court costs, appraisals, surveys and attorney's fees.

That in the event Beneficiary is called upon to pay any sums of money to protect this Deed of Trust and the Note secured hereby as aforesaid, all monies advanced or due hereunder shall become immediately due and payable, together with interest at a rate as is set forth in the Note for regular and default interest

**Section 5.13    Survival of Warranties.** To fully and faithfully satisfy and perform the obligations of Trustor contained in the Loan Documents. All representations, warranties and covenants of Trustor contained therein shall survive the close of escrow and funding of the loan evidenced by the Note and shall remain continuing obligations, warranties and representations of Trustor during any time when any portion of the obligations secured by this Deed of Trust remain outstanding.

**Section 5.14    Eminent Domain.** That should the Property, or any part thereof or interest therein, be taken or damaged by reason of any public improvement or condemnation proceeding, or in any other manner ("**Condemnation**"), or should Trustor receive any notice or other information regarding such proceeding, Trustor shall give prompt written notice thereof to Beneficiary. Beneficiary shall be entitled to all compensation, awards and other payments or relief therefore, and shall be entitled at its option to commence, appear in and prosecute in its own name any action or proceedings. Beneficiary shall also be entitled to make any compromise or settlement in connection with such taking or damage. All such compensation, awards, damages, rights of action and proceeds awarded to Trustor, including Proceeds, are hereby assigned to Beneficiary and Trustor agrees to execute such further assignments of the Proceeds as Beneficiary may require.

**Section 5.15    Additional Security.** That in the event Beneficiary at any time holds additional security for any of the obligations secured hereby, it may enforce the sale thereof or otherwise realize upon the same, at its option, either before or concurrently herewith or after a sale is made hereunder.

**Section 5.16    Inspections.** That Beneficiary, or its agents, representatives or workmen, upon giving reasonable notice to Trustor, are authorized to enter at any reasonable time upon or in any part of the Property for the purpose of inspecting the same and for the purpose of performing any of the acts it is authorized to perform under the terms of any of the Loan Documents.

Deed of Trust
SRAN [Loan No. 1503]

**Section 5.17 Financial Statements.** That Trustor will cause to be delivered to Beneficiary, without expense to Beneficiary, such financial records and information as are required by Loan Agreement.

**Section 5.18 Environmental Representations and Covenants.** The representations and warranties of Trustor set forth in the Environmental Indemnity Agreement are incorporated herein by this reference. Trustor shall perform and comply with all of the covenants of the Environmental Indemnity Agreement, which are incorporated herein by this reference. These representations, warranties, and covenants shall survive the release of this Deed of Trust.

**Section 5.19 Agricultural Use Only.** Trustor shall use the Loan funds and all proceeds of the Secured Indebtedness for agricultural business or agricultural purposes only and shall not use such funds or proceeds for personal, family or household purposes.

**Section 5.20 Plantings.** Trustor agrees that "Plantings" includes that part of the Property now maintained and operated primarily for the production of crops. Trustor further agrees that in the event any portion of the Plantings are based upon a patent, Trustor represents and covenants to Lender that, to the extent applicable, Trustor has paid all necessary fees for the patented varieties planted on the Property, and in the event of a default in any of the terms of this Deed of Trust, the Note, or the Loan Agreement, Trustor hereby grants to Lender, to the extent applicable, a license to the patented varieties and transfers to Lender all rights associated with such patents.

**Section 5.21 [reserved].**

**Section 5.22 Acknowledgment.** It is in the best interest of Trustor to enter into this Deed of Trust and the Note, and the amounts loaned to the Borrower under the Note will directly or indirectly inure to the benefit of the Trustor.

**Section 5.23 Other Covenants.** Trustor shall perform and comply with all of the covenants and provisions of the Loan Agreement, which are incorporated herein by this reference.

## ARTICLE VI
## DUE ON SALE

**Section 6.01 Due on Sale or Encumbrance.** If Trustor sells, conveys, assigns, transfers, or further pledges, mortgages or otherwise encumbers (hereinafter collectively referred to as a **"Transfer"**) all or any part of the Property or any interest in the Property, whether any such Transfer occurs directly or indirectly, voluntarily or involuntarily, or by operation of law, without the prior written consent of Beneficiary (which may be withheld in Beneficiary's sole and absolute discretion) the entire Secured Indebtedness shall become immediately due and payable at the election of Beneficiary, without notice to Trustor. For purposes of this Deed of Trust, a transfer of the interests in Trustor, whether direct or indirect or in one or more transactions, shall be deemed a Transfer.

Deed of Trust
SRAN [Loan No. 1503]

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 53 of 261

# ARTICLE VII
## REMEDIES

**Section 7.01  Remedies Following Event of Default.** If an Event of Default exists, in addition to any other rights, remedies and powers that Beneficiary may have under the other Loan Documents or as provided by law, Beneficiary (either personally or by its agents, nominees, or attorneys) may immediately take such action, without notice or demand, as it deems advisable to protect and enforce the lien and security interest hereof and its rights hereunder, including without limitation the following actions, each of which may be pursued in its own name or in the name of Trustor, concurrently or otherwise, at such time and in such manner as Beneficiary may determine in its sole discretion, without impairing or otherwise affecting the other rights, remedies, and powers of Beneficiary:

      (a)    **Acceleration.** Declare the entire Secured Indebtedness immediately due, payable, and collectible, regardless of maturity, and, in that event, the entire Secured Indebtedness shall become immediately due, payable, and collectible.

      (b)    **Entry and Possession.** (i) Enter upon and take possession of the Property, with or without the appointment of a receiver or an application therefor; (ii) dispossess and exclude Trustor and its agents and servants wholly therefrom by summary proceedings or otherwise; (iii) take possession of all books, records, and accounts relating thereto; (iv) use, operate, manage, control, insure, maintain, repair, restore, improve, alter, and otherwise deal with all and every part of the Property and conduct the business threat; (v) make, cancel, enforce, or modify Leases and obtain and evict tenants; (vi) demand, sue for, collect, and receive the Rents, incomes, issues, and profits of the Property and apply the same, after payment of all charges and expenses (including reasonable attorneys' fees and expenses), on account of the Secured Indebtedness; or (vii) require Trustor to transfer and assign to Beneficiary, in form satisfactory to Beneficiary, Trustor's interest as lessor in any Lease now or hereafter affecting the whole or any part of the Property, it being understood that in the event Trustor fails to render an assignment of Leases to Trustor this document shall upon the occurrence of any Event of Default serve as a de facto notice of such assignment to any interested party.

      (c)    **Payment of Sums.** Pay any sums in any form or manner deemed expedient by Beneficiary to protect the lien and security interest of this Deed of Trust or to cure any Event of Default other than payment of principal of or interest on the Secured Indebtedness; make any payment hereby authorized to be made according to any bill, statement, or estimate furnished or procured from the appropriate public officer or the party claiming payment without inquiry into the accuracy or validity thereof, and the receipt of any such public officer or party in the hands of Beneficiary shall be conclusive evidence of the validity and amount of items so paid, in which event the amounts so paid, with interest thereon from the date of such payment at the Default Rate shall be added to and become a part of the Secured Indebtedness and be immediately due and payable to Beneficiary; and Beneficiary shall be subrogated to any encumbrance, lien, claim, or demand, and to all the rights and securities for the payment thereof, paid or discharged with the principal sum secured hereby or by Beneficiary under the provisions hereof, and any such subrogation rights shall be additional and cumulative security to this instrument.

      (d)    **Judicial Foreclosure.** Institute a foreclosure action in accordance with any applicable law in effect on the date foreclosure is commenced, or take any other action as may be allowed, at law or in equity, for the enforcement of the Secured Indebtedness and realization on the Property (or such part or parts thereof as Beneficiary may from time to time elect to foreclose upon) or any other security afforded

Deed of Trust
SRAN [Loan No. 1503]

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 54 of 261

by the Loan Documents. In the case of a judicial proceeding, Beneficiary may proceed to final judgment and execution for the amount of the Secured Indebtedness owed as of the date of the judgment, together with all costs of suit, reasonable attorneys' fees, and interest on the judgment at the maximum rate permitted by law from the date of the judgment until paid. If Beneficiary is the purchaser at the foreclosure sale of the Property, in lieu of paying cash Beneficiary may make settlement for all or a portion of the purchase price by crediting the net sale proceeds (after deducting costs expenses including reasonable attorneys' fees and expenses) against the Secured Indebtedness.

(e) **Deficiency Judgment.** If permitted by applicable law, Beneficiary may sue for and obtain a judgment for any deficiency remaining in the Secured Indebtedness after applications of all amounts received from the exercise of the rights provided in Section 7.01(d).

(f) **Power of Sale.** Beneficiary may elect to sell the Property which is real property or which Lender has elected to treat as real property as follows:

(i) Beneficiary shall deliver a written declaration of default and demand for sale to Trustee. Upon Trustee's receipt of such declaration of default, Trustee shall give and record a notice of default and election to sell as may then be required by law.

(ii) After the expiration of such time as may then be required by law following the recordation of such notice of default, and the giving of a notice of sale as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in such notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash and lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time and place fixed by the preceding postponement. After making such sale, Trustee shall deliver to the purchaser or purchasers its deed or deeds conveying the Property so sold, but without any covenant or warranty, express or implied. Any person, including Trustor, Trustee, or Beneficiary may purchase at such sale. If Beneficiary is the purchaser at the sale, in lieu of paying cash Beneficiary may make settlement for all or a portion of the purchase price by crediting the net sale proceeds (after deducting costs expenses including reasonable attorneys' fees and expenses) against the Secured Indebtedness.

(iii) After deducting all costs, fees, and expenses of Trustee and of the trust created by this Deed of Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: (A) all sums expended in connection with such sale, together with reasonable expenses of the trust created hereby, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; (B) all other sums advanced or expended by Beneficiary and secured hereby; (C) the Secured Indebtedness remaining unpaid; and (D) the remainder, if any, to the person or persons legally entitled thereto.

(iv) The power of sale under this Deed of Trust shall not be exhausted by any one or more sales (or attempts to sell) as to all or any portion of the Property remaining

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 55 of 261

unsold, but shall continue unimpaired until all of the Property has been sold by exercise of the power of sale in this Deed of Trust and all Secured Indebtedness has been paid and discharged in full.

**Section 7.02    UCC Sale.** With respect to Personal Property, Beneficiary shall have the right: (a) to proceed against Personal Property in accordance with Beneficiary's rights and remedies with respect to the Land, in which event the provisions of the UCC shall not govern the default and Beneficiary's remedies; or (b) to proceed against the Personal Property separately from the Land in accordance with the UCC. If Beneficiary elects to proceed under the UCC, then Thirty (30) days' notice of sale of the Personal Property shall be deemed reasonable notice and the reasonable expenses of retaking, holding, preparing for sale, selling, and the like incurred by Beneficiary shall include, but not be limited to, reasonable attorneys' fees and expenses. At Beneficiary's request, Trustor shall assemble the Personal Property and make it available to Beneficiary at a place designated by Beneficiary which is reasonably convenient to both parties.

**Section 7.03    Sale in Parcels.** In any trustee sale or action to foreclose this Deed of Trust, at the election of Beneficiary, the Property or any part thereof may be sold together or separately, in one sale or separate sales, in one parcel and as an entirety, or in such parcels, manner, or order as Beneficiary in its sole discretion may elect, and one or more exercises of the rights and powers herein granted shall not extinguish or exhaust Beneficiary's rights and powers unless the entire Property is sold or the Secured Indebtedness is paid in full. Trustor expressly waives any right which it may have to direct the order in which any of the Property shall be sold, and its rights, if any, to require the Property be sold as separate tracts, lots, units, or parcels.

**Section 7.04    Receiver.** Upon the occurrence of an Event of Default, Beneficiary shall have the right to apply for the appointment of a receiver, trustee, liquidator, or conservator (a **"Receiver"**) of the Rents and profits, or of the Property, or both, without notice, and shall be entitled to the appointment of such a Receiver as a matter of right, without consideration of the value of the Property as security for the amounts due Beneficiary, or the solvency of any person or entity liable for the payment of such amounts. Trustor hereby consents to such appointment and waives notice of any application therefor (except as may be required by applicable law) and any requirements on the receiver or Beneficiary to post any surety or other bond.

**Section 7.05    Environmental Remedies.**

(a)    Beneficiary may sue for breach of Trustor's covenants, representations, warranties, and/or indemnities set forth in Section 5.18 above, in any separate environmental indemnity or other agreement relating to environmental matters, pursuant to California Code of Civil Procedure Section 736, and may seek the recovery of any and all costs, damages, expenses, fees, penalties, fines, judgments, indemnification payments to third parties, and other out-of-pocket costs or expenses actually incurred by Beneficiary (collectively the **"Environmental Costs"**) or advanced by Beneficiary for the cleanup, remediation or other response action required by law, or which Beneficiary believes necessary to protect the Property, it being conclusively presumed between Beneficiary and Trustor that all such Environmental Costs incurred or advanced by Beneficiary relating to the cleanup, remediation, or other response action of or to the Property were made by Beneficiary in good faith.

(b)    In the event that any portion of the Property is determined to be "environmentally impaired" (as defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 56 of 261

parcel" (as defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Lender's or Trustee's rights and remedies under this Deed of Trust, Lender may elect to: (i) exercise its right under California Code of Civil Procedure Section 726.5(a) to waive its lien on such environmentally impaired or affected portion of the Property and (ii) exercise (A) the rights and remedies of an unsecured creditor, including reduction of its claim against Trustor to judgment, and (B) any other rights and remedies permitted by law. For purposes of determining Lender's right to proceed as an unsecured creditor under California Code of Civil Procedure Section 726.5(a), Trustor shall be deemed to have willfully permitted or acquiesced in a release or threatened release of hazardous materials, within the meaning of California Code of Civil Procedure Section 726.5(d)(1), if the release or threatened release of hazardous materials was knowingly or negligently caused or contributed to by any lessee, occupant, or user of any portion of the Property and Trustor knew or should have known of the activity by such lessee, occupant or user which caused or contributed to the release or threatened release.

(c)    All Environmental Costs and costs and expenses, including, but not limited to, attorneys' fees, incurred by Lender in connection with any action commenced under this Section 7.05, including any action pursuant to California Code of Civil Procedure Section 736 or California Code of Civil Procedure Section 726.5(b), plus interest thereon at the Default Rate until paid, shall be added to the Secured Indebtedness secured by this Deed of Trust and shall be due and payable to Beneficiary upon its demand.

(d)    Trustor acknowledges and agrees that notwithstanding any term or provision contained herein or in the other loan documents, all environmental costs incurred pursuant to this Deed of Trust and all judgments and awards entered against trustor in respect of or pertaining to the provisions of this Section 7.05, shall be exceptions to any nonrecourse or exculpatory provision of the loan documents, whether specifically set forth in the loan documents or provided by statute, and trustor shall be fully and personally liable for all such environmental costs and for all such judgments and awards entered against trustor thereunder, and such liability shall not be limited to the original principal amount of the Secured Indebtedness. Trustor's obligations with respect to such Environmental Costs and judgments and awards shall survive a foreclosure, deed in lieu of foreclosure, release, reconveyance, or any other transfer of the Property or this Deed of Trust.

**Section 7.06    Beneficiary's Right to Sue.** Beneficiary shall have the right from time to time to sue for any sums, whether interest, principal, or any installment of either or both, taxes, penalties, or any other sums required to be paid under the terms of this Deed of Trust, without regard to whether or not all of the Secured Indebtedness shall be due on demand and without prejudice to the right of Beneficiary thereafter to enforce any appropriate remedy against Trustor, including an action of foreclosure, or any other action, for a default or defaults by Trustor existing at the time such earlier action was commenced.

**Section 7.07    Actions and Proceedings.** Beneficiary has the right to appear in and defend any action or proceeding brought with respect to the Property and to bring any action or proceeding, in the name and on behalf of Trustor, which Beneficiary, in its discretion, decides should be brought to protect its interest in the Property.

**Section 7.08    No Obligation to Marshal Assets.** In exercising its rights and remedies hereunder, Beneficiary shall have no obligation whatsoever to marshal assets, or to realize upon all of the Property. Beneficiary shall have the right to realize upon all or any part of the Property from time to time as Beneficiary deems appropriate. Trustor hereby waives any right to have any of the Property marshaled in connection with any sale or other exercise of Beneficiary's rights, remedies, and powers hereunder.

Deed of Trust
SRAN [Loan No. 1503]

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 57 of 261

**Section 7.09 Remedies Cumulative.** The rights, powers, and remedies of Beneficiary granted and arising under this Deed of Trust and the other Loan Documents are separate, distinct, and cumulative of other rights, powers, and remedies granted herein or therein and all other rights, powers, and remedies that Beneficiary may have at law or in equity, none of which are to the exclusion of the others and all of which are cumulative to the rights, powers, and remedies provided at law for the collection of indebtedness, enforcement of rights under mortgages, and preservation of security. No act of Beneficiary shall be construed as an election to proceed under any one provision herein or under the Loan Agreement, this Deed of Trust, or any other Loan Document to the exclusion of any other provision, or an election of remedies to the bar of any other remedy allowed at law or in equity, anything herein or otherwise to the contrary notwithstanding.

**Section 7.10 Discontinuance of Proceedings.** If Beneficiary commences the enforcement of any right, power, or remedy, whether afforded under this Deed of Trust or otherwise, and including without limitation foreclosure or entry upon the Property, and such enforcement is then discontinued or abandoned for any reason, or is determined adversely to Beneficiary, then and in every such case Trustor and Beneficiary shall be restored to their former positions and rights hereunder, without waiver of any Event of Default and without novation, and all rights, powers, and remedies of Beneficiary shall continue as if no such enforcement had been commenced.

**Section 7.11 Expenses.** Trustor shall reimburse Beneficiary on demand for all costs, fees, and expenses (including reasonable expenses and fees of its counsel) incurred by Beneficiary in connection with the transactions contemplated hereby including the negotiation, documentation, and execution of this Deed of Trust and the other Loan Documents and the enforcement of Beneficiary's rights, powers, or remedies hereunder, thereunder, or available under applicable law, all of which sums are part of the Secured Indebtedness and are secured by this Deed of Trust. Trustor's statutory rights of redemption, if any, are expressly conditioned upon Trustor's payment of the foregoing and of all sums required under any applicable redemption statute and performance of all required acts thereunder.

**Section 7.12 Trustor's Waivers.** To the fullest extent permitted by law, each Trustor, for Trustor and its successors and assigns, and for any and all persons ever claiming any interest in the Property, except as otherwise provided herein or in the other Loan Documents, hereby:

(a) Waives any and all rights which it may have to notice prior to seizure by Beneficiary of the Property or any part thereof under the provisions of this Deed of Trust, whether such seizure is by writ of possession or otherwise.

(b) Waives and renounces all right of homestead exemption in the Property and any other right to designate all or any portion of the Property as exempt from forced sale under any provision of the Constitution or laws of the United States, the state where the Land and Improvements are located, or any other state in the United States.

(c) Acknowledges the right to accelerate the Secured Indebtedness and the power given to Beneficiary to sell the Property by foreclosure without any notice other than such notice (if any) as is specifically required to be given hereunder or under applicable law and waives presentment, demand for payment, protest, notice of dishonor, notice of protest or nonpayment, notice of intent to accelerate, notice of acceleration of maturity, and diligence in connection with the enforcement of the Secured Indebtedness or the taking of any action to collect sums owing under the Loan Documents.

Deed of Trust
SRAN [Loan No. 1503]

(d)     Waives the benefit of all laws now or subsequently in effect providing for: (i) any appraisement before sale of any portion of the Property; (ii) any extension of the time for the enforcement of the collection of the Secured Indebtedness or the creation or extension of a period of redemption from any sale made in collecting such debt; and (iii) exemption of the Property from attachment, levy, or sale under execution or exemption from civil process.

(e)     Agrees not at any time to insist upon, plead, claim, or take the benefit or advantage of any law now or hereafter in force providing for any appraisement, valuation, stay, exemption, extension, or redemption, or requiring foreclosure of this Deed of Trust before exercising any other remedy granted hereunder.

(f)     Waives the right to assert any statute of limitations as a defense to the Secured Indebtedness secured by this Deed of Trust.

(g)     Waives the benefits of California Code of Civil Procedure § 431.70 and any right that Trustor may have to offset any portion of the Secured Indebtedness by all or any part of any claim, cause of action, counterclaim, or cross-claim, whether liquidated or unliquidated, that Trustor may have against Beneficiary.

**Section 7.13    Right of Set-Off.** In addition to any rights, remedies, or powers now or hereafter granted under applicable law and not by way of limitation of any such rights, Beneficiary is hereby authorized by Trustor at any time or from time to time, without notice to Trustor, any other Obligor, or any other person, any such notice being hereby expressly waived, to set-off any obligations or liabilities any time held or owing by Beneficiary to or for the credit or the account of Trustor or any other Obligor against the Secured Indebtedness and any other obligations and liabilities of Trustor or any such Obligor to Beneficiary, including, but not limited to, all claims of any nature or description arising out of or connected with this Deed of Trust, the Loan Agreement, or any other Loan Document, irrespective of whether or not Beneficiary has made any demand hereunder or has declared the Secured Indebtedness to be due and owing and although said obligations and liabilities, or any of them, may be contingent or not matured.

**Section 7.14    Right to Cure Violations.** If Trustor or Beneficiary receives notice of a current or pending violation of any applicable law, rule, regulation, ordinance, code, requirement, covenant, condition, restriction, order, license, permit, or approval related to the maintenance, repair, replacement, nuisance, or other condition of the Property or any Improvements or tangible property thereon (a **"Compliance Notice"**) and: (a) an Event of Default has occurred and is continuing; or (b) such violation in the reasonable good faith judgment of Beneficiary is likely to have a material adverse effect on its rights and remedies under this Deed of Trust or on the value of the Property, then Beneficiary and any person authorized by Beneficiary shall have the right, but not the obligation, to enter upon the Property at any reasonable time to repair, alter, replace, clean up, or perform any necessary or appropriate work or maintenance activities that, in Beneficiary's sole discretion, are necessary or advisable to comply with the requirements of the Compliance Notice and cure the alleged, possible, or pending violation. Beneficiary shall have the right to remove any tangible property, motor vehicles, rubbish, stored materials, debris, refuse, trash, or other items on the Property and to dispose of the same as Beneficiary may determine in its sole discretion without being deemed guilty of trespass or theft of such items.

Deed of Trust
SRAN [Loan No. 1503]

# ARTICLE VIII
## TRUSTEE PROVISIONS

**Section 8.01    Trustee.** The Trustee shall be deemed to have accepted this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The trust hereby created shall be irrevocable by Trustor.

**Section 8.02    Substitution of Trustee.** Beneficiary, at Beneficiary's option, may from time to time, by written instrument, substitute a successor or successors to any Trustee named in or acting under this Deed of Trust, which instrument, when executed and acknowledged by Beneficiary and recorded in the manner required by law, shall constitute conclusive proof of the proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the predecessor Trustee, succeed to all right, title, estate, powers, and duties of such predecessor Trustee, including, without limitation, the power to reconvey the Property. The instrument shall contain the names of the original Trustor, Trustee, and Beneficiary under this Deed of Trust, the book and page or instrument or document number at which, the county or counties in which, this Deed of Trust is recorded, and the name and address of the substitute Trustee. If any notice of default has been recorded under this Deed of Trust, this power of substitution cannot be exercised until all costs, fees, and expenses of the then acting Trustee have been paid. On such payment, the then acting Trustee shall endorse receipt of the payment on the instrument of substitution.

**Section 8.03    Power of Trustee.** At any time, without liability and without notice to Trustor, on Beneficiary's written request and presentation of the Note and this Deed of Trust to Trustee for endorsement, and without altering or affecting (a) the personal liability of Trustor or any other person for the payment of the Secured Indebtedness, or (b) the lien of this Deed of Trust on the remainder of the Property as security for the repayment of the full amount of the Secured Indebtedness, or (c) any right or power of Beneficiary or Trustee with respect to the remainder of the Property, Trustee may: (i) reconvey or release any part of the Property from the lien of this Deed of Trust; (ii) approve the preparation or filing of any map or plat of the Property; (iii) join in the granting of any easement burdening the Property; or (iv) enter into any extension or subordination agreement affecting the Property or the lien of this Deed of Trust.

**Section 8.04    Reconveyance by Trustee.** Upon written request of Beneficiary stating that the Secured Indebtedness has been paid in full, and upon surrender of this Deed of Trust and the Note to Trustee for cancellation and retention, and upon payment by Trustor of Trustee's fees, Trustee shall reconvey to Trustor, or the person legally entitled thereto, without warranty, any portion of the Trust Estate then held hereunder. The recitals in such reconveyances of any matters or facts shall be conclusive proof of the truthfulness thereof. Such request and reconveyance shall operate as a reassignment of the Rents assigned to Beneficiary in this Deed of Trust.

**Section 8.05    Compensation and Indemnification.** Trustee shall be entitled to reasonable compensation for all services rendered or expenses incurred in the administration or execution of the trusts hereby created and Trustor hereby agrees to pay same. Trustee shall be indemnified, held harmless, and reimbursed by Trustor for any liability, damage, or expense, including attorneys' fees and amounts paid in settlement, which Trustee may incur or sustain in the execution of this trust or in the doing of any act that Trustee is required or permitted to do by the terms hereof or by law.

Deed of Trust
SRAN [Loan No. 1503]

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 60 of 261

# ARTICLE IX
## NOTICES

**Section 9.01**   Except as otherwise specified in this Deed of Trust or any other Loan Document, any notice required to be given pursuant to this Deed of Trust shall be given in writing. Any notice, consent, approval, demand or other communication in connection with this Deed of Trust shall be deemed to be given if given in writing addressed as provided below (or to the addressee at such other address as the addressee shall have specified by notice actually received by the addressor), and if either (a) actually delivered in fully legible form to such address or (b) in the case of a letter, unless actual receipt of the notice is required by any Loan Document, five days shall have elapsed after the same shall have been deposited in the United States mails, with first-class postage prepaid.

    (a)    If to a Trustor, to it at the address listed on the introductory paragraph;

    (b)    If to the Beneficiary, to it at the address listed on the introductory paragraph

**Section 9.02**   Any party may change its address for purposes of this Article IX by giving written notice as provided in this Article IX.

**Section 9.03**   All notices and demands delivered by a party's attorney on a party's behalf shall be deemed to have been delivered by said party. Notices shall be valid only if served in the manner provided in this Article IX.

**Section 9.04**   Trustor hereby requests that a copy of any notice of default and every notice of sale hereunder be mailed to it as provided by law at the Trustor's address set forth in Section 9.01.

# ARTICLE X
## MISCELLANEOUS

**Section 10.01 Security Intended.** Notwithstanding any provision of this Deed of Trust to the contrary, the parties intend that this document is security for the payment and performance of the obligations set forth herein and will be a "deed of trust". If, despite that intention, a court of competent jurisdiction determines that this document does not qualify as a "trust deed" or "deed of trust", then, *ab initio*, this instrument will be deemed a realty mortgage and will be enforceable as a realty mortgage, Trustor will be deemed a "mortgagor", Beneficiary will be deemed a "mortgagee", and Trustee will be disregarded and all references to the "Trustee" will be deemed to refer to the "mortgagee" to the extent not inconsistent with interpreting this instrument as though it were a realty mortgage. As a realty mortgage, Trustor, as mortgagor, will be deemed to have conveyed the Trust Property *ab initio* to the Beneficiary as mortgagee, the conveyance as a security to be void upon condition that Trustor pay and perform all its obligations set forth herein

**Section 10.02 Time of the Essence.** Time is (and shall be) of the essence in this Deed of Trust and the other Loan Documents.

**Section 10.03 Beneficiary's Reliance.** All covenants, agreements, representations and warranties made in this Deed of Trust or any other Loan Document or in certificates delivered pursuant hereto shall be deemed to have been relied on by the Beneficiary, notwithstanding any investigation made

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 61 of 261

by the Beneficiary on its behalf, and shall survive the execution and delivery to the Beneficiary hereof and thereof.

**Section 10.04 Amendments, Extensions, and Modifications.** No amendment, supplement, or other modification of this Deed of Trust shall be effective unless it is in writing and executed by Trustor and Beneficiary.

**Section 10.05 Counterparts; Entire Agreement.** This Deed of Trust and any amendments, waivers, consents, or supplements hereto may be executed in counterparts, each of which shall constitute an original, but all taken together shall constitute a single contract. This Deed of Trust and the other Loan Documents constitute the entire contract of Trustor and Beneficiary with respect to the subject matter hereof and supersede all previous agreements and understandings, oral or written, with respect thereto. Delivery of an executed counterpart of a signature page to this Deed of Trust and the Loan Documents or any amendment, modification, or supplement thereto by facsimile or in electronic (i.e., ".pdf" or ".tif") format shall be effective as delivery of a manually executed counterpart of this Deed of Trust and the Loan Documents.

**Section 10.06 Successors and Assigns.** This Deed of Trust may be assigned or transferred, in whole or in part, by Beneficiary to any person at any time without notice to or the consent of Trustor. Trustor may not assign or transfer this Deed of Trust or any of its rights hereunder without the prior written consent of Beneficiary. This Deed of Trust shall inure to the benefit of and be binding upon the parties hereto and their permitted assigns. The terms "Trustor" and "Beneficiary" shall include the legal representatives, heirs, executors, administrators, successors, and assigns of the parties hereto, and all those holding under either of them. The term "Beneficiary" shall include any payee of the Secured Indebtedness and any transferee or assignee thereof, whether by operation of law or otherwise.

**Section 10.07 No Merger.** In the event that Beneficiary's interest under this Deed of Trust and title to the Property or any estate therein shall become vested in the same person or entity, this Deed of Trust shall not merge in such title but shall continue as a valid lien on the Property for the amount secured hereby, unless expressly provided otherwise in writing executed by the person in whom such interests, title, and estate are vested.

**Section 10.08 Relationship of Parties.** The relationship of Beneficiary to Trustor is that of a creditor or lender to an obligor (inclusive of a person obligated on a supporting obligation) or debtor; and in furtherance thereof and in explanation thereof, Beneficiary has no fiduciary, trust, advisor, business consultant, guardian, representative, partnership, joint venture, or other similar relationship to or with Trustor and no such relationship shall be drawn or implied from this Deed of Trust or any of Beneficiary's actions or inactions hereunder or with respect hereto or from any prior relationship between the parties. Beneficiary has no obligation to Trustor or any other person relative to administration of the Secured Indebtedness or the Property, or any part or parts thereof.

**Section 10.09 Joint and Several Liability.** If more than one party executes this Deed of Trust as a trustor, the term "Trustor" means all parties signing, and each of them, and each agreement, obligation, and Secured Indebtedness of Trustor shall be and mean the several as well as joint undertaking of each of them.

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 62 of 261

**Section 10.10 Headings.** The headings of the various articles, sections, and subsections in this Deed of Trust are for reference only and shall not define, expand, or limit any of the terms or provisions hereof.

**Section 10.11 Severability.** If any term or provision of this Deed of Trust is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Deed of Trust or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon any determination that any term or other provision hereof is invalid, illegal, or unenforceable, Trustor and Beneficiary shall negotiate in good faith to modify this Deed of Trust so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

**Section 10.12 Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**Section 10.13 Governing Law.** This Deed of Trust and any claim, controversy, dispute, or cause of action (whether in contract, equity, tort, or otherwise) based upon, arising out of, or relating to this Deed of Trust and the transactions contemplated hereby shall be governed by and construed in accordance with the laws of the State of California, without regard to principles of conflicts of law.

**Section 10.14 Submission to Jurisdiction.**

(a)     Trustor hereby irrevocably and unconditionally: (i) agrees that any legal action, suit, or proceeding arising out of or relating to this Deed of Trust may be brought in the courts of the State of California or of the United States District Court for the Eastern District of California; and (ii) submits to the jurisdiction of any such court in any such action, suit, or proceeding. Final judgment against Trustor in any action, suit, or proceeding shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment.

(b)     Nothing in this Section 10.14 shall affect the right of Beneficiary to: (i) commence legal proceedings or otherwise sue Trustor in any other court having jurisdiction over Trustor; or (ii) serve process upon Trustor in any manner authorized by the laws of any such jurisdiction.

**Section 10.15 Waiver of Venue.** Trustor hereby irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Deed of Trust or the Secured Indebtedness in any court referred to in Section 10.13 and the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

**Section 10.16 Waiver of Jury Trial.** TO THE FULLEST EXTENT PERMITTED BY LAW, EACH TRUSTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS DEED OF TRUST, THE OTHER LOAN DOCUMENTS, THE SECURED INDEBTEDNESS, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY WHETHER BASED ON CONTRACT, EQUITY, TORT, OR ANY OTHER THEORY.

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 63 of 261

**Section 10.17 Judicial Reference.** In the event that the jury trial waiver contained in Section 10.16 shall be held or deemed to be unenforceable, Trustor hereby agrees that any controversy, dispute, or claim between the parties arising out of or relating to this Deed of Trust shall be resolved by a reference proceeding in California in accordance with the provisions of California Code of Civil Procedure § 638. The referee shall be a retired California state court judge selected by mutual written agreement of the parties. If the parties are unable to agree upon a referee within ten (10) calendar days after one party serves a written notice of its intent to commence a judicial reference proceeding on the other party, then the referee will be selected by the court in accordance with California Code of Civil Procedure § 640(b). The referee shall be appointed to sit as a temporary judge, with all of the powers of a temporary judge, as authorized by law, and upon selection should take and subscribe to the oath of office as provided for in Rule 244 of the California Rules of Court (or any subsequently enacted Rule). The referee shall determine the manner in which the reference proceeding is conducted including the time and place of all hearings, the order of presentation of evidence, and all other questions that arise with respect to the course of the reference proceeding. The referee shall render a written statement of decision and shall conduct the proceedings in accordance with the California Code of Civil Procedure, the California Rules of Court, and the California Evidence Code, except as otherwise specifically agreed by the parties and approved by the referee. The referee's statement of decision shall set forth findings of fact and conclusions of law. The referee's decision shall be entered as a judgment in the court in accordance with the provisions of California Code of Civil Procedure §§ 644 and 645, and shall be appealable in accordance with California law. If the enabling legislation which provides for appointment of a referee is repealed (and no successor statute is enacted), any dispute between the parties that would otherwise be determined by the reference procedure herein described will be resolved and determined by arbitration. The arbitration will be conducted by a retired California state court judge, in accordance with the California Arbitration Act, California Code of Civil Procedure §§ 1280 through 1294.2 as amended from time to time. This Section 10.13 shall not be deemed to limit or constrain Beneficiary's right to set off, to obtain provisional or ancillary remedies, to interplead funds in the event of a dispute, to exercise any security interest or lien Beneficiary may hold in the Property, or to comply with the legal process involving Trustor's accounts or other property.

**Section 10.18 No Waiver; No Course of Dealing; No Invalidity.** No failure to exercise and no delay in exercising on the part of Beneficiary of any right, remedy, or power hereunder or rights, remedies, and powers otherwise provided by law or available in equity shall operate as a waiver thereof or preclude the exercise thereof during the continuance of any Event of Default or if any subsequent Event of Default occurs, nor shall any single or partial exercise of any right, remedy, or power hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, or power. No act or inaction of Beneficiary under this Deed of Trust shall be deemed to constitute or establish a "course of performance or dealing" that would require Beneficiary to so act or refrain from acting in any particular manner at a later time under similar or dissimilar circumstances. Wherever possible, each provision of this Deed of Trust shall be interpreted in such manner as to be effective and valid to the maximum extent allowed under applicable law.

**Section 10.19 After-Acquired Property.** This Deed of Trust shall encumber, encompass, cover, and apply to and include any and all "after-acquired property" of Trustor located at, adjacent, or adjoining to or in any way associated with the use or operation of Property, and such after-acquired property shall be a part of the Property. In furtherance of the foregoing, Trustor has given, granted, bargained, sold, and conveyed, and by these presents does give, grant, bargain, sell, and convey unto Beneficiary all of Trustor's right, title, and interest in and to said after-acquired property. The after-acquired property identified by Beneficiary from time to time may also be identified in a notice of

Deed of Trust
SRAN [Loan No. 1503]

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 64 of 261

extension filed in the real property records in which this Deed of Trust is recorded or in any other county in which the after-acquired property is located. Trustor agrees that Beneficiary has the absolute, irrevocable right and power, which right and power is coupled with an interest, to file one or more notices of extension, and that all after-acquired property of Trustor identified by Beneficiary, whether through a notice of extension or otherwise, shall secure the due and punctual payment and performance of all of the Secured Indebtedness as and when the same becomes due and payable, with interest (including Post-Petition Interest) thereon, and all renewals, extensions, rearrangements, modifications, replacements, amendments, amendments and restatements, or supplements thereof. This Section 10.19 is intended to be and is an "after-acquired property clause" and shall be construed in accordance with the provisions of applicable law of the state in which the Land and Improvements are located that authorizes or governs after-acquired property clauses in deed of trust.

**Section 10.20 Tax on Secured Indebtedness or Deed of Trust.** In the event of the passage, after the date of this Deed of Trust, of any law deducting from the value of Property for the purposes of taxation, any lien thereon, or imposing upon Beneficiary the obligation to pay the whole, or any part, of the taxes or assessments or charges or liens herein required to be paid by Trustor, or changing in any way the laws relating to the taxation of deeds of trust, mortgages, or debts as to affect the Deed of Trust or the Secured Indebtedness, the entire unpaid balance of the Secured Indebtedness shall, at the option of Beneficiary, become immediately due and payable; provided, however, that if, in the opinion of Beneficiary, it shall be lawful for Trustor to pay such taxes, assessments, or charges, or to reimburse Beneficiary therefor, then there shall be no such acceleration of the time for payment of the unpaid balance of the Secured Indebtedness if Trustor pays such taxes or assessments or reimburses Beneficiary for them.

[SIGNATURE PAGE FOLLOWS]

Deed of Trust
SRAN [Loan No. 1503]

IN WITNESS WHEREOF, the undersigned Trustors have executed this Deed of Trust as of the date and year first above written.

"TRUST"

**NAVDEP SINGH SRAN and SUKHWINDER KAUR SRAN, Co-Trustees, as community property, or their successors in trust, under the 2005 SRAN FAMILY REVOCABLE TRUST dated 8/10/05 and any amendments thereto**

By: Navdep Singh Sran
Its: Co-Trustee

By: Sukhwinder Kaur Sran
Its: Co-Trustee

"S3 GROUP"

S3 GROUP, LLC,
a California limited liability company

By: Lakhvir Singh Sran
Its: Member

By: Savdeep Singh Sran
Its: Member

By: Sukhjivan Singh Sran
Its: Member

"SRAN ALMONDS"

SRAN ALMONDS, LLC,
a California limited liability company

By: Lakhvir Singh Sran
Its: Member

By: Savdeep Singh Sran
Its: Member

By: Sukhjivan Singh Sran
Its: Member

"SRAN VINEYARDS"

SRAN VINEYARDS, LLC,
a California limited liability company

By: Lakhvir Singh Sran
Its: Member

By: Savdeep Singh Sran
Its: Member

By: Sukhjivan Singh Sran
Its: Member

IN WITNESS WHEREOF, the undersigned Trustors have executed this Deed of Trust as of the date and year first above written.

**"SRAN CHILDREN"**

**SRAN CHILDREN ALMONDS, LLC,**
a California limited liability company

_____
By: Lakhvir Singh Sran
Its: Member

_____
By: Savdeep Singh Sran
Its: Member

_____
By: Sukhjivan Singh Sran
Its: Member

Deed of Trust
SRAN [Loan No. 1503]

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
)ss.
COUNTY OF _Fresno_ )

On _December 20th_, 2022, before me, _Natalie P. Fagundes_, a Notary Public, personally appeared **Navdep Singh Sran**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

```
NATALIE P. FAGUNDES
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2294527
FRESNO COUNTY
My Comm. Exp. June 22, 2023
```
(Notary Public Seal)

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
)ss.
COUNTY OF _Fresno_ )

On _December 20th_, 2022, before me, _Natalie P. Fagundes_, a Notary Public, personally appeared **Sukhwinder Kaur Sran**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

```
NATALIE P. FAGUNDES
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2294527
FRESNO COUNTY
My Comm. Exp. June 22, 2023
```
(Notary Public Seal)

Deed of Trust
SRAN [Loan No. 1503]

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
)ss.
COUNTY OF _Fresno_ )

On _December 20th_, 2022, before me, _Natalie P. Fagundes_ , a Notary Public, personally appeared **Lakhvir Singh Sran**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature

(Notary Public Seal)

NATALIE P. FAGUNDES
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2294527
FRESNO COUNTY
My Comm. Exp. June 22, 2023

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
)ss.
COUNTY OF _Fresno_ )

On _December 20th_, 2022, before me, _Natalie P. Fagundes_ a Notary Public, personally appeared **Sukhjivan Singh Sran**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature

(Notary Public Seal)

NATALIE P. FAGUNDES
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2294527
FRESNO COUNTY
My Comm. Exp. June 22, 2023

Page - 33

Deed of Trust
SRAN [Loan No. 1503]

# ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
)ss.
COUNTY OF Fresno )

On December 20th, 2022, before me, Natalie P. Fagundes , a Notary Public, personally appeared **Savdeep Singh Sran**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature

NATALIE P. FAGUNDES
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2294527
FRESNO COUNTY
My Comm. Exp. June 22, 2023

Page - 34

Deed of Trust
SRAN [Loan No. 1503]

DEED OF TRUST; ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT, AND FIXTURE FILING

**Legal Description of Real Estate**

**For APN/Parcel ID(s):  (Fresno County):, 015-315-25s, 001-300-10, 003-020-04, 003-040-01, 003-060-13, 001-280-26, 003-040-04, 003-030-15s, 003-030-24s, 003-020-09, 003-020-08, 045-170-62s, 045-170-86s, 065-110-06s, 065-110-17s, 085-050-39s, 085-090-91s, 085-090-93s, 085-090-95s, 085-090-97s, 033-200-13s, 033-200-14s, 033-200-03s, 033-200-04s, 075-020-38s, 085-090-90s, 085-090-92s, 085-090-94s, 085-090-96s, 085-090-04, 027-050-11, 017-070-17, 027-050-01, 027-050-02s, 027-050-07, 033-020-73s, 033-020-74s, 020-200-01, 028-041-01, 028-041-02, (Merced County):, 091-160-006, 091-170-001, 091-170-006, 091-053-001, 091-190-005, 091-190-006, 083-230-036, (Madera County):, 041-190-006, 042-010-003, (Kern County):, 059-160-42, 059-160-43, 059-160-44, 059-180-01, 059-180-03, 059-180-11, 059-180-12, 059-180-13, 059-180-14, 059-180-27, (Kings County):, 004-070-026, 004-070-079, 004-100-004, 004-100-022, 004-100-023, 004-100-039, 004-100-055, 004-171-078, 004-172-001, 036-180-063, (Stanislaus County):, 057-026-008 and 057-026-009**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTIES OF FRESNO AND MERCED, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

**PARCEL 1:** APN 015-315-25s (Fresno County)

THE SOUTH HALF OF THE NORTH HALF OF THE WEST 80 ACRES OF THE SOUTH 5/8THS OF THE NORTHWEST QUARTER OF SECTION 36, TOWNSHIP 13 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA IN THE  COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ANY AND ALL OIL, GAS AND/OR OTHER PETROLEUM PRODUCTS THAT MAY HEREAFTER BE FOUND, DISCOVERED AND/OR DEVELOPED UPON SAID LAND, AS RESERVED IN THE DEED DATED OCTOBER 6, 1936, FORM JOHN D. MORGAN, JR. AND HAZEL BEALL MORGAN, HUSBAND AND WIFE, RECORDED OCTOBER 19, 1936, IN BOOK 1527, PAGE 378 OF OFFICIAL RECORDS, AS DOCUMENT NO. 25058.

THIS LEGAL DESCRIPTION IS MADE PURSUANT TO THAT CERTAIN CERTIFICATE OF WAIVER OF PARCEL MAP NO. 8088, RECORDED NOVEMBER 8, 2012, AS INSTRUMENT NO. 2012-0161919 OF OFFICIAL RECORDS.

**PARCEL 2:** APN: 001-300-10; 003-020-04; AND 003-040-01 (Fresno County); and APN: 091-160-006 & 091-170-001 & 006 (Merced County)

PARCEL 2 OF PARCEL MAP NO. 3071, PORTIONS OF WHICH ARE LOCATED IN BOTH THE UNINCORPORATED AREA OF THE COUNTIES OF FRESNO AND MERCED, STATE OF CALIFORNIA ACCORDING TO THE MAP THEREOF RECORDED NOVEMBER 23, 1974, IN BOOK 22, PAGE 54 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF FRESNO COUNTY, AND BY INSTRUMENT ENTITLED "CERTIFICATE OF COMPLETION REORGANIZATION OF THE FRESNO/MERCED COUNTY BOUNDARY CHANGE AREA INVOLVING FRESNO COUNTY SPECIAL DISTRICTS LAFCO FILE NO. 0652",

WHICH RECORDED APRIL 22, 2010, AS <u>DOCUMENT NO. 14973</u>, IN THE OFFICE OF THE COUNTY RECORDER OF MERCED COUNTY.

**PARCEL 3:** APN 091-053-001 (Merced County)

PARCEL 2 OF <u>PARCEL MAP NO. 2030</u>, IN THE UNINCORPORATED AREA OF THE COUNTY OF MERCED, (FORMERLY IN THE COUNTY OF FRESNO) STATE OF CALIFORNIA ACCORDING TO THE MAP THEREOF RECORDED APRIL 17, 1974, IN <u>BOOK 12, PAGE 45 OF PARCEL MAPS</u>, IN THE OFFICE OF THE COUNTY

Deed of Trust
SRAN [Loan No. 1503]

RECORDER OF FRESNO COUNTY, AND BY INSTRUMENT ENTITLED "CERTIFICATE OF COMPLETION REORGANIZATION OF THE FRESNO/MERCED COUNTY BOUNDARY CHANGE AREA INVOLVING FRESNO COUNTY SPECIAL DISTRICTS LAFCO FILE NO. 0652", WHICH RECORDED APRIL 22, 2010, AS DOCUMENT NO. 14973, IN THE OFFICE OF THE COUNTY RECORDER OF MERCED COUNTY.

**PARCEL 4:** APN: 003-060-13 (Fresno County)

PARCEL 3 OF PARCEL MAP NO. 7400, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO STATE OF CALIFORNIA ACCORDING TO THE MAP THEREOF RECORDED FEBRUARY 22, 1991, IN BOOK 51, PAGE 47 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF FRESNO COUNTY.

**PARCEL 5:** APN: 001-280-26 (Fresno County)

LOTS 23, 24, 29, 30, 31, 32 AND 33 IN MILLER & LUX SUBDIVISION OF SECTION 17, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE MAP RECORDED OCTOBER 3, 1904 IN BOOK 2 PAGE 92 OF RECORD OF SURVEYS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM, THE WEST 452.71 FEET OF SAID LOTS 23, 24, 32 AND 33, PER UNRECORDED LOT LINE ADJUSTMENT NO. 98-22, AS APPROVED BY FRESNO COUNTY DEVELOPMENT DEPARTMENT, AS DISCLOSED BY DEEDS RECORDED MARCH 15, 1999, AS DOCUMENT NOS. 199-0038833 AND 1999-0038834 AND CORRECTED BY DEED RECORDED DECEMBER 21, 1999, AS DOCUMENT NO. 1999-0181326, OF OFFICIAL RECORDS.

**PARCEL 6:** APN: 003-040-04 (Fresno County)

THE SOUTH HALF OF THE SOUTHWEST QUARTER OF THE NORTHWEST QUARTER OF SECTION 20, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

**PARCEL 7:** APN: 003-030-15s (portion of) (Fresno County)

PORTION OF THE SOUTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT WHICH BEARS NORTH 0 05" WEST 1320 FEET FROM THE SOUTH QUARTER SECTION CORNER OF SAID SECTION 19;
THENCE, ALONG THE CENTER LINE OF A 60 FOOT ROAD RESERVATION, NORTH 0 05' WEST 660 FEET;
THENCE, LEAVING ROAD RESERVATION NORTH 89 55' EAST 1320 FEET;
THENCE, SOUTH 0 05' EAST 544.64 FEET;
THENCE, SOUTH 61 40' WEST 325.82 FEET;
THENCE, SOUTH 72 20' WEST 125.87 FEET;
THENCE, NORTH 69 40' WEST 214.46 FEET;
THENCE, SOUTH 84 50' WEST 219.95 FEET;

Deed of Trust
SRAN [Loan No. 1503]

THENCE, NORTH 58 50' WEST 42.72 FEET;
THENCE, SOUTH 89 55' WEST 456.43 FEET TO THE POINT OF BEGINNING.

Deed of Trust
SRAN [Loan No. 1503]

**PARCEL 7A:** APN: 003-030-15s (portion of) (Fresno County)

THE NORTH HALF OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

**PARCEL 7B:** APN: 003-030-15s (portion of) (Fresno County)

THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

**PARCEL 8:** APN: 003-030-24s (Fresno County)

THE WEST HALF OF THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM, THE EAST 389.00 FEET OF THE SOUTH 273.00 FEET THEREOF.

**PARCEL 9:** APN 091-190-005 and 006 (Merced County)

THE SOUTH 660 FEET OF THE FOLLOWING DESCRIBED PROPERTY, WHICH LIES EAST OF THE HOLLAND FARM DRAIN:

BEGINNING, AT A POINT WHICH BEARS NORTH 0° 05' WEST 660 FEET FROM THE SOUTH QUARTER SECTION CORNER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF MERCED (FORMERLY THE COUNTY OF FRESNO), STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, AND BY INSTRUMENT ENTITLED "CERTIFICATE OF COMPLETION REORGANIZATION OF THE FRESNO/MERCED COUNTY BOUNDARY CHANGE AREA INVOLVING FRESNO COUNTY SPECIAL DISTRICTS LAFCO FILE NO. 0652", WHICH RECORDED APRIL 22, 2010, AS <u>DOCUMENT NO. 14973</u>, IN THE OFFICE OF THE COUNTY RECORDER OF MERCED COUNTY;

THENCE, SOUTH 89° 55' WEST, 860.58 FEET TO THE EASTERLY RIGHT OF WAY LINE OF THE HOLLAND FARM DRAIN; THENCE, ALONG THE EASTERLY RIGHT OF WAY LINE OF THE HOLLAND FARM DRAIN NORTH 23° 52' WEST; 648.30 FEET; THENCE, NORTH 6° 52' WEST, 646.33 FEET;
THENCE, NORTH 45° 52' WEST, 121.80 FEET;
THENCE, LEAVING SAID DRAIN NORTH 89° 55' EAST, 1285.67 FEET;
THENCE, ALONG THE CENTER LINE OF A 60-FOOT ROAD RESERVATION SOUTH 0° 05' EAST, 1320 FEET TO THE POINT OF BEGINNING

TOGETHER WITH:

THE SOUTH HALF OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF MERCED (FORMERLY THE COUNTY OF FRESNO), STATE

Deed of Trust
SRAN [Loan No. 1503]

OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, AND BY INSTRUMENT ENTITLED "CERTIFICATE OF COMPLETION REORGANIZATION OF THE FRESNO/MERCED COUNTY BOUNDARY CHANGE AREA INVOLVING FRESNO COUNTY SPECIAL DISTRICTS LAFCO FILE NO. 0652", WHICH RECORDED APRIL 22, 2010, AS <u>DOCUMENT NO. 14973</u>, IN THE OFFICE OF THE COUNTY RECORDER OF MERCED COUNTY.

EXCEPTING THEREFROM, THE FOLLOWING DESCRIBED RIGHT OF WAY FOR THE SO-CALLED HOLLAND FARM DRAIN:

BEGINNING, AT A POINT WHICH BEARS SOUTH 89° 55' WEST 276.40 FEET FROM THE SOUTH QUARTER SECTION CORNER OF SAID SECTION 19;
THENCE, NORTH 46° 24' WEST, 911.90 FEET;
THENCE, NORTH 23° 52' WEST, 32.78 FEET;
THENCE, NORTH 89° 55' EAST, 97.65 FEET;
THENCE, SOUTH 46° 24' EAST, 955.32 FEET;
THENCE, SOUTH 89° 55' WEST, 115.83 FEET TO THE POINT OF BEGINNING.

**PARCEL 10:** APN: 003-020-09 (Fresno County)

LOT 23 AND THE NORTH HALF OF LOTS 21 AND 22 OF MILLER AND LUX SUBDIVISION OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE MAP THEREOF RECORDED MAY 21, 1904 IN <u>BOOK 1 PAGE 29 OF MISCELLANEOUS MAPS</u>, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

SAID PROPERTY IS ALSO DESCRIBED AS:

THE NORTH HALF OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

**PARCEL 11:** APN: 003-020-08 (Fresno County)

LOT 24 AND THE SOUTH HALF OF LOTS 21 AND 22 OF MILLER AND LUX SUBDIVISION OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE MAP THEREOF RECORDED MAY 21, 1904 IN <u>BOOK 1 PAGE 29 OF MISCELLANEOUS MAPS</u>, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

SAID PROPERTY IS ALSO DESCRIBED AS:

THE SOUTH HALF OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

**PARCEL 12:** APN: 045-170-62s and 045-170- 86s (Fresno County)

SECTION 32, TOWNSHIP 17 SOUTH, RANGE 15 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM, THE INTEREST CONVEYED TO THE STATE OF CALIFORNIA FOR FREEWAY PURPOSES, IN DEED RECORDED DECEMBER 16, 1965 IN BOOK 5252 PAGE 209 OF OFFICIAL RECORDS, DOCUMENT NO. 100919.

ALSO EXCEPTING THEREFROM, THE INTEREST CONVEYED TO THE STATE OF CALIFORNIA FOR FREEWAY PURPOSES, IN DEEDS RECORDED JULY 21, 1966 IN BOOK 5339 PAGE 7 OF OFFICIAL RECORDS, DOCUMENT NO. 54303 AND RECORDED JULY 21, 1966 IN BOOK 5339 PAGE 14 OF OFFICIAL RECORDS, DOCUMENT NO. 54308.

ALSO EXCEPTING THEREFROM, THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING, AT A POINT OF INTERSECTION OF THE SOUTH LINE OF SAID SOUTHEAST QUARTER WITH THE NORTHEASTERLY BOUNDARY OF THE 59.518-ACRE PARCEL OF LAND DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA RECORDED JULY 21, 1966 IN BOOK 5339 PAGE 14 AS DOCUMENT NO. 54308, FRESNO COUNTY OFFICIAL RECORDS;

THENCE, (1) ALONG SAID NORTHEASTERLY BOUNDARY NORTH 40° 19' 23" WEST 110.00 FEET;
THENCE, (2) LEAVING SAID NORTHEASTERLY BOUNDARY NORTH 49° 40' 37" EAST 80.00 FEET;
THENCE, (3) SOUTH 40° 19' 23" EAST, 71.16 FEET;
THENCE, (4) SOUTH 0° 36' 09" WEST 81.76 FEET TO A POINT IN THE SOUTH LINE OF SAID SOUTHEAST QUARTER;
THENCE, (5) ALONG SAID SOUTH LINE, NORTH 89° 23' 51" WEST 35.00 FEET TO THE POINT OF BEGINNING, AS CONVEYED TO
WESTLANDS WATER DISTRICT, A PUBLIC AGENCY, IN DEED RECORDED AUGUST 24, 1972, IN BOOK 6062, PAGE 192, OF OFFICIAL
RECORDS. DOCUMENT NO. 76512.

ALSO EXCEPTING THEREFROM, THE INTEREST IN ALL OIL, GAS, MINERALS RIGHTS IN SAID LAND, TOGETHER WITH THE RIGHT TO GO UPON SAID PROPERTY AT ANY TIME HEREAFTER FOR THE PURPOSE OF DEVELOPING AND EXTRACTING OIL, GAS, MINERALS AND OTHER HYDROCARBONS SUBSTANCES FROM SAID LANDS, AS RESERVED IN THE FOLLOWING DEEDS:

DEED FROM HARRY S. CLEARIE, THE DULY APPOINTED, QUALIFIED AND ACTING ADMINISTRATOR OF HE ESTATE OF ABBEY CLEARIE, ALSO KNOW AS ABBEY CLEARIE, ABBEY R. CLEARIE AND AS ABBIE R. CLEARIE, DECEASED, TO JOHN G. INDART, RECORDED MAY 23, 1951, IN BOOK 3020 PAGE 302, OF OFFICIAL RECORDS, DOCUMENT NO. 30133.

DEED FROM MAUD E. ROOT AND ZOE E. ROOT, TO JOHN G. INDART, RECORDED MAY 23, 1951, IN BOOK 3020 PAGE 306, OF OFFICIAL RECORDS, DOCUMENT NO. 30134.

**PARCEL 13:** APN: 065-110-06S (Fresno County)

THE REAL PROPERTY SITUATE IN THE COUNTY OF FRESNO, STATE OF CALIFORNIA, COMMONLY KNOWN AS THE HURON 1 RANCH AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THE SOUTHWEST QUARTER OF FRACTIONAL SECTION 36, TOWNSHIP 19 SOUTH, RANGE 16 EAST,

Deed of Trust
SRAN [Loan No. 1503]

MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM, ALL OIL, GAS, ASPHALTUM AND-OTHER HYDROCARBONS AND OTHER MINERALS WITHIN OR UNDERLYING OR THAT MAY BE PRODUCED FROM SAID LAND, TOGETHER WITH, ANY AND ALL EASEMENTS, RIGHTS OF WAY AND SERVITUDES IN, UNDER AND UPON SAID LAND, NECESSARY OR CONVENIENT TO DRILL FOR, MINE FOR, PRODUCE, EXTRACT AND TAKE ANY OF SAID MINERALS FROM SAID LAND; TO CONSTRUCT, RECONSTRUCT, USE, MAINTAIN, ERECT, REPAIR, RENEW, CHANGE THE SIZE OF AND LOCATION OF INCREASE THE NUMBER OF AND REMOVE IN, UNDER, ON AND FROM SAID LAND ALL PIPELINES, POWER LINES, TELEPHONE AND TELEGRAPH LINES AND OTHER STRUCTURES AND EQUIPMENT WITH GRANTORS, THEIR HEIRS AND ASSIGNS MAY REQUIRE IN CARRYING ON ANY OF SAID OPERATIONS, AS RESERVED IN DEEDS RECORDED NOVEMBER 25, 1946 IN <u>BOOK 2451, PAGE 123 OF OFFICIAL RECORDS</u>, AS DOCUMENT NO. 79037; NOVEMBER 25, 1946, IN <u>BOOK 2472, PAGE 171 OF OFFICIAL RECORDS</u>, AS DOCUMENT NO. 79038; NOVEMBER 25, 1946, IN <u>BOOK 2465, PAGE 237 OF OFFICIAL RECORDS</u>, AS <u>DOCUMENT NO. 79039</u>; APRIL 24, 1947 IN <u>BOOK 2516, PAGE 266 OF OFFICIAL RECORDS</u>, AS DOCUMENT NO. 22754; AND MARCH 20, 1951, IN <u>BOOK 2988, PAGE 274 OF OFFICIAL RECORDS</u>, AS DOCUMENT NO. 16723.

<u>PARCEL 14:</u> APN: 065-110-17S (Fresno County)

THE NORTHWEST QUARTER OF SECTION 36, TOWNSHIP 19 SOUTH, RANGE 16 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING FROM, THE SOUTHWEST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY WILLIAM L. FISHER AND DOLLY FISHER, HUSBAND AND WIFE, ET AL IN THE DEED RECORDED JULY 17, 1947 IN <u>VOLUME 2535, PAGE 364 OF OFFICIAL RECORDS</u>, AS DOCUMENT NO. 37785.

EXCEPTING FROM, THE EAST HALF OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY HARRY M. DAVIS AND FRANCIS DAVIS, HUSBAND AND WIFE, ET AL IN THE DEED RECORDED JULY 29, 1947 IN <u>VOLUME 2540, PAGE 432 OF OFFICIAL RECORDS</u>, AS DOCUMENT NO. 39794.

EXCEPTING FROM, THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE

EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY CLARENCE A. WILLIAMSON AND BESSIE P. WILLIAMSON, HUSBAND AND WIFE, THE DEED RECORDED JULY 29, 1947 IN <u>VOLUME 2549, PAGE 335 OF OFFICIAL RECORDS</u>, AS DOCUMENT NO. 39795.

EXCEPTING FROM, THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER; AND THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY EARL FLEISHER AND LEANORE FLEISHER, HIS WIFE, ET AL IN THE DEED RECORDED JULY 29, 1947 IN <u>VOLUME 2517, PAGE 410 OF OFFICIAL RECORDS</u>, AS DOCUMENT NO. 39796.

EXCEPTING FROM, THE SOUTHWEST QUARTER OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY RICHARD L. LAWSON AND MARTHA C. LAWSON, HUSBAND AND WIFE, IN THE DEED RECORDED AUGUST 5, 1947 IN <u>VOLUME 2548, PAGE 340 OF OFFICIAL RECORDS</u>, AS DOCUMENT NO. 40944.

EXCEPTING FROM, THE NORTH HALF OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY JAMES MURPHY AND MARTHA C. MURPHY, HUSBAND AND WIFE, IN THE DEED RECORDED AUGUST 6, 1947 IN <u>VOLUME 2561, PAGE 361 OF OFFICIAL RECORDS</u>, AS DOCUMENT NO. 41200.

EXCEPTING FROM, THE NORTHWEST QUARTER OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY MARY C. MAY, ET AL IN THE DEED RECORDED JUNE 29, 1948 IN <u>VOLUME 2637, PAGE 424 OF OFFICIAL RECORDS</u>, AS DOCUMENT NO. 31252.

**PARCEL 15:** APN 085-050-39S (Fresno County)

THE SOUTHEAST QUARTER OF SECTION 12, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATE IN AND UNDER THE SOUTHEAST QUARTER OF SECTION 12, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF AND THE EXPLORATION AND TESTING OF SAID REAL PROPERTY AND ALSO THE RIGHT TO DRILL FOR, PRODUCT AND USE WATER FROM SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, AS SET FORTH IN THE JUDGMENT CONFIRMING REPORT OF REFEREES MAKING ACTUAL PARTITION, RECORDED SEPTEMBER 28, 1956 IN BOOK 3827, PAGE 89 OF OFFICIAL RECORDS, AS DOCUMENT NO. 69880.

**PARCEL 16:** APN: 085-090-91S (Fresno County)

THE NORTH HALF OF THE NORTHEAST QUARTER OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE CERTIFICATE OF WAIVER OF PARCEL MAP NO. 2011-13, RECORDED AUGUST 17, 2012, AS DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS.

EXCEPTING THEREFROM, (ALL OF SECTION 13) ALL OF THE MINERAL AND MINERAL ORES OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED UPON, WITHIN OR UNDERLYING THE HEREIN ABOVE DESCRIBED PROPERTY OR THAT MAY BE PRODUCED THEREFROM INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL OIL, NATURAL GAS AND HYDROCARBON SUBSTANCES, GEOTHERMAL STEAM, BRINES AND MINERALS IN SOLUTION, AND SAND, GRAVEL AND AGGREGATES, AND PRODUCTS DERIVED THEREFROM, TOGETHER WITH, THE EXCLUSIVE AND PERPETUAL RIGHT OF SAID GRANTEE, ITS SUCCESSORS AND ASSIGNS, OF INGRESS AND EGRESS IN, UPON OR OVER SAID PROPERTY TO EXPLORE AND PROSPECT FOR, EXTRACT, DEVELOP, SAVE, CONVEY, STORE, REFINE, PROCESS AND REMOVE THE SAME AND TO MAKE SUCH USE OF SAID PROPERTY AND THE SURFACE THEREOF AS IS NECESSARY OR USEFUL IN CONNECTION THEREWITH, WHICH USE MAY INCLUDE THE SINKING, BORING, DIGGING OR DRILLING OF WELLS, SHAFTS OR TUNNELS, EXCAVATING, OPEN PIT MINING AND CONSTRUCTING, MAINTAINING AND REMOVING ROADS, WAYS, PIPE LINES, POLE LINES, TANKS, BUILDINGS, STRUCTURES AND FACILITIES, AS CONVEYED TO BRAVO OIL COMPANY IN DEED RECORDED DECEMBER 29, 1965 IN BOOK 5257, PAGE 19 OF OFFICIAL RECORDS, AS DOCUMENTS NO. 104215.

Article I.     **PARCEL 16A:**

AN EASEMENT FOR A NON-EXCLUSIVE PRIVATE ROAD EASEMENT, OVER THE NORTH 60.00 FEET OF THE NORTHEAST QUARTER OF SECTION 14, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, EXCEPTING THEREFROM THE WEST 50 FEET THEREOF, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE GRANT OF EASEMENT, RECORDED JULY 23, 2012, AS DOCUMENT NO. 2012-0101881 , OF OFFICIAL RECORDS.

Article II.     **PARCEL 16B:**

AN EASEMENT FOR A NON-EXCLUSIVE EASEMENT FOR ROAD PURPOSES, OVER THE NORTH 60.00 FEET OF THE WEST HALF OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF; AND A STRIP OF LAND BEING 60.00 FEET IN WIDTH, LYING EQUALLY ON EACH SIDE OF THE EAST LINE OF THE WEST HALF OF SAID SECTION 13, ACCORDING TO THE CERTIFICATE OF WAIVER OF PARCEL MAP NO. 2011-13, RECORDED AUGUST 17, 2012, AS DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS.

**PARCEL 17:** APN: 085-090-93S (Fresno County)

THE SOUTH HALF OF THE NORTHEAST QUARTER OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE CERTIFICATE OF WAIVER OF PARCEL MAP NO. 2011-13, RECORDED AUGUST 17, 2012, AS DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS.

EXCEPTING THEREFROM, (ALL OF SECTION 13) ALL OF THE MINERAL AND MINERAL ORES OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED UPON, WITHIN OR UNDERLYING THE HEREIN ABOVE DESCRIBED PROPERTY OR THAT MAY BE PRODUCED THEREFROM INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL OIL, NATURAL GAS AND HYDROCARBON SUBSTANCES, GEOTHERMAL STEAM, BRINES AND MINERALS IN SOLUTION, AND SAND, GRAVEL AND AGGREGATES, AND PRODUCTS DERIVED THEREFROM, TOGETHER WITH, THE EXCLUSIVE AND PERPETUAL RIGHT OF SAID GRANTEE, ITS SUCCESSORS AND ASSIGNS, OF INGRESS AND EGRESS IN, UPON OR OVER SAID PROPERTY TO EXPLORE AND PROSPECT FOR, EXTRACT, DEVELOP, SAVE, CONVEY, STORE, REFINE, PROCESS AND REMOVE THE SAME AND TO MAKE SUCH USE OF SAID PROPERTY AND THE SURFACE THEREOF AS IS NECESSARY OR USEFUL IN CONNECTION THEREWITH, WHICH USE MAY INCLUDE THE SINKING, BORING, DIGGING OR DRILLING OF WELLS, SHAFTS OR TUNNELS, EXCAVATING, OPEN PIT MINING AND CONSTRUCTING, MAINTAINING AND REMOVING ROADS, WAYS, PIPE LINES, POLE LINES, TANKS, BUILDINGS, STRUCTURES AND FACILITIES, AS CONVEYED TO BRAVO OIL COMPANY IN DEED RECORDED DECEMBER 29, 1965 IN BOOK 5257, PAGE 19 OF OFFICIAL RECORDS, AS DOCUMENTS NO. 104215.

**Article III.**   **PARCEL 17A:**

AN EASEMENT FOR A NON-EXCLUSIVE PRIVATE ROAD EASEMENT, OVER THE NORTH 60.00 FEET OF THE NORTHEAST QUARTER OF SECTION 14, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, EXCEPTING THEREFROM THE WEST 50 FEET THEREOF, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE GRANT OF EASEMENT, RECORDED JULY 23, 2012, AS DOCUMENT NO. 2012-0101881, OF OFFICIAL RECORDS.

**Article IV.**   **PARCEL 17B:**

AN EASEMENT FOR A NON-EXCLUSIVE EASEMENT FOR ROAD PURPOSES, OVER THE NORTH 60.00 FEET OF THE WEST HALF OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF; AND A STRIP OF LAND BEING 60.00 FEET IN WIDTH, LYING EQUALLY ON EACH SIDE OF THE EAST LINE OF THE WEST HALF OF SAID SECTION 13, ACCORDING TO THE CERTIFICATE OF WAIVER OF PARCEL MAP NO. 2011-13, RECORDED AUGUST 17,

Deed of Trust
SRAN [Loan No. 1503]

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 81 of 261

2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

**PARCEL 18:** APN: 085-090-95S (Fresno County)

THE NORTH HALF OF THE SOUTHEAST QUARTER OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17, 2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

EXCEPTING THEREFROM, (ALL OF SECTION 13) ALL OF THE MINERAL AND MINERAL ORES OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED UPON, WITHIN OR UNDERLYING THE HEREIN ABOVE DESCRIBED PROPERTY OR THAT MAY BE PRODUCED THEREFROM INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL OIL, NATURAL GAS AND HYDROCARBON SUBSTANCES, GEOTHERMAL STEAM, BRINES AND MINERALS IN SOLUTION, AND SAND, GRAVEL AND AGGREGATES, AND PRODUCTS DERIVED THEREFROM, TOGETHER WITH, THE EXCLUSIVE AND PERPETUAL RIGHT OF SAID GRANTEE, ITS SUCCESSORS AND ASSIGNS, OF INGRESS AND EGRESS IN, UPON OR OVER SAID PROPERTY TO EXPLORE AND PROSPECT FOR, EXTRACT, DEVELOP, SAVE, CONVEY, STORE, REFINE, PROCESS AND REMOVE THE SAME AND TO MAKE SUCH USE OF SAID PROPERTY AND THE SURFACE THEREOF AS IS NECESSARY OR USEFUL IN CONNECTION THEREWITH, WHICH USE MAY INCLUDE THE SINKING, BORING, DIGGING OR DRILLING OF WELLS, SHAFTS OR TUNNELS, EXCAVATING, OPEN PIT MINING AND CONSTRUCTING, MAINTAINING AND REMOVING ROADS, WAYS, PIPE LINES, POLE LINES, TANKS, BUILDINGS, STRUCTURES AND FACILITIES, AS CONVEYED TO BRAVO OIL COMPANY IN DEED RECORDED DECEMBER 29, 1965 IN <u>BOOK 5257, PAGE 19 OF OFFICIAL RECORDS</u>, AS DOCUMENTS NO. 104215.

**Article V.**    **PARCEL 18A:**

AN EASEMENT FOR A NON-EXCLUSIVE PRIVATE ROAD EASEMENT, OVER THE NORTH 60.00 FEET OF THE NORTHEAST QUARTER OF SECTION 14, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, EXCEPTING THEREFROM THE WEST 50 FEET THEREOF, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE GRANT OF EASEMENT, RECORDED JULY 23, 2012, AS <u>DOCUMENT NO. 2012-0101881, OF OFFICIAL RECORDS</u>.

**Article VI.**    **PARCEL 18B:**

AN EASEMENT FOR A NON-EXCLUSIVE EASEMENT FOR ROAD PURPOSES, OVER THE NORTH 60.00 FEET OF THE WEST HALF OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF; AND A STRIP OF LAND BEING 60.00 FEET IN WIDTH, LYING EQUALLY ON EACH SIDE OF THE EAST LINE OF THE WEST HALF OF SAID SECTION 13, ACCORDING TO THE CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17, 2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

**PARCEL 19:** APN: 085-090-97S (Fresno County)

THE SOUTH HALF OF THE SOUTHEAST QUARTER OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE

CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17, 2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

EXCEPTING THEREFROM, (ALL OF SECTION 13) ALL OF THE MINERAL AND MINERAL ORES OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED UPON, WITHIN OR UNDERLYING THE HEREIN ABOVE DESCRIBED PROPERTY OR THAT MAY BE PRODUCED THEREFROM INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL OIL, NATURAL GAS AND HYDROCARBON SUBSTANCES, GEOTHERMAL STEAM, BRINES AND MINERALS IN SOLUTION, AND SAND, GRAVEL AND AGGREGATES, AND PRODUCTS DERIVED THEREFROM, TOGETHER WITH, THE EXCLUSIVE AND PERPETUAL RIGHT OF SAID GRANTEE, ITS SUCCESSORS AND ASSIGNS, OF INGRESS AND EGRESS IN, UPON OR OVER SAID PROPERTY TO EXPLORE AND PROSPECT FOR, EXTRACT, DEVELOP, SAVE, CONVEY, STORE, REFINE, PROCESS AND REMOVE THE SAME AND TO MAKE SUCH USE OF SAID PROPERTY AND THE SURFACE THEREOF AS IS NECESSARY OR USEFUL IN CONNECTION THEREWITH, WHICH USE MAY INCLUDE THE SINKING, BORING, DIGGING OR DRILLING OF WELLS, SHAFTS OR TUNNELS, EXCAVATING, OPEN PIT MINING AND CONSTRUCTING, MAINTAINING AND REMOVING ROADS, WAYS, PIPE LINES, POLE LINES, TANKS, BUILDINGS, STRUCTURES AND FACILITIES, AS CONVEYED TO BRAVO OIL COMPANY IN DEED RECORDED DECEMBER 29, 1965 IN <u>BOOK 5257, PAGE 19 OF OFFICIAL RECORDS</u>, AS DOCUMENTS NO. 104215.

**Article VII.     PARCEL 19A:**

AN EASEMENT FOR A NON-EXCLUSIVE PRIVATE ROAD EASEMENT, OVER THE NORTH 60.00 FEET OF THE NORTHEAST QUARTER OF SECTION 14, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, EXCEPTING THEREFROM THE WEST 50 FEET THEREOF, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE GRANT OF EASEMENT, RECORDED JULY 23, 2012, AS <u>DOCUMENT NO. 2012-0101881</u> , OF OFFICIAL RECORDS.

**Article VIII.     PARCEL 19B:**

AN EASEMENT FOR A NON-EXCLUSIVE EASEMENT FOR ROAD PURPOSES, OVER THE NORTH 60.00 FEET OF THE WEST HALF OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF; AND A STRIP OF LAND BEING 60.00 FEET IN WIDTH, LYING EQUALLY ON EACH SIDE OF THE EAST LINE OF THE WEST HALF OF SAID SECTION 13, ACCORDING TO THE CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17, 2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

<u>PARCEL 20:</u> APN: 083-230-036 (Merced County)

ALL THAT PORTION OF THE NORTHEAST ONE-QUARTER OF SECTION 35, TOWNSHIP 10 SOUTH, RANGE 10 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA IN THE COUNTY OF MERCED, STATE OF CALIFORNIA, AS GRANTED TO ARTHUR MONEZ DE SA, ET AL, BY DOCUMENT RECORDED APRIL 8, 1976 IN <u>VOLUME 2026 OF OFFICIAL RECORDS, AT PAGE 909</u> THEREOF, RECORDS OF MERCED COUNTY, CALIFORNIA AND AS GRANTED TO ANTONE PEREIRA, ET AL, BY DOCUMENT RECORDED MAY 27, 1983 IN <u>VOLUME 2373 OF OFFICIAL RECORDS, AT PAGE 477</u> THEREOF, RECORDS OF SAID MERCED COUNTY, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A ONE-INCH IRON PIPE, WITH A PLASTIC PLUG STAMPED L.S. 4403, ACCEPTED AS A

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 83 of 261

POINT ON THE SOUTHERLY LINE OF SAID NORTHEAST ONE-QUARTER, WHICH BEARS NORTH 89° 57' 39" WEST, A DISTANCE OF 30.00 FEET FROM THE ONE-QUARTER SECTION CORNER ON THE EAST LINE OF SAID SECTION, SAID POINT OF BEGINNING BEING ALSO ON THE WESTERLY LINE OF MERCY SPRINGS ROAD, 60.00 FEET WIDE, THENCE NORTH 89° 57' 39" WEST, ALONG THE SOUTHERLY LINE OF SAID NORTHEAST ONE-QUARTER, A DISTANCE OF 2631.07 FEET TO THE ONE-HALF SECTION LINE, RUNNING NORTH AND SOUTH THROUGH SAID SECTION;

THENCE, NORTH 02° 07' 50" EAST, ALONG SAID ONE-HALF SECTION LINE, 2647.57 FEET TO THE SOUTHERLY LINE OF COPA DE ORA AVENUE, 60.00 FEET WIDE; THENCE, NORTH 89° 56' 02" EAST, ALONG THE SOUTHERLY LINE OF SAID AVENUE, A DISTANCE OF 872.23 FEET TO A ONE-INCH IRON PIPE, WITH A BRASS TAG STAMPED L.S. 2402, ACCEPTED FOR THE CENTERLINE OF A CONCRETE IRRIGATION DITCH;

THENCE, SOUTH 06° 07' 10" WEST, A DISTANCE OF 1025.58 FEET TO A ONE-INCH IRON PIPE, WITH A BRASS TAG STAMPED L.S. 2402, ACCEPTED FOR THE CENTERLINE OF A CONCRETE IRRIGATION DITCH, THENCE, SOUTH 06° 07' 10" WEST, CONTINUING ALONG SAID ACCEPTED LINE, A DISTANCE OF 99.78 FEET;

THENCE, SOUTH 27° 27' 54" EAST, ALONG AN ADJUSTED PROPERTY LINE, A DISTANCE OF 860.49 FEET TO THE POSITION OF A SCREW-ROD FOR A DITCH GATE-VALVE, AS SHOWN BY A "RECORD OF SURVEY FOR LAWRENCE L. BOWERS", VOLUME 33 PAGES 50 THROUGH 52, MERCED COUNTY RECORDS, THE ACTUAL SCREW-ROD BEARS NORTH 58° 49' 09" WEST, A DISTANCE OF 97.28 FEET;

THENCE, SOUTH 57° 48' 02" EAST, ALONG AN ADJUSTED PROPERTY LINE, A DISTANCE OF 688.86 FEET TO A ONE-INCH IRON PIPE, WITH A PLASTIC PLUG STAMPED L.S. 4403;

THENCE, SOUTH 89° 57' 43" EAST, ALONG AN ADJUSTED LINE, A DISTANCE OF 818.43 FEET TO THE WESTERLY LINE OF SAID MERCY SPRINGS ROAD;

THENCE, SOUTH 02° 33' 42" WEST, ALONG SAID WESTERLY LINE, A DISTANCE OF 398.87 FEET TO THE POINT OF BEGINNING.

PURSUANT TO THAT CERTAIN CERTIFICATE OF COMPLIANCE NO. 01045, RECORDED NOVEMBER 19, 2001 IN VOLUME 4314 PAGE 983 AS DOCUMENT NO. 52402 OF OFFICIAL RECORDS.

**PARCEL 21:** APN: 033-200-13s (Fresno County)

PARCEL 1 OF PARCEL MAP  99-03, IN THE CITY OF SAN JOAQUIN, COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE MAP THEREOF RECORDED IN BOOK 61, PAGES 3 AND 4 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATE THEREIN AND THEREUNDER, TOGETHER WITH ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR  THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON AS RESERVED BY PETER G. RUSCONI IN DEED RECORDED JUNE 2, 1971, INSTRUMENT NO. 43153, IN BOOK 5900, PAGE 328, OFFICIAL RECORDS.

Deed of Trust
SRAN [Loan No. 1503]

**PARCEL 22:** APN: 033-200-14s (Fresno County)

PARCEL 2 OF PARCEL MAP 99-03, IN THE CITY OF SAN JOAQUIN, COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE MAP THEREOF RECORDED IN BOOK 61, PAGES 3 AND 4 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATE THEREIN AND THEREUNDER, TOGETHER WITH ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON AS RESERVED BY PETER G. RUSCONI IN DEED RECORDED JUNE 2, 1971, INSTRUMENT NO. 43153, IN BOOK 5900, PAGE 328, OFFICIAL RECORDS.

**PARCEL 23:** APN: 033-200-03s (Fresno County)

PARCEL 3 OF PARCEL MAP NO. 84-01, IN THE CITY OF SAN JOAQUIN, COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF RECORDED IN BOOK 42, PAGE 79 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATE THEREIN AND THEREUNDER, TOGETHER WITH ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON AS RESERVED BY PETER G. RUSCONI IN DEED RECORDED JUNE 2, 1971, INSTRUMENT NO. 43153, IN BOOK 5900, PAGE 328, OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM AN UNDIVIDED 1/2 OF GRANTOR'S INTEREST IN AND TO ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES LYING BENEATH A DEPTH OF 600 FEET OF SAID PROPERTY, WHICH SHALL BE WITHOUT THE RIGHT OF SURFACE ENTRY FROM AND/OR TO THE SUBJECT PROPERTY, AS RESERVED BY DON GRAGNANI AND IRENE GRAGNANI, HUSBAND AND WIFE, IN DEED RECORDED OCTOBER 23, 1985, INSTRUMENT NO. 850107491, OFFICIAL RECORDS.

**PARCEL 24:** APN: 033-200-04s (Fresno County)

PARCEL 1 OF PARCEL MAP NO. 90-01, IN THE CITY OF SAN JOAQUIN, COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF RECORDED IN BOOK 50, PAGE 89 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATE THEREIN AND THEREUNDER, TOGETHER WITH ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON AS

Deed of Trust
SRAN [Loan No. 1503]

RESERVED BY PETER G. RUSCONI IN DEED RECORDED JUNE 2, 1971, INSTRUMENT NO. 43153, IN BOOK 5900, PAGE 328, OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ANY OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND, AS RESERVED BY DON GRAGNANI AND IRENE GRAGNANI IN DEED RECORDED SEPTEMBER 28, 1990, INSTRUMENT NO. 900117867, OFFICIAL RECORDS.

**PARCEL 25:** APN: 075-020-38s (portion of)  (Fresno County)

ALL THAT PORTION OF THE SOUTHEAST QUARTER OF SECTION 4, TOWNSHIP 20 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA IN THE COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, LYING EAST OF THE CENTERLINE OF ARROYO PASEJERO CREEK.

EXCEPTING THEREFROM ONE-HALF OF ALL OIL AND MINERAL RIGHTS AS RESERVED IN THE DEED FROM EDITH A. ELLIS, AS ADMINISTRATIVE OF THE ESTATE OF THOMAS J. ARLIN, DECEASED, TO GIFFEN, INC., A CORPORATION, DATED JANUARY 31, 1937, RECORDED MARCH 20, 1957, IN BOOK 2505, PAGE 13, AS DOCUMENT NO. 159353, OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ALL OF GRANTOR'S RIGHT, TITLE AND INTEREST IN AND TO ALL OIL, GAS AND MINERALS, AS RESERVED IN THE DEED FROM GIFFEN, INC. TO WAYMON E. WATTS, AS TRUSTEE OF THE ERIC TARENCE METZLER TRUST, ET AL, RECORDED NOVEMBER 22, 1974, IN BOOK 6730, PAGE 871, AS DOCUMENT NO. 87691, OFFICIAL RECORDS

**PARCEL 26:** APN: 075-020-38s (portion of)  (Fresno County)

ALL THAT PORTION OF THE SOUTHWEST QUARTER OF SECTION 4, TOWNSHIP 20 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA IN THE COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, LYING EAST OF THE CENTERLINE OF ARROYO PASEJERO CREEK.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND ALL MINERALS (INCLUDING THEREIN, OIL, GAS AND OTHER HYDROCARBON SUBSTANCES) IN OR UNDER SAID LAND, AS RESERVED IN THE DEED DATED AUGUST 21, 1959, FROM FRANCES M. HOFER AS EXECUTOR OF THE LAST WILL OF PAUL B. HOFER, DECEASED, TO GIFFEN, INC., A CALIFORNIA CORPORATION, RECORDED AUGUST 25, 1959 IN BOOK 4265, PAGE 18 OF OFFICIAL RECORDS, DOCUMENT NO. 59230.

ALSO EXCEPTING THEREFROM ALL OF GRANTOR'S RIGHT, TITLE AND INTEREST IN AND TO ALL OIL, GAS AND MINERALS, AS RESERVED IN THE DEED FROM GIFFEN, INC. TO WAYMON E. WATTS, AS TRUSTEE OF THE ERIC TARENCE METZLER TRUST, ET AL, RECORDED NOVEMBER 22, 1974, IN BOOK 6370, PAGE 871, AS DOCUMENT NO. 87691, OFFICIAL RECORDS.


**Article IX.     ADDITIONAL PARCELS 27 THROUGH 66, ADDED TO PRELIM-C:**

**PARCEL 27: FRESNO COUNTY APN: 085-090-04:**

Case: 25-50765     Doc# 30     Filed: 06/01/25     Entered: 06/01/25 20:57:11     Page 86 of 261

The Northwest quarter of the Southeast quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

**PARCEL 28A: FRESNO COUNTY APN: 085-090-26s (PORTION OF):**
The North half of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, a one-half interest in and to all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder TOGETHER WITH, all easements and rights necessary or convenient for the production, storage and transportation thereof and exploration and testing of the said real property and also the right to drill for, produce and use water from the said real property in connection with drilling or mining operations thereon, as reserved by Richard P. Heiser, as his separate property, in the Deed recorded March 7, 1952, in Book 3134, Page 320 of Official Records, as Document No. 12710.

**PARCEL 28B: FRESNO COUNTY APN: 085-090-26s (PORTION OF):**
The Southwest quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas and mineral rights within or underlying said property, as excepted in the Deed executed by Leona H. Todd, recorded June 13, 1952, in Book 3177, Page 194 of Official Records, as Document NO. 31391, in which said Grantor agrees not to drill a well or carry on any operations for the production of oil or gas, etc., from said real property and in the event Grantor makes a lease for that purpose, such lease shall contain a proper provision protecting the owner of the surface rights as to any damages resulting from operations under said lease, which damages shall be paid by the lessee under such lease; nor will grantor consent to a the discharge of any explosives upon said real property without the consent of the owner of the surface. The foregoing provisions are binding upon my heirs, successors and assigns.

**PARCEL 29: FRESNO COUNTY APN: 085-090-90s:**
The North half of the Northwest quarter of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

EXCEPTING THEREFROM, all of the mineral and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the herein above described property or that may be produced therefrom including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Pages 25 thru 28 of Official Records, as Document No. 104217.

**PARCEL 29A: FRESNO COUNTY APN: 085-090-26s (PORTION OF):**
A non-exclusive private road easement, over the North 60.00 feet of the Northeast quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

**PARCEL 30: FRESNO COUNTY APN: 085-090-92s:**
The South half of the Northwest quarter of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

EXCEPTING THEREFROM, all of the mineral and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the herein above described property or that may be produced therefrom including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Pages 25 thru 28 of Official Records, as Document No. 104217.

**PARCEL 30A: FRESNO COUNTY APN: 085-090-26s (PORTION OF):**
A non-exclusive private road easement, over the North 60.00 feet of the Northeast quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

**PARCEL 30B: FRESNO COUNTY APN: 085-090-90s, 91s, 92s, 93s, 94s, 95s, 96s & 97s (PORTION OF):**
A non-exclusive private road easement, over the North 60.00 feet of the West half of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof; and a strip of land being 60.00 feet in width, lying equally on each side of the East line of the West half of said Section 13, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

**PARCEL 31: FRESNO COUNTY APN: 085-090-94s:**
The North half of the Southwest quarter of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

EXCEPTING THEREFROM, all of the mineral and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the herein above described property or that may be produced therefrom including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products

Deed of Trust
SRAN [Loan No. 1503]

derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Pages 25 thru 28 of Official Records, as Document No. 104217.

### PARCEL 31A: FRESNO COUNTY APN: 085-090-26s (PORTION OF):
A non-exclusive private road easement, over the North 60.00 feet of the Northeast quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

### PARCEL 31B: FRESNO COUNTY APN: 085-090-90s, 91s, 92s, 93s, 94s, 95s, 96s & 97s (PORTION OF):
A non-exclusive private road easement, over the North 60.00 feet of the West half of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof; and a strip of land being 60.00 feet in width, lying equally on each side of the East line of the West half of said Section 13, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

### PARCEL 32: FRESNO COUNTY APN: 085-090-96s:
The South half of the Southwest quarter of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

EXCEPTING THEREFROM, the South 175 feet of the West 220 feet of said Section 13, as conveyed to Westlands Water District, in the Deed recorded February 18, 1977, in Book 6743, Pages 213 thru 223 of Official Records, as Document No. 16643.

ALSO EXCEPTING THEREFROM, all of the mineral and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the herein above described property or that may be produced therefrom including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Pages 25 thru 28 of Official Records, as Document No. 104217.

### PARCEL 32A: FRESNO COUNTY APN: 085-090-26s (PORTION OF):
A non-exclusive private road easement, over the North 60.00 feet of the Northeast quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel

Deed of Trust
SRAN [Loan No. 1503]

<u>Map No. 2011-13</u>, recorded August 17, 2012, as <u>Document No. 2012-0115401, of Official Records</u>.

**PARCEL 32B: FRESNO COUNTY APN: 085-090-90s, 91s, 92s, 93s, 94s, 95s, 96s & 97s (PORTION OF):**
A non-exclusive private road easement, over the North 60.00 feet of the West half of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof; and a strip of land being 60.00 feet in width, lying equally on each side of the East line of the West half of said Section 13, according to the Certificate of Waiver of <u>Parcel Map No. 2011-13</u>, recorded August 17, 2012, as <u>Document No. 2012-0115401, of Official Records</u>.

**Article X.      PARCEL 33: FRESNO COUNTY APN: 027-050-01:**
The North half of the West half of the Northwest quarter of Fractional Section 3, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

**PARCEL 34: FRESNO COUNTY APN: 027-050-02s:**
The Fractional Northeast quarter of the Northwest quarter of the Fractional Section 3, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, one-half of all oil, gas and other minerals as heretofore reserved or conveyed of record, as stated in the following Deed; and
ALSO EXCEPTING THEREFROM, all remaining oil, gas and other minerals not previously reserved of record, as reserved by Edith E. Leslie and Barbara J. Dixson, in the Deed recorded May 11, 1983, as <u>Document No. 83040881, of Official Records</u>.

**Article XI.      PARCEL 35: FRESNO COUNTY APN: 027-050-07:**
The North half of the South half of the West half of the Northwest quarter of Fractional Section 3, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

**PARCEL 36: FRESNO COUNTY APN: 027-050-11s:**
The Southeast quarter of Fractional Section 3, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided one-half interest in and to all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder, as reserved y Maybelle C. Beckett, a single woman, and Retha B. Hopwood, aka Retha Hopwood, a widow, in the Deed recorded September 6, 1973, in <u>Book 6210, Page 102 of Official Records</u> as Document No. 81853.

**Article XII.      PARCEL 37: FRESNO COUNTY APN: 017-070-17:**

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 90 of 261

The Southwest quarter of Section 33, Township 14 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

**PARCEL 38: FRESNO COUNTY APN: 033-020-73s:**
The North 400.00 feet of the East 400.00 feet of Lot 297 of Valley Garden Farms, Subdivision-A, in the unincorporated area of the County of Fresno, State of California, according to map thereof recorded June 12, 1915, in Book 7, Pages 76 to 79 of Plats, in the office of the County Recorder of said County.

EXCEPTING THEREFROM, an undivided one-half interest in and to all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder, TOGETHER WITH, all easements and rights necessary or convenient for the production, storage and transportation thereof and the exploration and testing of the said real property, and also the right to drill for, produce and use water from the said real property in connection with drilling or mining operations thereon, as reserved by Peter G. Rusconi, also known as Peter Rusconi, who acquired title as a single man, in the Deed recorded June 2, 1971, in Book 5900, Page 328 of Official Records, as Document No. 43153.

**PARCEL 39: FRESNO COUNTY APN: 033-020-74s:**
Lot 297 and Lot 304 of Valley Garden Farms, Subdivision-A, in the unincorporated area of the County of Fresno, State of California, according to map thereof recorded June 12, 1915, in Book 7, Pages 76 to 79 of Plats, in the office of the County Recorder of said County.

EXCEPTING FROM, Lot 297, the North 400.00 feet of the East 400.00 feet, as conveyed to the City of San Joaquin, in the Deed recorded December 6, 2005, as Document No. 2005-0285097, of Official Records.

ALSO EXCEPTING THEREFROM, an undivided one-half interest in and to all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder, TOGETHER WITH, all easements and rights necessary or convenient for the production, storage and transportation thereof and the exploration and testing of the said real property, and also the right to drill for, produce and use water from the said real property in connection with drilling or mining operations thereon, as reserved by Peter G. Rusconi, also known as Peter Rusconi, who acquired title as a single man, in the Deed recorded June 2, 1971, in Book 5900, Page 328 of Official Records, as Document No. 43153.

**Article XIII. PARCEL 40: FRESNO COUNTY APN: 020-200-01:**
The Northwest quarter of the Northwest quarter of the Southwest quarter of Section 29, Township 4 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

**Article XIV. PARCEL 41: FRESNO COUNTY APN: 028-041-01:**
Lots 1 and 2 as shown on the Map of Subdivision No. 7 Tranquillity Colony (map shows 2-LL's), in Section 2, Township 15 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the map thereof recorded August 4, 1910, in Book 5, Page 50 of Record of Surveys, in the Office of the County Recorder of said County.

**Article XV.    PARCEL 42: FRESNO COUNTY APN: 028-041-02:**

Lots 4 and 5 as shown on the Map of Subdivision No. 3 Tranquillity Colony (map shows 2-LL's), in Section 1, Township 15 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area, County of Fresno, State of California, according to the Map thereof recorded April 18, 1908, in Book 4, Page 24, of Record of Surveys, in the Office of the County Recorder of said County.

**Article XVI.    PARCEL 43: MADERA COUNTY APN: 041-190-006:**

All that portion of Section 21, Township 12 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, described as follows:

BEGINNING, on the East Section line of Section 21, Township I12 South, Range 14 East, Mount Diablo Base and Meridian;
Thence, North 0° 01' West 790.85 feet from the Southeast corner; Thence,
South 87° 02' West 1344.83 feet;
Thence, South 0° 01' East 709.02 feet to the South Section line;
Thence, South 89° 29' West 2528.32 feet to the East bank of the San Joaquin River Branch of Colombia Canal;
Thence, North 25° 43-1/2' West 352 feet;
Thence, North 13° 42' West 233.50 feet to the center line of a 60-foot road; Thence,
North 87° 02' East 1656.87 feet;
Thence, North 0° 01' West 2322.59 feet to a point in the centerline of a ditch drain;
Thence, Northwest along said centerline to the North Section line;
Thence, South 88° 53' East 2,861.20 feet, more or less, to the Southwest bank of Columbia Canal; Thence,
South 27° 51-½' East 64.04 feet;
Thence, South 46° 19-½' East 215.50 feet;
Thence, South 73° 19-½' East 130 feet; Thence,
North 76° 08-½' East 170 feet; Thence, North
77° 45-½' East 209.83 feet; Thence, South 68°
32 ½' East 49.04 feet;
Thence, South 11° 10-½' East 387.10 feet to the East Section line; Thence,
South 0° 01' East 155.02 feet;
Thence, South 0° 01' East 3776.98 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM, that portion described as BEGINNING at a point on the East line of Section 21, Township 12 South, Range 14 East, Mount Diablo Base and Meridian, according to the Official Plat thereof, which bears North 0° 01' West 790.85 feet from the Southeast corner; Thence, along the East line of said Section 21, and the centerline of a 60-foot County Road; Thence, North 0° 01' West 350.00 feet;
Thence, South 87° 02' West 350.00 feet;
Thence, South 0° 01' East 350.00 feet;
Thence, along the centerline of a 60-foot road easement, North 87° 02' East 350.00 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, an undivided sixty percent (60%) of all oil, gas and mineral rights in and to said land, as reserved by Chauncey Yip, et al in the Deed recorded December 20, 1990, as <u>Document No. 90-32420 of Official Records</u>.

**Article XVII.** <u>**PARCEL 44: MADERA COUNTY APN: 042-010-003:**</u>

All that portion of Section 28, Township 12 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, described as follows:

BEGINNING, North 89° 26' West 1343.28 feet from the Northeast corner of said Section 28;
Thence, South 1362.73 feet;
Thence, South 89° 35' West 91.06 feet;
Thence, South 46° 17' East 28.74 feet;
Thence, South 89° 35' West 2043.73 feet to the East bank of the Columbia Canal;
Thence, North 26° 07' West 23.13 feet;
Thence, North 11° 21' West 939.80 feet;
Thence, North 22° 35' West 423.49 feet;
Thence, North 25° 40-½' West 78.43 feet to the North line of Section 28;
Thence, South 89° 26' East 2528.32 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM, an undivided sixty percent (60%) of all oil, gas and mineral rights in and to said land, as reserved by Chauncey Yip, et al in the Deed recorded December 20, 1990, as <u>Document No. 90-32420 of Official Records</u>.

**Article XVIII.** <u>**PARCEL 45: KERN COUNTY APN: 059-160-42:**</u>

Parcel 1 of Parcel Map Waiver No. 1212, according to the Certificate of Compliance, recorded March 22, 1990, in <u>Book 6361, Page 540 of Official Records</u>, as Document No. 39852, described as follows:

The Northeast quarter of the Northeast quarter of Section 32, Township 26 South, Range 23 East, Mount Diablo Meridian, in the unincorporated area of the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, 75% of all minerals, oil, gas and hydrocarbons now or at any time hereafter situated within said land, TOGETHER WITH, the right to explore for, mine, drill, extract, and take such minerals, oil, gas, and hydrocarbons from said lands and to use the surface and sub-surface of said lands for such exploration, drilling and extraction, and for such derricks, machinery, structures, sumps, dumps, roads, pipe, tools, tanks, pipe lines, power lines, and plants, as in the opinion of the grantors, its successors or assigns, may be necessary or convenient at any time for the exploration for, mining, drilling, extraction, removal, storage, transportation, processing, and sale of such minerals within or removed from said lands, subject to the terms and conditions contained therein, all as excepted and reserved by Semi-Tropic Land & Water Co., a Corporation, in the Deed recorded July 2, 1947 in <u>Book 1413, Page 402 of Official Records</u>, as Document No. 24960.

ALSO EXCEPTING THEREFROM, the remainder of all oil, gas and other hydrocarbon substances and minerals within or underlying said land as excepted in Deed from Lila E. Gill, a widow, and Lila Eliza Gill, as Trustee, to Obie Hankins and Virginia Hankins, husband and wife, an undivided 1/2 interest, and J. G. Garrison and Juanita M. Garrison, husband and wife, an undivided 1/2 interest, in the Deed recorded January 13, 1967 in Book 4010

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 93 of 261

Page <u>809 of Official Records</u>, as Document No. 01751.

**Article XIX.**     <u>PARCEL 46: KERN COUNTY APN: 059-160-43:</u>

Parcel 2 of Parcel Map Waiver No. 1212, according to the Certificate of Compliance, recorded March 22, 1990, in <u>Book 6361, Page 540 of Official Records</u>, as Document No. 39852, described as follows:

The Southeast quarter of the Northeast quarter of Section 32, Township 26 South, Range 23 East, Mount Diablo Meridian, in the unincorporated area of the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the South thirty feet thereof.

ALSO EXCEPTING THEREFROM, 75% of all minerals, oil, gas and hydrocarbons now or at any time hereafter situated within said land, TOGETHER WITH, the right to explore for, mine, drill, extract, and take such minerals, oil, gas, and hydrocarbons from said lands and to use the surface and sub-surface of said lands for such exploration, drilling and extraction, and for such derricks, machinery, structures, sumps, dumps, roads, pipe, tools, tanks, pipe lines, power lines, and plants, as in the opinion of the grantors, its successors or assigns, may be necessary or convenient at any time for the exploration for, mining, drilling, extraction, removal, storage, transportation, processing, and sale of such minerals within or removed from said lands, subject to the terms and conditions contained therein, all as excepted and reserved by Semi-Tropic Land & Water Co., a Corporation, in the Deed recorded July 2, 1947 in <u>Book 1413, Page 402 of Official Records</u>, as Document No. 24960.

ALSO EXCEPTING THEREFROM, the remainder of all oil, gas and other hydrocarbon substances and minerals within or underlying said land as excepted in Deed from Lila E. Gill, a widow, and Lila Eliza Gill, as Trustee, to Obie Hankins and Virginia Hankins, husband and wife, an undivided 1/2 interest, and J. G. Garrison and Juanita M. Garrison, husband and wife, an undivided 1/2 interest, in the Deed recorded January 13, 1967 in <u>Book 4010 Page 809 of Official Records</u>, as Document No. 01751.

**Article XX.**     <u>PARCEL 47: KERN COUNTY APN: 059-160-44:</u>

Parcel 3 of Parcel Map Waiver No. 1212, according to the Certificate of Compliance, recorded March 22, 1990, in <u>Book 6361, Page 540 of Official Records</u>, as Document No. 39852, described as follows:

The East half of Section 32, Township 26 South, Range 23 East, Mount Diablo Meridian, in the unincorporated area, County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the Northeast quarter of the Northeast quarter of said Section 32; and The Southeast quarter of the Northeast quarter of said Section 32.

ALSO EXCEPTING THEREFROM, the following described parcel:

BEGINNING, at the Southeast corner of said Section 32; Thence,
North along the East line of said Section 32, 305 feet;
Thence, West parallel to the South line of said Section 32, 530 feet;
Thence, South parallel with the East line of said Section 32, 305 feet to the South line of said Section 32;
Thence, East along the South line, 530 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, 75% of all minerals, oil, gas and hydrocarbons now or at any time hereafter situated within said land, TOGETHER WITH, the right to explore for, mine, drill, extract, and take such minerals, oil, gas, and hydrocarbons from said lands and to use the surface and sub-surface of said lands for such exploration, drilling and extraction, and for such derricks, machinery, structures, sumps, dumps, roads, pipe, tools, tanks, pipe lines, power lines, and plants, as in the opinion of the grantors, its successors or assigns, may be necessary or convenient at any time for the exploration for, mining, drilling, extraction, removal, storage, transportation, processing, and sale of such minerals within or removed from said lands, subject to the terms and conditions contained therein, all as excepted and reserved by Semi-Tropic Land & Water Co., a Corporation, in the Deed recorded July 2, 1947 in <u>Book 1413, Page 402 of Official Records</u>, as Document No. 24960.

ALSO EXCEPTING THEREFROM, the remainder of all oil, gas and other hydrocarbon substances and minerals within or underlying said land as excepted in Deed from Lila E. Gill, a widow, and Lila Eliza Gill, as Trustee, to Obie Hankins and Virginia Hankins, husband and wife, an undivided 1/2 interest, and J. G. Garrison and Juanita M. Garrison, husband and wife, an undivided 1/2 interest, in the Deed recorded January 13, 1967 in <u>Book 4010 Page 809 of Official Records</u>, as Document No. 01751.

**Article XXI.    PARCEL 48: KERN COUNTY APN: 059-180-01:**
The West 20 acres of the Northeast quarter of the Southwest quarter;
The North 10 acres of the Northwest quarter of the Southwest quarter; and
The Northwest quarter of the Southeast quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM all oil, gas, hydrocarbon substances and minerals in and under said land as reserved by Francis I. Sanger and Helen Z. Sanger, husband and wife, in the Deed recorded April 20, 1953 in <u>Book 2071 Page 213 of Official Records</u>, as Document No. 18814.

**Article XXII.    PARCEL 49: KERN COUNTY APN: 059-180-03:**
The North half of the Southeast quarter of the Northeast quarter of the Southwest quarter;
The South half of the South half of the Northeast quarter of the Northeast quarter of the Southwest quarter; and
The North half of the Southeast quarter of the Northeast quarter of the Northeast quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

**Article XXIII.    PARCEL 50: KERN COUNTY APN: 059-180-11:**
The Northeast quarter of the Southeast quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

**Article XXIV.    PARCEL 51: KERN COUNTY APN: 059-180-12:**
The South half of the Southeast quarter of the Northeast quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas, hydrocarbon substances and minerals within or underlying said land, as

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 95 of 261

reserved by Katherine B. Belshaw, a widow, in the Deed recorded April 23, 1964, in <u>Book 3718 Page 82 of Official Records</u>, as Document No. 26638.

### Article XXV. PARCEL 52: KERN COUNTY APN: 059-180-13:

The South 35 acres of the Southwest quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas, hydrocarbon substances and minerals within or underlying said land as reserved by G. A. Holtz, et ux, et al, in the Deed recorded March 20, 1964 in <u>Book 3706 Page 315 of Official Records</u>, as Document No. 18988.

### Article XXVI. PARCEL 53: KERN COUNTY APN: 059-180-14:

The North 5 acres of the Southwest quarter of the Southwest quarter and the South 30 acres of the Northwest quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas, hydrocarbon substances and minerals in and under said land as excepted in the Deed dated December 19, 1963 from J. T. Nighbert to Katherine Irene Gill, et al, recorded December 31, 1963 in <u>Book 3676 Page 962 of Official Records</u>, as Document No. 80914.

### Article XXVII. PARCEL 54A: KERN COUNTY APN: 059-180-27 (PORTION OF):

The South half of the South half of the Southeast quarter, and
The South half of the Southeast quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM 75% of all minerals, oil, gas and hydrocarbons now or at any time hereafter situated within said land, TOGETHER WITH, the right to explore for, mine, drill, extract, and take such minerals, oil, gas, and hydrocarbons from said lands and to use the surface and sub-surface of said lands for such exploration, drilling and extraction, and for such derricks, machinery, structures, sumps, dumps, roads, pipe, tools, tanks, pipe lines, power lines, and plants, as in the opinion of the grantors, its successors or assigns, may be necessary or convenient at any time for the exploration for, mining, drilling, extraction, removal, storage, transportation, processing, and sale of such minerals within or removed from said lands, subject to the terms and conditions contained therein, all as excepted and reserved by Semi-Tropic Land & Water Co., a Corporation, in the Deed recorded July 2, 1947 in <u>Book 1413, Page 402 of Official Records</u>, as Document No. 24960.

ALSO EXCEPTING THEREFROM, the remainder of all oil, gas and other hydrocarbon substances and minerals within or underlying said land as excepted in Deed from Lila E. Gill, a widow, and Lila Eliza Gill, as Trustee, to Obie Hankins and Virginia Hankins, husband and wife, an undivided 1/2 interest, and J. G. Garrison and Juanita M. Garrison, husband and wife, an undivided 1/2 interest, in the Deed recorded January 13, 1967 in <u>Book 4010 Page 809 of Official Records</u>, as Document No. 01751.

### Article XXVIII. PARCEL 54B: KERN COUNTY APN: 059-180-27 (PORTION OF):

The North half of the Southeast quarter of the Southeast quarter and

Deed of Trust
SRAN [Loan No. 1503]

The South half of the Northeast quarter of the Southeast quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas and other hydrocarbon substances deposited in, lying under, or flowing through said lands and all metals and minerals therein and thereon, TOGETHER WITH, the right to enter upon said lands and to drill for, produce, extract, take and remove said substances from said lands, as reserved by Gladys M. Leake, a married woman, in the Deed recorded September 5, 1941 in Book 1050 Page 37 of Official Records, as Document No. 23280.

### Article XXIX.   PARCEL 54C: KERN COUNTY APN: 059-180-27 (PORTION OF):
The North half of the Northeast quarter of the Southeast quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas, minerals and other hydrocarbon substances within or underlying said land as excepted in the Deed from Lila E. Gill, a widow, and Lila Eliza Gill, as Trustee, recorded January 13, 1967 in Book 4010 Page 809 of Official Records, as Document No. 01751.

### Article XXX.   PARCEL 55 KINGS COUNTY APN: 004-100-004: 004-070-026: & APN 004-100-055 (PORTION) & 004-070-079 (PORTION):
All of Lot 1 of Section 9; All
of Lot 32 of Section 4;
That portion of Lot 3 of Section 9; and
That portion of Lot 31 of Section 4, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records, described as follows:

BEGINNING, at a point in the North line of Section 9, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, from which the Northeast corner of said Section bears South 89° 48' East 1320 feet;
Thence, North 655 feet along the East line of Lot 31;
Thence, North 52° 30' West 190 feet;
Thence, South 76° 30' West 590 feet;
Thence, South 42° 30' West 115 feet;
Thence, South 13° 45' West 340 feet;
Thence, South 42° 20' West 216 feet;
Thence, South 71° 14' West 181 feet to a point in the South line of Section 4, from which the point of beginning bears South 89° 48' East 1200 feet;
Thence, South 59° 47' West 393.7 feet;
Thence, South 18° 27' West 176.2 feet;
Thence, South 83° 45' East 250 feet;
Thence, South 72° 30' East 400 feet;
Thence, South 66° 05' East 190 feet;
Thence, South 76° 50' East 170 feet;
Thence, North 86° 40' East 250 feet;
Thence, North 76° 00' East 170 feet;

Thence, North 50° 25' East 120 feet;

Deed of Trust
SRAN [Loan No. 1503]

Thence, North 22° 30' East 316 feet;
Thence, North 44° 30' East 160 feet;
Thence, North 63° 30' East 130 feet;
Thence, North 80° 35' East 170 feet to a point in the north line of section 9; Thence,
North 89° 48' West 397 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM, a strip of land 30 feet wide along the margin of Kings River or any other defined water course running through or along the boundaries of said land and along all such margins.

ALSO EXCEPTING THEREFROM, any portion of the described property within the natural bed of Kings River below the line of ordinary high water.

ALSO EXCEPTING THEREFROM, an undivided one-half of all oil, hydrocarbon substances and minerals of all kinds, in or upon said land, TOGETHER WITH, the right to enter upon said premises to prospect for, drill for, capture and remove an undivided one-half of oil, gas, hydrocarbon substances and other minerals found upon the surface or under the surface of said land, with the right to build and maintain such drilling riggs, pipelines, sumpholes, power lines and buildings as may be necessary for mining for, drilling for, and capturing any of said substances hereinbefore mentioned and removing same from said premises, TOGETHER WITH, the right of ingress and egress at all times for said purposes, as reserved by David H. Moore and Ruth Moore, husband and wife, in the Deed recorded August 22, 1945 in Book 331, Page 413 of Official Records, as Document No. 4991.

### Article XXXI.  PARCEL 56 KINGS COUNTY APN: 004-070-079 (PORTION):
Lot 30 in Section 3, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records.

EXCEPTING THEREFROM, a strip of land 30 feet in width along the margin of Kings River or any other defined water course running through or along the boundaries of said lands and along all such margins as reserved by Security First National Bank of Los Angeles, in the Deed recorded December 1, 1941 in Book 257, Page 445 of Official Records, as Document No. 7645.

ALSO EXCEPTING THEREFROM, any portion of the described property within the natural bed of the Kings River below the line of ordinary high water.

### Article XXXII. PARCEL 57 KINGS COUNTY APN: 004-100-055 (PORTION):
Lot 6 of Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records.

EXCEPTING THEREFROM, a strip of land 30 feet in width along the margin of Kings River or any other defined water course running through or along the boundaries of said lands and along all such margins as reserved by Security First National Bank of Los Angeles, in the Deed recorded December 1, 1941 in Book 257, Page 445 of Official Records, as Document No. 7645.

NOTE:  the map hereinabove referred to recites:

"all measurements are to centers of roads and all are figured to road centers."

ALSO EXCEPTING THEREFROM, any portion of the described property line within the natural bed of the Kings River below the line of ordinary high mark.

**Article XXXIII.** **PARCEL 58 KINGS COUNTY APN: 004-100-023:**
All that portion of Lots 2 and 3 in Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records, lying North of the following described line:

BEGINNING, at the Northeast corner of said Section 10;
Thence, South along the East line of said Section 10, 1496.96 feet to the TRUE POINT OF BEGINNING;
Thence, North 89° 35' 52" West 2640 feet, more or less, to the East line of Lot 9, In Said Section 10.

EXCEPTING FROM, all of the property hereinabove described all those portions thereof in the bed of the Kings River and also excepting from all of the property hereinabove described all those portions thereof included in a strip of land of variable width lying between the Outer Line of Kings River and the Meandered Boundary line of Lots as per said Map of Laguna de Tache Grant running downstream through said Section 10, and also a strip of land of variable width lying between the Meandered Boundary line of Lots on either side of Kings River as per said Map of Laguna de Tache Grant running downstream through said Section 10, all as described in the Deed to Tulare Lake Basin Water Storage District recorded August 6, 1928 in Book 34 at Page 416 of Official Records.

ALSO EXCEPTING THEREFROM, an undivided one-half interest of all oil, gas, other hydrocarbons and minerals in and under said real property. The Grantors shall have not right to drill any wells or take any other measures for the production of oil, gas, or other hydrocarbons or minerals on any of said property, subject to the terms and conditions contained therein, all as reserved by Oscar E. Goodreau and Margaret M. Goodreau, husband and wife, and Bernard Goodreau and Jessie Goodreau, husband and wife, in the Deed recorded January 23, 1951 in Book 482, Page 515 of Official Records, as Document No. 792.

**Article XXXIV.** **PARCEL 59 KINGS COUNTY APN: 004-100-022:**
Lots 3, 9 and 10 in Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records.

EXCEPTING THEREFROM, that portion of Lot 3 lying within the following described property:

All that portion of Lots 2 and 3 in Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records, lying north of the following described line:

BEGINNING, at the Northeast corner of said Section 10;
Thence, South along the East line of said Section 10, 1496.96 feet to the TRUE POINT OF BEGINNING;
Thence, North 89° 35' 52" West 2640 feet, more or less, to the East line of Lot 9, in said Section 10.

ALSO EXCEPTING THEREFROM, all of the property hereinabove described all those portions thereof in the bed of the Kings River and also excepting from all of the property hereinabove described all those portions thereof included in a strip of land of variable width lying between the Outer Line of Kings River and the Meandered Boundary line of Lots as per said Map of Laguna de Tache Grant running downstream through said Section 10,

and also a strip of land of variable width lying between the Meandered Boundary line of Lots on either side of Kings River as per said Map of Laguna de Tache Grant running downstream through said Section 10, all as described in the Deed to Tulare Lake Basin Water Storage District recorded August 6, 1928 in Book 34 at Page 416 of Official Records.

ALSO EXCEPTING THEREFROM, an undivided one-half interest of all oil, gas, other hydrocarbons and minerals in and under said real property. The Grantors shall have not right to drill any wells or take any other measures for the production of oil, gas, or other hydrocarbons or minerals on any of said property, subject to the terms and conditions contained therein, all as reserved by Oscar E. Goodreau and Margaret M. Goodreau, husband and wife, and Bernard Goodreau and Jessie Goodreau, husband and wife, in the Deed recorded January 23, 1951 in Book 482, Page 515 of Official Records, as Document No. 792.

   **Article XXXV. PARCEL 60 KINGS COUNTY APN: 004-100-039:**
All of Lots 5 and 7 in Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna De Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records.

EXCEPTING THEREFROM, all that portion of Lot 5 of Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, described as follows:

BEGINNING, at the Northeast corner of said Lot 5, as shown on the Map of Laguna De Tache Grant;
Thence, South 13° 35' West 131 feet;
Thence, South 71° 35' West 149.5 feet to the TRUE POINT OF BEGINNING;
Thence, along the Southeasterly line of said Lot, South 44° 35' West 208.7 feet;
Thence, North 45° 25' West 208.7 feet;
Thence, North 44° 35' East 208.7 feet;
Thence, South 45° 35' East 208.7 feet to the TRUE POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, any portion of the described property within the natural bed of the Kings River below the line of ordinary high water.

ALSO EXCEPTING THEREFROM, all that portion of Lot 5 of Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, as shown on the Map of Laguna De Tache Grant, described as follows:

BEGINNING, at the Northeast corner of said Lot 5; Thence
South 13° 35' West 131 feet;
Thence South 71° 35' West 149.5 feet;
Thence South 44° 35' West 208.7 feet to the TRUE POINT OF BEGINNING; Thence
South 44° 35' West 59 feet;
Thence South 83° 50' West 182.07 feet;
Thence North 45° 25' West 142.8 feet;
Thence North 44° 35' East 200 feet;
Thence South 44° 25' East 258 feet to the TRUE POINT OF BEGINNING.
(removes 004-100-038)

ALSO EXCEPTING THEREFROM, one-half of all oil, gas, minerals, mineral rights and other hydrocarbon substances within or underlying said land as excepted and reserved in the Deed Executed by Joe Fagundes, et al, recorded June 10, 1980 in Book 1177 at Page 466, of Official Records, as Document No. 6904.

**Article XXXVI.**     <u>PARCEL 61 KINGS COUNTY APN: 004-171-078:</u>

Parcel 2, of Lot Line Adjustment No. 09-05, in the unincorporated area of the County of Kings, State of California according to the Parcel Map Waiver recorded August 25, 2009 as <u>Document No. 0915250, of Official Records</u>, described as follows:

Lot 1 in Section 16, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, according to Map of Laguna De Tache Grant, recorded November 12, 1894 in <u>Book 2, Page 98 of Record of Surveys</u>, Fresno County Records; that part of lot 2 in the aforesaid Section 16, lying South and east of the south fork of the island canal, described as follows:

BEGINNING, at the Southeast corner of Lot 2 in Section 16;
Thence, along the South line of said Lot, North 89° 48' West 480 feet to a point in the center of South Fork of the Island Canal;
Thence, North 30°42' East 450 feet;
Thence, North 29°15' East 242 feet;
Thence, North 34°49' East 130 feet;
Thence, South on the East line of said Lot 2 a distance of 666 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM, that portion conveyed by Deed to Island Reclamation District No. 776, described as follows:

BEGINNING, at a point 818.4 feet South of corner common to Section 9, 10, 15 and 16 in said Township and Range;
Thence, South 62° 53' West, 675 feet to the intersection with the North line of right of way of Island Reclamation District;
Thence, along said line South 75° 05', East, 368.3 feet to a point;
Thence, North 61° 30', East 278.5 feet to a point on the East line of said Section;
Thence, North along said line 269.1 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, that portion described as follows:

All that portion of the aforesaid Lot 1, lying Northerly and Westerly of the centerline of the South Fork Island Canal.

ALSO EXCEPTING THEREFROM, any portion of the described property within the natural bed of the Kings River below the line of ordinary high water.

ALSO EXCEPTING THEREFROM, a strip of land 30 feet in width along the margin of Kings River and any other defined water course running through or along the boundaries of said land, and along all such margins.

ALSO EXCEPTING THEREFROM, one-half of all oil, gas, minerals, mineral rights and other hydrocarbon substances within or underlying said property, as excepted and reserved in the Deed executed by Edward L. Hurlburt, recorded May 31, 1977 in <u>Book 1093, Page 812 of Official Records</u>, as Document No. 7092.

**Article XXXVII.**     <u>PARCEL 62 KINGS COUNTY APN: 004-172-001:</u>

Lot 3 in Section 15, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in <u>Book 2, Page 98 of Record of Surveys</u>, Fresno County Records.

EXCEPTING THEREFROM, that portion thereof described as follows:

BEGINNING, at a point 819.4 feet South of the Northwest corner of said Section 15; Thence
South 265.3 feet;
Thence North 53° 40' East 68.6 feet;
Thence North 21° East 320.3 feet;
Thence North 57° 25' East 130 feet;
Thence South 62° 53' West 314.90 feet to the POINT OF BEGINNING, as conveyed by Joe E. Costa, et al, to
Island Reclamation District No. 776, in the Deed recorded In Book 199, Page 234 of Official Records.

ALSO EXCEPTING THEREFROM, any portion of the described property within the natural bed of the Kings River
below the line of ordinary high water.

**Article XXXVIII.**     <u>PARCEL 63 KINGS COUNTY APN: 036-180-063:</u>
Parcel 2, as shown on the Parcel Map recorded August 8, 2018, in <u>Book 20, Page 90 of Parcel Maps</u>, in the
unincorporated area of the County of Kings, State of California, being a portion of the Southeast quarter of Section 31,
Township 21 South, Range 18 East, Mount Diablo Base and Meridian, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil and gas, associated liquid and gaseous hydrocarbons, and all other minerals,
whether hydrocarbon bearing or not, located on or under the Property. Aera expressly retains and reserves unto
itself, and to Aera's successors and assigns, the right to use the Property for the purposes of:
(1) exploring, prospecting, conducting geophysical operations, drilling, operating, and producing oil and gas,
associated liquid and gaseous hydrocarbons, and other minerals, whether contemporaneously produced with the
oil and gas or not;
(2) laying pipelines and building tanks, communication lines, and other structures thereon, and maintaining such
works to produce, save, take care of, treat, store, transport, and own such products obtained from and under the
Property;
(3) constructing roads and bridges necessary for operations on the Property for the purposes contained in this
subsection; and (4) full rights of ingress and egress to and from the Property for the purposes contained in this
subsection. Aera, or Aera's successors and assigns, shall have the right to use as much of the Property as is
reasonably necessary to carry out the purposes of this subsection. Aera, its successors and assigns, will lay
pipelines in cultivated fields on the Property below plow depth. Aera, its successors and assigns, agrees that it will
pay to Assignee, or Assignee's successors and assigns, or Assignee's tenant, as the case may be, reasonable
damages caused by Aera's operations, or the operations of Aera's successors and assigns, to Assignee's
livestock, crops, trees, existing fences, and other improvements upon the Property. Aera, its successors and
assigns, shall hold Assignee harmless from all claims or liens of third parties by reason of any act or neglect on
Aera's part, all as reserved by Area Energy LLC, A California Limited Liability Company, in the Document entitled
"ASSIGNMENT AND CONVEYANCE" recorded April 12, 2002, as <u>Instrument No. 0207620, of Official Records</u>.

**Article XXXIX.**     <u>PARCEL 64 STANISLAUS COUNTY PORTIONS OF APN: 057-026-008 & 009:</u>
All that portion of Fractional Lot 6, which lies in the North half of the North half of the of the Southeast quarter of
Section 8, Township 6 South, Range 9 East, Mount Diablo Base and Meridian, in the unincorporated area of the
County of Stanislaus, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided one-half interest in all the minerals, mineral deposits, mineral oils, and
natural gases of every kind and nature contained in or upon said lands, TOGETHER WITH, the right, in the

Deed of Trust
SRAN [Loan No. 1503]

Grantors and their successors and Grantees, to prospect, mine and operate in and upon the said grounds for such minerals, mineral deposits, mineral oils, and natural gases in any and all miner like metacus deemed necessary in the judgment of Grantors or their agents or in the judgment of the successor of Grantors, for the property extraction of the said minerals and the removal of mineral deposits, mineral oils, and natural gases therefrom, all as reserved by G. L. Dutcher and Ethel Maud Dutcher, husband and wife, in the Deed recorded August 13, 1951, in <u>Volume 1043, page 259 of Official Records</u>, as <u>Document No. 18503</u>.

**Article XL.**   <u>PARCEL 65 STANISLAUS COUNTY PORTIONS OF APN: 057-026-008 & 009:</u>

All that portion of Fractional Lot 6 which lies in the South half of the North half of the of the Southeast quarter of Section 8, Township 6 South, Range 9 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Stanislaus, State of California according to the Official Plat thereof; and

All that portion of Swamp and Overflowed Land Survey Nos. 159 and 162, which lies in the South half of the Southeast quarter; and in the South half of the North half of the said Southeast quarter of Section 8, Township 6 South, Range 9 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Stanislaus, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided one-half interest in all the minerals, mineral deposits, mineral oils, and natural gases of every kind and nature contained in or upon said lands, TOGETHER WITH, the right, in the Grantors and their successors and Grantees, to prospect, mine and operate in and upon the said grounds for such minerals, mineral deposits, mineral oils, and natural gases in any and all minerlike metacus deemed necessary in the judgment of Grantors or their agents or in the judgment of the successor of Grantors, for the property extraction of the said minerals and the removal of mineral deposits, mineral oils, and natural gases therefrom, all as reserved by G. L. Dutcher and Ethel Maud Dutcher, husband and wife, in the Deed recorded August 13, 1951, in <u>Volume 1043, page 259 of Official Records</u>, as <u>Document No. 18503</u>.

ALSO EXCEPTING THEREFROM, any mobile home, trailer and/or manufactured home located thereon.

**Article XLI.**   <u>PARCEL 66 STANISLAUS COUNTY PORTION OF APN: 057-026-008:</u>

All that portion of Swamp and Overflowed Land <u>Survey No. 162</u>, which lies in the North half of the North half of the Southeast quarter of Section 8, Township 6 South, Range 9 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Stanislaus, State of California according to the Official Plat thereof.

**EXHIBIT B**

**DEED OF TRUST; ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT, AND FIXTURE FILING**

As-extracted collateral (including without limitation oil, gas and other minerals); fixtures (including without limitation trade fixtures and windmills); equipment, including without limitation wind machines, compressors, pumps, stanchions, equipment relating to power generation, wine processing equipment and machinery, irrigation equipment, wells, pivots, pumps, motors, sprinkler systems, mainlines, hand lines, wheel lines, siphon tubes, gated pipe and all other irrigation equipment used for the production or transportation of water on the real property described in the attached *Exhibit A* or for the irrigation or drainage thereof; embedded software relating to the foregoing; permits, licenses, agreements and documents necessary to own or operate the real property described in the attached *Exhibit A*; supplies; and accounts, inventory, accounts generated rents, issues, profits and incomes arising from the real property described in the attached *Exhibit A* (including without limitation all leases, bonuses, royalties, subleases, franchises, rents, issues, profits and incomes arising therefrom and all the estate, right, title and interest of every nature in and to the same); whether now owned or hereafter acquired, whether now existing or hereafter arising, and all accessions, parts, additions, replacements and substitutions for any of such property, and all proceeds (including without limitation insurance proceeds) from the sale or other disposition of any such property. The aforementioned shall include, without limitation, the following:

1. <u>APN 020-200-01</u>: Irrigation well

2. <u>APNs 085-090-26s, 085-090-90s, 085-090-92s, 085-090-94s, 085-090-96s, 085-090-04</u>: Two irrigation wells, Flowserve pump and 600 horsepower U.S. electric motor (serial #W117634703-0004R0001), Flowserve pump and 600 horsepower U.S. electric motor (serial #P047350071-0002R0002), micro sprinkler irrigation system, three filter systems each with six Lakos sand media filters and a Grundfos booster pump with a 75 horsepower Baldor electric motor, one filter system with six Lakos sand media filters and a Cornell booster pump with a Caterpillar diesel motor, one filter system with six Lakos sand media filters and a Berkeley booster pump with a diesel motor.

3. <u>APNs 027-050-01, 027-050-02s, 027-050-07, 027-050-11s, 027-050-17</u>: Three Westlands Water District outlets and meters, a drip irrigation system, a filter system with eight stainless steel Flowguard sand media filters and a Cornell booster pump with a CNH diesel motor, a Morrill inline filter with five stainless steel Flowguard sand media filters and a Peerless booster pump with a 50 horsepower Baldor electric motor, a filter system with six stainless steel Flowguard sand media filters and a booster pump with an electric motor.

4. <u>APNs 001-280-26, 001-300-10, 003-020-04, 003-020-08, 003-020-09, 003-030-15, 003-030-24, 003-040-01, 003-040-04, 003-060-13, 091-053-001, 091-160-006, 091-170-001, 091-170-006, 091-190-005, 091-190-006</u>: Three irrigation wells, including pumping plants equipped with two 50 horsepower General Electric motors (serial #W55964242 and serial #R55161422), micro sprinkler system, drip irrigation system including surface drip lines, filter system with twenty-four Flowguard sand media filters, two lift pumps, solid separators and a reverse osmosis water treatment system, filter system with three Flowgard sand media filters and a booster pump, filter

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 105 of 261

system equipped with a 15-horsepower booster pump and three Flowguard sand media filters and generator.

5. <u>APNs 028-050-28s and 028-050-43s</u>: irrigation well with a Flowserve turbine pump and a 300 horsepower US electric motor, a drip system, a filter with eight Flowguard sand media filters, and one Flowguard screen filter and a booster pump with a 20 horsepower electric motor.

6. <u>APN 036-180-063</u>: Westlands Water District outlet and meter (Meter #129115 29R-4.9), a drip irrigation system, a filtration system with three Flowguard sand media filters, one Flowguard cartridge filter and a booster pump with a Case IH diesel motor, Model P171 (173 horsepower @ 2,200 RPM).

7. <u>APNs 085-050-39s, 085-090-91s, 085-090-93s, 085-090-95s and 085-090-97s</u>: Two irrigation wells (one with a Flowserve pump and a 600 horsepower U.S. electric motor and one with a Peerless pump, Johnson gear drive and 500 horsepower Cummins diesel motor), a drip system, micro sprinklers, a filtration system with eight Yardney sand media filters and an ARMS booster pump with a with a diesel motor, a second filtration system with six Flowguard sand media filters and a booster pump with a diesel motor.

8. <u>APNs 041-190-006 and 042-010-003</u>: Two irrigation wells (one with a Johnston pump and a 20 horsepower General Electric motor, serial #D6751463, and one with a turbine pump of unknown make, a 110 horsepower Johnson Gear Drive, serial #179322, and a 150 horsepower Caterpillar diesel motor, serial #448010000, a district water outlet is located along the Columbia Canal on the west side of the subject property, a micro sprinkler system, a filter system with six Flowguard sand media filters and a lift pump with a 40 horsepower electric motor, a filter system with four Flowguard sand media filters and a lift pump with an electric motor, a filter system #with four Lakos sand media filters and a lift pump with an electric motor.

9. <u>APNs 004-070-026, 004-070-079, 004-100-004, 004-100-022, 004-100-023, 004-100-039, 004-100-055, 004-100-068, 004-171-078 and 004-172-001</u>: underground PVC pipelines, eight irrigation wells listed in the table below, and access to riparian water from the Kings River with three river pumps located along the north fork of the Kings River listed in the table below.

| Well # | Ranch | Horsepower | Pump | Well Depth | Water Level | Flow Rate (GPM) |
|---|---|---|---|---|---|---|
| 1 | Gunter | 100 | Turbine | 305 | 144 | 1,202 |
| 2 | Horse Ranch | 75 | Turbine | 340 | 142 | 885 |
| 3 | Horse Ranch | N/A-Non-Op | N/A | N/A | N/A | N/A |
| 4 | Horse Ranch | N/A-Non-Op | N/A | N/A | N/A | N/A |
| 5 | Horse Ranch | N/A-Non-Op | N/A | N/A | N/A | N/A |
| 6 | Quail Island | N/A-Non-Op | N/A | N/A | N/A | N/A |
| 7 | Quail Island | N/A-Non-Op | N/A | N/A | N/A | N/A |
| 8 | Quail Island | 125 Gear Head | Turbine | 250 | 150 | 1,000 |

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 106 of 261

| Pump # | Ranch | Horsepower | Type | Point of Diversion Number | Estimated Flow Rate (GPM) |
|--------|-------|------------|------|---------------------------|---------------------------|
| 1 | Quail Island | 15 | Lift Pump | S027364 | 1,500 |
| 2 | Quail Island | 15 | Lift Pump | S027365 | 1,500 |
| 3 | Lonesome 40 | 15 | Lift Pump | S027366 | 1,500 |

10. APNs 033-020-73s and 033-020-74s: hand move sprinkler pipes

11. APN 083-230-036: irrigation district outlet improved with a screen filter and five Flowguard sand media filters

12. APNs 028-041-01 and 028-041-02: Tranquillity Irrigation District outlet improved with a portable diesel motor, booster pump and three Flowguard sand media filters, and a drip irrigation system

13. APNs 057-026-008 and 057-026-009: a water course pump to divert irrigation water form the San Joaquin river (for SOD S02064).

14. APN 015-315-25s: irrigation well with Flowserve pump and a 60 horsepower General Electric motor (serial #53032622), a filtration system including three Flowguard sand media filters, and a 24,000 gallon tank to supply water for the fire suppression system which is pressurized by a pump with a 10 horsepower electric motor

15. APNs 045-171-17s and 045-171-19s: irrigation well with a 600 horsepower U.S. electric motor on a variable frequency drive, three Westlands Water District outlets, a drip irrigation system with two drip lines suspended on a trellis system down each tree row, a filtration system with eight Flowguard sand media filters and a booster pump with a 100 horsepower electric motor, and a filtration system with ten Flowguard sand media filters and a booster pump with a 100 horsepower electric motor

16. APNs 065-110-06s and 065-110-17s: irrigation well with a 500 horsepower US electric motor on a variable frequency drive, a Westlands Water District outlet and meter, a drip system supported on an elevated trellis system, a micro sprinkler system supported on a trellis system, and a filtration system with ten Flowguard sand media filters and a Cornell booster pump with a 75 horsepower Baldor electric motor

17. APNs 059-160-42, 059-160-43, 059-160-44, 059-180-01, 059-180-03, 059-180-11, 059-180-12, 059-180-13, 059-180-14 and 059-180-27: the irrigation wells set forth on the table below, a micro sprinkler system, a flood irrigation system, with underground concrete pipelines and orchard valves, a drip irrigation system, and a water storage reservoir with a 60 horsepower lift pump and Arkal disc filters

| Well # | Location | Pump Make | Motor Make | Horsepower | Water Level | Plant Efficiency | Cost $/AF | Flow Rate (GPM) |
|---|---|---|---|---|---|---|---|---|
| 1 | Block B | Unknown | US | 200 | 305 | 63% | $59.09 | 1,727 |
| 2 | Block C | Peerless | US | 150 | 297 | 69% | $56.90 | 1,221 |
| 3 | Block G | Unknown | US | 200 | 303 | 57% | $68.45 | 1,379 |
| 4 | Block E | Peerless | US | 200 | 307 | 54% | $70.95 | 1,148 |
| 5 | Farmstead | Peerless | GE | 150 | N/A | N/A | N/A | N/A |
| | | | | | | Total Gallons Per Minute | | 5,475 |

18. APNs 028-040-43s, 028-040-45s, 028-170-01, 028-170-02, 028-170-03s, 028-170-31s, 028-170-32s, 028-170-36s, 028-170-63s, 028-170-75s and 028-170-76s, 028-160-06, 028-160-07, 028-160-13s, 028-060-62s, 028-050-44s, 028-050-48s, 028-050-09 and 028-050-10, 028-050-48s: irrigation well with a 600 horsepower electric motor and improved with a variable frequency drive electrical system, irrigation well with a 600 horsepower electric motor and an underground pipline, irrigation well with a Peerless pump and a 400 horsepower U.S. electric motor on a variable frequency drive electrical system, irrigation well with a pump of unknown make and a 500 horsepower U.S. electric motor on a variable frequency drive electrical system, an extensive filter system with two Peerless booster pumps each with a 100 horsepower Baldor electric motor, eight sand media filters for the removal of solids and a reverse osmosis system, a micro sprinkler system, a 16 acre reservoir with 13 Flowguard sand media filters and two lift pumps, each with a 100 horsepower electric motor, a 198 acre foot water storage reservoir with two booster pumps and a filter system with 12 Lakos sand media filters, an easement in perpetuity to access and use an off-site well

19. 075-020-38s: irrigation well with 500 horsepower US electric motor on a variable frequency drive, a Westlands Water District outlet and meter, a drip irrigation system supported on an elevated trellis system, a filtration system with eight Flowguard sand media filters and a Peerless booster pump with a 75 horsepower Baldor electric motor

Irrigation equipment also shall include without limitation above and underground pipeline, siphon tubes, gated pipe, main lines, electric lines, hand lines, wheel lines and all allied equipment such as control panels, pivot controls, wiring, wiring switch panels, shafting, openers, tubing, bowls, suction pipe, cones, reducers, valves, valve openers, reducers, end plugs, risers, sterns, sprinkler heads, hoses and nozzles, in each case to the extent now located or hereafter erected on or used in connection with the real property described in the attached *Exhibit A*.

All equipment affixed to the real property described in the attached *Exhibit A*, all spare parts and special tools for such equipment, and all fixtures. All prepaid expenses arising from the ownership and maintenance of the Property.

All contract rights, chattel paper, documents, accounts, and general intangibles, whether now owned or hereafter acquired by debtors, including, but not limited to, all entitlements, rights to payment and payments (in whatever form received, including, but not limited to, payments in cash or in kind) under any current or future state or federal governmental programs, including, but not limited to, Governmental Agricultural Diversion Programs, Governmental Agricultural Assistance Programs, and the United States Department of Agriculture Farm Service Agency (FSA) Feed Grain Program; and all proceeds of the foregoing. All accounts receivable arising from the sale of Collateral or products of the Collateral or from any contract for the sale of Collateral or of products of the Collateral.

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 108 of 261

All water, water rights, ditches and ditch rights, storage rights and permits, licenses, certificates or shares of stock currently used on, belonging to, or in any way appurtenant to the real property described in this Exhibit A, or whether owned as personal property of any Trustor (including without limitation any rights through membership in the Arroyo Pasajero Mutual Water Company, including any Base Shares in the Arroyo Pasajero Mutual Water Company), whether now owned or hereafter acquired, whether now existing or hereafter arising, and all proceeds from the sale or other disposition of any such property.

Any and all permanent plantings on the real property described in the attached Exhibit A.

**EXHIBIT C**
**Permanent Crop Mortgage Rider**

Trustor agrees as follows:

1. The term "Permanent Crop" in this Rider means that part of the premises now maintained and operated primarily for the production of almonds, pistachios, or any other permanent vine or tree crop. This property consists of approximately 4,763.60+/- acres of almond permanent crop, 195+/- acres of pistachio permanent crop, 40.80+/- acres of pluot permanent crop.

2. In the event Trustor secures a judgment for property damage and such award is intended by the parties to include damage to or loss to the permanent crops from the application of chemicals and/or water supply, Trustor agrees to deliver to Beneficiary the proceeds of such judgment which shall be applied to reduce the outstanding indebtedness secured by Deed of Trust. Application of the proceeds shall be paid in the sole and absolute discretion of Beneficiary and Beneficiary may retain the entire application of proceeds shall not cure or waive any default by Trustor or Notice of Sale hereunder or invalidate any act done pursuant to such defaults.

3. Trustor will not commit or suffer waste of the premises or impairment in any manner of the agricultural value of the land, and without limiting the generality of the foregoing, will cultivate, irrigate, fertilize, spray, prune, replant all plantings, employ all practices in order to operate the land for its highest and best use as agricultural Property and keep the non-timber land free from all foul and noxious weeds, brush and other undesirable growths, provide for stock selection, crop rotation, drainage, prevention of erosion and pasture maintenance in accordance with the best farming practices in the community where Property is located.

4. In the event that Trustor has planted permanent plantings which hare based upon a patent, Trustor hereby represent to Beneficiary that Trustor has paid all necessary fees for the patented varieties planted on Property and in the event of a default in any of the terms or provisions of this agreement, hereby grants to Beneficiary a license to the patented varieties and transfers all right, title and interest in the patented varieties as held by Trustor to Beneficiary and further grants to Beneficiary the right to sell said Property and plantings to third parties and transfer to them and patent rights.

*[SIGNATURES ON FOLLOWING PAGE]*

**"TRUST"**

**NAVDEP SINGH SRAN and SUKHWINDER KAUR SRAN, Co-Trustees, as community property, or their successors in trust, under the 2005 SRAN FAMILY REVOCABLE TRUST dated 8/10/05 and any amendments thereto**

By: Navdep Singh Sran
Its: Co-Trustee

By: Sukhwinder Kaur Sran
Its: Co-Trustee

**"SRAN ALMONDS"**

SRAN ALMONDS, LLC,
a California limited liability company

By: Lakhvir Singh Sran
Its: Member

By: Savdeep Singh Sran
Its: Member

By: Sukhjivan Singh Sran
Its: Member

**"S3 GROUP"**

S3 GROUP, LLC,
a California limited liability company

By: Lakhvir Singh Sran
Its: Member

By: Savdeep Singh Sran
Its: Member

By: Sukhjivan Singh Sran
Its: Member

**"SRAN VINEYARDS"**

SRAN VINEYARDS, LLC,
a California limited liability company

By: Lakhvir Singh Sran
Its: Member

By: Savdeep Singh Sran
Its: Member

By: Sukhjivan Singh Sran
Its: Member

IN WITNESS WHEREOF, the undersigned Trustors have executed this Deed of Trust as of the date and year first above written.

**"SRAN CHILDREN"**

**SRAN CHILDREN ALMONDS, LLC,**
a California limited liability company

By: Lakhvir Singh Sran
Its: Member

By: Savdeep Singh Sran
Its: Member

By: Sukhjivan Singh Sran
Its: Member

# EXHIBIT 4

Recording Requested by
Chicago Title Company IGPN

45004174-5M



DOC NBR: 2224395     12/29/2022 09:41:00 AM
OFFICIAL RECORDS OF Kings County
Kristine Lee, Clerk-Recorder,
RECORDING FEE: $508.00
COUNTY TAX: $0.00
CITY TAX: $0.00

**RECORDING REQUESTED BY**
**AND WHEN RECORDED MAIL TO:**

Morgan Hills Capital, LLC
c/o AgAmerica Lending LLC
4030 South Pipkin Road
Lakeland, Florida, 33811

GC 27388.1
225 fee cap

TITLE: 3
DOC TYPE: 08
76 PGS
R066



CHICAGO TITLE

Space Above This Line for Recorder's Use

Assessor's Parcel Nos.: (Fresno County): 015-315-25s, 001-300-10, 003-020-04, 003-040-01, 003-060-13, 001-280-26, 003-040-04, 003-030-15s, 003-030-24s, 003-020-09, 003-020-08, 045-170-62s, 045-170-86s, 065-110-06s, 065-110-17s, 085-050-39s, 085-090-91s, 085-090-93s, 085-090-95s, 085-090-97s, 033-200-13s, 033-200-14s, 033-200-03s, 033-200-04s, 075-020-38s, 085-090-26s, 085-090-90s, 085-090-92s, 085-090-94s, 085-090-96s, 085-090-04, 027-050-11, 017-070-17, 027-050-01, 027-050-02s, 027-050-07, 033-020-73s, 033-020-74s, 020-200-01, 028-041-01, 028-041-02, (Merced County): 091-160-006, 091-170-001, 091-170-006, 091-053-001, 091-190-005, 091-190-006, 083-230-036, (Madera County): 041-190-006, 042-010-003, (Kern County): 059-160-42, 059-160-43, 059-160-44, 059-180-01, 059-180-03, 059-180-11, 059-180-12, 059-180-13, 059-180-14, 059-180-27, (Kings County): 004-070-026, 004-070-079, 004-100-004, 004-100-022, 004-100-023, 004-100-039, 004-100-055, 004-171-078, 004-172-001, 036-180-063, (Stanislaus County): 057-026-008 and 057-026-009

# DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND FIXTURE FILING

This Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (this "**Deed of Trust**"), is given as of December 20, 2022, by **NAVDEP SINGH SRAN and SUKHWINDER KAUR SRAN, Co-Trustees, as community property, or their successors in trust, under the 2005 SRAN FAMILY REVOCABLE TRUST dated 8/10/05 and any amendments thereto**, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, as to Parcels 1, 12, 25, 26, 27 and 40, and as to an undivided one-third interest in Parcels 38-39 and 64-66 as Tenants in Common with S3 Group and Sran Vineyards, and who took title to Parcels 12 and 40 as NAVDEP SINGH SRAN and SUKHWINDER KAUR SRAN, Co-Trustees, under the 2005 SRAN FAMILY REVOCABLE TRUST, and who took title to the undivided one-third interest in Parcels 38-39 and 64-66 as NAVDEP SINGH SRAN and SUKHWINDER KAUR SRAN, Co-Trustees as community property under the 2005 SRAN FAMILY REVOCABLE TRUST dated 8/10/05 (collectively, the "Trust"); **S3 GROUP, LLC**, a California limited

Page - 1

liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, as to Parcels 2-11, 13-14, 24, 41-53, 54A, 54B, 54C, and 55-62, and as to an undivided one-third interest in Parcels 38-39 and 64-66 as Tenants in Common with the Trust and Sran Vineyards ("S3 Group"); **SRAN CHILDREN ALMONDS, LLC**, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, as to Parcels 15, 16, 16A, 16B, 17, 17A, 17B, 18, 18A, 18B, 19, 19A 19B and 63, subject to Item No. 283 ("Sran Children"); **SRAN ALMONDS, LLC**, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, as to Parcels 28A, 28B, 29, 29A, 30, 30A, 30B, 31, 31A, 31B, 32, 32A, 32B, 33 thru 37 ("Sran Almonds"); and **SRAN VINEYARDS, LLC**, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, as to an undivided one-third interest in Parcels 38-39 and 64-66 as Tenants in Common with the Trust and S3 Group, which took title as SRAN VINEYARDS, LLC, a California limited liability company a California limited liability company ("Sran Vineyards") (the Trust, S3 Group, Sran Children, Sran Almonds and Sran Vineyards are hereinafter collectively referred to as "**Trustor**"), to **Chicago Title Company**, whose address is 2540 West Shaw Lane, #112, Fresno, California 93711 ("**Trustee**"), for the benefit of **Morgan Hills Capital, LLC**, a Delaware limited liability company, c/o AgAmerica Lending LLC, a Florida limited liability company, whose address is 4030 S. Pipkin Road, Lakeland, Florida 33811 (together with its successors and assigns, "**Beneficiary**").

## ARTICLE I
## DEFINITIONS

For purposes of this Deed of Trust, the following terms shall have the following meanings. Capitalized terms used in this Deed of Trust without definition shall have the meanings ascribed to such terms in the Loan Agreement (as defined below).

"**Accounts**" has the meaning set forth in Section 2.01(q).

"**Applicable Law**" means all applicable existing and future federal, state, and local laws, orders, ordinances, governmental rules, and regulations and court orders.

"**Beneficiary**" has the meaning set forth in the introductory paragraph.

"**Compliance Notice**" has the meaning set forth in Section 7.14.

"**Condemnation**" has the meaning set forth in Section 5.14.

"**Deed of Trust**" has the meaning set forth in the introductory paragraph.

"**Default Rate**" has the meaning set forth in the Note.

"**Environmental Indemnity Agreement**" means that certain Unsecured Environmental Indemnity Agreement, of even date herewith by Trustor and Guarantor(s), as Indemnitors, in favor of Beneficiary, as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms.

"**Event of Default**" has the meaning set forth in the Loan Agreement.

"**Fixtures and Equipment**" has the meaning set forth in Section 2.01(b).

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 115 of 261

"**Guaranty Agreement(s)**" means those certain Continuing and Unconditional Guaranty agreements of even date herewith and executed by Navdep Singh Sran, Savdeep Singh Sran, Suhkkivan Singh Sran, Lakhvir Singh Sran, and Navdep Singh Sran and Sukhwinder Kaur Sran, Co-Trustees, as community property, or their successors in trust, under the 2005 Sran Family Revocable Trust, dated August 10, 2005, and any amendments thereto, respectively, guaranteeing the payment of the Indebtedness (as defined in the Guaranty Agreement(s)) and the performance of the Loan Agreement, as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms.

"**Improvements**" has the meaning set forth in Section 2.01(b).

"**Land**" means that certain real property located real property located in Fresno, Merced, Madera, Kern, Kings, and Stanislaus Counties, State of California, described in *Exhibit A* attached hereto and made a part hereof.

"**Leases**" has the meaning set forth in Section 2.01(g).

"**Loan**" means a certain loan in the original principal amount of One Hundred One Million Two Hundred Sixty-Eight Thousand and No/100ths Dollars ($101,268,000.00).

"**Loan Agreement**" means a certain Loan Agreement, of even date herewith, by and among SRAN FAMILY ORCHARDS, INC., a California corporation, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, N.S. FARMS, INC., a California corporation, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, S3 GROUP, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, NAVDEP SRAN dba NAVDEP SRAN FARMS, a sole proprietorship, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, SRAN ALMONDS, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, SRAN VINEYARDS, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, SRAN CHILDREN ALMONDS, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, and DIAMOND WEST FARMING COMPANY, INC., a California corporation, as the borrowers, NAVDEP SINGH SRAN, SAVDEEP SINGH SRAN, SUHKKIVAN SINGH SRAN, LAKHVIR SINGH SRAN, and Navdep Singh Sran and Sukhwinder Kaur Sran, Co-Trustees, as community property, or their successors in trust, under the 2005 SRAN FAMILY REVOCABLE TRUST dated August 10, 2005, and any amendments thereto, as the guarantors, and Beneficiary, as the lender (as amended, amended and restated, supplemented, renewed, or otherwise modified from time to time).

"**Note**" has the meaning set forth in the Loan Agreement.

"**Obligor**" means any Trustor, any Guarantor under the Guaranty Agreements, or any Indemnitor under the Environmental Indemnity Agreement, together with their respective successors and assigns.

"**Permitted Encumbrances**" means: (a) any matters set forth in any policy of lender title insurance issued to Beneficiary which are acceptable to Beneficiary as of the date hereof; (b) the liens and security interests evidenced by this Deed of Trust; (c) statutory liens for real estate taxes and assessments on the Property which are not yet delinquent; (d) other liens and security interests (if any) in favor of Beneficiary; (e) the rights of tenants in possession as of the date hereof, if any, pursuant to Leases

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 116 of 261

approved by Beneficiary and the rights of future tenants under any Leases made in accordance with the Loan Documents, and the assignment of such Leases pursuant to this Deed of Trust; and (f) any matters consented to in writing by Beneficiary in its sole and absolute discretion.

"**Personal Property**" has the meaning set forth in Section 4.01.

"**Proceeds**" has the meaning set forth in Section 2.01(l).

"**Property**" has the meaning set forth in Section 2.01.

"**Property Agreements**" has the meaning set forth in Section 2.01(h).

"**Receiver**" has the meaning set forth in Section 7.04.

"**Rents**" has the meaning set forth in Section 2.01(f).

"**Secured Indebtedness**" means the outstanding principal amount set forth in, and evidenced by, the Note and the Loan Agreement, together with all interest accrued and unpaid thereon and all other sums due to Beneficiary in respect of the Loan under the Note, the Loan Agreement, or this Deed of Trust and the performance and observance of all the provisions hereof, of the Loan Agreement and of all other documents, agreements, and certificates executed and/or delivered by Trustor in connection with the Loan Documents. The Secured Indebtedness specifically excludes the Environmental Indemnity Agreement. Secured Indebtedness also includes all other amounts owed by Trustor jointly or severally to Beneficiary under any other Note or Loan Agreement including.

"**Trustee**" has the meaning set forth in the introductory paragraph.

"**Trustor**" or "**Trustor**" has the meaning set forth in the introductory paragraph.

"UCC" has the meaning set forth in Section 2.01(b).

# ARTICLE II
# GRANT OF SECURITY

**Section 2.01   Grant.** In order to secure the due and punctual payment and performance of all of the Secured Indebtedness as and when the same becomes due and payable, whether at the stated maturity, by acceleration, or otherwise, Trustor does hereby GRANT, BARGAIN, SELL, ASSIGN, TRANSFER, WARRANT, CONVEY, AND MORTGAGE, to Trustee, in trust for Beneficiary, with power of sale and right of entry, the following property, rights, interests, and estates now owned, or hereafter acquired by Trustor (collectively, the "**Property**"):

(a)      The Land and all minerals, oil, gas, and other hydrocarbon substances, sand, gravel, and other materials that may be mined, produced, or extracted from the Land, in, on, or under the surface of the Land, as well as all development rights, permits, licenses, air rights, water, water rights, , ditches, ditch rights, storage rights, permits, licenses, certificates and shares of water stock, utility reservations, sanitary sewer, and other utility capacities relating to the Land.

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 117 of 261

(b)     All buildings, structures, fences, pipelines, pipes, tanks, dams, reservoirs, pumps, pumping equipment and all other improvements and fixtures now located or hereafter erected on the Land or used in connection therewith, including, but not limited to, the fixtures, attachments, equipment, machinery, and other articles attached to said buildings and improvements (collectively, the "**Improvements**"), all fixtures as defined in the Uniform Commercial Code in effect in the jurisdiction in which the Land and Improvements are located and/or where Trustor is located or organized (the "**UCC**") (collectively, the "**Fixtures and Equipment**"), and additions to the foregoing.

(c)     Irrigation equipment and wind machines of every kind and nature whatsoever now or hereafter situated on the Land, including without limitation wind machines, compressors, pumps, stanchions, equipment relating to power generation, wells, irrigation equipment, pivots, pumps, motors, sprinkler systems, mainlines, electric lines, hand lines, wheel lines, above and underground pipeline, siphon tubes, gated pipe, all allied equipment such as control panels, pivot controls, wiring, wiring switch panels, shafting, openers, tubing, bowls, suction pipe, cones, reducers, valves, valve openers, reducers, end plugs, risers, sterns, sprinkler heads, hoses and nozzles, and all other irrigation equipment used for the production or transportation of water on Land or for the irrigation or drainage thereof; embedded software relating to the foregoing, whether now owned or hereafter acquired, whether now existing or hereafter arising, and all accessions, parts, additions, replacements and substitutions for any of such property, and all proceeds (including without limitation insurance proceeds) from the sale or other disposition of any such property.

(d)     All the property and rights described in *Exhibit B* attached hereto and by this reference incorporated herein, whether now owned and in existence in connection with the real property on the date hereof or hereafter acquired.

(e)     All easements, rights-of-way or use, strips and gores of land, streets, ways, alleys, passages, sewer rights, utility reservations and capacity rights, waters, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, minerals, royalties, privileges, liberties, tenements, hereditaments, and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating, or pertaining to the Land or the Improvements, or any part thereof and the reversions, remainders, rents, issues, and profits thereof; and all land lying in the bed of any street, road, or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, rights of dower, rights of curtesy, property, possession, claim, and demand whatsoever, both at law and in equity, of Trustor of, in, and to the Land and the Improvements, and every part and parcel thereof, with the appurtenances thereto.

(f)     Any and all rents, revenues, issues, profits, royalties, income, cash proceeds, security deposits, accounts, moneys, and other benefits that are now due or may hereafter become due by reason of the renting, leasing, bailment of all or any portion of the Land or the Improvements, or the use or occupancy thereof (collectively "**Rents**").

(g)     Subject to the rights of Trustor hereunder and under the Loan Documents, all leasehold estate, right, title and interest of Trustor in, to or under all leases (including grazing permits, leases and oil and gas leases), subleases, sub-subleases, licenses, concessions, occupancy agreements, or other agreements (written or oral, now or at any time in effect and every modification, amendment, or other agreement relating thereto, including every guarantee of the performance and observance of the covenants, conditions, and agreements to be performed and observed by the other party thereto) which grant a possessory interest in, or the right to use or occupy, all or any part of the Land and/or

Page - 5

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 118 of 261

Improvements, together with all related security and other deposits (in each case, as amended, amended and restated, supplemented, renewed, extended, substituted, or otherwise modified from time to time, collectively, "**Leases**").

(h)     All other contracts and agreements in any way relating to, executed in connection with, or used in, the development, construction, use, occupancy, operation, maintenance, enjoyment, acquisition, management, or ownership of the Land and/or Improvements or the sale of goods or services produced in or relating to the Land and/or Improvements (collectively, in each case as amended, amended and restated, supplemented, renewed, extended, substituted, or otherwise modified from time to time, the "**Property Agreements**") including: (i) all construction contracts, architects' agreements, engineers' contracts, utility contracts, letters of credit, escrow agreements, maintenance agreements, management, leasing and related agreements, parking agreements, equipment leases, service contracts, operating leases, catering and restaurant leases and agreements, agreements for the sale, lease, or exchange of goods or other property, agreements for the performance of services, permits, variances, licenses, certificates, and entitlements; (ii) all material agreements and instruments under which Trustor or any of its affiliates or the seller of the Land and/or Improvements have remaining rights or obligations in respect of Trustor's acquisition of the Land and/or Improvements or equity interests therein; (iii) business licenses, variances, entitlements, certificates, state or local health department licenses, liquor licenses, food service licenses, certificates of need, and all other permits, licenses, and rights obtained from any governmental authority or private person; (iv) all rights of Trustor to receive monies due and to become due under or pursuant to the Property Agreements; (v) all claims of Trustor for damages arising out of or for breach of or default under the Property Agreements; and (vi) all rights of Trustor to terminate, amend, supplement, modify, or waive performance under the Property Agreements, to compel performance and otherwise to exercise all remedies thereunder, and, with respect to Property Agreements that are letters of credit, to make any draws thereon.

(i)     All bushes groves, trees, plants, vines or other plantings upon or under the Land ("**Plantings**").  A Permanent Crop Rider is attached as *Exhibit C*, executed by Trustor and incorporated herein.

(j)     All crops grown, growing or to be grown on or under the Land, including crops produced on trees, vines, and bushes, including all such crops following severance from the Land, and seed and propagative portions of plants, and products of crops in their unmanufactured state, and harvested crops whether stored on or off the Land and whether such crops are considered "Inventory" or "Goods" as defined in the Uniform Commercial Code or the California Commercial Code ("**Crops**"). A Permanent Crop Rider is attached as *Exhibit C*, executed by Trustor and incorporated herein.

(k)     All Property securing any other Note or Loan Agreement, pursuant to the Loan Documents related thereto.

(l)     All insurance or other settlement proceeds relating to or arising out of the foregoing, all proceeds of a sale of all or any portion of the foregoing, and all causes of action, claims, compensation, awards, damages, proceeds, payments, relief, or recoveries, including interest thereon, as a result of any casualty or condemnation of all or any part of the Land and/or Improvements or for any damage or injury to it or for any loss or diminution in value of the Land and/or Improvements (collectively, the "**Proceeds**").

Deed of Trust
SRAN [Loan No. 1503]

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 119 of 261

(m)    All refunds, rebates, or credits in connection with reduction in real estate taxes and assessments charged against the Property as a result of tax *certiorari* or any applications or proceedings for reduction.

(n)    The right, in the name and on behalf of Trustor, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Beneficiary in the Property.

(o)    All agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications, and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management, or operation of the Land and any part thereof and any Improvements or any business or activity conducted on the Land and any part thereof and all right, title, and interest of Trustor therein and thereunder, including, without limitation, the right, upon the happening of any default hereunder, to receive and collect any sums payable to Trustor thereunder.

(p)    All tradenames, trademarks, service marks, logos, copyrights, goodwill, books and records, and all other general intangibles relating to or used in connection with the operation of the Property.

(q)    All reserves, escrows, and deposit accounts maintained by Trustor with respect to the Property, including without limitation, all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments, and other property held therein from time to time and all proceeds, products, distributions or dividends, or substitutions thereon and thereof (collectively, the "**Accounts**");

(r)    To the extent not included in the foregoing, all cash and non-cash proceeds, products, offspring, rents, revenues, issues, profits, royalties, income, benefits, additions, renewals, extensions, substitutions, replacements, and accessions of and to any and all of the foregoing.

(s)    Any and all other rights of Trustor in and to the items set forth in subsections (a) through (r) above.

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Trustee and its successors and assigns, forever; PROVIDED, HOWEVER, that if the entire Secured Indebtedness is paid, performed, and discharged in full, then the liens, security interests, estates, and rights granted by Trustor shall cease, terminate, and become void (except those obligations that expressly survive the reconveyance of this Deed of Trust shall continue), and shall be released or reconveyed by Trustee, at the cost and expense of Trustor.

## ARTICLE III
## ABSOLUTE ASSIGNMENT OF LEASES AND RENTS

### Section 3.01    Assignment of Leases and Rents.

(a)    In order to secure the due and punctual payment and performance of all of the Secured Indebtedness as and when the same becomes due and payable, whether at the stated maturity, by acceleration, or otherwise, Trustor hereby absolutely, presently, irrevocably, and unconditionally grants,

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 120 of 261

assigns, and transfers to Beneficiary all of Trustor's present and future right, title, interest, and estate in, to, and under all current and future Leases and Rents, and the absolute, present, irrevocable, and unconditional right to receive, collect, and possess all Rents.

(b)     This Article III shall be fully operative and effective to create a present security interest in existing and future Rents under California Civil Code § 2938 without any further action on the part of Trustor or Beneficiary and Beneficiary shall be entitled, at its option, to all Rents whether or not Beneficiary takes possession of the Property. Trustor hereby further grants to Beneficiary the right to: (i) enter and take possession of the Property for the purposes of collecting the Rents; (ii) dispossess by the usual summary proceedings of any tenant defaulting in the payment thereof to Beneficiary; (iii) let the Property or any part thereof; and (iv) apply the Rents, after payment of all necessary charges and expenses (including attorneys' fees and costs) to the Secured Indebtedness.

(c)     Trustor hereby irrevocably appoints Beneficiary its true and lawful attorney-in-fact to: (i) enforce in Trustor's name or Beneficiary's name or otherwise all rights of Trustor in the instruments, including without limitation, checks and money orders, tendered as payments of Rents; (ii) demand, receive, and enforce payment, to give receipts, releases, and satisfactions, and to sue, either in Trustor's or Beneficiary's name, for all Rents; and (iii) do any and all things necessary and proper to carry out the purposes of this Article III.

(d)     The execution of this Deed of Trust constitutes Trustor's irrevocable consent to Beneficiary's entry and taking possession of the Property pursuant to this Article III, whether or not sale or foreclosure has been instituted. Neither the exercise of any rights under this Article III by Beneficiary nor the application of the Rents to the Secured Indebtedness shall cure or waive an Event of Default or notice of default, and shall be cumulative with all other rights and remedies of Beneficiary.

(e)     Such grant, assignment, and transfer shall not be construed to: (i) bind Beneficiary to the performance of any of the covenants, conditions, or provisions contained in any Lease or otherwise impose any obligation upon Beneficiary; or (ii) create, or operate to place or impose, any responsibility, obligation, or liability upon Beneficiary for: (A) the control, care, maintenance, management, or repair of the Property; (B) any dangerous or defective condition of the Property, including, without limitation, the presence of any environmental contamination or conditions; (C) any waste committed on the Property by any Person; and/or (D) any negligence in the management, upkeep, repair, or control of the Property.

(f)     Any entering upon and taking and maintaining of control of the Property or the Rents by Beneficiary or the receiver and any application of Rents as provided herein shall not: (i) constitute Lender as a "mortgagee in possession" unless affirmatively elected by Lender in writing; (ii) make Beneficiary an agent of Borrower; (iii) constitute an action, render the Indebtedness unenforceable, violate Section 726 of the California Code of Civil Procedure, or otherwise limit any rights available to Beneficiary with respect to its security; or (iv) be deemed to create any bar to a deficiency judgment on the Secured Indebtedness. Beneficiary shall not be liable to Trustor, anyone claiming under or through Trustor or anyone having an interest in the Property by reason of anything done or left undone by Beneficiary hereunder, except as may be due to gross negligence or intentional acts of Beneficiary, its employees or agents. Neither Beneficiary's application nor Beneficiary's failure to apply the Rents in accordance with the terms hereof shall result in a loss of any lien or security interest which Beneficiary may have in the Property, render the Secured Indebtedness unenforceable, constitute a violation of Section 726 of the California Code of Civil Procedure, or otherwise limit any right available to Beneficiary with respect to its security.

### Section 3.02    Revocable License.

(a)     Notwithstanding the grant, assignment, and transfer of Leases and Rents from Trustor to Beneficiary pursuant to Section 3.01, so long as no Event of Default shall occur and be continuing, Beneficiary grants to Trustor a revocable license to collect and receive Rents as they become due, and to retain, use, and apply Rents to the payment of the Secured Indebtedness and to the costs and expenses incurred in connection with the operation and maintenance of the Property, and to exercise all rights as landlord under any Lease, in each case subject to the terms of this Deed of Trust and the other Loan Documents. After the occurrence of an Event of Default, Beneficiary shall have the rights set forth in California Civil Code § 2938 without notice to or demand upon Trustor, and without regard to the adequacy of the security for the Secured Indebtedness.

(b)     From and after the occurrence of any Event of Default:

(i)      the revocable license granted to Trustor pursuant to Section 3.02(a) shall immediately and automatically, with or without notice from Beneficiary, cease and terminate and shall be void and of no further force or effect;

(ii)     Beneficiary shall immediately and automatically be entitled to receive, collect, and possess all Rents in accordance with California Civil Code § 2938;

(iii)    Beneficiary may, at its sole option, notify in writing all tenants under Leases that all Rents due thereunder from and after the date of such notice shall be paid to Beneficiary at its address set forth in this Deed of Trust, or at such other place as Beneficiary shall notify Trustor or the tenants in writing; and

(iv)     any portion of Rents then or thereafter received or held by Trustor shall be payable immediately upon written demand to Beneficiary for application by Beneficiary, at its option, to the payment of the Secured Indebtedness and/or expenses in connection with the operation and maintenance of the Property.

(c)     It is agreed that, if the Event of Default that gave rise to the termination of the revocable license pursuant to Section 3.02(a) is cured, then the revocable license granted pursuant to Section 3.02(a) shall be reinstated for so long as no other Event of Default shall occur, subject to the provisions of this Section 3.02.

(d)     Notwithstanding the license granted to Trustor herein, Trustor agrees that, at Beneficiary's sole option from time to time, Beneficiary, and not Trustor, shall be deemed to be the creditor of each tenant under each Lease in respect of any and all assignments for the benefit of creditors and bankruptcy, reorganization, insolvency, dissolution, or receivership proceedings affecting each tenant, with an option to apply in accordance with the Loan Documents any money received from such tenant in reduction of any amounts due under the Loan Documents. In each such case, Trustor at Beneficiary's direction shall be obligated to file or make timely filings of claims in such proceedings and to otherwise pursue creditor's rights in such proceedings.

### Section 3.03    Certain Rights of Beneficiary. From and after any revocation of the license granted pursuant to Section 3.02(a), Beneficiary shall, at its option and in addition to its other rights and remedies provided in this Deed of Trust and the other Loan Documents and/or at law or in equity, have

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 122 of 261

the immediate and continuing right, power, and authority, either personally or by agent without bringing any foreclosure or other action or proceeding, or by a receiver appointed by a court and without the necessity of taking possession of the Property in its own name, and without the need for any other authorization or action by Trustor or Beneficiary, to take any or all of the following actions:

(a)     Notify any tenant or other person that Leases have been assigned to Beneficiary and that all Rents are to be paid directly to Beneficiary.

(b)     Settle, compromise, release, extend the time of payment for, and make allowances, adjustments, and discounts of, any Rents or other obligations in, to, and under Leases.

(c)     Lease all or any part of the Property and/or modify, amend, renew, or terminate any Leases.

(d)     Perform any and all obligations of Trustor under Leases and exercise any and all rights of Trustor therein contained to the full extent of Trustor's rights and obligations thereunder.

## ARTICLE IV
## SECURITY AGREEMENT AND FIXTURE FILING

**Section 4.01  Security Agreement.** This Deed of Trust shall also constitute a security agreement and fixture filing within the meaning of the UCC with respect to all of Trustor's present and future estate, right, title, and interest in, to, and under the Fixtures and Equipment and any portion of the Property that is not real property (the **"Personal Property"**). Trustor hereby grants to Beneficiary a security interest in and to the Personal Property and the Fixtures and Equipment and every component thereof, and hereby transfers and assigns to Beneficiary all of Trustor's present and future estate, right, title, and interest in, to, and under the Personal Property and the Fixtures and Equipment and every component thereof, to secure the due and punctual payment and performance of all of the Secured Indebtedness as and when the same becomes due and payable, whether at the stated maturity, by acceleration, or otherwise. Beneficiary shall have the remedies of a secured party under the UCC, in addition to, but not in limitation of, the other rights afforded Beneficiary by the Loan Documents. In exercising any of these remedies, Beneficiary may proceed against the items of Property and any items of Personal Property separately or together and in any order whatsoever, without in any way affecting the availability of Beneficiary's remedies under the UCC or of the remedies in the Loan Documents.

**Section 4.02  Financing Statements.** Trustor hereby authorizes Beneficiary, at the expense of Trustor, at any time and from time to time to file any initial financing statements, amendments thereto, and continuation statements under the UCC and as authorized by applicable law, as applicable to all or part of the Personal Property in such filing offices as may be necessary, advisable, or required by law in order to create, establish, perfect, preserve, and protect the security interest hereunder. For purposes of such filings, Trustor agrees to furnish any information requested by Beneficiary promptly upon request by Beneficiary. Trustor also ratifies its authorization for Beneficiary to have filed any like initial financing statements, amendments thereto, or continuation statements, if filed prior to the date of this Deed of Trust. Trustor hereby irrevocably constitutes and appoints Beneficiary and any officer or agent of Beneficiary, with full power of substitution, as its true and lawful attorneys-in-fact with full irrevocable power and authority in the place and stead of Trustor or in Trustor's own name to execute in Trustor's name any such documents and otherwise to carry out the purposes of this Section 4.02, to the extent that Trustor's

Page - 10

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 123 of 261

authorization above is not sufficient and Trustor fails or refuses to promptly execute such documents. To the extent permitted by law, Trustor hereby ratifies all acts said attorneys-in-fact have lawfully done in the past or shall lawfully do or cause to be done in the future by virtue hereof. This power of attorney is a power coupled with an interest and shall be irrevocable.

**Section 4.03   Fixture Filing.** The filing or recording of this Deed of Trust is intended to and will constitute a financing statement filed as a fixture filing under California Commercial Code §§ 9102(a)(40) and 9502(c) with respect to that portion of the Property which is or is to become Fixtures and Equipment. The **"Secured Party"** is Beneficiary and the **"Debtor"** is Trustor. The name, type of organization, jurisdiction of organization, and mailing addresses of the Secured Party and the Debtor are set out in the preamble to this Deed of Trust. The land to which the Fixtures and Equipment are related is the Land, and Trustor is the record owner of the Land. Trustor agrees that Beneficiary may file this Deed of Trust, or a copy of it, in the real estate records or other appropriate index or in the Office of the Secretary of State of the State of California and such other states as the Beneficiary may elect, as a financing statement for any of the items specified above as part of the Property.

**Section 4.04   Other Security Agreement, Harmonization of Conflicts.** If Trustor has executed and delivered to Beneficiary one or more separate security agreements in connection with the Secured Indebtedness, such security agreements and the security interests created thereby are in addition to and not in substitution of this Deed of Trust and the liens and security interests created hereby, and this Deed of Trust shall be in addition to and not in substitution of such security agreements and security interests. In all cases, this Deed of Trust and the aforesaid security agreements shall be applied and enforced in harmony with and in conjunction with each other to the end that Beneficiary realizes fully upon its rights and remedies in each and the liens and security interests created by each. If conflicts exist among this Deed of Trust and such other security agreements, Beneficiary may elect which of such instruments govern with respect to each category of Property encumbered hereby and thereby.

# ARTICLE V
## TRUSTOR'S COVENANTS

Trustor hereby represents, covenants and agrees:

**Section 5.01   Payment of Secured Indebtedness.** Trustor shall pay the Secured Indebtedness at the time and in the manner provided in the Note, the Loan Agreement, and this Deed of Trust.

**Section 5.02   No Liens or Transfers.** Trustor shall not, without the Beneficiary's prior express written consent, its sole discretion, sell, transfer, convey, lease, let, deed of trust, pledge, encumber, create, or permit a lien on or security interest, or otherwise hypothecate all or any part of the Property except for: (a) Permitted Encumbrances; and (b) other liens, encumbrances, and transfers expressly permitted under the Loan Agreement. Trustor shall have the right to contest in good faith the validity of any such lien, encumbrance or charge, provided Trustor shall first deposit with Beneficiary a bond or other security satisfactory to Beneficiary in such amounts as Beneficiary shall reasonably require, but not more than one and one-half (150%) of the amount of the claim, and provided further that Trustor shall thereafter diligently proceed to cause such lien, encumbrance or charge to be removed and discharged. If Trustor shall fail to discharge any such lien, encumbrance or charge, then, in addition to any other right or remedy of Beneficiary, Beneficiary may, but shall not be obligated to, discharge the same, either by paying the amount claimed to be due, or by procuring the discharge or such lien by depositing in court a

Page - 11

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 124 of 261

bond or the amount claimed or otherwise giving security for such claim, or in such manner as is or may be prescribed by law

**Section 5.03   Title.** That at the time of delivery hereof, Trustor is the lawful owner of the Property, and is seized of good, marketable and indefeasible title in fee simple therein, free and clear of all encumbrances, and that Trustor will warrant and defend the same in the quiet and peaceful possession of the Trustee or Beneficiary, its or their successors and assigns, forever, against the claims of all persons whomsoever.

**Section 5.04   Maintenance, Repair, Alterations and Good Standing.** To keep the Property in good condition and repair, not to remove, demolish or substantially alter (except such alterations as may be required by laws, ordinances or regulations) any of the Improvements; to complete promptly and in good and workmanlike manner any building or other improvement which may be constructed on the Property and promptly restore in like manner any Improvement which may be damaged or destroyed thereon, and to pay when due all claims for labor performed and materials furnished therefore, to comply with all laws, ordinances, regulations, covenants, conditions and restrictions now or hereafter affecting the Property or any part thereof; not to commit, suffer or permit any waste or deterioration of the Property; not to commit, suffer or permit any act to be done in or upon the Property in violation of any law, ordinance or regulation; in the event the Trustor is a corporation, partnership, limited liability company, cooperative, business trust or other entity, to keep the Trustor in existence and in good standing.

**Section 5.05   Required Insurance; Delivery of Policies; Payment of Premiums.** To at all times provide, maintain and keep in force the all insurance required under the Loan Documents. All policies of insurance shall be issued by companies and in amounts in each company satisfactory to Beneficiary. All policies of insurance shall have attached thereto a lender's loss payable endorsement for the benefit of Beneficiary in form satisfactory to Beneficiary. Trustor shall furnish Beneficiary copies of all policies of required insurance. All such policies shall contain a provision that such policies will not be canceled or materially amended, which term shall include any reduction in the scope or limits of coverage, without at least thirty (30) days' prior written notice to Beneficiary. In the event Trustor fails to provide, maintain, keep in force or deliver and furnish to Beneficiary the policies of insurance required by this Section, Beneficiary may procure such insurance or single-interest insurance for such risks covering Beneficiary's interest, and Trustor will pay all premiums thereon promptly upon demand by Beneficiary, and until such payment is made by Trustor the amount of all such premiums together with interest thereon at the rate provided in the Note shall be secured by this Deed of Trust.

## WARNING

**UNLESS TRUSTOR PROVIDES BENEFICIARY WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY THE LOAN AGREEMENT, THIS DEED OF TRUST, THE NOTE, OR THE LOAN DOCUMENTS, BENEFICIARY MAY PURCHASE INSURANCE AT TRUSTOR'S EXPENSE TO PROTECT ITS INTEREST.  THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT TRUSTOR'S INTEREST.  IF THE PROPERTY BECOMES DAMAGED, THE COVERAGE BENEFICIARY PURCHASES MAY NOT PAY ANY CLAIM TRUSTOR MAKES OR ANY CLAIM MADE AGAINST TRUSTOR.  TRUSTOR MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT TRUSTOR HAS OBTAINED PROPERTY COVERAGE ELSEWHERE.**

Deed of Trust
SRAN [Loan No. 1503]

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 125 of 261

**TRUSTOR IS RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY BENEFICIARY. THE COST OF THIS INSURANCE MAY BE ADDED TO THE LOAN OR LOAN BALANCE. IF THE COST IS ADDED TO THE LOAN OR LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE TRUSTOR'S PRIOR COVERAGE LAPSED OR THE DATE TRUSTOR FAILED TO PROVIDE PROOF OF COVERAGE.**

**THE COVERAGE BENEFICIARY PURCHASES MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE TRUSTOR CAN OBTAIN ON TRUSTOR'S OWN AND MAY NOT SATISFY ANY NEED FOR PROPERTY DAMAGE COVERAGE OR ANY MANDATORY LIABILITY INSURANCE REQUIREMENTS IMPOSED BY APPLICABLE LAW.**

    **Section 5.06  Insurance Proceeds.** That after the happening of any casualty to the Property or any part thereof, Trustor shall give prompt written notice thereof to Beneficiary.

    (a)    In the event of any damage or destruction of the Improvements, Beneficiary shall have the option in its sole discretion of applying all or part of the insurance proceeds (i) to any indebtedness secured hereby and in such order as Beneficiary may determine, (ii) to the restoration of the Improvements, provided the Improvements are restored to good working condition, or (iii) to Trustor; provided  that at Trustor's election, the insurance proceeds shall be applied to restoration of the Improvements if Trustor is not then in default under the Note or the other Loan Documents and establishes to Beneficiary's reasonable satisfaction that the insurance proceeds together with Trustor's other resources, if required, would be sufficient to restore the Improvements to a condition satisfactory for operation of Trustor's agricultural business.

    (b)    In the event of such loss or damage all proceeds of insurance shall be payable to Beneficiary, and Trustor hereby authorizes and directs any affected insurance company to make payment of such proceeds directly to Beneficiary. After applying the proceeds to all indebtedness secured hereby, the balance of such proceeds, if any, shall be promptly paid to Trustor. Beneficiary is hereby authorized and empowered by Trustor to settle, adjust or compromise any claims for loss, damage or destruction under any policy or policies of insurance.

    (c)    Except to the extent that insurance proceeds are received by Beneficiary and applied to the indebtedness secured hereby, nothing herein contained shall be deemed to excuse Trustor from repairing or maintaining the Property or restoring all damage or destruction to the Property, regardless of whether or not there are insurance proceeds available or whether any such proceeds are sufficient in an amount, and the application or release by Beneficiary, of any insurance proceeds shall not cure or waive any default or notice of default under this Deed of Trust or invalidate any act done pursuant to such notice.

    **Section 5.07  Assignment of Policies Upon Foreclosure.** That in the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Property in extinguishment, in whole or in part, of the debt secured hereby, all right, title and interest of Trustor in and to all policies of insurance required by this Article V shall inure to the benefit of and pass to the successor in interest to Trustor or the purchaser or grantee of the Property.

Deed of Trust
SRAN [Loan No. 1503]

**Section 5.08    Indemnification; Subrogation; Waiver:**

(a)    If Trustee, Beneficiary or any of its members, officers, employees and agents (each in its capacity as an indemnified party, a "Beneficiary Indemnitee") is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, concerning this Deed of Trust or the Property or any part thereof or interest therein or the occupancy thereof by Trustor, then Trustor shall indemnify, defend, protect and hold harmless each Beneficiary Indemnitee from and against any and all claims, losses, liabilities, damages, assessments, adjustments, costs and expenses (including specifically, but without limitation, attorneys' fees and expenses of investigation incurred by counsel of such Beneficiary Indemnitee's choosing) (collectively, "Damages") incurred by such Beneficiary Indemnitee in connection with such suit or proceeding, unless such Damages arise as a direct result of the gross negligence or willful misconduct of the Beneficiary. If Trustee or Beneficiary commences any action against Trustor to enforce any of the terms hereof or because of the breach by Trustor of any of the terms hereof, or for the recovery of any such secured hereby, Trustor shall pay to the Trustee or Beneficiary (as applicable) such party's attorney's fees and expenses, and the right to such attorney's fees and expenses shall be deemed to have accrued whether or not incurred in connection with litigation, and if incurred in connection with litigation, shall include but not be limited to such fees, expenses, and costs as are incurred at trial and on appeal or discretionary review, and shall be enforceable whether or not such action is prosecuted to judgment. If Trustor breaches any term of this Deed of Trust, Trustee and Beneficiary may employ an attorney or attorneys to protect its respective rights hereunder, and in the event of such employment following any breach by Trustor, Trustor shall pay Trustee or Beneficiary (as applicable) such party's attorney's fees and expenses incurred by Beneficiary, whether or not an action is actually commenced against Trustor by reason of breach.

(b)    Trustor waives any and all right of claim or recovery against Trustee, Beneficiary, its members, officers, employees and agents, for loss of or damage to Trustor, the Property, Trustor's property or the property of others under Trustor's control from any cause insured against or required to be insured against by the provisions of this Deed of Trust.

(c)    All sums payable by Trustor hereunder shall be paid without notice, demand counterclaim, setoff, deduction or defense and without abatement, suspension, deferment, diminution or reduction, and the obligations and liabilities of Trustor hereunder shall in no way be released, discharged or otherwise affected (except as expressly provided herein) by reason of: (i) any damage to or destruction of or any condemnation or similar taking of the Property or any part thereof; (ii) any restriction or prevention of or interference with any use of the Property or any part thereof; (iii) any title defect or encumbrance or any eviction from the Property or the improvements or any part thereof by title paramount or otherwise; (iv) subject to provisions of applicable law, any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating to Beneficiary, or any action taken with respect to this Deed of Trust by the Trustee or any other trustee or receiver of Beneficiary, or by any court, in any such proceeding; (v) any claim which Trustor has or might have against Trustee, Beneficiary or Borrower (or any of them); (vi) any default or failure on the part of Trustee or Beneficiary to perform or comply with any of the terms hereof or of any other agreement with Trustor or any Borrower; or (vii) any other occurrence whatsoever, whether similar or dissimilar to the foregoing, whether or not Trustor shall have notice or knowledge of any of the foregoing. Except as expressly provided herein, and except as otherwise prohibited by applicable law, Trustor waives all rights now or hereafter conferred by statute or otherwise to any abatement, suspension, deferment, diminution or reduction of any sum secured hereby and payable by Trustor.

Page - 14

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 127 of 261

(d)     To the extent permitted by law, the Trustor expressly agrees that the Note, or any payment thereunder, may be extended from time to time, or the terms of payment or interest may otherwise be varied by agreement with any person now or hereafter liable for payment of the Note (including without limitation conversion of the Note to another product in accordance with the terms and provisions thereof), without in any way affecting the obligations of the Trustor hereunder or the lien, encumbrance and security interest created hereby.

### Section 5.09   Taxes and Impositions:

(a)     Trustor agrees to pay, prior to delinquency, all real property taxes and assessments, general and special, and all other taxes and assessments of any kind or nature whatsoever, including without limitation payments with respect to water rights (collectively, the "Impositions"); provided, however, that if, by law, any such Imposition is payable, or may at the option of the taxpayer be paid, in installments, Trustor may pay the same together with any accrued interest on the unpaid balance of such Imposition in installments as the same become due and before any fine, penalty, interest or cost may be added thereto for the nonpayment of any such installment and interest.

(b)     Trustor covenants to furnish Beneficiary within forty-five (45) days after the date upon which any such Imposition is due and payable by Trustor, official receipts of the appropriate taxing authority, or other proof satisfactory to Beneficiary, evidencing the payments thereof.

(c)     Trustor shall have the right before any delinquency occurs to contest or object to the amount or validity of any such Imposition by appropriate legal proceedings, but this shall not be deemed or construed in any way as relieving, modifying or extending Trustor's covenant to pay any such Imposition at the time and in the manner provided in this Section.

### Section 5.10   Power and Utilities. Trustor agrees to pay when due all power and utility charges which are incurred by Trustor for the benefit of the Property or which may become a charge or lien against the Property.

### Section 5.11   Water Rights.   Trustor represents and warrants that the water, water rights, water appropriations appurtenant to or otherwise serving, benefiting or being used upon the Property presently does afford, and shall be maintained during the Loan Term as defined in the Loan Documents at a level and of a nature sufficient to provide, the continuing, enforceable right to receive water on the Property from such sources, in such quantities and at such times and locations as has historically been available to the Property without interruption or substantially increased cost and in any event, based on current projections, sufficient to provide adequate water and/or drainage to continue the current and proposed operations on the Property.  All existing water, water rights, water appropriations benefiting or available to the Property shall be maintained in full force and effect for the benefit of the Property by Trustor and applied to beneficial use so as to maintain the validity and priority of such rights.  Trustor shall fully comply with, and not permit a default to occur under any water licenses, permits or delivery contracts used to provide water to the Property, and shall timely exercise all renewal or extension rights in such contracts.   Trustor shall not modify, amend or terminate any water, water rights, water appropriations benefiting the Property without Beneficiary's prior written consent.  Trustor shall comply with the rules, regulations and ordinances of any water district, water agency or groundwater management agency in which the Property or any portion thereof is located and pay all related fees and assessments prior to delinquency.  All irrigation wells and related facilities used to deliver irrigation water to any portion of the Property shall remain physically located within the boundaries of such Property or the

subject of valid, enforceable easements appurtenant to the Property and encumbered hereby. If the use of any irrigation facilities or water serving the Property requires consent or the use of other property, Trustor shall maintain in effect all requisite easements or other legally enforceable and assignable rights to use such facilities and/or water to service the Property. Trustor shall notify Beneficiary if the irrigation water supply to any portion of the Property is interrupted or subject to interruption for any reason other than temporarily for routine maintenance or repairs in a manner that does not impair the operation of the Property.

**Section 5.12   Actions by Beneficiary to Preserve Property.** That should Trustor fail to make any payment or to do any act as and in the manner provided in the Loan Documents, Beneficiary, in its own discretion, without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation, may reasonably make or do the same is such manner and to such extent as it may deem necessary to protect the security hereof. Trustor shall, immediately upon demand therefore by Beneficiary, pay all reasonable costs and expenses incurred by Beneficiary in connection with the exercise by Beneficiary of the foregoing rights, including without limitation costs of evidence of title, court costs, appraisals, surveys and attorney's fees.

That in the event Beneficiary is called upon to pay any sums of money to protect this Deed of Trust and the Note secured hereby as aforesaid, all monies advanced or due hereunder shall become immediately due and payable, together with interest at a rate as is set forth in the Note for regular and default interest

**Section 5.13   Survival of Warranties.** To fully and faithfully satisfy and perform the obligations of Trustor contained in the Loan Documents. All representations, warranties and covenants of Trustor contained therein shall survive the close of escrow and funding of the loan evidenced by the Note and shall remain continuing obligations, warranties and representations of Trustor during any time when any portion of the obligations secured by this Deed of Trust remain outstanding.

**Section 5.14   Eminent Domain.** That should the Property, or any part thereof or interest therein, be taken or damaged by reason of any public improvement or condemnation proceeding, or in any other manner ("**Condemnation**"), or should Trustor receive any notice or other information regarding such proceeding, Trustor shall give prompt written notice thereof to Beneficiary. Beneficiary shall be entitled to all compensation, awards and other payments or relief therefore, and shall be entitled at its option to commence, appear in and prosecute in its own name any action or proceedings. Beneficiary shall also be entitled to make any compromise or settlement in connection with such taking or damage. All such compensation, awards, damages, rights of action and proceeds awarded to Trustor, including Proceeds, are hereby assigned to Beneficiary and Trustor agrees to execute such further assignments of the Proceeds as Beneficiary may require.

**Section 5.15   Additional Security.** That in the event Beneficiary at any time holds additional security for any of the obligations secured hereby, it may enforce the sale thereof or otherwise realize upon the same, at its option, either before or concurrently herewith or after a sale is made hereunder.

**Section 5.16   Inspections.** That Beneficiary, or its agents, representatives or workmen, upon giving reasonable notice to Trustor, are authorized to enter at any reasonable time upon or in any part of the Property for the purpose of inspecting the same and for the purpose of performing any of the acts it is authorized to perform under the terms of any of the Loan Documents.

Deed of Trust
SRAN [Loan No. 1503]

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 129 of 261

**Section 5.17    Financial Statements.** That Trustor will cause to be delivered to Beneficiary, without expense to Beneficiary, such financial records and information as are required by Loan Agreement.

**Section 5.18    Environmental Representations and Covenants.** The representations and warranties of Trustor set forth in the Environmental Indemnity Agreement are incorporated herein by this reference. Trustor shall perform and comply with all of the covenants of the Environmental Indemnity Agreement, which are incorporated herein by this reference. These representations, warranties, and covenants shall survive the release of this Deed of Trust.

**Section 5.19    Agricultural Use Only.** Trustor shall use the Loan funds and all proceeds of the Secured Indebtedness for agricultural business or agricultural purposes only and shall not use such funds or proceeds for personal, family or household purposes.

**Section 5.20    Plantings.** Trustor agrees that "Plantings" includes that part of the Property now maintained and operated primarily for the production of crops. Trustor further agrees that in the event any portion of the Plantings are based upon a patent, Trustor represents and covenants to Lender that, to the extent applicable, Trustor has paid all necessary fees for the patented varieties planted on the Property, and in the event of a default in any of the terms of this Deed of Trust, the Note, or the Loan Agreement, Trustor hereby grants to Lender, to the extent applicable, a license to the patented varieties and transfers to Lender all rights associated with such patents.

**Section 5.21    [reserved].**

**Section 5.22    Acknowledgment.** It is in the best interest of Trustor to enter into this Deed of Trust and the Note, and the amounts loaned to the Borrower under the Note will directly or indirectly inure to the benefit of the Trustor.

**Section 5.23    Other Covenants.** Trustor shall perform and comply with all of the covenants and provisions of the Loan Agreement, which are incorporated herein by this reference.

## ARTICLE VI
## DUE ON SALE

**Section 6.01    Due on Sale or Encumbrance.** If Trustor sells, conveys, assigns, transfers, or further pledges, mortgages or otherwise encumbers (hereinafter collectively referred to as a "**Transfer**") all or any part of the Property or any interest in the Property, whether any such Transfer occurs directly or indirectly, voluntarily or involuntarily, or by operation of law, without the prior written consent of Beneficiary (which may be withheld in Beneficiary's sole and absolute discretion) the entire Secured Indebtedness shall become immediately due and payable at the election of Beneficiary, without notice to Trustor. For purposes of this Deed of Trust, a transfer of the interests in Trustor, whether direct or indirect or in one or more transactions, shall be deemed a Transfer.

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 130 of 261

# ARTICLE VII
## REMEDIES

**Section 7.01    Remedies Following Event of Default.** If an Event of Default exists, in addition to any other rights, remedies and powers that Beneficiary may have under the other Loan Documents or as provided by law, Beneficiary (either personally or by its agents, nominees, or attorneys) may immediately take such action, without notice or demand, as it deems advisable to protect and enforce the lien and security interest hereof and its rights hereunder, including without limitation the following actions, each of which may be pursued in its own name or in the name of Trustor, concurrently or otherwise, at such time and in such manner as Beneficiary may determine in its sole discretion, without impairing or otherwise affecting the other rights, remedies, and powers of Beneficiary:

(a)    **Acceleration.** Declare the entire Secured Indebtedness immediately due, payable, and collectible, regardless of maturity, and, in that event, the entire Secured Indebtedness shall become immediately due, payable, and collectible.

(b)    **Entry and Possession.** (i) Enter upon and take possession of the Property, with or without the appointment of a receiver or an application therefor; (ii) dispossess and exclude Trustor and its agents and servants wholly therefrom by summary proceedings or otherwise; (iii) take possession of all books, records, and accounts relating thereto; (iv) use, operate, manage, control, insure, maintain, repair, restore, improve, alter, and otherwise deal with all and every part of the Property and conduct the business thereat; (v) make, cancel, enforce, or modify Leases and obtain and evict tenants; (vi) demand, sue for, collect, and receive the Rents, incomes, issues, and profits of the Property and apply the same, after payment of all charges and expenses (including reasonable attorneys' fees and expenses), on account of the Secured Indebtedness; or (vii) require Trustor to transfer and assign to Beneficiary, in form satisfactory to Beneficiary, Trustor's interest as lessor in any Lease now or hereafter affecting the whole or any part of the Property, it being understood that in the event Trustor fails to render an assignment of Leases to Trustor this document shall upon the occurrence of any Event of Default serve as a de facto notice of such assignment to any interested party.

(c)    **Payment of Sums.** Pay any sums in any form or manner deemed expedient by Beneficiary to protect the lien and security interest of this Deed of Trust or to cure any Event of Default other than payment of principal of or interest on the Secured Indebtedness; make any payment hereby authorized to be made according to any bill, statement, or estimate furnished or procured from the appropriate public officer or the party claiming payment without inquiry into the accuracy or validity thereof, and the receipt of any such public officer or party in the hands of Beneficiary shall be conclusive evidence of the validity and amount of items so paid, in which event the amounts so paid, with interest thereon from the date of such payment at the Default Rate shall be added to and become a part of the Secured Indebtedness and be immediately due and payable to Beneficiary; and Beneficiary shall be subrogated to any encumbrance, lien, claim, or demand, and to all the rights and securities for the payment thereof, paid or discharged with the principal sum secured hereby or by Beneficiary under the provisions hereof, and any such subrogation rights shall be additional and cumulative security to this instrument.

(d)    **Judicial Foreclosure.** Institute a foreclosure action in accordance with any applicable law in effect on the date foreclosure is commenced, or take any other action as may be allowed, at law or in equity, for the enforcement of the Secured Indebtedness and realization on the Property (or such part or parts thereof as Beneficiary may from time to time elect to foreclose upon) or any other security afforded

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 131 of 261

by the Loan Documents. In the case of a judicial proceeding, Beneficiary may proceed to final judgment and execution for the amount of the Secured Indebtedness owed as of the date of the judgment, together with all costs of suit, reasonable attorneys' fees, and interest on the judgment at the maximum rate permitted by law from the date of the judgment until paid. If Beneficiary is the purchaser at the foreclosure sale of the Property, in lieu of paying cash Beneficiary may make settlement for all or a portion of the purchase price by crediting the net sale proceeds (after deducting costs expenses including reasonable attorneys' fees and expenses) against the Secured Indebtedness.

   (e)  **Deficiency Judgment.** If permitted by applicable law, Beneficiary may sue for and obtain a judgment for any deficiency remaining in the Secured Indebtedness after applications of all amounts received from the exercise of the rights provided in Section 7.01(d).

   (f)  **Power of Sale.** Beneficiary may elect to sell the Property which is real property or which Lender has elected to treat as real property as follows:

     (i)  Beneficiary shall deliver a written declaration of default and demand for sale to Trustee. Upon Trustee's receipt of such declaration of default, Trustee shall give and record a notice of default and election to sell as may then be required by law.

     (ii)  After the expiration of such time as may then be required by law following the recordation of such notice of default, and the giving of a notice of sale as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in such notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash and lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time and place fixed by the preceding postponement. After making such sale, Trustee shall deliver to the purchaser or purchasers its deed or deeds conveying the Property so sold, but without any covenant or warranty, express or implied. Any person, including Trustor, Trustee, or Beneficiary may purchase at such sale. If Beneficiary is the purchaser at the sale, in lieu of paying cash Beneficiary may make settlement for all or a portion of the purchase price by crediting the net sale proceeds (after deducting costs expenses including reasonable attorneys' fees and expenses) against the Secured Indebtedness.

     (iii)  After deducting all costs, fees, and expenses of Trustee and of the trust created by this Deed of Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: (A) all sums expended in connection with such sale, together with reasonable expenses of the trust created hereby, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; (B) all other sums advanced or expended by Beneficiary and secured hereby; (C) the Secured Indebtedness remaining unpaid; and (D) the remainder, if any, to the person or persons legally entitled thereto.

     (iv)  The power of sale under this Deed of Trust shall not be exhausted by any one or more sales (or attempts to sell) as to all or any portion of the Property remaining

Deed of Trust
SRAN [Loan No. 1503]

Case: 25-50765 Doc# 30 Filed: 06/01/25 Entered: 06/01/25 20:57:11 Page 132 of 261

unsold, but shall continue unimpaired until all of the Property has been sold by exercise of the power of sale in this Deed of Trust and all Secured Indebtedness has been paid and discharged in full.

**Section 7.02   UCC Sale.** With respect to Personal Property, Beneficiary shall have the right: (a) to proceed against Personal Property in accordance with Beneficiary's rights and remedies with respect to the Land, in which event the provisions of the UCC shall not govern the default and Beneficiary's remedies; or (b) to proceed against the Personal Property separately from the Land in accordance with the UCC. If Beneficiary elects to proceed under the UCC, then Thirty (30) days' notice of sale of the Personal Property shall be deemed reasonable notice and the reasonable expenses of retaking, holding, preparing for sale, selling, and the like incurred by Beneficiary shall include, but not be limited to, reasonable attorneys' fees and expenses. At Beneficiary's request, Trustor shall assemble the Personal Property and make it available to Beneficiary at a place designated by Beneficiary which is reasonably convenient to both parties.

**Section 7.03   Sale in Parcels.** In any trustee sale or action to foreclose this Deed of Trust, at the election of Beneficiary, the Property or any part thereof may be sold together or separately, in one sale or separate sales, in one parcel and as an entirety, or in such parcels, manner, or order as Beneficiary in its sole discretion may elect, and one or more exercises of the rights and powers herein granted shall not extinguish or exhaust Beneficiary's rights and powers unless the entire Property is sold or the Secured Indebtedness is paid in full. Trustor expressly waives any right which it may have to direct the order in which any of the Property shall be sold, and its rights, if any, to require the Property be sold as separate tracts, lots, units, or parcels.

**Section 7.04   Receiver.** Upon the occurrence of an Event of Default, Beneficiary shall have the right to apply for the appointment of a receiver, trustee, liquidator, or conservator (a **"Receiver"**) of the Rents and profits, or of the Property, or both, without notice, and shall be entitled to the appointment of such a Receiver as a matter of right, without consideration of the value of the Property as security for the amounts due Beneficiary, or the solvency of any person or entity liable for the payment of such amounts. Trustor hereby consents to such appointment and waives notice of any application therefor (except as may be required by applicable law) and any requirements on the receiver or Beneficiary to post any surety or other bond.

**Section 7.05   Environmental Remedies.**

(a)      Beneficiary may sue for breach of Trustor's covenants, representations, warranties, and/or indemnities set forth in Section 5.18 above, in any separate environmental indemnity or other agreement relating to environmental matters, pursuant to California Code of Civil Procedure Section 736, and may seek the recovery of any and all costs, damages, expenses, fees, penalties, fines, judgments, indemnification payments to third parties, and other out-of-pocket costs or expenses actually incurred by Beneficiary (collectively the **"Environmental Costs"**) or advanced by Beneficiary for the cleanup, remediation or other response action required by law, or which Beneficiary believes necessary to protect the Property, it being conclusively presumed between Beneficiary and Trustor that all such Environmental Costs incurred or advanced by Beneficiary relating to the cleanup, remediation, or other response action of or to the Property were made by Beneficiary in good faith.

(b)      In the event that any portion of the Property is determined to be "environmentally impaired" (as defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected

Page - 20

Deed of Trust
SRAN [Loan No. 1503]

parcel" (as defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Lender's or Trustee's rights and remedies under this Deed of Trust, Lender may elect to: (i) exercise its right under California Code of Civil Procedure Section 726.5(a) to waive its lien on such environmentally impaired or affected portion of the Property and (ii) exercise (A) the rights and remedies of an unsecured creditor, including reduction of its claim against Trustor to judgment, and (B) any other rights and remedies permitted by law. For purposes of determining Lender's right to proceed as an unsecured creditor under California Code of Civil Procedure Section 726.5(a), Trustor shall be deemed to have willfully permitted or acquiesced in a release or threatened release of hazardous materials, within the meaning of California Code of Civil Procedure Section 726.5(d)(1), if the release or threatened release of hazardous materials was knowingly or negligently caused or contributed to by any lessee, occupant, or user of any portion of the Property and Trustor knew or should have known of the activity by such lessee, occupant or user which caused or contributed to the release or threatened release.

(c)    All Environmental Costs and costs and expenses, including, but not limited to, attorneys' fees, incurred by Lender in connection with any action commenced under this Section 7.05, including any action pursuant to California Code of Civil Procedure Section 736 or California Code of Civil Procedure Section 726.5(b), plus interest thereon at the Default Rate until paid, shall be added to the Secured Indebtedness secured by this Deed of Trust and shall be due and payable to Beneficiary upon its demand.

(d)    Trustor acknowledges and agrees that notwithstanding any term or provision contained herein or in the other loan documents, all environmental costs incurred pursuant to this Deed of Trust and all judgments and awards entered against trustor in respect of or pertaining to the provisions of this Section 7.05, shall be exceptions to any nonrecourse or exculpatory provision of the loan documents, whether specifically set forth in the loan documents or provided by statute, and trustor shall be fully and personally liable for all such environmental costs and for all such judgments and awards entered against trustor thereunder, and such liability shall not be limited to the original principal amount of the Secured Indebtedness. Trustor's obligations with respect to such Environmental Costs and judgments and awards shall survive a foreclosure, deed in lieu of foreclosure, release, reconveyance, or any other transfer of the Property or this Deed of Trust.

**Section 7.06    Beneficiary's Right to Sue.** Beneficiary shall have the right from time to time to sue for any sums, whether interest, principal, or any installment of either or both, taxes, penalties, or any other sums required to be paid under the terms of this Deed of Trust, without regard to whether or not all of the Secured Indebtedness shall be due on demand and without prejudice to the right of Beneficiary thereafter to enforce any appropriate remedy against Trustor, including an action of foreclosure, or any other action, for a default or defaults by Trustor existing at the time such earlier action was commenced.

**Section 7.07    Actions and Proceedings.** Beneficiary has the right to appear in and defend any action or proceeding brought with respect to the Property and to bring any action or proceeding, in the name and on behalf of Trustor, which Beneficiary, in its discretion, decides should be brought to protect its interest in the Property.

**Section 7.08    No Obligation to Marshal Assets.** In exercising its rights and remedies hereunder, Beneficiary shall have no obligation whatsoever to marshal assets, or to realize upon all of the Property. Beneficiary shall have the right to realize upon all or any part of the Property from time to time as Beneficiary deems appropriate. Trustor hereby waives any right to have any of the Property marshaled in connection with any sale or other exercise of Beneficiary's rights, remedies, and powers hereunder.

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 134 of 261

**Section 7.09   Remedies Cumulative.** The rights, powers, and remedies of Beneficiary granted and arising under this Deed of Trust and the other Loan Documents are separate, distinct, and cumulative of other rights, powers, and remedies granted herein or therein and all other rights, powers, and remedies that Beneficiary may have at law or in equity, none of which are to the exclusion of the others and all of which are cumulative to the rights, powers, and remedies provided at law for the collection of indebtedness, enforcement of rights under mortgages, and preservation of security. No act of Beneficiary shall be construed as an election to proceed under any one provision herein or under the Loan Agreement, this Deed of Trust, or any other Loan Document to the exclusion of any other provision, or an election of remedies to the bar of any other remedy allowed at law or in equity, anything herein or otherwise to the contrary notwithstanding.

**Section 7.10   Discontinuance of Proceedings.** If Beneficiary commences the enforcement of any right, power, or remedy, whether afforded under this Deed of Trust or otherwise, and including without limitation foreclosure or entry upon the Property, and such enforcement is then discontinued or abandoned for any reason, or is determined adversely to Beneficiary, then and in every such case Trustor and Beneficiary shall be restored to their former positions and rights hereunder, without waiver of any Event of Default and without novation, and all rights, powers, and remedies of Beneficiary shall continue as if no such enforcement had been commenced.

**Section 7.11   Expenses.** Trustor shall reimburse Beneficiary on demand for all costs, fees, and expenses (including reasonable expenses and fees of its counsel) incurred by Beneficiary in connection with the transactions contemplated hereby including the negotiation, documentation, and execution of this Deed of Trust and the other Loan Documents and the enforcement of Beneficiary's rights, powers, or remedies hereunder, thereunder, or available under applicable law, all of which sums are part of the Secured Indebtedness and are secured by this Deed of Trust. Trustor's statutory rights of redemption, if any, are expressly conditioned upon Trustor's payment of the foregoing and of all sums required under any applicable redemption statute and performance of all required acts thereunder.

**Section 7.12   Trustor's Waivers.** To the fullest extent permitted by law, each Trustor, for Trustor and its successors and assigns, and for any and all persons ever claiming any interest in the Property, except as otherwise provided herein or in the other Loan Documents, hereby:

(a)      Waives any and all rights which it may have to notice prior to seizure by Beneficiary of the Property or any part thereof under the provisions of this Deed of Trust, whether such seizure is by writ of possession or otherwise.

(b)      Waives and renounces all right of homestead exemption in the Property and any other right to designate all or any portion of the Property as exempt from forced sale under any provision of the Constitution or laws of the United States, the state where the Land and Improvements are located, or any other state in the United States.

(c)      Acknowledges the right to accelerate the Secured Indebtedness and the power given to Beneficiary to sell the Property by foreclosure without any notice other than such notice (if any) as is specifically required to be given hereunder or under applicable law and waives presentment, demand for payment, protest, notice of dishonor, notice of protest or nonpayment, notice of intent to accelerate, notice of acceleration of maturity, and diligence in connection with the enforcement of the Secured Indebtedness or the taking of any action to collect sums owing under the Loan Documents.

Deed of Trust
SRAN [Loan No. 1503]

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 135 of 261

(d)     Waives the benefit of all laws now or subsequently in effect providing for: (i) any appraisement before sale of any portion of the Property; (ii) any extension of the time for the enforcement of the collection of the Secured Indebtedness or the creation or extension of a period of redemption from any sale made in collecting such debt; and (iii) exemption of the Property from attachment, levy, or sale under execution or exemption from civil process.

(e)     Agrees not at any time to insist upon, plead, claim, or take the benefit or advantage of any law now or hereafter in force providing for any appraisement, valuation, stay, exemption, extension, or redemption, or requiring foreclosure of this Deed of Trust before exercising any other remedy granted hereunder.

(f)     Waives the right to assert any statute of limitations as a defense to the Secured Indebtedness secured by this Deed of Trust.

(g)     Waives the benefits of California Code of Civil Procedure § 431.70 and any right that Trustor may have to offset any portion of the Secured Indebtedness by all or any part of any claim, cause of action, counterclaim, or cross-claim, whether liquidated or unliquidated, that Trustor may have against Beneficiary.

**Section 7.13   Right of Set-Off.** In addition to any rights, remedies, or powers now or hereafter granted under applicable law and not by way of limitation of any such rights, Beneficiary is hereby authorized by Trustor at any time or from time to time, without notice to Trustor, any other Obligor, or any other person, any such notice being hereby expressly waived, to set-off any obligations or liabilities any time held or owing by Beneficiary to or for the credit or the account of Trustor or any other Obligor against the Secured Indebtedness and any other obligations and liabilities of Trustor or any such Obligor to Beneficiary, including, but not limited to, all claims of any nature or description arising out of or connected with this Deed of Trust, the Loan Agreement, or any other Loan Document, irrespective of whether or not Beneficiary has made any demand hereunder or has declared the Secured Indebtedness to be due and owing and although said obligations and liabilities, or any of them, may be contingent or not matured.

**Section 7.14   Right to Cure Violations.** If Trustor or Beneficiary receives notice of a current or pending violation of any applicable law, rule, regulation, ordinance, code, requirement, covenant, condition, restriction, order, license, permit, or approval related to the maintenance, repair, replacement, nuisance, or other condition of the Property or any Improvements or tangible property thereon (a "**Compliance Notice**") and: (a) an Event of Default has occurred and is continuing; or (b) such violation in the reasonable good faith judgment of Beneficiary is likely to have a material adverse effect on its rights and remedies under this Deed of Trust or on the value of the Property, then Beneficiary and any person authorized by Beneficiary shall have the right, but not the obligation, to enter upon the Property at any reasonable time to repair, alter, replace, clean up, or perform any necessary or appropriate work or maintenance activities that, in Beneficiary's sole discretion, are necessary or advisable to comply with the requirements of the Compliance Notice and cure the alleged, possible, or pending violation. Beneficiary shall have the right to remove any tangible property, motor vehicles, rubbish, stored materials, debris, refuse, trash, or other items on the Property and to dispose of the same as Beneficiary may determine in its sole discretion without being deemed guilty of trespass or theft of such items.

Deed of Trust
SRAN [Loan No. 1503]

## ARTICLE VIII
## TRUSTEE PROVISIONS

**Section 8.01    Trustee.** The Trustee shall be deemed to have accepted this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The trust hereby created shall be irrevocable by Trustor.

**Section 8.02    Substitution of Trustee.** Beneficiary, at Beneficiary's option, may from time to time, by written instrument, substitute a successor or successors to any Trustee named in or acting under this Deed of Trust, which instrument, when executed and acknowledged by Beneficiary and recorded in the manner required by law, shall constitute conclusive proof of the proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the predecessor Trustee, succeed to all right, title, estate, powers, and duties of such predecessor Trustee, including, without limitation, the power to reconvey the Property. The instrument shall contain the names of the original Trustor, Trustee, and Beneficiary under this Deed of Trust, the book and page or instrument or document number at which, and the county or counties in which, this Deed of Trust is recorded, and the name and address of the substitute Trustee. If any notice of default has been recorded under this Deed of Trust, this power of substitution cannot be exercised until all costs, fees, and expenses of the then acting Trustee have been paid. On such payment, the then acting Trustee shall endorse receipt of the payment on the instrument of substitution.

**Section 8.03    Power of Trustee.** At any time, without liability and without notice to Trustor, on Beneficiary's written request and presentation of the Note and this Deed of Trust to Trustee for endorsement, and without altering or affecting (a) the personal liability of Trustor or any other person for the payment of the Secured Indebtedness, or (b) the lien of this Deed of Trust on the remainder of the Property as security for the repayment of the full amount of the Secured Indebtedness, or (c) any right or power of Beneficiary or Trustee with respect to the remainder of the Property, Trustee may: (i) reconvey or release any part of the Property from the lien of this Deed of Trust; (ii) approve the preparation or filing of any map or plat of the Property; (iii) join in the granting of any easement burdening the Property; or (iv) enter into any extension or subordination agreement affecting the Property or the lien of this Deed of Trust.

**Section 8.04    Reconveyance by Trustee.** Upon written request of Beneficiary stating that the Secured Indebtedness has been paid in full, and upon surrender of this Deed of Trust and the Note to Trustee for cancellation and retention, and upon payment by Trustor of Trustee's fees, Trustee shall reconvey to Trustor, or the person legally entitled thereto, without warranty, any portion of the Trust Estate then held hereunder. The recitals in such reconveyances of any matters or facts shall be conclusive proof of the truthfulness thereof. Such request and reconveyance shall operate as a reassignment of the Rents assigned to Beneficiary in this Deed of Trust.

**Section 8.05    Compensation and Indemnification.** Trustee shall be entitled to reasonable compensation for all services rendered or expenses incurred in the administration or execution of the trusts hereby created and Trustor hereby agrees to pay same. Trustee shall be indemnified, held harmless, and reimbursed by Trustor for any liability, damage, or expense, including attorneys' fees and amounts paid in settlement, which Trustee may incur or sustain in the execution of this trust or in the doing of any act that Trustee is required or permitted to do by the terms hereof or by law.

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 137 of 261

## ARTICLE IX
## NOTICES

**Section 9.01** Except as otherwise specified in this Deed of Trust or any other Loan Document, any notice required to be given pursuant to this Deed of Trust shall be given in writing. Any notice, consent, approval, demand or other communication in connection with this Deed of Trust shall be deemed to be given if given in writing addressed as provided below (or to the addressee at such other address as the addressee shall have specified by notice actually received by the addressor), and if either (a) actually delivered in fully legible form to such address or (b) in the case of a letter, unless actual receipt of the notice is required by any Loan Document, five days shall have elapsed after the same shall have been deposited in the United States mails, with first-class postage prepaid.

      (a)     If to a Trustor, to it at the address listed on the introductory paragraph;

      (b)     If to the Beneficiary, to it at the address listed on the introductory paragraph

**Section 9.02** Any party may change its address for purposes of this Article IX by giving written notice as provided in this Article IX.

**Section 9.03** All notices and demands delivered by a party's attorney on a party's behalf shall be deemed to have been delivered by said party. Notices shall be valid only if served in the manner provided in this Article IX.

**Section 9.04** Trustor hereby requests that a copy of any notice of default and every notice of sale hereunder be mailed to it as provided by law at the Trustor's address set forth in Section 9.01.

## ARTICLE X
## MISCELLANEOUS

**Section 10.01 Security Intended.** Notwithstanding any provision of this Deed of Trust to the contrary, the parties intend that this document is security for the payment and performance of the obligations set forth herein and will be a "deed of trust". If, despite that intention, a court of competent jurisdiction determines that this document does not qualify as a "trust deed" or "deed of trust", then, *ab initio*, this instrument will be deemed a realty mortgage and will be enforceable as a realty mortgage, Trustor will be deemed a "mortgagor", Beneficiary will be deemed a "mortgagee", and Trustee will be disregarded and all references to the "Trustee" will be deemed to refer to the "mortgagee" to the extent not inconsistent with interpreting this instrument as though it were a realty mortgage. As a realty mortgage, Trustor, as mortgagor, will be deemed to have conveyed the Trust Property *ab initio* to the Beneficiary as mortgagee, the conveyance as a security to be void upon condition that Trustor pay and perform all its obligations set forth herein

**Section 10.02 Time of the Essence.** Time is (and shall be) of the essence in this Deed of Trust and the other Loan Documents.

**Section 10.03 Beneficiary's Reliance.** All covenants, agreements, representations and warranties made in this Deed of Trust or any other Loan Document or in certificates delivered pursuant hereto shall be deemed to have been relied on by the Beneficiary, notwithstanding any investigation made

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 138 of 261

by the Beneficiary on its behalf, and shall survive the execution and delivery to the Beneficiary hereof and thereof.

**Section 10.04 Amendments, Extensions, and Modifications.** No amendment, supplement, or other modification of this Deed of Trust shall be effective unless it is in writing and executed by Trustor and Beneficiary.

**Section 10.05 Counterparts; Entire Agreement.** This Deed of Trust and any amendments, waivers, consents, or supplements hereto may be executed in counterparts, each of which shall constitute an original, but all taken together shall constitute a single contract. This Deed of Trust and the other Loan Documents constitute the entire contract of Trustor and Beneficiary with respect to the subject matter hereof and supersede all previous agreements and understandings, oral or written, with respect thereto. Delivery of an executed counterpart of a signature page to this Deed of Trust and the Loan Documents or any amendment, modification, or supplement thereto by facsimile or in electronic (i.e., ".pdf" or ".tif") format shall be effective as delivery of a manually executed counterpart of this Deed of Trust and the Loan Documents.

**Section 10.06 Successors and Assigns.** This Deed of Trust may be assigned or transferred, in whole or in part, by Beneficiary to any person at any time without notice to or the consent of Trustor. Trustor may not assign or transfer this Deed of Trust or any of its rights hereunder without the prior written consent of Beneficiary. This Deed of Trust shall inure to the benefit of and be binding upon the parties hereto and their permitted assigns. The terms "Trustor" and "Beneficiary" shall include the legal representatives, heirs, executors, administrators, successors, and assigns of the parties hereto, and all those holding under either of them. The term "Beneficiary" shall include any payee of the Secured Indebtedness and any transferee or assignee thereof, whether by operation of law or otherwise.

**Section 10.07 No Merger.** In the event that Beneficiary's interest under this Deed of Trust and title to the Property or any estate therein shall become vested in the same person or entity, this Deed of Trust shall not merge in such title but shall continue as a valid lien on the Property for the amount secured hereby, unless expressly provided otherwise in writing executed by the person in whom such interests, title, and estate are vested.

**Section 10.08 Relationship of Parties.** The relationship of Beneficiary to Trustor is that of a creditor or lender to an obligor (inclusive of a person obligated on a supporting obligation) or debtor; and in furtherance thereof and in explanation thereof, Beneficiary has no fiduciary, trust, advisor, business consultant, guardian, representative, partnership, joint venture, or other similar relationship to or with Trustor and no such relationship shall be drawn or implied from this Deed of Trust or any of Beneficiary's actions or inactions hereunder or with respect hereto or from any prior relationship between the parties. Beneficiary has no obligation to Trustor or any other person relative to administration of the Secured Indebtedness or the Property, or any part or parts thereof.

**Section 10.09 Joint and Several Liability.** If more than one party executes this Deed of Trust as a trustor, the term "Trustor" means all parties signing, and each of them, and each agreement, obligation, and Secured Indebtedness of Trustor shall be and mean the several as well as joint undertaking of each of them.

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 139 of 261

**Section 10.10  Headings.** The headings of the various articles, sections, and subsections in this Deed of Trust are for reference only and shall not define, expand, or limit any of the terms or provisions hereof.

**Section 10.11  Severability.** If any term or provision of this Deed of Trust is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Deed of Trust or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon any determination that any term or other provision hereof is invalid, illegal, or unenforceable, Trustor and Beneficiary shall negotiate in good faith to modify this Deed of Trust so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

**Section 10.12  Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**Section 10.13  Governing Law.** This Deed of Trust and any claim, controversy, dispute, or cause of action (whether in contract, equity, tort, or otherwise) based upon, arising out of, or relating to this Deed of Trust and the transactions contemplated hereby shall be governed by and construed in accordance with the laws of the State of California, without regard to principles of conflicts of law.

**Section 10.14  Submission to Jurisdiction.**

(a)     Trustor hereby irrevocably and unconditionally: (i) agrees that any legal action, suit, or proceeding arising out of or relating to this Deed of Trust may be brought in the courts of the State of California or of the United States District Court for the Eastern District of California; and (ii) submits to the jurisdiction of any such court in any such action, suit, or proceeding. Final judgment against Trustor in any action, suit, or proceeding shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment.

(b)     Nothing in this Section 10.14 shall affect the right of Beneficiary to: (i) commence legal proceedings or otherwise sue Trustor in any other court having jurisdiction over Trustor; or (ii) serve process upon Trustor in any manner authorized by the laws of any such jurisdiction.

**Section 10.15  Waiver of Venue.** Trustor hereby irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Deed of Trust or the Secured Indebtedness in any court referred to in Section 10.13 and the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

**Section 10.16  Waiver of Jury Trial.** TO THE FULLEST EXTENT PERMITTED BY LAW, EACH TRUSTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS DEED OF TRUST, THE OTHER LOAN DOCUMENTS, THE SECURED INDEBTEDNESS, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY WHETHER BASED ON CONTRACT, EQUITY, TORT, OR ANY OTHER THEORY.

Deed of Trust
SRAN [Loan No. 1503]

**Section 10.17 Judicial Reference.** In the event that the jury trial waiver contained in Section 10.16 shall be held or deemed to be unenforceable, Trustor hereby agrees that any controversy, dispute, or claim between the parties arising out of or relating to this Deed of Trust shall be resolved by a reference proceeding in California in accordance with the provisions of California Code of Civil Procedure § 638. The referee shall be a retired California state court judge selected by mutual written agreement of the parties. If the parties are unable to agree upon a referee within ten (10) calendar days after one party serves a written notice of its intent to commence a judicial reference proceeding on the other party, then the referee will be selected by the court in accordance with California Code of Civil Procedure § 640(b). The referee shall be appointed to sit as a temporary judge, with all of the powers of a temporary judge, as authorized by law, and upon selection should take and subscribe to the oath of office as provided for in Rule 244 of the California Rules of Court (or any subsequently enacted Rule). The referee shall determine the manner in which the reference proceeding is conducted including the time and place of all hearings, the order of presentation of evidence, and all other questions that arise with respect to the course of the reference proceeding. The referee shall render a written statement of decision and shall conduct the proceedings in accordance with the California Code of Civil Procedure, the California Rules of Court, and the California Evidence Code, except as otherwise specifically agreed by the parties and approved by the referee. The referee's statement of decision shall set forth findings of fact and conclusions of law. The referee's decision shall be entered as a judgment in the court in accordance with the provisions of California Code of Civil Procedure §§ 644 and 645, and shall be appealable in accordance with California law. If the enabling legislation which provides for appointment of a referee is repealed (and no successor statute is enacted), any dispute between the parties that would otherwise be determined by the reference procedure herein described will be resolved and determined by arbitration. The arbitration will be conducted by a retired California state court judge, in accordance with the California Arbitration Act, California Code of Civil Procedure §§ 1280 through 1294.2 as amended from time to time. This Section 10.13 shall not be deemed to limit or constrain Beneficiary's right to set off, to obtain provisional or ancillary remedies, to interplead funds in the event of a dispute, to exercise any security interest or lien Beneficiary may hold in the Property, or to comply with the legal process involving Trustor's accounts or other property.

**Section 10.18 No Waiver; No Course of Dealing; No Invalidity.** No failure to exercise and no delay in exercising on the part of Beneficiary of any right, remedy, or power hereunder or rights, remedies, and powers otherwise provided by law or available in equity shall operate as a waiver thereof or preclude the exercise thereof during the continuance of any Event of Default or if any subsequent Event of Default occurs, nor shall any single or partial exercise of any right, remedy, or power hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, or power. No act or inaction of Beneficiary under this Deed of Trust shall be deemed to constitute or establish a "course of performance or dealing" that would require Beneficiary to so act or refrain from acting in any particular manner at a later time under similar or dissimilar circumstances. Wherever possible, each provision of this Deed of Trust shall be interpreted in such manner as to be effective and valid to the maximum extent allowed under applicable law.

**Section 10.19 After-Acquired Property.** This Deed of Trust shall encumber, encompass, cover, and apply to and include any and all "after-acquired property" of Trustor located at, adjacent, or adjoining to or in any way associated with the use or operation of Property, and such after-acquired property shall be a part of the Property. In furtherance of the foregoing, Trustor has given, granted, bargained, sold, and conveyed, and by these presents does give, grant, bargain, sell, and convey unto Beneficiary all of Trustor's right, title, and interest in and to said after-acquired property. The after-acquired property identified by Beneficiary from time to time may also be identified in a notice of

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 141 of 261

extension filed in the real property records in which this Deed of Trust is recorded or in any other county in which the after-acquired property is located. Trustor agrees that Beneficiary has the absolute, irrevocable right and power, which right and power is coupled with an interest, to file one or more notices of extension, and that all after-acquired property of Trustor identified by Beneficiary, whether through a notice of extension or otherwise, shall secure the due and punctual payment and performance of all of the Secured Indebtedness as and when the same becomes due and payable, with interest (including Post-Petition Interest) thereon, and all renewals, extensions, rearrangements, modifications, replacements, amendments, amendments and restatements, or supplements thereof. This Section 10.19 is intended to be and is an "after-acquired property clause" and shall be construed in accordance with the provisions of applicable law of the state in which the Land and Improvements are located that authorizes or governs after-acquired property clauses in deed of trust.

**Section 10.20 Tax on Secured Indebtedness or Deed of Trust.** In the event of the passage, after the date of this Deed of Trust, of any law deducting from the value of Property for the purposes of taxation, any lien thereon, or imposing upon Beneficiary the obligation to pay the whole, or any part, of the taxes or assessments or charges or liens herein required to be paid by Trustor, or changing in any way the laws relating to the taxation of deeds of trust, mortgages, or debts as to affect the Deed of Trust or the Secured Indebtedness, the entire unpaid balance of the Secured Indebtedness shall, at the option of Beneficiary, become immediately due and payable; provided, however, that if, in the opinion of Beneficiary, it shall be lawful for Trustor to pay such taxes, assessments, or charges, or to reimburse Beneficiary therefor, then there shall be no such acceleration of the time for payment of the unpaid balance of the Secured Indebtedness if Trustor pays such taxes or assessments or reimburses Beneficiary for them.

[SIGNATURE PAGE FOLLOWS]

Deed of Trust
SRAN [Loan No. 1503]

IN WITNESS WHEREOF, the undersigned Trustors have executed this Deed of Trust as of the date and year first above written.

**"TRUST"**

**NAVDEP SINGH SRAN and SUKHWINDER KAUR SRAN, Co-Trustees, as community property, or their successors in trust, under the 2005 SRAN FAMILY REVOCABLE TRUST dated 8/10/05 and any amendments thereto**

By: Navdep Singh Sran
Its: Co-Trustee

By: Sukhwinder Kaur Sran
Its: Co-Trustee

**"SRAN ALMONDS"**

**SRAN ALMONDS, LLC,**
a California limited liability company

By: Lakhvir Singh Sran
Its: Member

By: Savdeep Singh Sran
Its: Member

By: Sukhjivan Singh Sran
Its: Member

**"S3 GROUP"**

**S3 GROUP, LLC,**
a California limited liability company

By: Lakhvir Singh Sran
Its: Member

By: Savdeep Singh Sran
Its: Member

By: Sukhjivan Singh Sran
Its: Member

**"SRAN VINEYARDS"**

**SRAN VINEYARDS, LLC,**
a California limited liability company

By: Lakhvir Singh Sran
Its: Member

By: Savdeep Singh Sran
Its: Member

By: Sukhjivan Singh Sran
Its: Member

Deed of Trust
SRAN [Loan No. 1503]

IN WITNESS WHEREOF, the undersigned Trustors have executed this Deed of Trust as of the date and year first above written.

**"SRAN CHILDREN"**

**SRAN CHILDREN ALMONDS, LLC,**
a California limited liability company

By: Lakhvir Singh Sran
Its: Member

By: Savdeep Singh Sran
Its: Member

By: Sukhjivan Singh Sran
Its: Member

Deed of Trust
SRAN [Loan No. 1503]

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
)ss.
COUNTY OF Fresno )

On December 20th, 2022, before me, Natalie P. Fagundes, a Notary Public, personally appeared **Navdep Singh Sran**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature

NATALIE P. FAGUNDES
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2294527
FRESNO COUNTY
My Comm. Exp. June 22, 2023

(Notary Public Seal)

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
)ss.
COUNTY OF Fresno )

On December 20th, 2022, before me, Natalie P. Fagundes, a Notary Public, personally appeared **Sukhwinder Kaur Sran**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature

NATALIE P. FAGUNDES
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2294527
FRESNO COUNTY
My Comm. Exp. June 22, 2023

(Notary Public Seal)

Deed of Trust
SRAN [Loan No. 1503]

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA       )
                              )ss.
COUNTY OF _Fresno_      )

On _December 20th_, 2022, before me, _Natalie P. Fagundes_, a Notary Public, personally appeared **Lakhvir Singh Sran**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Signature_

NATALIE P. FAGUNDES
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2294527
FRESNO COUNTY
My Comm. Exp. June 22, 2023

(Notary Public Seal)

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA       )
                              )ss.
COUNTY OF _Fresno_      )

On _December 20th_, 2022, before me, _Natalie P. Fagundes_, a Notary Public, personally appeared **Sukhjivan Singh Sran**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Signature_

NATALIE P. FAGUNDES
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2294527
FRESNO COUNTY
My Comm. Exp. June 22, 2023

(Notary Public Seal)

Deed of Trust
SRAN [Loan No. 1503]

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA            )
                                    )ss.
COUNTY OF _Fresno_       )

On _December 20th_, 2022, before me, _Natalie P. Fagundes_ , a Notary Public, personally appeared **Savdeep Singh Sran**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

NATALIE P. FAGUNDES
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2294527
FRESNO COUNTY
My Comm. Exp. June 22, 2023

Signature

Page - 34

Deed of Trust
SRAN [Loan No. 1503]

DEED OF TRUST; ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT, AND FIXTURE FILING

**Legal Description of Real Estate**

For APN/Parcel ID(s): (Fresno County):, 015-315-25s, 001-300-10, 003-020-04, 003-040-01, 003-060-13, 001-280-26, 003-040-04, 003-030-15s, 003-030-24s, 003-020-09, 003-020-08, 045-170-62s, 045-170-86s, 065-110-06s, 065-110-17s, 085-050-39s, 085-090-91s, 085-090-93s, 085-090-95s, 085-090-97s, 033-200-13s, 033-200-14s, 033-200-03s, 033-200-04s, 075-020-38s, 085-090-26s, 085-090-90s, 085-090-92s, 085-090-94s, 085-090-96s, 085-090-04, 027-050-11, 017-070-17, 027-050-01, 027-050-02s, 027-050-07, 033-020-73s, 033-020-74s, 020-200-01, 028-041-01, 028-041-02, (Merced County):, 091-160-006, 091-170-001, 091-170-006, 091-053-001, 091-190-005, 091-190-006, 083-230-036, (Madera County):, 041-190-006, 042-010-003, (Kern County):, 059-160-42, 059-160-43, 059-160-44, 059-180-01, 059-180-03, 059-180-11, 059-180-12, 059-180-13, 059-180-14, 059-180-27, (Kings County):, 004-070-026, 004-070-079, 004-100-004, 004-100-022, 004-100-023, 004-100-039, 004-100-055, 004-171-078, 004-172-001, 036-180-063, (Stanislaus County):, 057-026-008 and 057-026-009

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTIES OF FRESNO AND MERCED, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

**PARCEL 1:** APN 015-315-25s (Fresno County)

THE SOUTH HALF OF THE NORTH HALF OF THE WEST 80 ACRES OF THE SOUTH 5/8THS OF THE NORTHWEST QUARTER OF SECTION 36, TOWNSHIP 13 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA IN THE COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ANY AND ALL OIL, GAS AND/OR OTHER PETROLEUM PRODUCTS THAT MAY HEREAFTER BE FOUND, DISCOVERED AND/OR DEVELOPED UPON SAID LAND, AS RESERVED IN THE DEED DATED OCTOBER 6, 1936, FORM JOHN D. MORGAN, JR. AND HAZEL BEALL MORGAN, HUSBAND AND WIFE, RECORDED OCTOBER 19, 1936, IN BOOK 1527, PAGE 378 OF OFFICIAL RECORDS, AS DOCUMENT NO. 25058.

THIS LEGAL DESCRIPTION IS MADE PURSUANT TO THAT CERTAIN CERTIFICATE OF WAIVER OF PARCEL MAP NO. 8088, RECORDED NOVEMBER 8, 2012, AS INSTRUMENT NO. 2012-0161919 OF OFFICIAL RECORDS.

**PARCEL 2:** APN: 001-300-10; 003-020-04; AND 003-040-01 (Fresno County); and APN: 091-160-006 & 091-170-001 & 006 (Merced County)

PARCEL 2 OF PARCEL MAP NO. 3071, PORTIONS OF WHICH ARE LOCATED IN BOTH THE UNINCORPORATED AREA OF THE COUNTIES OF FRESNO AND MERCED, STATE OF CALIFORNIA ACCORDING TO THE MAP THEREOF RECORDED NOVEMBER 23, 1974, IN BOOK 22, PAGE 54 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF FRESNO COUNTY, AND BY INSTRUMENT ENTITLED "CERTIFICATE OF COMPLETION REORGANIZATION OF THE FRESNO/MERCED COUNTY BOUNDARY CHANGE AREA INVOLVING FRESNO COUNTY SPECIAL DISTRICTS LAFCO FILE NO. 0652",

WHICH RECORDED APRIL 22, 2010, AS <u>DOCUMENT NO. 14973</u>, IN THE OFFICE OF THE COUNTY RECORDER OF MERCED COUNTY.

**PARCEL 3:** APN 091-053-001 (Merced County)

PARCEL 2 OF <u>PARCEL MAP NO. 2030</u>, IN THE UNINCORPORATED AREA OF THE COUNTY OF MERCED, (FORMERLY IN THE COUNTY OF FRESNO) STATE OF CALIFORNIA ACCORDING TO THE MAP THEREOF RECORDED APRIL 17, 1974, IN <u>BOOK 12, PAGE 45 OF PARCEL MAPS</u>, IN THE OFFICE OF THE COUNTY

Deed of Trust
SRAN [Loan No. 1503]

RECORDER OF FRESNO COUNTY, AND BY INSTRUMENT ENTITLED "CERTIFICATE OF COMPLETION REORGANIZATION OF THE FRESNO/MERCED COUNTY BOUNDARY CHANGE AREA INVOLVING FRESNO COUNTY SPECIAL DISTRICTS LAFCO FILE NO. 0652", WHICH RECORDED APRIL 22, 2010, AS DOCUMENT NO. 14973, IN THE OFFICE OF THE COUNTY RECORDER OF MERCED COUNTY.

**PARCEL 4:** APN: 003-060-13 (Fresno County)

PARCEL 3 OF PARCEL MAP NO. 7400, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO STATE OF CALIFORNIA ACCORDING TO THE MAP THEREOF RECORDED FEBRUARY 22, 1991, IN BOOK 51, PAGE 47 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF FRESNO COUNTY.

**PARCEL 5:** APN: 001-280-26 (Fresno County)

LOTS 23, 24, 29, 30, 31, 32 AND 33 IN MILLER & LUX SUBDIVISION OF SECTION 17, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE MAP RECORDED OCTOBER 3, 1904 IN BOOK 2 PAGE 92 OF RECORD OF SURVEYS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM, THE WEST 452.71 FEET OF SAID LOTS 23, 24, 32 AND 33, PER UNRECORDED LOT LINE ADJUSTMENT NO. 98-22, AS APPROVED BY FRESNO COUNTY DEVELOPMENT DEPARTMENT, AS DISCLOSED BY DEEDS RECORDED MARCH 15, 1999, AS DOCUMENT NOS. 199-0038833 AND 1999-0038834 AND CORRECTED BY DEED RECORDED DECEMBER 21, 1999, AS DOCUMENT NO. 1999-0181326, OF OFFICIAL RECORDS.

**PARCEL 6:** APN: 003-040-04 (Fresno County)

THE SOUTH HALF OF THE SOUTHWEST QUARTER OF THE NORTHWEST QUARTER OF SECTION 20, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

**PARCEL 7:** APN: 003-030-15s (portion of) (Fresno County)

PORTION OF THE SOUTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT WHICH BEARS NORTH 0 05" WEST 1320 FEET FROM THE SOUTH QUARTER SECTION CORNER OF SAID SECTION 19;
THENCE, ALONG THE CENTER LINE OF A 60 FOOT ROAD RESERVATION, NORTH 0 05' WEST 660 FEET;
THENCE, LEAVING ROAD RESERVATION NORTH 89 55' EAST 1320 FEET;
THENCE, SOUTH 0 05' EAST 544.64 FEET;
THENCE, SOUTH 61 40' WEST 325.82 FEET;
THENCE, SOUTH 72 20' WEST 125.87 FEET;
THENCE, NORTH 69 40' WEST 214.46 FEET;
THENCE, SOUTH 84 50' WEST 219.95 FEET;

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 150 of 261

THENCE, NORTH 58 50' WEST 42.72 FEET;
THENCE, SOUTH 89 55' WEST 456.43 FEET TO THE POINT OF BEGINNING.

Deed of Trust
SRAN [Loan No. 1503]

**PARCEL 7A:** APN: 003-030-15s (portion of) (Fresno County)

THE NORTH HALF OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

**PARCEL 7B:** APN: 003-030-15s (portion of) (Fresno County)

THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

**PARCEL 8:** APN: 003-030-24s (Fresno County)

THE WEST HALF OF THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM, THE EAST 389.00 FEET OF THE SOUTH 273.00 FEET THEREOF.

**PARCEL 9:** APN 091-190-005 and 006 (Merced County)

THE SOUTH 660 FEET OF THE FOLLOWING DESCRIBED PROPERTY, WHICH LIES EAST OF THE HOLLAND FARM DRAIN:

BEGINNING, AT A POINT WHICH BEARS NORTH 0° 05' WEST 660 FEET FROM THE SOUTH QUARTER SECTION CORNER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF MERCED (FORMERLY THE COUNTY OF FRESNO), STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, AND BY INSTRUMENT ENTITLED "CERTIFICATE OF COMPLETION REORGANIZATION OF THE FRESNO/MERCED COUNTY BOUNDARY CHANGE AREA INVOLVING FRESNO COUNTY SPECIAL DISTRICTS LAFCO FILE NO. 0652", WHICH RECORDED APRIL 22, 2010, AS DOCUMENT NO. 14973, IN THE OFFICE OF THE COUNTY RECORDER OF MERCED COUNTY;

THENCE, SOUTH 89° 55' WEST, 860.58 FEET TO THE EASTERLY RIGHT OF WAY LINE OF THE HOLLAND FARM DRAIN; THENCE, ALONG THE EASTERLY RIGHT OF WAY LINE OF THE HOLLAND FARM DRAIN NORTH 23° 52' WEST; 648.30 FEET; THENCE, NORTH 6° 52' WEST, 646.33 FEET;
THENCE, NORTH 45° 52' WEST, 121.80 FEET;
THENCE, LEAVING SAID DRAIN NORTH 89° 55' EAST, 1285.67 FEET;
THENCE, ALONG THE CENTER LINE OF A 60-FOOT ROAD RESERVATION SOUTH 0° 05' EAST, 1320 FEET TO THE POINT OF BEGINNING

TOGETHER WITH:

THE SOUTH HALF OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF MERCED (FORMERLY THE COUNTY OF FRESNO), STATE

Deed of Trust
SRAN [Loan No. 1503]

OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, AND BY INSTRUMENT ENTITLED "CERTIFICATE OF COMPLETION REORGANIZATION OF THE FRESNO/MERCED COUNTY BOUNDARY CHANGE AREA INVOLVING FRESNO COUNTY SPECIAL DISTRICTS LAFCO FILE NO. 0652", WHICH RECORDED APRIL 22, 2010, AS DOCUMENT NO. 14973, IN THE OFFICE OF THE COUNTY RECORDER OF MERCED COUNTY.

EXCEPTING THEREFROM, THE FOLLOWING DESCRIBED RIGHT OF WAY FOR THE SO-CALLED HOLLAND FARM DRAIN:

BEGINNING, AT A POINT WHICH BEARS SOUTH 89° 55' WEST 276.40 FEET FROM THE SOUTH QUARTER SECTION CORNER OF SAID SECTION
19;
THENCE, NORTH 46° 24' WEST, 911.90 FEET;
THENCE, NORTH 23° 52' WEST, 32.78 FEET;
THENCE, NORTH 89° 55' EAST, 97.65 FEET;
THENCE, SOUTH 46° 24' EAST, 955.32 FEET;
THENCE, SOUTH 89° 55' WEST, 115.83 FEET TO THE POINT OF BEGINNING.

**PARCEL 10:** APN: 003-020-09 (Fresno County)

LOT 23 AND THE NORTH HALF OF LOTS 21 AND 22 OF MILLER AND LUX SUBDIVISION OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE MAP THEREOF RECORDED MAY 21, 1904 IN BOOK 1 PAGE 29 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

SAID PROPERTY IS ALSO DESCRIBED AS:

THE NORTH HALF OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

**PARCEL 11:** APN: 003-020-08 (Fresno County)

LOT 24 AND THE SOUTH HALF OF LOTS 21 AND 22 OF MILLER AND LUX SUBDIVISION OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE MAP THEREOF RECORDED MAY 21, 1904 IN BOOK 1 PAGE 29 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

SAID PROPERTY IS ALSO DESCRIBED AS:

THE SOUTH HALF OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

**PARCEL 12:** APN: 045-170-62s and 045-170- 86s (Fresno County)

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 153 of 261

SECTION 32, TOWNSHIP 17 SOUTH, RANGE 15 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM, THE INTEREST CONVEYED TO THE STATE OF CALIFORNIA FOR FREEWAY PURPOSES, IN DEED RECORDED DECEMBER 16, 1965 IN BOOK 5252 PAGE 209 OF OFFICIAL RECORDS, DOCUMENT NO. 100919.

ALSO EXCEPTING THEREFROM, THE INTEREST CONVEYED TO THE STATE OF CALIFORNIA FOR FREEWAY PURPOSES, IN DEEDS RECORDED JULY 21, 1966 IN BOOK 5339 PAGE 7 OF OFFICIAL RECORDS, DOCUMENT NO. 54303 AND RECORDED JULY 21, 1966 IN BOOK 5339 PAGE 14 OF OFFICIAL RECORDS, DOCUMENT NO. 54308.

ALSO EXCEPTING THEREFROM, THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING, AT A POINT OF INTERSECTION OF THE SOUTH LINE OF SAID SOUTHEAST QUARTER WITH THE NORTHEASTERLY BOUNDARY OF THE 59.518-ACRE PARCEL OF LAND DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA RECORDED JULY 21, 1966 IN BOOK 5339 PAGE 14 AS DOCUMENT NO. 54308, FRESNO COUNTY OFFICIAL RECORDS;

THENCE, (1) ALONG SAID NORTHEASTERLY BOUNDARY NORTH 40° 19' 23" WEST 110.00 FEET;
THENCE, (2) LEAVING SAID NORTHEASTERLY BOUNDARY NORTH 49° 40' 37" EAST 80.00 FEET;
THENCE, (3) SOUTH 40° 19' 23" EAST, 71.16 FEET;
THENCE, (4) SOUTH 0° 36' 09" WEST 81.76 FEET TO A POINT IN THE SOUTH LINE OF SAID SOUTHEAST QUARTER;
THENCE, (5) ALONG SAID SOUTH LINE, NORTH 89° 23' 51" WEST 35.00 FEET TO THE POINT OF BEGINNING, AS CONVEYED TO
WESTLANDS WATER DISTRICT, A PUBLIC AGENCY, IN DEED RECORDED AUGUST 24, 1972, IN BOOK 6062, PAGE 192, OF OFFICIAL
RECORDS. DOCUMENT NO. 76512.

ALSO EXCEPTING THEREFROM, THE INTEREST IN ALL OIL, GAS, MINERALS RIGHTS IN SAID LAND, TOGETHER WITH THE RIGHT TO GO UPON SAID PROPERTY AT ANY TIME HEREAFTER FOR THE PURPOSE OF DEVELOPING AND EXTRACTING OIL, GAS, MINERALS AND OTHER HYDROCARBONS SUBSTANCES FROM SAID LANDS, AS RESERVED IN THE FOLLOWING DEEDS:

DEED FROM HARRY S. CLEARIE, THE DULY APPOINTED, QUALIFIED AND ACTING ADMINISTRATOR OF HE ESTATE OF ABBEY CLEARIE, ALSO KNOW AS ABBEY CLEARIE, ABBEY R. CLEARIE AND AS ABBIE R. CLEARIE, DECEASED, TO JOHN G. INDART, RECORDED MAY 23, 1951, IN BOOK 3020 PAGE 302, OF OFFICIAL RECORDS, DOCUMENT NO. 30133.

DEED FROM MAUD E. ROOT AND ZOE E. ROOT, TO JOHN G. INDART, RECORDED MAY 23, 1951, IN BOOK 3020 PAGE 306, OF OFFICIAL RECORDS, DOCUMENT NO. 30134.

**PARCEL 13:** APN: 065-110-06S (Fresno County)

THE REAL PROPERTY SITUATE IN THE COUNTY OF FRESNO, STATE OF CALIFORNIA, COMMONLY KNOWN AS THE HURON 1 RANCH AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THE SOUTHWEST QUARTER OF FRACTIONAL SECTION 36, TOWNSHIP 19 SOUTH, RANGE 16 EAST,

Deed of Trust
SRAN [Loan No. 1503]

MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM, ALL OIL, GAS, ASPHALTUM AND OTHER HYDROCARBONS AND OTHER MINERALS WITHIN OR UNDERLYING OR THAT MAY BE PRODUCED FROM SAID LAND, TOGETHER WITH, ANY AND ALL EASEMENTS, RIGHTS OF WAY AND SERVITUDES IN, UNDER AND UPON SAID LAND, NECESSARY OR CONVENIENT TO DRILL FOR, MINE FOR, PRODUCE, EXTRACT AND TAKE ANY OF SAID MINERALS FROM SAID LAND; TO CONSTRUCT, RECONSTRUCT, USE, MAINTAIN, ERECT, REPAIR, RENEW, CHANGE THE SIZE OF AND LOCATION OF INCREASE THE NUMBER OF AND REMOVE IN, UNDER, ON AND FROM SAID LAND ALL PIPELINES, POWER LINES, TELEPHONE AND TELEGRAPH LINES AND OTHER STRUCTURES AND EQUIPMENT WITH GRANTORS, THEIR HEIRS AND ASSIGNS MAY REQUIRE IN CARRYING ON ANY OF SAID OPERATIONS, AS RESERVED IN DEEDS RECORDED NOVEMBER 25, 1946 IN BOOK 2451, PAGE 123 OF OFFICIAL RECORDS, AS DOCUMENT NO. 79037; NOVEMBER 25, 1946, IN BOOK 2472, PAGE 171 OF OFFICIAL RECORDS, AS DOCUMENT NO. 79038; NOVEMBER 25, 1946, IN BOOK 2465, PAGE 237 OF OFFICIAL RECORDS, AS DOCUMENT NO. 79039; APRIL 24, 1947 IN BOOK 2516, PAGE 266 OF OFFICIAL RECORDS, AS DOCUMENT NO. 22754; AND MARCH 20, 1951, IN BOOK 2988, PAGE 274 OF OFFICIAL RECORDS, AS DOCUMENT NO. 16723.

**PARCEL 14:** APN: 065-110-17S (Fresno County)

THE NORTHWEST QUARTER OF SECTION 36, TOWNSHIP 19 SOUTH, RANGE 16 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING FROM, THE SOUTHWEST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY WILLIAM L. FISHER AND DOLLY FISHER, HUSBAND AND WIFE, ET AL IN THE DEED RECORDED JULY 17, 1947 IN VOLUME 2535, PAGE 364 OF OFFICIAL RECORDS, AS DOCUMENT NO. 37785.

EXCEPTING FROM, THE EAST HALF OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY HARRY M. DAVIS AND FRANCIS DAVIS, HUSBAND AND WIFE, ET AL IN THE DEED RECORDED JULY 29, 1947 IN VOLUME 2540, PAGE 432 OF OFFICIAL RECORDS, AS DOCUMENT NO. 39794.

EXCEPTING FROM, THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE

EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY CLARENCE A. WILLIAMSON AND BESSIE P. WILLIAMSON, HUSBAND AND WIFE, THE DEED RECORDED JULY 29, 1947 IN <u>VOLUME 2549, PAGE 335 OF OFFICIAL RECORDS</u>, AS DOCUMENT NO. 39795.

EXCEPTING FROM, THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER; AND THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY EARL FLEISHER AND LEANORE FLEISHER, HIS WIFE, ET AL IN THE DEED RECORDED JULY 29, 1947 IN <u>VOLUME 2517, PAGE 410 OF OFFICIAL RECORDS</u>, AS DOCUMENT NO. 39796.

EXCEPTING FROM, THE SOUTHWEST QUARTER OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY RICHARD L. LAWSON AND MARTHA C. LAWSON, HUSBAND AND WIFE, IN THE DEED RECORDED AUGUST 5, 1947 IN <u>VOLUME 2548, PAGE 340 OF OFFICIAL RECORDS</u>, AS DOCUMENT NO. 40944.

EXCEPTING FROM, THE NORTH HALF OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY JAMES MURPHY AND MARTHA C. MURPHY, HUSBAND AND WIFE, IN THE DEED RECORDED AUGUST 6, 1947 IN <u>VOLUME 2561, PAGE 361 OF OFFICIAL RECORDS</u>, AS DOCUMENT NO. 41200.

EXCEPTING FROM, THE NORTHWEST QUARTER OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY MARY C. MAY, ET AL IN THE DEED RECORDED JUNE 29, 1948 IN <u>VOLUME 2637, PAGE 424 OF OFFICIAL RECORDS</u>, AS DOCUMENT NO. 31252.

Deed of Trust
SRAN [Loan No. 1503]

**PARCEL 15:** APN 085-050-39S (Fresno County)

THE SOUTHEAST QUARTER OF SECTION 12, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATE IN AND UNDER THE SOUTHEAST QUARTER OF SECTION 12, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF AND THE EXPLORATION AND TESTING OF SAID REAL PROPERTY AND ALSO THE RIGHT TO DRILL FOR, PRODUCT AND USE WATER FROM SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, AS SET FORTH IN THE JUDGMENT CONFIRMING REPORT OF REFEREES MAKING ACTUAL PARTITION, RECORDED SEPTEMBER 28, 1956 IN BOOK 3827, PAGE 89 OF OFFICIAL RECORDS, AS DOCUMENT NO. 69880.

**PARCEL 16:** APN: 085-090-91S (Fresno County)

THE NORTH HALF OF THE NORTHEAST QUARTER OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE CERTIFICATE OF WAIVER OF PARCEL MAP NO. 2011-13, RECORDED AUGUST 17, 2012, AS DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS.

EXCEPTING THEREFROM, (ALL OF SECTION 13) ALL OF THE MINERAL AND MINERAL ORES OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED UPON, WITHIN OR UNDERLYING THE HEREIN ABOVE DESCRIBED PROPERTY OR THAT MAY BE PRODUCED THEREFROM INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL OIL, NATURAL GAS AND HYDROCARBON SUBSTANCES, GEOTHERMAL STEAM, BRINES AND MINERALS IN SOLUTION, AND SAND, GRAVEL AND AGGREGATES, AND PRODUCTS DERIVED THEREFROM, TOGETHER WITH, THE EXCLUSIVE AND PERPETUAL RIGHT OF SAID GRANTEE, ITS SUCCESSORS AND ASSIGNS, OF INGRESS AND EGRESS IN, UPON OR OVER SAID PROPERTY TO EXPLORE AND PROSPECT FOR, EXTRACT, DEVELOP, SAVE, CONVEY, STORE, REFINE, PROCESS AND REMOVE THE SAME AND TO MAKE SUCH USE OF SAID PROPERTY AND THE SURFACE THEREOF AS IS NECESSARY OR USEFUL IN CONNECTION THEREWITH, WHICH USE MAY INCLUDE THE SINKING, BORING, DIGGING OR DRILLING OF WELLS, SHAFTS OR TUNNELS, EXCAVATING, OPEN PIT MINING AND CONSTRUCTING, MAINTAINING AND REMOVING ROADS, WAYS, PIPE LINES, POLE LINES, TANKS, BUILDINGS, STRUCTURES AND FACILITIES, AS CONVEYED TO BRAVO OIL COMPANY IN DEED RECORDED DECEMBER 29, 1965 IN BOOK 5257, PAGE 19 OF OFFICIAL RECORDS, AS DOCUMENTS NO. 104215.

Article I.        **PARCEL 16A:**

AN EASEMENT FOR A NON-EXCLUSIVE PRIVATE ROAD EASEMENT, OVER THE NORTH 60.00 FEET OF THE NORTHEAST QUARTER OF SECTION 14, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, EXCEPTING THEREFROM THE WEST 50 FEET THEREOF, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE GRANT OF EASEMENT, RECORDED JULY 23, 2012, AS DOCUMENT NO. 2012-0101881 , OF OFFICIAL RECORDS.

Article II.       **PARCEL 16B:**

Deed of Trust
SRAN [Loan No. 1503]

AN EASEMENT FOR A NON-EXCLUSIVE EASEMENT FOR ROAD PURPOSES, OVER THE NORTH 60.00 FEET OF THE WEST HALF OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF; AND A STRIP OF LAND BEING 60.00 FEET IN WIDTH, LYING EQUALLY ON EACH SIDE OF THE EAST LINE OF THE WEST HALF OF SAID SECTION 13, ACCORDING TO THE CERTIFICATE OF WAIVER OF PARCEL MAP NO. 2011-13, RECORDED AUGUST 17, 2012, AS DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS.

PARCEL 17: APN: 085-090-93S (Fresno County)

THE SOUTH HALF OF THE NORTHEAST QUARTER OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE CERTIFICATE OF WAIVER OF PARCEL MAP NO. 2011-13, RECORDED AUGUST 17, 2012, AS DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS.

EXCEPTING THEREFROM, (ALL OF SECTION 13) ALL OF THE MINERAL AND MINERAL ORES OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED UPON, WITHIN OR UNDERLYING THE HEREIN ABOVE DESCRIBED PROPERTY OR THAT MAY BE PRODUCED THEREFROM INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL OIL, NATURAL GAS AND HYDROCARBON SUBSTANCES, GEOTHERMAL STEAM, BRINES AND MINERALS IN SOLUTION, AND SAND, GRAVEL AND AGGREGATES, AND PRODUCTS DERIVED THEREFROM, TOGETHER WITH, THE EXCLUSIVE AND PERPETUAL RIGHT OF SAID GRANTEE, ITS SUCCESSORS AND ASSIGNS, OF INGRESS AND EGRESS IN, UPON OR OVER SAID PROPERTY TO EXPLORE AND PROSPECT FOR, EXTRACT, DEVELOP, SAVE, CONVEY, STORE, REFINE, PROCESS AND REMOVE THE SAME AND TO MAKE SUCH USE OF SAID PROPERTY AND THE SURFACE THEREOF AS IS NECESSARY OR USEFUL IN CONNECTION THEREWITH, WHICH USE MAY INCLUDE THE SINKING, BORING, DIGGING OR DRILLING OF WELLS, SHAFTS OR TUNNELS, EXCAVATING, OPEN PIT MINING AND CONSTRUCTING, MAINTAINING AND REMOVING ROADS, WAYS, PIPE LINES, POLE LINES, TANKS, BUILDINGS, STRUCTURES AND FACILITIES, AS CONVEYED TO BRAVO OIL COMPANY IN DEED RECORDED DECEMBER 29, 1965 IN BOOK 5257, PAGE 19 OF OFFICIAL RECORDS, AS DOCUMENTS NO. 104215.

### Article III.    PARCEL 17A:

AN EASEMENT FOR A NON-EXCLUSIVE PRIVATE ROAD EASEMENT, OVER THE NORTH 60.00 FEET OF THE NORTHEAST QUARTER OF SECTION 14, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, EXCEPTING THEREFROM THE WEST 50 FEET THEREOF, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE GRANT OF EASEMENT, RECORDED JULY 23, 2012, AS DOCUMENT NO. 2012-0101881, OF OFFICIAL RECORDS.

### Article IV.    PARCEL 17B:

AN EASEMENT FOR A NON-EXCLUSIVE EASEMENT FOR ROAD PURPOSES, OVER THE NORTH 60.00 FEET OF THE WEST HALF OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF; AND A STRIP OF LAND BEING 60.00 FEET IN WIDTH, LYING EQUALLY ON EACH SIDE OF THE EAST LINE OF THE WEST HALF OF SAID SECTION 13, ACCORDING TO THE CERTIFICATE OF WAIVER OF PARCEL MAP NO. 2011-13, RECORDED AUGUST 17,

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 158 of 261

2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

**PARCEL 18:** APN: 085-090-95S (Fresno County)

THE NORTH HALF OF THE SOUTHEAST QUARTER OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17, 2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

EXCEPTING THEREFROM, (ALL OF SECTION 13) ALL OF THE MINERAL AND MINERAL ORES OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED UPON, WITHIN OR UNDERLYING THE HEREIN ABOVE DESCRIBED PROPERTY OR THAT MAY BE PRODUCED THEREFROM INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL OIL, NATURAL GAS AND HYDROCARBON SUBSTANCES, GEOTHERMAL STEAM, BRINES AND MINERALS IN SOLUTION, AND SAND, GRAVEL AND AGGREGATES, AND PRODUCTS DERIVED THEREFROM, TOGETHER WITH, THE EXCLUSIVE AND PERPETUAL RIGHT OF SAID GRANTEE, ITS SUCCESSORS AND ASSIGNS, OF INGRESS AND EGRESS IN, UPON OR OVER SAID PROPERTY TO EXPLORE AND PROSPECT FOR, EXTRACT, DEVELOP, SAVE, CONVEY, STORE, REFINE, PROCESS AND REMOVE THE SAME AND TO MAKE SUCH USE OF SAID PROPERTY AND THE SURFACE THEREOF AS IS NECESSARY OR USEFUL IN CONNECTION THEREWITH, WHICH USE MAY INCLUDE THE SINKING, BORING, DIGGING OR DRILLING OF WELLS, SHAFTS OR TUNNELS, EXCAVATING, OPEN PIT MINING AND CONSTRUCTING, MAINTAINING AND REMOVING ROADS, WAYS, PIPE LINES, POLE LINES, TANKS, BUILDINGS, STRUCTURES AND FACILITIES, AS CONVEYED TO BRAVO OIL COMPANY IN DEED RECORDED DECEMBER 29, 1965 IN <u>BOOK 5257, PAGE 19 OF OFFICIAL RECORDS</u>, AS DOCUMENTS NO. 104215.

Article V.    **PARCEL 18A:**

AN EASEMENT FOR A NON-EXCLUSIVE PRIVATE ROAD EASEMENT, OVER THE NORTH 60.00 FEET OF THE NORTHEAST QUARTER OF SECTION 14, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, EXCEPTING THEREFROM THE WEST 50 FEET THEREOF, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE GRANT OF EASEMENT, RECORDED JULY 23, 2012, AS <u>DOCUMENT NO. 2012-0101881, OF OFFICIAL RECORDS</u>.

Article VI.    **PARCEL 18B:**

AN EASEMENT FOR A NON-EXCLUSIVE EASEMENT FOR ROAD PURPOSES, OVER THE NORTH 60.00 FEET OF THE WEST HALF OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF; AND A STRIP OF LAND BEING 60.00 FEET IN WIDTH, LYING EQUALLY ON EACH SIDE OF THE EAST LINE OF THE WEST HALF OF SAID SECTION 13, ACCORDING TO THE CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17, 2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

**PARCEL 19:** APN: 085-090-97S (Fresno County)

THE SOUTH HALF OF THE SOUTHEAST QUARTER OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE

CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17, 2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

EXCEPTING THEREFROM, (ALL OF SECTION 13) ALL OF THE MINERAL AND MINERAL ORES OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED UPON, WITHIN OR UNDERLYING THE HEREIN ABOVE DESCRIBED PROPERTY OR THAT MAY BE PRODUCED THEREFROM INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL OIL, NATURAL GAS AND HYDROCARBON SUBSTANCES, GEOTHERMAL STEAM, BRINES AND MINERALS IN SOLUTION, AND SAND, GRAVEL AND AGGREGATES, AND PRODUCTS DERIVED THEREFROM, TOGETHER WITH, THE EXCLUSIVE AND PERPETUAL RIGHT OF SAID GRANTEE, ITS SUCCESSORS AND ASSIGNS, OF INGRESS AND EGRESS IN, UPON OR OVER SAID PROPERTY TO EXPLORE AND PROSPECT FOR, EXTRACT, DEVELOP, SAVE, CONVEY, STORE, REFINE, PROCESS AND REMOVE THE SAME AND TO MAKE SUCH USE OF SAID PROPERTY AND THE SURFACE THEREOF AS IS NECESSARY OR USEFUL IN CONNECTION THEREWITH, WHICH USE MAY INCLUDE THE SINKING, BORING, DIGGING OR DRILLING OF WELLS, SHAFTS OR TUNNELS, EXCAVATING, OPEN PIT MINING AND CONSTRUCTING, MAINTAINING AND REMOVING ROADS, WAYS, PIPE LINES, POLE LINES, TANKS, BUILDINGS, STRUCTURES AND FACILITIES, AS CONVEYED TO BRAVO OIL COMPANY IN DEED RECORDED DECEMBER 29, 1965 IN <u>BOOK 5257, PAGE 19 OF OFFICIAL RECORDS</u>, AS DOCUMENTS NO. 104215.

### Article VII.    <u>PARCEL 19A:</u>

AN EASEMENT FOR A NON-EXCLUSIVE PRIVATE ROAD EASEMENT, OVER THE NORTH 60.00 FEET OF THE NORTHEAST QUARTER OF SECTION 14, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, EXCEPTING THEREFROM THE WEST 50 FEET THEREOF, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE GRANT OF EASEMENT, RECORDED JULY 23, 2012, AS <u>DOCUMENT NO. 2012-0101881</u> , OF OFFICIAL RECORDS.

### Article VIII.    <u>PARCEL 19B:</u>

AN EASEMENT FOR A NON-EXCLUSIVE EASEMENT FOR ROAD PURPOSES, OVER THE NORTH 60.00 FEET OF THE WEST HALF OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF; AND A STRIP OF LAND BEING 60.00 FEET IN WIDTH, LYING EQUALLY ON EACH SIDE OF THE EAST LINE OF THE WEST HALF OF SAID SECTION 13, ACCORDING TO THE CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17, 2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

<u>PARCEL 20:</u> APN: 083-230-036 (Merced County)

ALL THAT PORTION OF THE NORTHEAST ONE-QUARTER OF SECTION 35, TOWNSHIP 10 SOUTH, RANGE 10 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA IN THE COUNTY OF MERCED, STATE OF CALIFORNIA, AS GRANTED TO ARTHUR MONEZ DE SA, ET AL, BY DOCUMENT RECORDED APRIL 8, 1976 IN <u>VOLUME 2026 OF OFFICIAL RECORDS, AT PAGE 909</u> THEREOF, RECORDS OF MERCED COUNTY, CALIFORNIA AND AS GRANTED TO ANTONE PEREIRA, ET AL, BY DOCUMENT RECORDED MAY 27, 1983 IN <u>VOLUME 2373 OF OFFICIAL RECORDS, AT PAGE 477</u> THEREOF, RECORDS OF SAID MERCED COUNTY, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A ONE-INCH IRON PIPE, WITH A PLASTIC PLUG STAMPED L.S. 4403, ACCEPTED AS A

Page - 47

POINT ON THE SOUTHERLY LINE OF SAID NORTHEAST ONE-QUARTER, WHICH BEARS NORTH 89° 57' 39" WEST, A DISTANCE OF 30.00 FEET FROM THE ONE-QUARTER SECTION CORNER ON THE EAST LINE OF SAID SECTION, SAID POINT OF BEGINNING BEING ALSO ON THE WESTERLY LINE OF MERCY SPRINGS ROAD, 60.00 FEET WIDE, THENCE NORTH 89° 57' 39" WEST, ALONG THE SOUTHERLY LINE OF SAID NORTHEAST ONE-QUARTER, A DISTANCE OF 2631.07 FEET TO THE ONE-HALF SECTION LINE, RUNNING NORTH AND SOUTH THROUGH SAID SECTION;

THENCE, NORTH 02° 07' 50" EAST, ALONG SAID ONE-HALF SECTION LINE, 2647.57 FEET TO THE SOUTHERLY LINE OF COPA DE ORA AVENUE, 60.00 FEET WIDE; THENCE, NORTH 89° 56' 02" EAST, ALONG THE SOUTHERLY LINE OF SAID AVENUE, A DISTANCE OF 872.23 FEET TO A ONE-INCH IRON PIPE, WITH A BRASS TAG STAMPED L.S. 2402, ACCEPTED FOR THE CENTERLINE OF A CONCRETE IRRIGATION DITCH;

THENCE, SOUTH 06° 07' 10" WEST, A DISTANCE OF 1025.58 FEET TO A ONE-INCH IRON PIPE, WITH A BRASS TAG STAMPED L.S. 2402, ACCEPTED FOR THE CENTERLINE OF A CONCRETE IRRIGATION DITCH, THENCE, SOUTH 06° 07' 10" WEST, CONTINUING ALONG SAID ACCEPTED LINE, A DISTANCE OF 99.78 FEET;

THENCE, SOUTH 27° 27' 54" EAST, ALONG AN ADJUSTED PROPERTY LINE, A DISTANCE OF 860.49 FEET TO THE POSITION OF A SCREW-ROD FOR A DITCH GATE-VALVE, AS SHOWN BY A "RECORD OF SURVEY FOR LAWRENCE L. BOWERS", <u>VOLUME 33 PAGES 50</u> THROUGH 52, MERCED COUNTY RECORDS, THE ACTUAL SCREW-ROD BEARS NORTH 58° 49' 09" WEST, A DISTANCE OF 97.28 FEET;

THENCE, SOUTH 57° 48' 02" EAST, ALONG AN ADJUSTED PROPERTY LINE, A DISTANCE OF 688.86 FEET TO A ONE-INCH IRON PIPE, WITH A PLASTIC PLUG STAMPED L.S. 4403;

THENCE, SOUTH 89° 57' 43" EAST, ALONG AN ADJUSTED LINE, A DISTANCE OF 818.43 FEET TO THE WESTERLY LINE OF SAID MERCY SPRINGS ROAD;

THENCE, SOUTH 02° 33' 42" WEST, ALONG SAID WESTERLY LINE, A DISTANCE OF 398.87 FEET TO THE POINT OF BEGINNING.

PURSUANT TO THAT CERTAIN CERTIFICATE OF COMPLIANCE NO. 01045, RECORDED NOVEMBER 19, 2001 IN VOLUME 4314 PAGE 983 AS <u>DOCUMENT NO. 52402 OF OFFICIAL RECORDS.</u>

**PARCEL 21:** APN: 033-200-13s (Fresno County)

PARCEL 1 OF PARCEL MAP 99-03, IN THE CITY OF SAN JOAQUIN, COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE MAP THEREOF RECORDED IN <u>BOOK 61, PAGES 3 AND 4 OF PARCEL MAPS</u>, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATE THEREIN AND THEREUNDER, TOGETHER WITH ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON AS RESERVED BY PETER G. RUSCONI IN DEED RECORDED JUNE 2, 1971, <u>INSTRUMENT NO. 43153</u>, IN <u>BOOK 5900, PAGE 328, OFFICIAL RECORDS.</u>

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 161 of 261

**PARCEL 22:** APN: 033-200-14s (Fresno County)

PARCEL 2 OF PARCEL MAP 99-03, IN THE CITY OF SAN JOAQUIN, COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE MAP THEREOF RECORDED IN <u>BOOK 61, PAGES 3 AND 4 OF PARCEL MAPS</u>, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATE THEREIN AND THEREUNDER, TOGETHER WITH ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON AS RESERVED BY PETER G. RUSCONI IN DEED RECORDED JUNE 2, 1971, <u>INSTRUMENT NO. 43153</u>, IN <u>BOOK 5900, PAGE 328, OFFICIAL RECORDS</u>.

**PARCEL 23:** APN: 033-200-03s (Fresno County)

PARCEL 3 OF <u>PARCEL MAP NO. 84-01</u>, IN THE CITY OF SAN JOAQUIN, COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF RECORDED IN <u>BOOK 42, PAGE 79 OF PARCEL MAPS</u>, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATE THEREIN AND THEREUNDER, TOGETHER WITH ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON AS RESERVED BY PETER G. RUSCONI IN DEED RECORDED JUNE 2, 1971, <u>INSTRUMENT NO. 43153</u>, IN <u>BOOK 5900, PAGE 328, OFFICIAL RECORDS</u>.

ALSO EXCEPTING THEREFROM AN UNDIVIDED 1/2 OF GRANTOR'S INTEREST IN AND TO ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES LYING BENEATH A DEPTH OF 600 FEET OF SAID PROPERTY, WHICH SHALL BE WITHOUT THE RIGHT OF SURFACE ENTRY FROM AND/OR TO THE SUBJECT PROPERTY, AS RESERVED BY DON GRAGNANI AND IRENE GRAGNANI, HUSBAND AND WIFE, IN DEED RECORDED OCTOBER 23, 1985, <u>INSTRUMENT NO. 850107491, OFFICIAL RECORDS</u>.

**PARCEL 24:** APN: 033-200-04s (Fresno County)

PARCEL 1 OF <u>PARCEL MAP NO. 90-01</u>, IN THE CITY OF SAN JOAQUIN, COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF RECORDED IN <u>BOOK 50, PAGE 89 OF PARCEL MAPS</u>, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATE THEREIN AND THEREUNDER, TOGETHER WITH ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON AS

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 162 of 261

RESERVED BY PETER G. RUSCONI IN DEED RECORDED JUNE 2, 1971, <u>INSTRUMENT NO. 43153</u>, IN <u>BOOK 5900, PAGE 328, OFFICIAL RECORDS.</u>

ALSO EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ANY OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND, AS RESERVED BY DON GRAGNANI AND IRENE GRAGNANI IN DEED RECORDED SEPTEMBER 28, 1990, <u>INSTRUMENT NO. 900117867, OFFICIAL RECORDS.</u>

**PARCEL 25:** APN: 075-020-38s (portion of) (Fresno County)

ALL THAT PORTION OF THE SOUTHEAST QUARTER OF SECTION 4, TOWNSHIP 20 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA IN THE COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, LYING EAST OF THE CENTERLINE OF ARROYO PASEJERO CREEK.

EXCEPTING THEREFROM ONE-HALF OF ALL OIL AND MINERAL RIGHTS AS RESERVED IN THE DEED FROM EDITH A. ELLIS, AS ADMINISTRATIVE OF THE ESTATE OF THOMAS J. ARLIN, DECEASED, TO GIFFEN, INC., A CORPORATION, DATED JANUARY 31, 1937, RECORDED MARCH 20, 1957, IN <u>BOOK 2505, PAGE 13</u>, AS DOCUMENT NO. 159353, OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ALL OF GRANTOR'S RIGHT, TITLE AND INTEREST IN AND TO ALL OIL, GAS AND MINERALS, AS RESERVED IN THE DEED FROM GIFFEN, INC. TO WAYMON E. WATTS, AS TRUSTEE OF THE ERIC TARENCE METZLER TRUST, ET AL, RECORDED NOVEMBER 22, 1974, IN BOOK 6730, PAGE 871, AS <u>DOCUMENT NO. 87691, OFFICIAL RECORDS</u>

**PARCEL 26:** APN: 075-020-38s (portion of) (Fresno County)

ALL THAT PORTION OF THE SOUTHWEST QUARTER OF SECTION 4, TOWNSHIP 20 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA IN THE COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, LYING EAST OF THE CENTERLINE OF ARROYO PASEJERO CREEK.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND ALL MINERALS (INCLUDING THEREIN, OIL, GAS AND OTHER HYDROCARBON SUBSTANCES) IN OR UNDER SAID LAND, AS RESERVED IN THE DEED DATED AUGUST 21, 1959, FROM FRANCES M. HOFER AS EXECUTOR OF THE LAST WILL OF PAUL B. HOFER, DECEASED, TO GIFFEN, INC., A CALIFORNIA CORPORATION, RECORDED AUGUST 25, 1959 IN <u>BOOK 4265, PAGE 18 OF OFFICIAL RECORDS</u>, DOCUMENT NO. 59230.

ALSO EXCEPTING THEREFROM ALL OF GRANTOR'S RIGHT, TITLE AND INTEREST IN AND TO ALL OIL, GAS AND MINERALS, AS RESERVED IN THE DEED FROM GIFFEN, INC. TO WAYMON E. WATTS, AS TRUSTEE OF THE ERIC TARENCE METZLER TRUST, ET AL, RECORDED NOVEMBER 22, 1974, IN BOOK 6370, PAGE 871, AS <u>DOCUMENT NO. 87691, OFFICIAL RECORDS.</u>

**Article IX.**    <u>**ADDITIONAL PARCELS 27 THROUGH 66, ADDED TO PRELIM-C:**</u>

<u>**PARCEL 27: FRESNO COUNTY APN: 085-090-04:**</u>

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 163 of 261

The Northwest quarter of the Southeast quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

**PARCEL 28A: FRESNO COUNTY APN: 085-090-26s (PORTION OF):**
The North half of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, a one-half interest in and to all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder TOGETHER WITH, all easements and rights necessary or convenient for the production, storage and transportation thereof and exploration and testing of the said real property and also the right to drill for, produce and use water from the said real property in connection with drilling or mining operations thereon, as reserved by Richard P. Heiser, as his separate property, in the Deed recorded March 7, 1952, in Book 3134, Page 320 of Official Records, as Document No. 12710.

**PARCEL 28B: FRESNO COUNTY APN: 085-090-26s (PORTION OF):**
The Southwest quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas and mineral rights within or underlying said property, as excepted in the Deed executed by Leona H. Todd, recorded June 13, 1952, in Book 3177, Page 194 of Official Records, as Document NO. 31391, in which said Grantor agrees not to drill a well or carry on any operations for the production of oil or gas, etc., from said real property and in the event Grantor makes a lease for that purpose, such lease shall contain a proper provision protecting the owner of the surface rights as to any damages resulting from operations under said lease, which damages shall be paid by the lessee under such lease; nor will grantor consent to a the discharge of any explosives upon said real property without the consent of the owner of the surface. The foregoing provisions are binding upon my heirs, successors and assigns.

**PARCEL 29: FRESNO COUNTY APN: 085-090-90s:**
The North half of the Northwest quarter of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

EXCEPTING THEREFROM, all of the mineral and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the herein above described property or that may be produced therefrom including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Pages 25 thru 28 of Official Records, as Document No. 104217.

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 164 of 261

**PARCEL 29A: FRESNO COUNTY APN: 085-090-26s (PORTION OF):**
A non-exclusive private road easement, over the North 60.00 feet of the Northeast quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

**PARCEL 30: FRESNO COUNTY APN: 085-090-92s:**
The South half of the Northwest quarter of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

EXCEPTING THEREFROM, all of the mineral and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the herein above described property or that may be produced therefrom including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Pages 25 thru 28 of Official Records, as Document No. 104217.

**PARCEL 30A: FRESNO COUNTY APN: 085-090-26s (PORTION OF):**
A non-exclusive private road easement, over the North 60.00 feet of the Northeast quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

**PARCEL 30B: FRESNO COUNTY APN: 085-090-90s, 91s, 92s, 93s, 94s, 95s, 96s & 97s (PORTION OF):**
A non-exclusive private road easement, over the North 60.00 feet of the West half of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof; and a strip of land being 60.00 feet in width, lying equally on each side of the East line of the West half of said Section 13, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

**PARCEL 31: FRESNO COUNTY APN: 085-090-94s:**
The North half of the Southwest quarter of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

EXCEPTING THEREFROM, all of the mineral and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the herein above described property or that may be produced therefrom including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products

Deed of Trust
SRAN [Loan No. 1503]

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 165 of 261

derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Pages 25 thru 28 of Official Records, as Document No. 104217.

**PARCEL 31A: FRESNO COUNTY APN: 085-090-26s (PORTION OF):**
A non-exclusive private road easement, over the North 60.00 feet of the Northeast quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

**PARCEL 31B: FRESNO COUNTY APN: 085-090-90s, 91s, 92s, 93s, 94s, 95s, 96s & 97s (PORTION OF):**
A non-exclusive private road easement, over the North 60.00 feet of the West half of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof; and a strip of land being 60.00 feet in width, lying equally on each side of the East line of the West half of said Section 13, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

**PARCEL 32: FRESNO COUNTY APN: 085-090-96s:**
The South half of the Southwest quarter of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

EXCEPTING THEREFROM, the South 175 feet of the West 220 feet of said Section 13, as conveyed to Westlands Water District, in the Deed recorded February 18, 1977, in Book 6743, Pages 213 thru 223 of Official Records, as Document No. 16643.

ALSO EXCEPTING THEREFROM, all of the mineral and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the herein above described property or that may be produced therefrom including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Pages 25 thru 28 of Official Records, as Document No. 104217.

**PARCEL 32A: FRESNO COUNTY APN: 085-090-26s (PORTION OF):**
A non-exclusive private road easement, over the North 60.00 feet of the Northeast quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel

<u>Map No. 2011-13</u>, recorded August 17, 2012, as <u>Document No. 2012-0115401, of Official Records</u>.

**<u>PARCEL 32B: FRESNO COUNTY APN: 085-090-90s, 91s, 92s, 93s, 94s, 95s, 96s & 97s (PORTION OF):</u>**
A non-exclusive private road easement, over the North 60.00 feet of the West half of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof; and a strip of land being 60.00 feet in width, lying equally on each side of the East line of the West half of said Section 13, according to the Certificate of Waiver of <u>Parcel Map No. 2011-13</u>, recorded August 17, 2012, as <u>Document No. 2012-0115401, of Official Records</u>.

**Article X.     <u>PARCEL 33: FRESNO COUNTY APN: 027-050-01:</u>**
The North half of the West half of the Northwest quarter of Fractional Section 3, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

**<u>PARCEL 34: FRESNO COUNTY APN: 027-050-02s:</u>**
The Fractional Northeast quarter of the Northwest quarter of the Fractional Section 3, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, one-half of all oil, gas and other minerals as heretofore reserved or conveyed of record, as stated in the following Deed; and
ALSO EXCEPTING THEREFROM, all remaining oil, gas and other minerals not previously reserved of record, as reserved by Edith E. Leslie and Barbara J. Dixson, in the Deed recorded May 11, 1983, as <u>Document No. 83040881, of Official Records</u>.

**Article XI.     <u>PARCEL 35: FRESNO COUNTY APN: 027-050-07:</u>**
The North half of the South half of the West half of the Northwest quarter of Fractional Section 3, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

**<u>PARCEL 36: FRESNO COUNTY APN: 027-050-11s:</u>**
The Southeast quarter of Fractional Section 3, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided one-half interest in and to all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder, as reserved y Maybelle C. Beckett, a single woman, and Retha B. Hopwood, aka Retha Hopwood, a widow, in the Deed recorded September 6, 1973, in <u>Book 6210, Page 102 of Official Records</u> as Document No. 81853.

**Article XII.     <u>PARCEL 37: FRESNO COUNTY APN: 017-070-17:</u>**

Deed of Trust
SRAN [Loan No. 1503]

The Southwest quarter of Section 33, Township 14 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

## PARCEL 38: FRESNO COUNTY APN: 033-020-73s:
The North 400.00 feet of the East 400.00 feet of Lot 297 of Valley Garden Farms, Subdivision-A, in the unincorporated area of the County of Fresno, State of California, according to map thereof recorded June 12, 1915, in Book 7, Pages 76 to 79 of Plats, in the office of the County Recorder of said County.

EXCEPTING THEREFROM, an undivided one-half interest in and to all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder, TOGETHER WITH, all easements and rights necessary or convenient for the production, storage and transportation thereof and the exploration and testing of the said real property, and also the right to drill for, produce and use water from the said real property in connection with drilling or mining operations thereon, as reserved by Peter G. Rusconi, also known as Peter Rusconi, who acquired title as a single man, in the Deed recorded June 2, 1971, in Book 5900, Page 328 of Official Records, as Document No. 43153.

## PARCEL 39: FRESNO COUNTY APN: 033-020-74s:
Lot 297 and Lot 304 of Valley Garden Farms, Subdivision-A, in the unincorporated area of the County of Fresno, State of California, according to map thereof recorded June 12, 1915, in Book 7, Pages 76 to 79 of Plats, in the office of the County Recorder of said County.

EXCEPTING FROM, Lot 297, the North 400.00 feet of the East 400.00 feet, as conveyed to the City of San Joaquin, in the Deed recorded December 6, 2005, as Document No. 2005-0285097, of Official Records.

ALSO EXCEPTING THEREFROM, an undivided one-half interest in and to all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder, TOGETHER WITH, all easements and rights necessary or convenient for the production, storage and transportation thereof and the exploration and testing of the said real property, and also the right to drill for, produce and use water from the said real property in connection with drilling or mining operations thereon, as reserved by Peter G. Rusconi, also known as Peter Rusconi, who acquired title as a single man, in the Deed recorded June 2, 1971, in Book 5900, Page 328 of Official Records, as Document No. 43153.

**Article XIII.   PARCEL 40: FRESNO COUNTY APN: 020-200-01:**
The Northwest quarter of the Northwest quarter of the Southwest quarter of Section 29, Township 4 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

**Article XIV.   PARCEL 41: FRESNO COUNTY APN: 028-041-01:**
Lots 1 and 2 as shown on the Map of Subdivision No. 7 Tranquillity Colony (map shows 2-LL's), in Section 2, Township 15 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the map thereof recorded August 4, 1910, in Book 5, Page 50 of Record of Surveys, in the Office of the County Recorder of said County.

**Article XV.** <u>**PARCEL 42: FRESNO COUNTY APN: 028-041-02:**</u>

Lots 4 and 5 as shown on the Map of Subdivision No. 3 Tranquillity Colony (map shows 2-LL's), in Section 1, Township 15 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area, County of Fresno, State of California, according to the Map thereof recorded April 18, 1908, in <u>Book 4, Page 24, of Record of Surveys</u>, in the Office of the County Recorder of said County.

**Article XVI.** <u>**PARCEL 43: MADERA COUNTY APN: 041-190-006:**</u>

All that portion of Section 21, Township 12 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, described as follows:

BEGINNING, on the East Section line of Section 21, Township I12 South, Range 14 East, Mount Diablo Base and Meridian;
Thence, North 0° 01' West 790.85 feet from the Southeast corner; Thence,
South 87° 02' West 1344.83 feet;
Thence, South 0° 01' East 709.02 feet to the South Section line;
Thence, North 89° 29' West 2528.32 feet to the East bank of the San Joaquin River Branch of Colombia Canal;
Thence, North 25° 43-1/2' West 352 feet;
Thence, North 13° 42' West 233.50 feet to the center line of a 60-foot road; Thence,
North 87° 02' East 1656.87 feet;
Thence, North 0° 01' West 2322.59 feet to a point in the centerline of a ditch drain;
Thence, Northwest along said centerline to the North Section line;
Thence, South 88° 53' East 2,861.20 feet, more or less, to the Southwest bank of Columbia Canal; Thence,
South 27° 51-½' East 64.04 feet;
Thence, South 46° 19-½' East 215.50 feet;
Thence, South 73° 19-½' East 130 feet; Thence,
North 76° 08-½' East 170 feet; Thence, North
77° 45-½' East 209.83 feet; Thence, South 68°
32 ½' East 49.04 feet;
Thence, South 11° 10-½' East 387.10 feet to the East Section line; Thence,
South 0° 01' East 155.02 feet;
Thence, South 0° 01' East 3776.98 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM, that portion described as BEGINNING at a point on the East line of Section 21, Township 12 South, Range 14 East, Mount Diablo Base and Meridian, according to the Official Plat thereof, which bears North 0° 01' West 790.85 feet from the Southeast corner; Thence, along the East line of said Section 21, and the centerline of a 60-foot County Road; Thence, North 0° 01' West 350.00 feet;
Thence, South 87° 02' West 350.00 feet;
Thence, South 0° 01' East 350.00 feet;
Thence, along the centerline of a 60-foot road easement, North 87° 02' East 350.00 feet to the POINT OF BEGINNING.

Deed of Trust
SRAN [Loan No. 1503]

ALSO EXCEPTING THEREFROM, an undivided sixty percent (60%) of all oil, gas and mineral rights in and to said land, as reserved by Chauncey Yip, et al in the Deed recorded December 20, 1990, as <u>Document No. 90-32420 of Official Records</u>.

### Article XVII.   <u>PARCEL 44: MADERA COUNTY APN: 042-010-003</u>:

All that portion of Section 28, Township 12 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, described as follows:

BEGINNING, North 89° 26' West 1343.28 feet from the Northeast corner of said Section 28;
Thence, South 1362.73 feet;
Thence, South 89° 35' West 91.06 feet;
Thence, South 46° 17' East 28.74 feet;
Thence, South 89° 35' West 2043.73 feet to the East bank of the Columbia Canal;
Thence, North 26° 07' West 23.13 feet;
Thence, North 11° 21' West 939.80 feet;
Thence, North 22° 35' West 423.49 feet;
Thence, North 25° 40-½' West 78.43 feet to the North line of Section 28;
Thence, South 89° 26' East 2528.32 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM, an undivided sixty percent (60%) of all oil, gas and mineral rights in and to said land, as reserved by Chauncey Yip, et al in the Deed recorded December 20, 1990, as <u>Document No. 90-32420 of Official Records</u>.

### Article XVIII.   <u>PARCEL 45: KERN COUNTY APN: 059-160-42</u>:

Parcel 1 of Parcel Map Waiver No. 1212, according to the Certificate of Compliance, recorded March 22, 1990, in <u>Book 6361, Page 540 of Official Records</u>, as Document No. 39852, described as follows:

The Northeast quarter of the Northeast quarter of Section 32, Township 26 South, Range 23 East, Mount Diablo Meridian, in the unincorporated area of the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, 75% of all minerals, oil, gas and hydrocarbons now or at any time hereafter situated within said land, TOGETHER WITH, the right to explore for, mine, drill, extract, and take such minerals, oil, gas, and hydrocarbons from said lands and to use the surface and sub-surface of said lands for such exploration, drilling and extraction, and for such derricks, machinery, structures, sumps, dumps, roads, pipe, tools, tanks, pipe lines, power lines, and plants, as in the opinion of the grantors, its successors or assigns, may be necessary or convenient at any time for the exploration for, mining, drilling, extraction, removal, storage, transportation, processing, and sale of such minerals within or removed from said lands, subject to the terms and conditions contained therein, all as excepted and reserved by Semi-Tropic Land & Water Co., a Corporation, in the Deed recorded July 2, 1947 in <u>Book 1413, Page 402 of Official Records</u>, as Document No. 24960.

ALSO EXCEPTING THEREFROM, the remainder of all oil, gas and other hydrocarbon substances and minerals within or underlying said land as excepted in Deed from Lila E. Gill, a widow, and Lila Eliza Gill, as Trustee, to Obie Hankins and Virginia Hankins, husband and wife, an undivided 1/2 interest, and J. G. Garrison and Juanita M. Garrison, husband and wife, an undivided 1/2 interest, in the Deed recorded January 13, 1967 in Book 4010

Page 809 of Official Records, as Document No. 01751.

**Article XIX.    PARCEL 46: KERN COUNTY APN: 059-160-43:**

Parcel 2 of Parcel Map Waiver No. 1212, according to the Certificate of Compliance, recorded March 22, 1990, in Book 6361, Page 540 of Official Records, as Document No. 39852, described as follows:

The Southeast quarter of the Northeast quarter of Section 32, Township 26 South, Range 23 East, Mount Diablo Meridian, in the unincorporated area of the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the South thirty feet thereof.

ALSO EXCEPTING THEREFROM, 75% of all minerals, oil, gas and hydrocarbons now or at any time hereafter situated within said land, TOGETHER WITH, the right to explore for, mine, drill, extract, and take such minerals, oil, gas, and hydrocarbons from said lands and to use the surface and sub-surface of said lands for such exploration, drilling and extraction, and for such derricks, machinery, structures, sumps, dumps, roads, pipe, tools, tanks, pipe lines, power lines, and plants, as in the opinion of the grantors, its successors or assigns, may be necessary or convenient at any time for the exploration for, mining, drilling, extraction, removal, storage, transportation, processing, and sale of such minerals within or removed from said lands, subject to the terms and conditions contained therein, all as excepted and reserved by Semi-Tropic Land & Water Co., a Corporation, in the Deed recorded July 2, 1947 in Book 1413, Page 402 of Official Records, as Document No. 24960.

ALSO EXCEPTING THEREFROM, the remainder of all oil, gas and other hydrocarbon substances and minerals within or underlying said land as excepted in Deed from Lila E. Gill, a widow, and Lila Eliza Gill, as Trustee, to Obie Hankins and Virginia Hankins, husband and wife, an undivided 1/2 interest, and J. G. Garrison and Juanita M. Garrison, husband and wife, an undivided 1/2 interest, in the Deed recorded January 13, 1967 in Book 4010 Page 809 of Official Records, as Document No. 01751.

**Article XX.    PARCEL 47: KERN COUNTY APN: 059-160-44:**

Parcel 3 of Parcel Map Waiver No. 1212, according to the Certificate of Compliance, recorded March 22, 1990, in Book 6361, Page 540 of Official Records, as Document No. 39852, described as follows:

The East half of Section 32, Township 26 South, Range 23 East, Mount Diablo Meridian, in the unincorporated area, County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the Northeast quarter of the Northeast quarter of said Section 32; and The Southeast quarter of the Northeast quarter of said Section 32.

ALSO EXCEPTING THEREFROM, the following described parcel:

BEGINNING, at the Southeast corner of said Section 32; Thence,
North along the East line of said Section 32, 305 feet;
Thence, West parallel to the South line of said Section 32, 530 feet;
Thence, South parallel with the East line of said Section 32, 305 feet to the South line of said Section 32;
Thence, East along the South line, 530 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, 75% of all minerals, oil, gas and hydrocarbons now or at any time hereafter situated within said land, TOGETHER WITH, the right to explore for, mine, drill, extract, and take such minerals, oil, gas, and hydrocarbons from said lands and to use the surface and sub-surface of said lands for such exploration, drilling and extraction, and for such derricks, machinery, structures, sumps, dumps, roads, pipe, tools, tanks, pipe lines, power lines, and plants, as in the opinion of the grantors, its successors or assigns, may be necessary or convenient at any time for the exploration for, mining, drilling, extraction, removal, storage, transportation, processing, and sale of such minerals within or removed from said lands, subject to the terms and conditions contained therein, all as excepted and reserved by Semi-Tropic Land & Water Co., a Corporation, in the Deed recorded July 2, 1947 in Book 1413, Page 402 of Official Records, as Document No. 24960.

ALSO EXCEPTING THEREFROM, the remainder of all oil, gas and other hydrocarbon substances and minerals within or underlying said land as excepted in Deed from Lila E. Gill, a widow, and Lila Eliza Gill, as Trustee, to Obie Hankins and Virginia Hankins, husband and wife, an undivided 1/2 interest, and J. G. Garrison and Juanita M. Garrison, husband and wife, an undivided 1/2 interest, in the Deed recorded January 13, 1967 in Book 4010 Page 809 of Official Records, as Document No. 01751.

### Article XXI.   PARCEL 48: KERN COUNTY APN: 059-180-01:
The West 20 acres of the Northeast quarter of the Southwest quarter;
The North 10 acres of the Northwest quarter of the Southwest quarter; and
The Northwest quarter of the Southeast quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM all oil, gas, hydrocarbon substances and minerals in and under said land as reserved by Francis I. Sanger and Helen Z. Sanger, husband and wife, in the Deed recorded April 20, 1953 in Book 2071 Page 213 of Official Records, as Document No. 18814.

### Article XXII.   PARCEL 49: KERN COUNTY APN: 059-180-03:
The North half of the Southeast quarter of the Northeast quarter of the Southwest quarter;
The South half of the South half of the Northeast quarter of the Northeast quarter of the Southwest quarter; and
The North half of the Southeast quarter of the Northeast quarter of the Northeast quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

### Article XXIII.   PARCEL 50: KERN COUNTY APN: 059-180-11:
The Northeast quarter of the Southeast quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

### Article XXIV.   PARCEL 51: KERN COUNTY APN: 059-180-12:
The South half of the Southeast quarter of the Northeast quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas, hydrocarbon substances and minerals within or underlying said land, as

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 172 of 261

reserved by Katherine B. Belshaw, a widow, in the Deed recorded April 23, 1964, in <u>Book 3718 Page 82 of Official Records</u>, as Document No. 26638.

**Article XXV.   <u>PARCEL 52: KERN COUNTY APN: 059-180-13:</u>**
The South 35 acres of the Southwest quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas, hydrocarbon substances and minerals within or underlying said land as reserved by G. A. Holtz, et ux, et al, in the Deed recorded March 20, 1964 in <u>Book 3706 Page 315 of Official Records</u>, as Document No. 18988.

**Article XXVI.   <u>PARCEL 53: KERN COUNTY APN: 059-180-14:</u>**
The North 5 acres of the Southwest quarter of the Southwest quarter and the South 30 acres of the Northwest quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas, hydrocarbon substances and minerals in and under said land as excepted in the Deed dated December 19, 1963 from J. T. Nighbert to Katherine Irene Gill, et al, recorded December 31, 1963 in <u>Book 3676 Page 962 of Official Records</u>, as Document No. 80914.

**Article XXVII.   <u>PARCEL 54A: KERN COUNTY APN: 059-180-27 (PORTION OF):</u>**
The South half of the South half of the Southeast quarter, and
The South half of the Southeast quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM 75% of all minerals, oil, gas and hydrocarbons now or at any time hereafter situated within said land, TOGETHER WITH, the right to explore for, mine, drill, extract, and take such minerals, oil, gas, and hydrocarbons from said lands and to use the surface and sub-surface of said lands for such exploration, drilling and extraction, and for such derricks, machinery, structures, sumps, dumps, roads, pipe, tools, tanks, pipe lines, power lines, and plants, as in the opinion of the grantors, its successors or assigns, may be necessary or convenient at any time for the exploration for, mining, drilling, extraction, removal, storage, transportation, processing, and sale of such minerals within or removed from said lands, subject to the terms and conditions contained therein, all as excepted and reserved by Semi-Tropic Land & Water Co., a Corporation, in the Deed recorded July 2, 1947 in <u>Book 1413, Page 402 of Official Records</u>, as Document No. 24960.

ALSO EXCEPTING THEREFROM, the remainder of all oil, gas and other hydrocarbon substances and minerals within or underlying said land as excepted in Deed from Lila E. Gill, a widow, and Lila Eliza Gill, as Trustee, to Obie Hankins and Virginia Hankins, husband and wife, an undivided 1/2 interest, and J. G. Garrison and Juanita M. Garrison, husband and wife, an undivided 1/2 interest, in the Deed recorded January 13, 1967 in <u>Book 4010 Page 809 of Official Records</u>, as Document No. 01751.

**Article XXVIII. <u>PARCEL 54B: KERN COUNTY APN: 059-180-27 (PORTION OF):</u>**
The North half of the Southeast quarter of the Southeast quarter and

Deed of Trust
SRAN [Loan No. 1503]

The South half of the Northeast quarter of the Southeast quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas and other hydrocarbon substances deposited in, lying under, or flowing through said lands and all metals and minerals therein and thereon, TOGETHER WITH, the right to enter upon said lands and to drill for, produce, extract, take and remove said substances from said lands, as reserved by Gladys M. Leake, a married woman, in the Deed recorded September 5, 1941 in Book 1050 Page 37 of Official Records, as Document No. 23280.

**Article XXIX. PARCEL 54C: KERN COUNTY APN: 059-180-27 (PORTION OF):**
The North half of the Northeast quarter of the Southeast quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas, minerals and other hydrocarbon substances within or underlying said land as excepted in the Deed from Lila E. Gill, a widow, and Lila Eliza Gill, as Trustee, recorded January 13, 1967 in Book 4010 Page 809 of Official Records, as Document No. 01751.

**Article XXX. PARCEL 55 KINGS COUNTY APN: 004-100-004; 004-070-026: & APN 004-100-055 (PORTION) & 004-070-079 (PORTION):**
All of Lot 1 of Section 9; All
of Lot 32 of Section 4;
That portion of Lot 3 of Section 9; and
That portion of Lot 31 of Section 4, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records, described as follows:

BEGINNING, at a point in the North line of Section 9, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, from which the Northeast corner of said Section bears South 89° 48' East 1320 feet;
Thence, North 655 feet along the East line of Lot 31;
Thence, North 52° 30' West 190 feet;
Thence, South 76° 30' West 590 feet;
Thence, South 42° 30' West 115 feet;
Thence, South 13° 45' West 340 feet;
Thence, South 42° 20' West 216 feet;
Thence, South 71° 14' West 181 feet to a point in the South line of Section 4, from which the point of beginning bears South 89° 48' East 1200 feet;
Thence, South 59° 47' West 393.7 feet;
Thence, South 18° 27' West 176.2 feet;
Thence, South 83° 45' East 250 feet;
Thence, South 72° 30' East 400 feet;
Thence, South 66° 05' East 190 feet;
Thence, South 76° 50' East 170 feet;
Thence, North 86° 40' East 250 feet;
Thence, North 76° 00' East 170 feet;

Deed of Trust
SRAN [Loan No. 1503]

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 174 of 261

Thence, North 50° 25' East 120 feet;

.

Deed of Trust
SRAN [Loan No. 1503]

Thence, North 22° 30' East 316 feet;
Thence, North 44° 30' East 160 feet;
Thence, North 63° 30' East 130 feet;
Thence, North 80° 35' East 170 feet to a point in the north line of section 9; Thence,
North 89° 48' West 397 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM, a strip of land 30 feet wide along the margin of Kings River or any other defined water course running through or along the boundaries of said land and along all such margins.

ALSO EXCEPTING THEREFROM, any portion of the described property within the natural bed of Kings River below the line of ordinary high water.

ALSO EXCEPTING THEREFROM, an undivided one-half of all oil, hydrocarbon substances and minerals of all kinds, in or upon said land, TOGETHER WITH, the right to enter upon said premises to prospect for, drill for, capture and remove an undivided one-half of oil, gas, hydrocarbon substances and other minerals found upon the surface or under the surface of said land, with the right to build and maintain such drilling riggs, pipelines, sumpholes, power lines and buildings as may be necessary for mining for, drilling for, and capturing any of said substances hereinbefore mentioned and removing same from said premises, TOGETHER WITH, the right of ingress and egress at all times for said purposes, as reserved by David H. Moore and Ruth Moore, husband and wife, in the Deed recorded August 22, 1945 in Book 331, Page 413 of Official Records, as Document No. 4991.

**Article XXXI.  PARCEL 56 KINGS COUNTY APN: 004-070-079 (PORTION):**
Lot 30 in Section 3, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records.

EXCEPTING THEREFROM, a strip of land 30 feet in width along the margin of Kings River or any other defined water course running through or along the boundaries of said lands and along all such margins as reserved by Security First National Bank of Los Angeles, in the Deed recorded December 1, 1941 in Book 257, Page 445 of Official Records, as Document No. 7645.

ALSO EXCEPTING THEREFROM, any portion of the described property within the natural bed of the Kings River below the line of ordinary high water.

**Article XXXII.  PARCEL 57 KINGS COUNTY APN: 004-100-055 (PORTION):**
Lot 6 of Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records.

EXCEPTING THEREFROM, a strip of land 30 feet in width along the margin of Kings River or any other defined water course running through or along the boundaries of said lands and along all such margins as reserved by Security First National Bank of Los Angeles, in the Deed recorded December 1, 1941 in Book 257, Page 445 of Official Records, as Document No. 7645.

NOTE:  the map hereinabove referred to recites:

"all measurements are to centers of roads and all are figured to road centers."

Deed of Trust
SRAN [Loan No. 1503]

ALSO EXCEPTING THEREFROM, any portion of the described property line within the natural bed of the Kings River below the line of ordinary high mark.

### Article XXXIII. PARCEL 58 KINGS COUNTY APN: 004-100-023:

All that portion of Lots 2 and 3 in Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records, lying North of the following described line:

BEGINNING, at the Northeast corner of said Section 10;
Thence, South along the East line of said Section 10, 1496.96 feet to the TRUE POINT OF BEGINNING;
Thence, North 89° 35' 52" West 2640 feet, more or less, to the East line of Lot 9, In Said Section 10.

EXCEPTING FROM, all of the property hereinabove described all those portions thereof in the bed of the Kings River and also excepting from all of the property hereinabove described all those portions thereof included in a strip of land of variable width lying between the Outer Line of Kings River and the Meandered Boundary line of Lots as per said Map of Laguna de Tache Grant running downstream through said Section 10, and also a strip of land of variable width lying between the Meandered Boundary line of Lots on either side of Kings River as per said Map of Laguna de Tache Grant running downstream through said Section 10, all as described in the Deed to Tulare Lake Basin Water Storage District recorded August 6, 1928 in Book 34 at Page 416 of Official Records.

ALSO EXCEPTING THEREFROM, an undivided one-half interest of all oil, gas, other hydrocarbons and minerals in and under said real property. The Grantors shall have not right to drill any wells or take any other measures for the production of oil, gas, or other hydrocarbons or minerals on any of said property, subject to the terms and conditions contained therein, all as reserved by Oscar E. Goodreau and Margaret M. Goodreau, husband and wife, and Bernard Goodreau and Jessie Goodreau, husband and wife, in the Deed recorded January 23, 1951 in Book 482, Page 515 of Official Records, as Document No. 792.

### Article XXXIV.        PARCEL 59 KINGS COUNTY APN: 004-100-022:

Lots 3, 9 and 10 in Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records.

EXCEPTING THEREFROM, that portion of Lot 3 lying within the following described property:

All that portion of Lots 2 and 3 in Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records, lying north of the following described line:

BEGINNING, at the Northeast corner of said Section 10;
Thence, South along the East line of said Section 10, 1496.96 feet to the TRUE POINT OF BEGINNING;
Thence, North 89° 35' 52" West 2640 feet, more or less, to the East line of Lot 9, in said Section 10.

ALSO EXCEPTING THEREFROM, all of the property hereinabove described all those portions thereof in the bed of the Kings River and also excepting from all of the property hereinabove described all those portions thereof included in a strip of land of variable width lying between the Outer Line of Kings River and the Meandered Boundary line of Lots as per said Map of Laguna de Tache Grant running downstream through said Section 10,

and also a strip of land of variable width lying between the Meandered Boundary line of Lots on either side of Kings River as per said Map of Laguna de Tache Grant running downstream through said Section 10, all as described in the Deed to Tulare Lake Basin Water Storage District recorded August 6, 1928 in Book 34 at Page 416 of Official Records.

ALSO EXCEPTING THEREFROM, an undivided one-half interest of all oil, gas, other hydrocarbons and minerals in and under said real property. The Grantors shall have not right to drill any wells or take any other measures for the production of oil, gas, or other hydrocarbons or minerals on any of said property, subject to the terms and conditions contained therein, all as reserved by Oscar E. Goodreau and Margaret M. Goodreau, husband and wife, and Bernard Goodreau and Jessie Goodreau, husband and wife, in the Deed recorded January 23, 1951 in Book 482, Page 515 of Official Records, as Document No. 792.

**Article XXXV. PARCEL 60 KINGS COUNTY APN: 004-100-039:**
All of Lots 5 and 7 in Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna De Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records.

EXCEPTING THEREFROM, all that portion of Lot 5 of Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, described as follows:

BEGINNING, at the Northeast corner of said Lot 5, as shown on the Map of Laguna De Tache Grant;
Thence, South 13° 35' West 131 feet;
Thence, South 71° 35' West 149.5 feet to the TRUE POINT OF BEGINNING;
Thence, along the Southeasterly line of said Lot, South 44° 35' West 208.7 feet;
Thence, North 45° 25' West 208.7 feet;
Thence, North 44° 35' East 208.7 feet;
Thence, South 45° 35' East 208.7 feet to the TRUE POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, any portion of the described property within the natural bed of the Kings River below the line of ordinary high water.

ALSO EXCEPTING THEREFROM, all that portion of Lot 5 of Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, as shown on the Map of Laguna De Tache Grant, described as follows:

BEGINNING, at the Northeast corner of said Lot 5; Thence
South 13° 35' West 131 feet;
Thence South 71° 35' West 149.5 feet;
Thence South 44° 35' West 208.7 feet to the TRUE POINT OF BEGINNING; Thence
South 44° 35' West 59 feet;
Thence South 83° 50' West 182.07 feet;
Thence North 45° 25' West 142.8 feet;
Thence North 44° 35' East 200 feet;
Thence South 44° 25' East 258 feet to the TRUE POINT OF BEGINNING.
(removes 004-100-038)

ALSO EXCEPTING THEREFROM, one-half of all oil, gas, minerals, mineral rights and other hydrocarbon substances within or underlying said land as excepted and reserved in the Deed Executed by Joe Fagundes, et al, recorded June 10, 1980 in Book 1177 at Page 466, of Official Records, as Document No. 6904.

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 178 of 261

**Article XXXVI.**     **PARCEL 61 KINGS COUNTY APN: 004-171-078:**

Parcel 2, of Lot Line Adjustment No. 09-05, in the unincorporated area of the County of Kings, State of California according to the Parcel Map Waiver recorded August 25, 2009 as Document No. 0915250, of Official Records, described as follows:

Lot 1 in Section 16, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, according to Map of Laguna De Tache Grant, recorded November 12, 1894 in Book 2, Page 98 of Record of Surveys, Fresno County Records; that part of lot 2 in the aforesaid Section 16, lying South and east of the south fork of the island canal, described as follows:

BEGINNING, at the Southeast comer of Lot 2 in Section 16;
Thence, along the South line of said Lot, North 89° 48' West 480 feet to a point in the center of South Fork of the Island Canal;
Thence, North 30°42' East 450 feet;
Thence, North 29°15' East 242 feet;
Thence, North 34°49' East 130 feet;
Thence, South on the East line of said Lot 2 a distance of 666 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM, that portion conveyed by Deed to Island Reclamation District No. 776, described as follows:

BEGINNING, at a point 818.4 feet South of corner common to Section 9, 10, 15 and 16 in said Township and Range;
Thence, South 62° 53' West, 675 feet to the intersection with the North line of right of way of Island Reclamation District;
Thence, along said line South 75° 05', East, 368.3 feet to a point;
Thence, North 61° 30', East 278.5 feet to a point on the East line of said Section;
Thence, North along said line 269.1 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, that portion described as follows:

All that portion of the aforesaid Lot 1, lying Northerly and Westerly of the centerline of the South Fork Island Canal.

ALSO EXCEPTING THEREFROM, any portion of the described property within the natural bed of the Kings River below the line of ordinary high water.

ALSO EXCEPTING THEREFROM, a strip of land 30 feet in width along the margin of Kings River and any other defined water course running through or along the boundaries of said land, and along all such margins.

ALSO EXCEPTING THEREFROM, one-half of all oil, gas, minerals, mineral rights and other hydrocarbon substances within or underlying said property, as excepted and reserved in the Deed executed by Edward L. Hurlburt, recorded May 31, 1977 in Book 1093, Page 812 of Official Records, as Document No. 7092.

**Article XXXVII.**     **PARCEL 62 KINGS COUNTY APN: 004-172-001:**

Lot 3 in Section 15, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 98 of Record of Surveys, Fresno County Records.

Deed of Trust
SRAN [Loan No. 1503]

Case: 25-50765     Doc# 30     Filed: 06/01/25     Entered: 06/01/25 20:57:11     Page 179 of 261

EXCEPTING THEREFROM, that portion thereof described as follows:

BEGINNING, at a point 819.4 feet South of the Northwest corner of said Section 15; Thence
South 265.3 feet;
Thence North 53° 40' East 68.6 feet;
Thence North 21° East 320.3 feet;
Thence North 57° 25' East 130 feet;
Thence South 62° 53' West 314.90 feet to the POINT OF BEGINNING, as conveyed by Joe E. Costa, et al, to
Island Reclamation District No. 776, in the Deed recorded In Book 199, Page 234 of Official Records.

ALSO EXCEPTING THEREFROM, any portion of the described property within the natural bed of the Kings River
below the line of ordinary high water.

### Article XXXVIII.    PARCEL 63 KINGS COUNTY APN: 036-180-063:
Parcel 2, as shown on the Parcel Map recorded August 8, 2018, in Book 20, Page 90 of Parcel Maps, in the
unincorporated area of the County of Kings, State of California, being a portion of the Southeast quarter of Section 31,
Township 21 South, Range 18 East, Mount Diablo Base and Meridian, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil and gas, associated liquid and gaseous hydrocarbons, and all other minerals,
whether hydrocarbon bearing or not, located on or under the Property. Aera expressly retains and reserves unto
itself, and to Aera's successors and assigns, the right to use the Property for the purposes of:
(1) exploring, prospecting, conducting geophysical operations, drilling, operating, and producing oil and gas,
associated liquid and gaseous hydrocarbons, and other minerals, whether contemporaneously produced with the
oil and gas or not;
(2) laying pipelines and building tanks, communication lines, and other structures thereon, and maintaining such
works to produce, save, take care of, treat, store, transport, and own such products obtained from and under the
Property;
(3) constructing roads and bridges necessary for operations on the Property for the purposes contained in this
subsection; and (4) full rights of ingress and egress to and from the Property for the purposes contained in this
subsection. Aera, or Aera's successors and assigns, shall have the right to use as much of the Property as is
reasonably necessary to carry out the purposes of this subsection. Aera, its successors and assigns, will lay
pipelines in cultivated fields on the Property below plow depth. Aera, its successors and assigns, agrees that it will
pay to Assignee, or Assignee's successors and assigns, or Assignee's tenant, as the case may be, reasonable
damages caused by Aera's operations, or the operations of Aera's successors and assigns, to Assignee's
livestock, crops, trees, existing fences, and other improvements upon the Property. Aera, its successors and
assigns, shall hold Assignee harmless from all claims or liens of third parties by reason of any act or neglect on
Aera's part, all as reserved by Area Energy LLC, A California Limited Liability Company, in the Document entitled
"ASSIGNMENT AND CONVEYANCE" recorded April 12, 2002, as Instrument No. 0207620, of Official Records.

### Article XXXIX.    PARCEL 64 STANISLAUS COUNTY PORTIONS OF APN: 057-026-008 & 009:
All that portion of Fractional Lot 6, which lies in the North half of the North half of the of the Southeast quarter of
Section 8, Township 6 South, Range 9 East, Mount Diablo Base and Meridian, in the unincorporated area of the
County of Stanislaus, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided one-half interest in all the minerals, mineral deposits, mineral oils, and
natural gases of every kind and nature contained in or upon said lands, TOGETHER WITH, the right, in the

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 180 of
261

Grantors and their successors and Grantees, to prospect, mine and operate in and upon the said grounds for such minerals, mineral deposits, mineral oils, and natural gases in any and all miner like metacus deemed necessary in the judgment of Grantors or their agents or in the judgment of the successor of Grantors, for the property extraction of the said minerals and the removal of mineral deposits, mineral oils, and natural gases therefrom, all as reserved by G. L. Dutcher and Ethel Maud Dutcher, husband and wife, in the Deed recorded August 13, 1951, in <u>Volume 1043, page 259 of Official Records</u>, as <u>Document No. 18503</u>.

**Article XL.** <u>**PARCEL 65 STANISLAUS COUNTY PORTIONS OF APN: 057-026-008 & 009:**</u>
All that portion of Fractional Lot 6 which lies in the South half of the North half of the of the Southeast quarter of Section 8, Township 6 South, Range 9 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Stanislaus, State of California according to the Official Plat thereof; and
All that portion of Swamp and Overflowed Land Survey Nos. 159 and 162, which lies in the South half of the Southeast quarter; and in the South half of the North half of the said Southeast quarter of Section 8, Township 6 South, Range 9 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Stanislaus, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided one-half interest in all the minerals, mineral deposits, mineral oils, and natural gases of every kind and nature contained in or upon said lands, TOGETHER WITH, the right, in the Grantors and their successors and Grantees, to prospect, mine and operate in and upon the said grounds for such minerals, mineral deposits, mineral oils, and natural gases in any and all minerlike metacus deemed necessary in the judgment of Grantors or their agents or in the judgment of the successor of Grantors, for the property extraction of the said minerals and the removal of mineral deposits, mineral oils, and natural gases therefrom, all as reserved by G. L. Dutcher and Ethel Maud Dutcher, husband and wife, in the Deed recorded August 13, 1951 in <u>Volume 1043, page 259 of Official Records</u>, as <u>Document No. 18503</u>.

ALSO EXCEPTING THEREFROM, any mobile home, trailer and/or manufactured home located thereon.

**Article XLI.** <u>**PARCEL 66 STANISLAUS COUNTY PORTION OF APN: 057-026-008:**</u>
All that portion of Swamp and Overflowed Land <u>Survey No. 162</u>, which lies in the North half of the North half of the Southeast quarter of Section 8, Township 6 South, Range 9 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Stanislaus, State of California according to the Official Plat thereof.

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 181 of 261

## EXHIBIT B

### DEED OF TRUST; ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND FIXTURE FILING

As-extracted collateral (including without limitation oil, gas and other minerals); fixtures (including without limitation trade fixtures and windmills); equipment, including without limitation wind machines, compressors, pumps, stanchions, equipment relating to power generation, wine processing equipment and machinery, irrigation equipment, wells, pivots, pumps, motors, sprinkler systems, mainlines, hand lines, wheel lines, siphon tubes, gated pipe and all other irrigation equipment used for the production or transportation of water on the real property described in the attached *Exhibit A* or for the irrigation or drainage thereof); embedded software relating to the foregoing; permits, licenses, agreements and documents necessary to own or operate the real property described in the attached *Exhibit A*; supplies; and accounts, inventory, accounts generated rents, issues, profits and incomes arising from the real property described in the attached *Exhibit A* (including without limitation all leases, bonuses, royalties, subleases, franchises, rents, issues, profits and incomes arising therefrom and all the estate, right, title and interest of every nature in and to the same); whether now owned or hereafter acquired, whether now existing or hereafter arising, and all accessions, parts, additions, replacements and substitutions for any of such property, and all proceeds (including without limitation insurance proceeds) from the sale or other disposition of any such property. The aforementioned shall include, without limitation, the following:

1. <u>APN 020-200-01</u>: Irrigation well

2. <u>APNs 085-090-26s, 085-090-90s, 085-090-92s, 085-090-94s, 085-090-96s, 085-090-04</u>: Two irrigation wells, Flowserve pump and 600 horsepower U.S. electric motor (serial #W117634703-0004R0001), Flowserve pump and 600 horsepower U.S. electric motor (serial #P047350071-0002R0002), micro sprinkler irrigation system, three filter systems each with six Lakos sand media filters and a Grundfos booster pump with a 75 horsepower Baldor electric motor, one filter system with six Lakos sand media filters and a Cornell booster pump with a Caterpillar diesel motor, one filter system with six Lakos sand media filters and a Berkeley booster pump with a diesel motor.

3. <u>APNs 027-050-01, 027-050-02s, 027-050-07, 027-050-11s, 027-050-17</u>: Three Westlands Water District outlets and meters, a drip irrigation system, a filter system with eight stainless steel Flowguard sand media filters and a Cornell booster pump with a CNH diesel motor, a Morrill inline filter with five stainless steel Flowguard sand media filters and a Peerless booster pump with a 50 horsepower Baldor electric motor, a filter system with six stainless steel Flowguard sand media filters and a booster pump with an electric motor.

4. <u>APNs 001-280-26, 001-300-10, 003-020-04, 003-020-08, 003-020-09, 003-030-15, 003-030-24, 003-040-01, 003-040-04, 003-060-13, 091-053-001, 091-160-006, 091-170-001, 091-170-006, 091-190-005, 091-190-006</u>: Three irrigation wells, including pumping plants equipped with two 50 horsepower General Electric motors (serial #W55964242 and serial #R55161422), micro sprinkler system, drip irrigation system including surface drip lines, filter system with twenty-four Flowguard sand media filters, two lift pumps, solid separators and a reverse osmosis water treatment system, filter system with three Flowgard sand media filters and a booster pump, filter

system equipped with a 15-horsepower booster pump and three Flowguard sand media filters and generator.

5. <u>APNs 028-050-28s and 028-050-43s</u>: irrigation well with a Flowserve turbine pump and a 300 horsepower US electric motor, a drip system, a filter with eight Flowguard sand media filters, and one Flowguard screen filter and a booster pump with a 20 horsepower electric motor.

6. <u>APN 036-180-063</u>: Westlands Water District outlet and meter (Meter #129115 29R-4.9), a drip irrigation system, a filtration system with three Flowguard sand media filters, one Flowguard cartridge filter and a booster pump with a Case IH diesel motor, Model P171 (173 horsepower @ 2,200 RPM).

7. <u>APNs 085-050-39s, 085-090-91s, 085-090-93s, 085-090-95s and 085-090-97s</u>: Two irrigation wells (one with a Flowserve pump and a 600 horsepower U.S. electric motor and one with a Peerless pump, Johnson gear drive and 500 horsepower Cummins diesel motor), a drip system, micro sprinklers, a filtration system with eight Yardney sand media filters and an ARMS booster pump with a with a diesel motor, a second filtration system with six Flowguard sand media filters and a booster pump with a diesel motor.

8. <u>APNs 041-190-006 and 042-010-003</u>: Two irrigation wells (one with a Johnston pump and a 20 horsepower General Electric motor, serial #D6751463, and one with a turbine pump of unknown make, a 110 horsepower Johnson Gear Drive, serial #179322, and a 150 horsepower Caterpillar diesel motor, serial #448010000, a district water outlet is located along the Columbia Canal on the west side of the subject property, a micro sprinkler system, a filter system with six Flowguard sand media filters and a lift pump with a 40 horsepower electric motor, a filter system with four Flowguard sand media filters and a lift pump with an electric motor, a filter system #with four Lakos sand media filters and a lift pump with an electric motor.

9. <u>APNs 004-070-026, 004-070-079, 004-100-004, 004-100-022, 004-100-023, 004-100-039, 004-100-055, 004-100-068, 004-171-078 and 004-172-001</u>: underground PVC pipelines, eight irrigation wells listed in the table below, and access to riparian water from the Kings River with three river pumps located along the north fork of the Kings River listed in the table below.

| Well # | Ranch | Horsepower | Pump | Well Depth | Water Level | Flow Rate (GPM) |
|---|---|---|---|---|---|---|
| 1 | Gunter | 100 | Turbine | 305 | 144 | 1,202 |
| 2 | Horse Ranch | 75 | Turbine | 340 | 142 | 885 |
| 3 | Horse Ranch | N/A-Non-Op | N/A | N/A | N/A | N/A |
| 4 | Horse Ranch | N/A-Non-Op | N/A | N/A | N/A | N/A |
| 5 | Horse Ranch | N/A-Non-Op | N/A | N/A | N/A | N/A |
| 6 | Quail Island | N/A-Non-Op | N/A | N/A | N/A | N/A |
| 7 | Quail Island | N/A-Non-Op | N/A | N/A | N/A | N/A |
| 8 | Quail Island | 125 Gear Head | Turbine | 250 | 150 | 1,000 |

Case: 25-50765    Doc# 30    Filed: 06/01/25    Entered: 06/01/25 20:57:11    Page 183 of 261

| Pump # | Ranch | Horsepower | Type | Point of Diversion Number | Estimated Flow Rate (GPM) |
|--------|-------|------------|------|---------------------------|---------------------------|
| 1 | Quail Island | 15 | Lift Pump | S027364 | 1,500 |
| 2 | Quail Island | 15 | Lift Pump | S027365 | 1,500 |
| 3 | Lonesome 40 | 15 | Lift Pump | S027366 | 1,500 |

10. APNs 033-020-73s and 033-020-74s: hand move sprinkler pipes

11. APN 083-230-036: irrigation district outlet improved with a screen filter and five Flowguard sand media filters

12. APNs 028-041-01 and 028-041-02: Tranquillity Irrigation District outlet improved with a portable diesel motor, booster pump and three Flowguard sand media filters, and a drip irrigation system

13. APNs 057-026-008 and 057-026-009: a water course pump to divert irrigation water form the San Joaquin river (for SOD S02064).

14. APN 015-315-25s: irrigation well with Flowserve pump and a 60 horsepower General Electric motor (serial #53032622), a filtration system including three Flowguard sand media filters, and a 24,000 gallon tank to supply water for the fire suppression system which is pressurized by a pump with a 10 horsepower electric motor

15. APNs 045-171-17s and 045-171-19s: irrigation well with a 600 horsepower U.S. electric motor on a variable frequency drive, three Westlands Water District outlets, a drip irrigation system with two drip lines suspended on a trellis system down each tree row, a filtration system with eight Flowguard sand media filters and a booster pump with a 100 horsepower electric motor, and a filtration system with ten Flowguard sand media filters and a booster pump with a 100 horsepower electric motor

16. APNs 065-110-06s and 065-110-17s: irrigation well with a 500 horsepower US electric motor on a variable frequency drive, a Westlands Water District outlet and meter, a drip system supported on an elevated trellis system, a micro sprinkler system supported on a trellis system, and a filtration system with ten Flowguard sand media filters and a Cornell booster pump with a 75 horsepower Baldor electric motor

17. APNs 059-160-42, 059-160-43, 059-160-44, 059-180-01, 059-180-03, 059-180-11, 059-180-12, 059-180-13, 059-180-14 and 059-180-27: the irrigation wells set forth on the table below, a micro sprinkler system, a flood irrigation system, with underground concrete pipelines and orchard valves, a drip irrigation system, and a water storage reservoir with a 60 horsepower lift pump and Arkal disc filters

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 184 of 261

| Well # | Location | Pump Make | Motor Make | Horsepower | Water Level | Plant Efficiency | Cost $/AF | Flow Rate (GPM) |
|--------|----------|-----------|------------|------------|-------------|------------------|-----------|-----------------|
| 1 | Block B | Unknown | US | 200 | 305 | 63% | $59.09 | 1,727 |
| 2 | Block C | Peerless | US | 150 | 297 | 69% | $56.90 | 1,221 |
| 3 | Block G | Unknown | US | 200 | 303 | 57% | $68.45 | 1,379 |
| 4 | Block E | Peerless | US | 200 | 307 | 54% | $70.95 | 1,148 |
| 5 | Farmstead | Peerless | GE | 150 | N/A | N/A | N/A | N/A |
| | | | | | | Total Gallons Per Minute | | 5,475 |

18. <u>APNs 028-040-43s, 028-040-45s, 028-170-01, 028-170-02, 028-170-03s, 028-170-31s, 028-170-32s, 028-170-36s, 028-170-63s, 028-170-75s and 028-170-76s, 028-160-06, 028-160-07, 028-160-13s, 028-060-62s, 028-050-44s, 028-050-48s, 028-050-09 and 028-050-10, 028-050-48s:</u> irrigation well with a 600 horsepower electric motor and improved with a variable frequency drive electrical system, irrigation well with a 600 horsepower electric motor and an underground pipline, irrigation well with a Peerless pump and a 400 horsepower U.S. electric motor on a variable frequency drive electrical system, irrigation well with a pump of unknown make and a 500 horsepower U.S. electric motor on a variable frequency drive electrical system, an extensive filter system with two Peerless booster pumps each with a 100 horsepower Baldor electric motor, eight sand media filters for the removal of solids and a reverse osmosis system, a micro sprinkler system, a 16 acre reservoir with 13 Flowguard sand media filters and two lift pumps, each with a 100 horsepower electric motor, a 198 acre foot water storage reservoir with two booster pumps and a filter system with 12 Lakos sand media filters, an easement in perpetuity to access and use an off-site well

19. <u>075-020-38s:</u> irrigation well with 500 horsepower US electric motor on a variable frequency drive, a Westlands Water District outlet and meter, a drip irrigation system supported on an elevated trellis system, a filtration system with eight Flowguard sand media filters and a Peerless booster pump with a 75 horsepower Baldor electric motor

Irrigation equipment also shall include without limitation above and underground pipeline, siphon tubes, gated pipe, main lines, electric lines, hand lines, wheel lines and all allied equipment such as control panels, pivot controls, wiring, wiring switch panels, shafting, openers, tubing, bowls, suction pipe, cones, reducers, valves, valve openers, reducers, end plugs, risers, sterns, sprinkler heads, hoses and nozzles, in each case to the extent now located or hereafter erected on or used in connection with the real property described in the attached *Exhibit A*.

All equipment affixed to the real property described in the attached *Exhibit A*, all spare parts and special tools for such equipment, and all fixtures. All prepaid expenses arising from the ownership and maintenance of the Property.

All contract rights, chattel paper, documents, accounts, and general intangibles, whether now owned or hereafter acquired by debtors, including, but not limited to, all entitlements, rights to payment and payments (in whatever form received, including, but not limited to, payments in cash or in kind) under any current or future state or federal governmental programs, including, but not limited to, Governmental Agricultural Diversion Programs, Governmental Agricultural Assistance Programs, and the United States Department of Agriculture Farm Service Agency (FSA) Feed Grain Program; and all proceeds of the foregoing. All accounts receivable arising from the sale of Collateral or products of the Collateral or from any contract for the sale of Collateral or of products of the Collateral.

All water, water rights, ditches and ditch rights, storage rights and permits, licenses, certificates or shares of stock currently used on, belonging to, or in any way appurtenant to the real property described in this Exhibit A, or whether owned as personal property of any Trustor (including without limitation any rights through membership in the Arroyo Pasajero Mutual Water Company, including any Base Shares in the Arroyo Pasajero Mutual Water Company), whether now owned or hereafter acquired, whether now existing or hereafter arising, and all proceeds from the sale or other disposition of any such property.

Any and all permanent plantings on the real property described in the attached Exhibit A.

## EXHIBIT C
## Permanent Crop Mortgage Rider

Trustor agrees as follows:

1. The term "Permanent Crop" in this Rider means that part of the premises now maintained and operated primarily for the production of almonds, pistachios, or any other permanent vine or tree crop. This property consists of approximately 4,763.60+/- acres of almond permanent crop, 195+/- acres of pistachio permanent crop, 40.80+/- acres of pluot permanent crop.

2. In the event Trustor secures a judgment for property damage and such award is intended by the parties to include damage to or loss to the permanent crops from the application of chemicals and/or water supply, Trustor agrees to deliver to Beneficiary the proceeds of such judgment which shall be applied to reduce the outstanding indebtedness secured by Deed of Trust. Application of the proceeds shall be paid in the sole and absolute discretion of Beneficiary and Beneficiary may retain the entire application of proceeds shall not cure or waive any default by Trustor or Notice of Sale hereunder or invalidate any act done pursuant to such defaults.

3. Trustor will not commit or suffer waste of the premises or impairment in any manner of the agricultural value of the land, and without limiting the generality of the foregoing, will cultivate, irrigate, fertilize, spray, prune, replant all plantings, employ all practices in order to operate the land for its highest and best use as agricultural Property and keep the non-timber land free from all foul and noxious weeds, brush and other undesirable growths, provide for stock selection, crop rotation, drainage, prevention of erosion and pasture maintenance in accordance with the best farming practices in the community where Property is located.

4. In the event that Trustor has planted permanent plantings which hare based upon a patent, Trustor hereby represent to Beneficiary that Trustor has paid all necessary fees for the patented varieties planted on Property and in the event of a default in any of the terms or provisions of this agreement, hereby grants to Beneficiary a license to the patented varieties and transfers all right, title and interest in the patented varieties as held by Trustor to Beneficiary and further grants to Beneficiary the right to sell said Property and plantings to third parties and transfer to them and patent rights.

*[SIGNATURES ON FOLLOWING PAGE]*

**"TRUST"**

**NAVDEP SINGH SRAN and SUKHWINDER KAUR SRAN, Co-Trustees, as community property, or their successors in trust, under the 2005 SRAN FAMILY REVOCABLE TRUST dated 8/10/05 and any amendments thereto**

By: Navdep Singh Sran
Its: Co-Trustee

By: Sukhwinder Kaur Sran
Its: Co-Trustee

**"S3 GROUP"**

S3 GROUP, LLC,
a California limited liability company

By: Lakhvir Singh Sran
Its: Member

By: Savdeep Singh Sran
Its: Member

By: Sukhjivan Singh Sran
Its: Member

**"SRAN ALMONDS"**

SRAN ALMONDS, LLC,
a California limited liability company

By: Lakhvir Singh Sran
Its: Member

By: Savdeep Singh Sran
Its: Member

By: Sukhjivan Singh Sran
Its: Member

**"SRAN VINEYARDS"**

SRAN VINEYARDS, LLC,
a California limited liability company

By: Lakhvir Singh Sran
Its: Member

By: Savdeep Singh Sran
Its: Member

By: Sukhjivan Singh Sran
Its: Member

IN WITNESS WHEREOF, the undersigned Trustors have executed this Deed of Trust as of the date and year first above written.

**"SRAN CHILDREN"**

**SRAN CHILDREN ALMONDS, LLC,**
a California limited liability company

By: Lakhvir Singh Sran
Its: Member

By: Savdeep Singh Sran
Its: Member

By: Sukhjivan Singh Sran
Its: Member

# EXHIBIT 5

# ASSIGNMENT OF LOAN DOCUMENTS

This Assignment of Loan Documents (this "<u>Assignment</u>") is made and entered into on October 21, 2024, by **MORGAN HILLS CAPITAL, LLC,** a Delaware limited liability company, c/o AgAmerica Lending LLC, a Florida limited liability company ("<u>Assignor</u>"), in favor of **MHC ALMONDS, LLC,** a Delaware limited liability company ("<u>Assignee</u>").

For good and valuable consideration, Assignor hereby sells, assigns, transfers, and conveys unto Assignee all documents, instruments, and other papers executed, delivered, or given in connection with or as security for that certain loan (the "Loan") from Assignor to SRAN FAMILY ORCHARDS, INC., a California corporation, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, N.S. FARMS, INC., a California corporation, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, S3 GROUP, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, NAVDEP SRAN dba NAVDEP SRAN FARMS, a sole proprietorship, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, SRAN ALMONDS, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, SRAN VINEYARDS, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, SRAN CHILDREN ALMONDS, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, and DIAMOND WEST FARMING COMPANY, INC., a California corporation, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630 (whether one or more, the "Borrower"), and guaranteed by NAVDEP SINGH SRAN AND SUKHWINDER KAUR SRAN, Co-Trustees, as community property, or their successors in trust, under the 2005 SRAN FAMILY REVOCABLE TRUST, dated August 10, 2005, and any amendments thereto, whose address is 1758 Siskiyou Ave., Kerman, California 93630 (the "Trust"), NAVDEP SINGH SRAN, a married man, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630 ("Navdep"), LAKHVIR SINGH SRAN, a married man, whose address is 8045 N. Rivers Edge Rd., Fresno, California 93711 ("Lakhvir"), SAVDEEP SINGH SRAN, a married man, whose address is 7142 N. Forkner, Fresno, California 93711 ("Savdeep"), and SUKHJIVAN SINGH SRAN, a married man, whose address is 7360 Creston Rd., Paso Robles, California 93446 ("Sukhjivan," and together with Savdeep, Lakhvir, Navdep, and the Trust, individually and collectively, the "Guarantor"), in the original principal amount of One Hundred One Million Two Hundred Sixty-Eight Thousand Dollars and 00/100 Cents ($101,268,000.00), evidenced by that certain Note dated December 20, 2022 (the "Note") made by Borrower to the order of Assignor (the Note and all other documents sold, assigned, transferred, and conveyed herein are collectively the "Loan Documents").

Assignor hereby represents and warrants to Assignee that: (i) Assignor has full legal right, power and authority to execute and deliver this Assignment and to consummate the transactions contemplated herein; (ii) the person who has executed this Assignment is authorized and empowered to cause Assignor to enter into and consummate this Assignment; and (iii) Assignor has not transferred, pledged, conveyed or otherwise encumbered the interests assigned hereunder to any third party.

TO HAVE AND TO HOLD the same unto the Assignee, its successors and assigns forever.

IN WITNESS WHEREOF, the Assignor has duly executed this Assignment as of the day, month and year first above written.

Dated: October 21, 2024

**MORGAN HILLS CAPITAL, LLC**,
a Delaware limited liability company

By: AgAmerica Lending LLC, a Florida
limited liability company, its authorized
representative

By: Theodore R. M. Miller
Its: Director of Closing


**STATE OF FLORIDA**
**COUNTY OF POLK**

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization this 16th day of October, 2024, by Theodore R. M. Miller, as Director of Closing of AgAmerica Lending LLC, as authorized representative of Morgan Hills Capital, LLC, who is personally known to me or has produced _____ as identification.

NOTARY PUBLIC
Name: Trevor Atchison
My Commission expires: 1/18/25

Notary Public State of Florida
Trevor Atchison
My Commission HH 081717
Expires 01/18/2025

Assignment of Loan Documents
SBA IL Loan No. 15031

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 192 of 261

**This document was electronically submitted to Kings County for recording**

**2416690**

**Kristine Lee**
Kings - Assessor/Clerk/Recorder
11/12/2024 09:39 AM

Recorded at the request of:
SIMPLIFILE PROVO
Titles: 4      Pages: 34

Fees: $161.00
Taxes: $0.00
Total: $386.00

**RECORDING REQUESTED BY**
**AND WHEN RECORDED MAIL TO:**

**MORGAN HILLS CAPITAL, LLC**
4030 South Pipkin Road
Lakeland, Florida, 33811

---

Assessor's Parcel Nos.: (Fresno County): 015-315-25s, 001-300-10, 003-020-04, 003-040-01, 003-060-13, 001-280-26, 003-040-04, 003-030-15s, 003-030-24s, 003-020-09, 003-020-08, 045-170-62s, 045-170-86s, 065-110-06s, 065-110-17s, 085-050-39s, 085-090-91s, 085-090-93s, 085-090-95s, 085-090-97s, 033-200-13s, 033-200-14s, 033-200-03s, 033-200-04s, 075-020-38s, 085-090-26s, 085-090-90s, 085-090-92s, 085-090-94s, 085-090-96s, 085-090-04, 027-050-11, 017-070-17, 027-050-01, 027-050-02s, 027-050-07, 033-020-73s, 033-020-74s, 020-200-01, 028-041-01, 028-041-02, (Merced County): 091-160-006, 091-170-001, 091-170-006, 091-053-001, 091-190-005, 091-190-006, 083-230-036, (Madera County): 041-190-006, 042-010-003, (Kern County): 059-160-42, 059-160-43, 059-160-44, 059-180-01, 059-180-03, 059-180-11, 059-180-12, 059-180-13, 059-180-14, 059-180-27, (Kings County): 004-070-026, 004-070-079, 004-100-004, 004-100-022, 004-100-023, 004-100-039, 004-100-055, 004-171-078, 004-172-001, 036-180-063, (Stanislaus County): 057-026-008 and 057-026-009

Space Above This Line for Recorder's Use

---

## ASSIGNMENT OF DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND FIXTURE FILING

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to **MHC Almonds, LLC,** a Delaware limited liability company, whose address is C/O Amerherst Capital Management, 452 Fifth Avenue, 29th Floor, New York, NY 10018, all right, title and interest in and to that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing, dated December 20, 2022 ("Deed of Trust"), executed by NAVDEP SINGH SRAN and SUKHWINDER KAUR SRAN, Co-Trustees, as community property, or their successors in trust, under the 2005 SRAN FAMILY REVOCABLE TRUST dated 8/10/05 and any amendments thereto, whose

Assignment of Deed of Trust
SRAN [Loan No. 1503]

address is 1758 N. Siskiyou Ave., Kerman, California 93630, as to Parcels 1, 12, 25, 26, 27 and 40, and as to an undivided one-third interest in Parcels 38-39 and 64-66 as Tenants in Common with S3 Group and Sran Vineyards, and who took title to Parcels 12 and 40 as NAVDEP SINGH SRAN and SUKHWINDER KAUR SRAN, Co-Trustees, under the 2005 SRAN FAMILY REVOCABLE TRUST, and who took title to the undivided one-third interest in Parcels 38-39 and 64-66 as NAVDEP SINGH SRAN and SUKHWINDER KAUR SRAN, Co-Trustees as community property under the 2005 SRAN FAMILY REVOCABLE TRUST dated 8/10/05 (collectively, the "Trust"); S3 GROUP, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, as to Parcels 2-11, 13-14, 24, 41-53, 54A, 54B, 54C, and 55-62, and as to an undivided one-third interest in Parcels 38-39 and 64-66 as Tenants in Common with the Trust and Sran Vineyards ("S3 Group"); SRAN CHILDREN ALMONDS, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, as to Parcels 15, 16, 16A, 16B, 17, 17A, 17B, 18, 18A, 18B, 19, 19A 19B and 63, subject to Item No. 283 ("Sran Children"); SRAN ALMONDS, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, as to Parcels 28A, 28B, 29, 29A, 30, 30A, 30B, 31, 31A, 31B, 32, 32A, 32B, 33 thru 37 ("Sran Almonds"); and SRAN VINEYARDS, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, as to an undivided one-third interest in Parcels 38-39 and 64-66 as Tenants in Common with the Trust and S3 Group, which took title as SRAN VINEYARDS, LLC, a California limited liability company a California limited liability company ("Sran Vineyards") (the Trust, S3 Group, Sran Children, Sran Almonds and Sran Vineyards are collectively the "**Trustor**"), for the benefit of Morgan Hills Capital, LLC, a Delaware limited liability company c/o AgAmerica Lending LLC, a Florida limited liability company, whose address is 4030 S. Pipkin Road, Lakeland, Florida 33811 (the "**Beneficiary**"), and recorded on December 28, 2022, as Instrument No. 2022-0152408, records of Fresno County, California, and recorded on December 28, 2022, as Instrument No. 2022043851, records of Merced County, California, and recorded on December 28, 2022, as Instrument No. 2022031801, records of Madera County, California, and recorded on December 28, 2022, as Instrument No. 222189115, records of Kern County, California, and recorded on December 29, 2022, as Instrument No. 2224395, records of Kings County, California, and recorded on December 28, 2022, as Instrument No. 2022-0080955, records of Stanislaus County, California, describing land therein as:

The real estate and any interest in the real estate located Fresno, Merced, Madera, Kern, Kings, and Stanislaus Counties, State of California, described in **EXHIBIT "A"**, attached hereto and incorporated herein, along with the Improvements, Equipment, and Water Rights defined in the Deed of Trust.

APN(s): (Fresno County): 015-315-25s, 001-300-10, 003-020-04, 003-040-01, 003-060-13, 001-280-26, 003-040-04, 003-030-15s, 003-030-24s, 003-020-09, 003-020-08, 045-170-62s, 045-170-86s, 065-110-06s, 065-110-17s, 085-050-39s, 085-090-91s, 085-090-93s, 085-090-95s, 085-090-97s, 033-200-13s, 033-200-14s, 033-200-03s, 033-200-04s, 075-020-38s, 085-090-26s, 085-090-90s, 085-090-92s, 085-090-94s, 085-090-96s, 085-090-04, 027-050-11, 017-070-17, 027-050-01, 027-050-02s, 027-050-07, 033-020-73s, 033-020-74s, 020-200-01, 028-041-01, 028-041-02, (Merced County): 091-160-006, 091-170-001, 091-170-006, 091-053-001, 091-190-005, 091-190-006, 083-230-036, (Madera County): 041-190-006, 042-010-003, (Kern County): 059-160-42, 059-160-43, 059-160-44, 059-180-01, 059-180-03, 059-180-11, 059-180-12, 059-180-13, 059-180-14, 059-180-27, (Kings County): 004-070-026, 004-070-079, 004-100-004, 004-100-022, 004-100-023, 004-100-039, 004-100-055, 004-171-078, 004-172-001, 036-180-063, (Stanislaus County): 057-026-008 and 057-026-009

Assignment of Deed of Trust
SRAN [Loan No. 1503]

Together with the note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated: _October 2l_, 2024

**MORGAN HILLS CAPITAL, LLC,**
a Delaware limited liability company

By: AgAmerica Lending LLC, a Florida limited liability company, its authorized representative

By: Theodore R. M. Miller
Its:  Director of Closing

**STATE OF FLORIDA**
**COUNTY OF POLK**

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization this _18th_ day of _October_, 2024, by Theodore R. M. Miller, as Director of Closing of AgAmerica Lending LLC, as authorized representative of Morgan Hills Capital, LLC, who is personally known to me or has produced _____ as identification.

NOTARY PUBLIC
Name: _Trevor Atchison_
My Commission expires: _1/18/25_

Notary Public State of Florida
Trevor Atchison
My Commission HH 081717
Expires 01/18/2025

Assignment of Deed of Trust
SRAN [Loan No. 1503]

Page 3

For APN/Parcel ID(s):  (Fresno County):, 015-315-25s, 001-300-10, 003-020-04, 003-040-01, 003-060-13, 001-280-26, 003-040-04, 003-030-15s, 003-030-24s, 003-020-09, 003-020-08, 045-170-62s, 045-170-86s, 065-110-06s, 065-110-17s, 085-050-39s, 085-090-91s, 085-090-93s, 085-090-95s, 085-090-97s, 033-200-13s, 033-200-14s, 033-200-03s, 033-200-04s, 075-020-38s, 085-090-26s, 085-090-90s, 085-090-92s, 085-090-94s, 085-090-96s, 085-090-04, 027-050-11, 017-070-17, 027-050-01, 027-050-02s, 027-050-07, 033-020-73s, 033-020-74s, 020-200-01, 028-041-01, 028-041-02, (Merced County):, 091-160-006, 091-170-001, 091-170-006, 091-053-001, 091-190-005, 091-190-006, 083-230-036, (Madera County):, 041-190-006, 042-010-003, (Kern County):, 059-160-42, 059-160-43, 059-160-44, 059-180-01, 059-180-03, 059-180-11, 059-180-12, 059-180-13, 059-180-14, 059-180-27, (Kings County):, 004-070-026, 004-070-079, 004-100-004, 004-100-022, 004-100-023, 004-100-039, 004-100-055, 004-171-078, 004-172-001, 036-180-063, (Stanislaus County):, 057-026-008 and 057-026-009

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTIES OF FRESNO AND MERCED, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

**PARCEL 1:**  APN 015-315-25s (Fresno County)

THE SOUTH HALF OF THE NORTH HALF OF THE WEST 80 ACRES OF THE SOUTH 5/8THS OF THE NORTHWEST QUARTER OF SECTION 36, TOWNSHIP 13 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA IN THE  COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ANY AND ALL OIL, GAS AND/OR OTHER PETROLEUM PRODUCTS THAT MAY HEREAFTER BE FOUND, DISCOVERED AND/OR DEVELOPED UPON SAID LAND, AS RESERVED IN THE DEED DATED OCTOBER 6, 1936, FORM JOHN D. MORGAN, JR. AND HAZEL BEALL MORGAN, HUSBAND AND WIFE, RECORDED OCTOBER 19, 1936, IN BOOK 1527, PAGE 378 OF OFFICIAL RECORDS, AS DOCUMENT NO. 25058.

THIS LEGAL DESCRIPTION IS MADE PURSUANT TO THAT CERTAIN CERTIFICATE OF WAIVER OF PARCEL MAP NO. 8088, RECORDED NOVEMBER 8, 2012, AS INSTRUMENT NO. 2012-0161919 OF OFFICIAL RECORDS.

**PARCEL 2:**  APN: 001-300-10; 003-020-04; AND 003-040-01 (Fresno County); and APN: 091-160-006 & 091-170-001 & 006 (Merced County)

PARCEL 2 OF PARCEL MAP NO. 3071, PORTIONS OF WHICH ARE LOCATED IN BOTH THE UNINCORPORATED AREA OF THE COUNTIES OF FRESNO AND MERCED, STATE OF CALIFORNIA ACCORDING TO THE MAP THEREOF RECORDED NOVEMBER 23, 1974, IN BOOK 22, PAGE 54 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF FRESNO COUNTY, AND BY INSTRUMENT ENTITLED "CERTIFICATE OF COMPLETION REORGANIZATION OF THE FRESNO/MERCED COUNTY BOUNDARY CHANGE AREA INVOLVING FRESNO COUNTY SPECIAL DISTRICTS LAFCO FILE NO. 0652", WHICH RECORDED APRIL 22, 2010, AS DOCUMENT NO. 14973, IN THE OFFICE OF THE COUNTY RECORDER OF MERCED COUNTY.

**PARCEL 3:**  APN 091-053-001 (Merced County)

PARCEL 2 OF PARCEL MAP NO. 2030, IN THE UNINCORPORATED AREA OF THE COUNTY OF MERCED, (FORMERLY IN THE COUNTY OF FRESNO) STATE OF CALIFORNIA ACCORDING TO THE MAP THEREOF RECORDED APRIL 17, 1974, IN BOOK 12, PAGE 45 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY

RECORDER OF FRESNO COUNTY, AND BY INSTRUMENT ENTITLED "CERTIFICATE OF COMPLETION REORGANIZATION OF THE FRESNO/MERCED COUNTY BOUNDARY CHANGE AREA INVOLVING FRESNO COUNTY SPECIAL DISTRICTS LAFCO FILE NO. 0652", WHICH RECORDED APRIL 22, 2010, AS DOCUMENT NO. 14973, IN THE OFFICE OF THE COUNTY RECORDER OF MERCED COUNTY.

**PARCEL 4:** APN: 003-060-13 (Fresno County)

PARCEL 3 OF PARCEL MAP NO. 7400, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO STATE OF CALIFORNIA ACCORDING TO THE MAP THEREOF RECORDED FEBRUARY 22, 1991, IN BOOK 51, PAGE 47 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF FRESNO COUNTY.

**PARCEL 5:** APN: 001-280-26 (Fresno County)

LOTS 23, 24, 29, 30, 31, 32 AND 33 IN MILLER & LUX SUBDIVISION OF SECTION 17, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE MAP RECORDED OCTOBER 3, 1904 IN BOOK 2 PAGE 92 OF RECORD OF SURVEYS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM, THE WEST 452.71 FEET OF SAID LOTS 23, 24, 32 AND 33, PER UNRECORDED LOT LINE ADJUSTMENT NO. 98-22, AS APPROVED BY FRESNO COUNTY DEVELOPMENT DEPARTMENT, AS DISCLOSED BY DEEDS RECORDED MARCH 15, 1999, AS DOCUMENT NOS. 199-0038833 AND 1999-0038834 AND CORRECTED BY DEED RECORDED DECEMBER 21, 1999, AS DOCUMENT NO. 1999-0181326, OF OFFICIAL RECORDS.

**PARCEL 6:** APN: 003-040-04 (Fresno County)

THE SOUTH HALF OF THE SOUTHWEST QUARTER OF THE NORTHWEST QUARTER OF SECTION 20, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

**PARCEL 7:** APN: 003-030-15s (portion of) (Fresno County)

PORTION OF THE SOUTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT WHICH BEARS NORTH 0 05" WEST 1320 FEET FROM THE SOUTH QUARTER SECTION CORNER OF SAID SECTION 19;
THENCE, ALONG THE CENTER LINE OF A 60 FOOT ROAD RESERVATION, NORTH 0 05' WEST 660 FEET;
THENCE, LEAVING ROAD RESERVATION NORTH 89 55' EAST 1320 FEET;
THENCE, SOUTH 0 05' EAST 544.64 FEET;
THENCE, SOUTH 61 40' WEST 325.82 FEET;
THENCE, SOUTH 72 20' WEST 125.87 FEET;
THENCE, NORTH 69 40' WEST 214.46 FEET;
THENCE, SOUTH 84 50' WEST 219.95 FEET;
THENCE, NORTH 58 50' WEST 42.72 FEET;
THENCE, SOUTH 89 55' WEST 456.43 FEET TO THE POINT OF BEGINNING.

**PARCEL 7A:** APN: 003-030-15s (portion of) (Fresno County)

THE NORTH HALF OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

**PARCEL 7B:** APN: 003-030-15s (portion of) (Fresno County)

THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

**PARCEL 8:** APN: 003-030-24s (Fresno County)

THE WEST HALF OF THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM, THE EAST 389.00 FEET OF THE SOUTH 273.00 FEET THEREOF.

**PARCEL 9:** APN 091-190-005 and 006 (Merced County)

THE SOUTH 660 FEET OF THE FOLLOWING DESCRIBED PROPERTY, WHICH LIES EAST OF THE HOLLAND FARM DRAIN:

BEGINNING, AT A POINT WHICH BEARS NORTH 0° 05' WEST 660 FEET FROM THE SOUTH QUARTER SECTION CORNER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF MERCED (FORMERLY THE COUNTY OF FRESNO), STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, AND BY INSTRUMENT ENTITLED "CERTIFICATE OF COMPLETION REORGANIZATION OF THE FRESNO/MERCED COUNTY BOUNDARY CHANGE AREA INVOLVING FRESNO COUNTY SPECIAL DISTRICTS LAFCO FILE NO. 0652", WHICH RECORDED APRIL 22, 2010, AS DOCUMENT NO. 14973, IN THE OFFICE OF THE COUNTY RECORDER OF MERCED COUNTY;

THENCE, SOUTH 89° 55' WEST, 860.58 FEET TO THE EASTERLY RIGHT OF WAY LINE OF THE HOLLAND FARM DRAIN; THENCE, ALONG THE EASTERLY RIGHT OF WAY LINE OF THE HOLLAND FARM DRAIN NORTH 23° 52' WEST; 648.30 FEET; THENCE, NORTH 6° 52' WEST, 646.33 FEET;
THENCE, NORTH 45° 52' WEST, 121.80 FEET;
THENCE, LEAVING SAID DRAIN NORTH 89° 55' EAST, 1285.67 FEET;
THENCE, ALONG THE CENTER LINE OF A 60-FOOT ROAD RESERVATION SOUTH 0° 05' EAST, 1320 FEET TO THE POINT OF BEGINNING

TOGETHER WITH:

THE SOUTH HALF OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF MERCED (FORMERLY THE COUNTY OF FRESNO), STATE

5392769v1 | 101525-0001

OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, AND BY INSTRUMENT ENTITLED "CERTIFICATE OF COMPLETION REORGANIZATION OF THE FRESNO/MERCED COUNTY BOUNDARY CHANGE AREA INVOLVING FRESNO COUNTY SPECIAL DISTRICTS LAFCO FILE NO. 0652", WHICH RECORDED APRIL 22, 2010, AS DOCUMENT NO. 14973, IN THE OFFICE OF THE COUNTY RECORDER OF MERCED COUNTY.

EXCEPTING THEREFROM, THE FOLLOWING DESCRIBED RIGHT OF WAY FOR THE SO-CALLED HOLLAND FARM DRAIN:

BEGINNING, AT A POINT WHICH BEARS SOUTH 89° 55' WEST 276.40 FEET FROM THE SOUTH QUARTER SECTION CORNER OF SAID SECTION 19;
THENCE, NORTH 46° 24' WEST, 911.90 FEET;
THENCE, NORTH 23° 52' WEST, 32.78 FEET;
THENCE, NORTH 89° 55' EAST, 97.65 FEET;
THENCE, SOUTH 46° 24' EAST, 955.32 FEET;
THENCE, SOUTH 89° 55' WEST, 115.83 FEET TO THE POINT OF BEGINNING.

**PARCEL 10:** APN: 003-020-09 (Fresno County)

LOT 23 AND THE NORTH HALF OF LOTS 21 AND 22 OF MILLER AND LUX SUBDIVISION OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE MAP THEREOF RECORDED MAY 21, 1904 IN BOOK 1 PAGE 29 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

SAID PROPERTY IS ALSO DESCRIBED AS:

THE NORTH HALF OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

**PARCEL 11:** APN: 003-020-08 (Fresno County)

LOT 24 AND THE SOUTH HALF OF LOTS 21 AND 22 OF MILLER AND LUX SUBDIVISION OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE MAP THEREOF RECORDED MAY 21, 1904 IN BOOK 1 PAGE 29 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

SAID PROPERTY IS ALSO DESCRIBED AS:

THE SOUTH HALF OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

**PARCEL 12:** APN: 045-170-62s and 045-170- 86s (Fresno County)

SECTION 32, TOWNSHIP 17 SOUTH, RANGE 15 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM, THE INTEREST CONVEYED TO THE STATE OF CALIFORNIA FOR FREEWAY PURPOSES, IN DEED RECORDED DECEMBER 16, 1965 IN BOOK 5252 PAGE 209 OF OFFICIAL RECORDS, DOCUMENT NO. 100919.

ALSO EXCEPTING THEREFROM, THE INTEREST CONVEYED TO THE STATE OF CALIFORNIA FOR FREEWAY PURPOSES, IN DEEDS RECORDED JULY 21, 1966 IN BOOK 5339 PAGE 7 OF OFFICIAL RECORDS, DOCUMENT NO. 54303 AND RECORDED JULY 21, 1966 IN BOOK 5339 PAGE 14 OF OFFICIAL RECORDS, DOCUMENT NO. 54308.

ALSO EXCEPTING THEREFROM, THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING, AT A POINT OF INTERSECTION OF THE SOUTH LINE OF SAID SOUTHEAST QUARTER WITH THE NORTHEASTERLY BOUNDARY OF THE 59.518-ACRE PARCEL OF LAND DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA RECORDED JULY 21, 1966 IN BOOK 5339 PAGE 14 AS DOCUMENT NO. 54308, FRESNO COUNTY OFFICIAL RECORDS;

THENCE, (1) ALONG SAID NORTHEASTERLY BOUNDARY NORTH 40° 19' 23" WEST 110.00 FEET;
THENCE, (2) LEAVING SAID NORTHEASTERLY BOUNDARY NORTH 49° 40' 37" EAST 80.00 FEET;
THENCE, (3) SOUTH 40° 19' 23" EAST, 71.16 FEET;
THENCE, (4) SOUTH 0° 36' 09" WEST 81.76 FEET TO A POINT IN THE SOUTH LINE OF SAID SOUTHEAST QUARTER;
THENCE, (5) ALONG SAID SOUTH LINE, NORTH 89° 23' 51" WEST 35.00 FEET TO THE POINT OF BEGINNING, AS CONVEYED TO
WESTLANDS WATER DISTRICT, A PUBLIC AGENCY, IN DEED RECORDED AUGUST 24, 1972, IN BOOK 6062, PAGE 192, OF OFFICIAL
RECORDS. DOCUMENT NO. 76512.

ALSO EXCEPTING THEREFROM, THE INTEREST IN ALL OIL, GAS, MINERALS RIGHTS IN SAID LAND, TOGETHER WITH THE RIGHT TO GO UPON SAID PROPERTY AT ANY TIME HEREAFTER FOR THE PURPOSE OF DEVELOPING AND EXTRACTING OIL, GAS, MINERALS AND OTHER HYDROCARBONS SUBSTANCES FROM SAID LANDS, AS RESERVED IN THE FOLLOWING DEEDS:

DEED FROM HARRY S. CLEARIE, THE DULY APPOINTED, QUALIFIED AND ACTING ADMINISTRATOR OF HE ESTATE OF ABBEY CLEARIE, ALSO KNOW AS ABBEY CLEARIE, ABBEY R. CLEARIE AND AS ABBIE R. CLEARIE, DECEASED, TO JOHN G. INDART, RECORDED MAY 23, 1951, IN BOOK 3020 PAGE 302, OF OFFICIAL RECORDS, DOCUMENT NO. 30133.

DEED FROM MAUD E. ROOT AND ZOE E. ROOT, TO JOHN G. INDART, RECORDED MAY 23, 1951, IN BOOK 3020 PAGE 306, OF OFFICIAL RECORDS, DOCUMENT NO. 30134.

PARCEL 13: APN: 065-110-06S (Fresno County)

THE REAL PROPERTY SITUATE IN THE COUNTY OF FRESNO, STATE OF CALIFORNIA, COMMONLY KNOWN AS THE HURON 1 RANCH AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THE SOUTHWEST QUARTER OF FRACTIONAL SECTION 36, TOWNSHIP 19 SOUTH, RANGE 16 EAST,

MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM, ALL OIL, GAS, ASPHALTUM AND-OTHER HYDROCARBONS AND OTHER MINERALS WITHIN OR UNDERLYING OR THAT MAY BE PRODUCED FROM SAID LAND, TOGETHER WITH, ANY AND ALL EASEMENTS, RIGHTS OF WAY AND SERVITUDES IN, UNDER AND UPON SAID LAND, NECESSARY OR CONVENIENT TO DRILL FOR, MINE FOR, PRODUCE, EXTRACT AND TAKE ANY OF SAID MINERALS FROM SAID LAND; TO CONSTRUCT, RECONSTRUCT, USE, MAINTAIN, ERECT, REPAIR, RENEW, CHANGE THE SIZE OF AND LOCATION OF INCREASE THE NUMBER OF AND REMOVE IN, UNDER, ON AND FROM SAID LAND ALL PIPELINES, POWER LINES, TELEPHONE AND TELEGRAPH LINES AND OTHER STRUCTURES AND EQUIPMENT WITH GRANTORS, THEIR HEIRS AND ASSIGNS MAY REQUIRE IN CARRYING ON ANY OF SAID OPERATIONS, AS RESERVED IN DEEDS RECORDED NOVEMBER 25, 1946 IN BOOK 2451, PAGE 123 OF OFFICIAL RECORDS, AS DOCUMENT NO. 79037; NOVEMBER 25, 1946, IN BOOK 2472, PAGE 171 OF OFFICIAL RECORDS, AS DOCUMENT NO. 79038; NOVEMBER 25, 1946, IN BOOK 2465, PAGE 237 OF OFFICIAL RECORDS, AS DOCUMENT NO. 79039; APRIL 24, 1947 IN BOOK 2516, PAGE 266 OF OFFICIAL RECORDS, AS DOCUMENT NO. 22754; AND MARCH 20, 1951, IN BOOK 2988, PAGE 274 OF OFFICIAL RECORDS, AS DOCUMENT NO. 16723.

**PARCEL 14:** APN: 065-110-17S (Fresno County)

THE NORTHWEST QUARTER OF SECTION 36, TOWNSHIP 19 SOUTH, RANGE 16 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING FROM, THE SOUTHWEST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY WILLIAM L. FISHER AND DOLLY FISHER, HUSBAND AND WIFE, ET AL IN THE DEED RECORDED JULY 17, 1947 IN VOLUME 2535, PAGE 364 OF OFFICIAL RECORDS, AS DOCUMENT NO. 37785.

EXCEPTING FROM, THE EAST HALF OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY HARRY M. DAVIS AND FRANCIS DAVIS, HUSBAND AND WIFE, ET AL IN THE DEED RECORDED JULY 29, 1947 IN VOLUME 2540, PAGE 432 OF OFFICIAL RECORDS, AS DOCUMENT NO. 39794.

EXCEPTING FROM, THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE

5392769v1 | 101525-0001

EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY CLARENCE A. WILLIAMSON AND BESSIE P. WILLIAMSON, HUSBAND AND WIFE, THE DEED RECORDED JULY 29, 1947 IN VOLUME 2549, PAGE 335 OF OFFICIAL RECORDS, AS DOCUMENT NO. 39795.

EXCEPTING FROM, THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER; AND THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY EARL FLEISHER AND LEANORE FLEISHER, HIS WIFE, ET AL IN THE DEED RECORDED JULY 29, 1947 IN VOLUME 2517, PAGE 410 OF OFFICIAL RECORDS, AS DOCUMENT NO. 39796.

EXCEPTING FROM, THE SOUTHWEST QUARTER OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY RICHARD L. LAWSON AND MARTHA C. LAWSON, HUSBAND AND WIFE, IN THE DEED RECORDED AUGUST 5, 1947 IN VOLUME 2548, PAGE 340 OF OFFICIAL RECORDS, AS DOCUMENT NO. 40944.

EXCEPTING FROM, THE NORTH HALF OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY JAMES MURPHY AND MARTHA C. MURPHY, HUSBAND AND WIFE, IN THE DEED RECORDED AUGUST 6, 1947 IN VOLUME 2561, PAGE 361 OF OFFICIAL RECORDS, AS DOCUMENT NO. 41200.

EXCEPTING FROM, THE NORTHWEST QUARTER OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY MARY C. MAY, ET AL IN THE DEED RECORDED JUNE 29, 1948 IN VOLUME 2637, PAGE 424 OF OFFICIAL RECORDS, AS DOCUMENT NO. 31252.

5392769v1 | 101525-0001

**PARCEL 15:** APN 085-050-39S (Fresno County)

THE SOUTHEAST QUARTER OF SECTION 12, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATE IN AND UNDER THE SOUTHEAST QUARTER OF SECTION 12, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF AND THE EXPLORATION AND TESTING OF SAID REAL PROPERTY AND ALSO THE RIGHT TO DRILL FOR, PRODUCT AND USE WATER FROM SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, AS SET FORTH IN THE JUDGMENT CONFIRMING REPORT OF REFEREES MAKING ACTUAL PARTITION, RECORDED SEPTEMBER 28, 1956 IN BOOK 3827, PAGE 89 OF OFFICIAL RECORDS, AS DOCUMENT NO. 69880.

**PARCEL 16:** APN: 085-090-91S (Fresno County)

THE NORTH HALF OF THE NORTHEAST QUARTER OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE CERTIFICATE OF WAIVER OF PARCEL MAP NO. 2011-13, RECORDED AUGUST 17, 2012, AS DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS.

EXCEPTING THEREFROM, (ALL OF SECTION 13) ALL OF THE MINERAL AND MINERAL ORES OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED UPON, WITHIN OR UNDERLYING THE HEREIN ABOVE DESCRIBED PROPERTY OR THAT MAY BE PRODUCED THEREFROM INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL OIL, NATURAL GAS AND HYDROCARBON SUBSTANCES, GEOTHERMAL STEAM, BRINES AND MINERALS IN SOLUTION, AND SAND, GRAVEL AND AGGREGATES, AND PRODUCTS DERIVED THEREFROM, TOGETHER WITH, THE EXCLUSIVE AND PERPETUAL RIGHT OF SAID GRANTEE, ITS SUCCESSORS AND ASSIGNS, OF INGRESS AND EGRESS IN, UPON OR OVER SAID PROPERTY TO EXPLORE AND PROSPECT FOR, EXTRACT, DEVELOP, SAVE, CONVEY, STORE, REFINE, PROCESS AND REMOVE THE SAME AND TO MAKE SUCH USE OF SAID PROPERTY AND THE SURFACE THEREOF AS IS NECESSARY OR USEFUL IN CONNECTION THEREWITH, WHICH USE MAY INCLUDE THE SINKING, BORING, DIGGING OR DRILLING OF WELLS, SHAFTS OR TUNNELS, EXCAVATING, OPEN PIT MINING AND CONSTRUCTING, MAINTAINING AND REMOVING ROADS, WAYS, PIPE LINES, POLE LINES, TANKS, BUILDINGS, STRUCTURES AND FACILITIES, AS CONVEYED TO BRAVO OIL COMPANY IN DEED RECORDED DECEMBER 29, 1965 IN BOOK 5257, PAGE 19 OF OFFICIAL RECORDS, AS DOCUMENTS NO. 104215.

**PARCEL 16A:**

AN EASEMENT FOR A NON-EXCLUSIVE PRIVATE ROAD EASEMENT, OVER THE NORTH 60.00 FEET OF THE NORTHEAST QUARTER OF SECTION 14, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, EXCEPTING THEREFROM THE WEST 50 FEET THEREOF, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE GRANT OF EASEMENT, RECORDED JULY 23, 2012, AS DOCUMENT NO. 2012-0101881 , OF OFFICIAL RECORDS.

**PARCEL 16B:**

AN EASEMENT FOR A NON-EXCLUSIVE EASEMENT FOR ROAD PURPOSES, OVER THE NORTH 60.00 FEET OF THE WEST HALF OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF; AND A STRIP OF LAND BEING 60.00 FEET IN WIDTH, LYING EQUALLY ON EACH SIDE OF THE EAST LINE OF THE WEST HALF OF SAID SECTION 13, ACCORDING TO THE CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17, 2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

**PARCEL 17:** APN: 085-090-93S (Fresno County)

THE SOUTH HALF OF THE NORTHEAST QUARTER OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17, 2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

EXCEPTING THEREFROM, (ALL OF SECTION 13) ALL OF THE MINERAL AND MINERAL ORES OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED UPON, WITHIN OR UNDERLYING THE HEREIN ABOVE DESCRIBED PROPERTY OR THAT MAY BE PRODUCED THEREFROM INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL OIL, NATURAL GAS AND HYDROCARBON SUBSTANCES, GEOTHERMAL STEAM, BRINES AND MINERALS IN SOLUTION, AND SAND, GRAVEL AND AGGREGATES, AND PRODUCTS DERIVED THEREFROM, TOGETHER WITH, THE EXCLUSIVE AND PERPETUAL RIGHT OF SAID GRANTEE, ITS SUCCESSORS AND ASSIGNS, OF INGRESS AND EGRESS IN, UPON OR OVER SAID PROPERTY TO EXPLORE AND PROSPECT FOR, EXTRACT, DEVELOP, SAVE, CONVEY, STORE, REFINE, PROCESS AND REMOVE THE SAME AND TO MAKE SUCH USE OF SAID PROPERTY AND THE SURFACE THEREOF AS IS NECESSARY OR USEFUL IN CONNECTION THEREWITH, WHICH USE MAY INCLUDE THE SINKING, BORING, DIGGING OR DRILLING OF WELLS, SHAFTS OR TUNNELS, EXCAVATING, OPEN PIT MINING AND CONSTRUCTING, MAINTAINING AND REMOVING ROADS, WAYS, PIPE LINES, POLE LINES, TANKS, BUILDINGS, STRUCTURES AND FACILITIES, AS CONVEYED TO BRAVO OIL COMPANY IN DEED RECORDED DECEMBER 29, 1965 IN <u>BOOK 5257, PAGE 19 OF OFFICIAL RECORDS</u>, AS DOCUMENTS NO. 104215.

**PARCEL 17A:**

AN EASEMENT FOR A NON-EXCLUSIVE PRIVATE ROAD EASEMENT, OVER THE NORTH 60.00 FEET OF THE NORTHEAST QUARTER OF SECTION 14, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, EXCEPTING THEREFROM THE WEST 50 FEET THEREOF, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE GRANT OF EASEMENT, RECORDED JULY 23, 2012, AS <u>DOCUMENT NO. 2012-0101881, OF OFFICIAL RECORDS</u>.

**PARCEL 17B:**

AN EASEMENT FOR A NON-EXCLUSIVE EASEMENT FOR ROAD PURPOSES, OVER THE NORTH 60.00 FEET OF THE WEST HALF OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF; AND A STRIP OF LAND BEING 60.00 FEET IN WIDTH, LYING EQUALLY ON EACH SIDE OF THE EAST LINE OF THE WEST HALF OF SAID SECTION 13, ACCORDING TO THE CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17,

2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

**PARCEL 18:** APN: 085-090-95S (Fresno County)

THE NORTH HALF OF THE SOUTHEAST QUARTER OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17, 2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

EXCEPTING THEREFROM, (ALL OF SECTION 13) ALL OF THE MINERAL AND MINERAL ORES OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED UPON, WITHIN OR UNDERLYING THE HEREIN ABOVE DESCRIBED PROPERTY OR THAT MAY BE PRODUCED THEREFROM INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL OIL, NATURAL GAS AND HYDROCARBON SUBSTANCES, GEOTHERMAL STEAM, BRINES AND MINERALS IN SOLUTION, AND SAND, GRAVEL AND AGGREGATES, AND PRODUCTS DERIVED THEREFROM, TOGETHER WITH, THE EXCLUSIVE AND PERPETUAL RIGHT OF SAID GRANTEE, ITS SUCCESSORS AND ASSIGNS, OF INGRESS AND EGRESS IN, UPON OR OVER SAID PROPERTY TO EXPLORE AND PROSPECT FOR, EXTRACT, DEVELOP, SAVE, CONVEY, STORE, REFINE, PROCESS AND REMOVE THE SAME AND TO MAKE SUCH USE OF SAID PROPERTY AND THE SURFACE THEREOF AS IS NECESSARY OR USEFUL IN CONNECTION THEREWITH, WHICH USE MAY INCLUDE THE SINKING, BORING, DIGGING OR DRILLING OF WELLS, SHAFTS OR TUNNELS, EXCAVATING, OPEN PIT MINING AND CONSTRUCTING, MAINTAINING AND REMOVING ROADS, WAYS, PIPE LINES, POLE LINES, TANKS, BUILDINGS, STRUCTURES AND FACILITIES, AS CONVEYED TO BRAVO OIL COMPANY IN DEED RECORDED DECEMBER 29, 1965 IN <u>BOOK 5257, PAGE 19 OF OFFICIAL RECORDS</u>, AS DOCUMENTS NO. 104215.

**PARCEL 18A:**

AN EASEMENT FOR A NON-EXCLUSIVE PRIVATE ROAD EASEMENT, OVER THE NORTH 60.00 FEET OF THE NORTHEAST QUARTER OF SECTION 14, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, EXCEPTING THEREFROM THE WEST 50 FEET THEREOF, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE GRANT OF EASEMENT, RECORDED JULY 23, 2012, AS <u>DOCUMENT NO. 2012-0101881, OF OFFICIAL RECORDS</u>.

**PARCEL 18B:**

AN EASEMENT FOR A NON-EXCLUSIVE EASEMENT FOR ROAD PURPOSES, OVER THE NORTH 60.00 FEET OF THE WEST HALF OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF; AND A STRIP OF LAND BEING 60.00 FEET IN WIDTH, LYING EQUALLY ON EACH SIDE OF THE EAST LINE OF THE WEST HALF OF SAID SECTION 13, ACCORDING TO THE CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17, 2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

**PARCEL 19:** APN: 085-090-97S (Fresno County)

THE SOUTH HALF OF THE SOUTHEAST QUARTER OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE

CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17, 2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

EXCEPTING THEREFROM, (ALL OF SECTION 13) ALL OF THE MINERAL AND MINERAL ORES OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED UPON, WITHIN OR UNDERLYING THE HEREIN ABOVE DESCRIBED PROPERTY OR THAT MAY BE PRODUCED THEREFROM INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL OIL, NATURAL GAS AND HYDROCARBON SUBSTANCES, GEOTHERMAL STEAM, BRINES AND MINERALS IN SOLUTION, AND SAND, GRAVEL AND AGGREGATES, AND PRODUCTS DERIVED THEREFROM, TOGETHER WITH, THE EXCLUSIVE AND PERPETUAL RIGHT OF SAID GRANTEE, ITS SUCCESSORS AND ASSIGNS, OF INGRESS AND EGRESS IN, UPON OR OVER SAID PROPERTY TO EXPLORE AND PROSPECT FOR, EXTRACT, DEVELOP, SAVE, CONVEY, STORE, REFINE, PROCESS AND REMOVE THE SAME AND TO MAKE SUCH USE OF SAID PROPERTY AND THE SURFACE THEREOF AS IS NECESSARY OR USEFUL IN CONNECTION THEREWITH, WHICH USE MAY INCLUDE THE SINKING, BORING, DIGGING OR DRILLING OF WELLS, SHAFTS OR TUNNELS, EXCAVATING, OPEN PIT MINING AND CONSTRUCTING, MAINTAINING AND REMOVING ROADS, WAYS, PIPE LINES, POLE LINES, TANKS, BUILDINGS, STRUCTURES AND FACILITIES, AS CONVEYED TO BRAVO OIL COMPANY IN DEED RECORDED DECEMBER 29, 1965 IN <u>BOOK 5257, PAGE 19 OF OFFICIAL RECORDS</u>, AS DOCUMENTS NO. 104215.

**PARCEL 19A:**

AN EASEMENT FOR A NON-EXCLUSIVE PRIVATE ROAD EASEMENT, OVER THE NORTH 60.00 FEET OF THE NORTHEAST QUARTER OF SECTION 14, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, EXCEPTING THEREFROM THE WEST 50 FEET THEREOF, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE GRANT OF EASEMENT, RECORDED JULY 23, 2012, AS <u>DOCUMENT NO. 2012-0101881</u> , OF OFFICIAL RECORDS.

**PARCEL 19B:**

AN EASEMENT FOR A NON-EXCLUSIVE EASEMENT FOR ROAD PURPOSES, OVER THE NORTH 60.00 FEET OF THE WEST HALF OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF; AND A STRIP OF LAND BEING 60.00 FEET IN WIDTH, LYING EQUALLY ON EACH SIDE OF THE EAST LINE OF THE WEST HALF OF SAID SECTION 13, ACCORDING TO THE CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17, 2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

**PARCEL 20:** APN: 083-230-036 (Merced County)

ALL THAT PORTION OF THE NORTHEAST ONE-QUARTER OF SECTION 35, TOWNSHIP 10 SOUTH, RANGE 10 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA IN THE COUNTY OF MERCED, STATE OF CALIFORNIA, AS GRANTED TO ARTHUR MONEZ DE SA, ET AL, BY DOCUMENT RECORDED APRIL 8, 1976 IN <u>VOLUME 2026 OF OFFICIAL RECORDS, AT PAGE 909</u> THEREOF, RECORDS OF MERCED COUNTY, CALIFORNIA AND AS GRANTED TO ANTONE PEREIRA, ET AL, BY DOCUMENT RECORDED MAY 27, 1983 IN <u>VOLUME 2373 OF OFFICIAL RECORDS, AT PAGE 477</u> THEREOF, RECORDS OF SAID MERCED COUNTY, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A ONE-INCH IRON PIPE, WITH A PLASTIC PLUG STAMPED L.S. 4403, ACCEPTED AS A

5392769v1 | 101525-0001

POINT ON THE SOUTHERLY LINE OF SAID NORTHEAST ONE-QUARTER, WHICH BEARS NORTH 89° 57' 39" WEST, A DISTANCE OF 30.00 FEET FROM THE ONE-QUARTER SECTION CORNER ON THE EAST LINE OF SAID SECTION, SAID POINT OF BEGINNING BEING ALSO ON THE WESTERLY LINE OF MERCY SPRINGS ROAD, 60.00 FEET WIDE, THENCE NORTH 89° 57' 39" WEST, ALONG THE SOUTHERLY LINE OF SAID NORTHEAST ONE-QUARTER, A DISTANCE OF 2631.07 FEET TO THE ONE-HALF SECTION LINE, RUNNING NORTH AND SOUTH THROUGH SAID SECTION;

THENCE, NORTH 02° 07' 50" EAST, ALONG SAID ONE-HALF SECTION LINE, 2647.57 FEET TO THE SOUTHERLY LINE OF COPA DE ORA AVENUE, 60.00 FEET WIDE; THENCE, NORTH 89° 56' 02" EAST, ALONG THE SOUTHERLY LINE OF SAID AVENUE, A DISTANCE OF 872.23 FEET TO A ONE-INCH IRON PIPE, WITH A BRASS TAG STAMPED L.S. 2402, ACCEPTED FOR THE CENTERLINE OF A CONCRETE IRRIGATION DITCH;

THENCE, SOUTH 06° 07' 10" WEST, A DISTANCE OF 1025.58 FEET TO A ONE-INCH IRON PIPE, WITH A BRASS TAG STAMPED L.S. 2402, ACCEPTED FOR THE CENTERLINE OF A CONCRETE IRRIGATION DITCH, THENCE, SOUTH 06° 07' 10" WEST, CONTINUING ALONG SAID ACCEPTED LINE, A DISTANCE OF 99.78 FEET;

THENCE, SOUTH 27° 27' 54" EAST, ALONG AN ADJUSTED PROPERTY LINE, A DISTANCE OF 860.49 FEET TO THE POSITION OF A SCREW-ROD FOR A DITCH GATE-VALVE, AS SHOWN BY A "RECORD OF SURVEY FOR LAWRENCE L. BOWERS", VOLUME 33 PAGES 50 THROUGH 52, MERCED COUNTY RECORDS, THE ACTUAL SCREW-ROD BEARS NORTH 58° 49' 09" WEST, A DISTANCE OF 97.28 FEET;

THENCE, SOUTH 57° 48' 02" EAST, ALONG AN ADJUSTED PROPERTY LINE, A DISTANCE OF 688.86 FEET TO A ONE-INCH IRON PIPE, WITH A PLASTIC PLUG STAMPED L.S. 4403;

THENCE, SOUTH 89° 57' 43" EAST, ALONG AN ADJUSTED LINE, A DISTANCE OF 818.43 FEET TO THE WESTERLY LINE OF SAID MERCY SPRINGS ROAD;

THENCE, SOUTH 02° 33' 42" WEST, ALONG SAID WESTERLY LINE, A DISTANCE OF 398.87 FEET TO THE POINT OF BEGINNING.

PURSUANT TO THAT CERTAIN CERTIFICATE OF COMPLIANCE NO. 01045, RECORDED NOVEMBER 19, 2001 IN VOLUME 4314 PAGE 983 AS DOCUMENT NO. 52402 OF OFFICIAL RECORDS.

PARCEL 21: APN: 033-200-13s (Fresno County)

PARCEL 1 OF PARCEL MAP 99-03, IN THE CITY OF SAN JOAQUIN, COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE MAP THEREOF RECORDED IN BOOK 61, PAGES 3 AND 4 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATE THEREIN AND THEREUNDER, TOGETHER WITH ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON AS RESERVED BY PETER G. RUSCONI IN DEED RECORDED JUNE 2, 1971, INSTRUMENT NO. 43153, IN BOOK 5900, PAGE 328, OFFICIAL RECORDS.

5392769v1 | 101525-0001

**PARCEL 22:** APN: 033-200-14s (Fresno County)

PARCEL 2 OF PARCEL MAP  99-03, IN THE CITY OF SAN JOAQUIN, COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE MAP THEREOF RECORDED IN <u>BOOK 61, PAGES 3 AND 4 OF PARCEL MAPS</u>, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATE THEREIN AND THEREUNDER, TOGETHER WITH ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON AS RESERVED BY PETER G. RUSCONI IN DEED RECORDED JUNE 2, 1971, <u>INSTRUMENT NO. 43153</u>, IN <u>BOOK 5900, PAGE 328, OFFICIAL RECORDS</u>.

**PARCEL 23:** APN: 033-200-03s (Fresno County)

PARCEL 3 OF <u>PARCEL MAP NO. 84-01</u>, IN THE CITY OF SAN JOAQUIN, COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF RECORDED IN <u>BOOK 42, PAGE 79 OF PARCEL MAPS</u>, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATE THEREIN AND THEREUNDER, TOGETHER WITH ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON AS RESERVED BY PETER G. RUSCONI IN DEED RECORDED JUNE 2, 1971, <u>INSTRUMENT NO. 43153</u>, IN <u>BOOK 5900, PAGE 328, OFFICIAL RECORDS</u>.

ALSO EXCEPTING THEREFROM AN UNDIVIDED 1/2 OF GRANTOR'S INTEREST IN AND TO ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES LYING BENEATH A DEPTH OF 600 FEET OF SAID PROPERTY, WHICH SHALL BE WITHOUT THE RIGHT OF SURFACE ENTRY FROM AND/OR TO THE SUBJECT PROPERTY, AS RESERVED BY DON GRAGNANI AND IRENE GRAGNANI, HUSBAND AND WIFE, IN DEED RECORDED OCTOBER 23, 1985, <u>INSTRUMENT NO. 850107491, OFFICIAL RECORDS</u>.

**PARCEL 24:** APN: 033-200-04s (Fresno County)

PARCEL 1 OF <u>PARCEL MAP NO. 90-01</u>, IN THE CITY OF SAN JOAQUIN, COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF RECORDED IN <u>BOOK 50, PAGE 89 OF PARCEL MAPS</u>, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATE THEREIN AND THEREUNDER, TOGETHER WITH ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON AS

RESERVED BY PETER G. RUSCONI IN DEED RECORDED JUNE 2, 1971, <u>INSTRUMENT NO. 43153</u>, IN <u>BOOK 5900, PAGE 328, OFFICIAL RECORDS</u>.

ALSO EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ANY OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND, AS RESERVED BY DON GRAGNANI AND IRENE GRAGNANI IN DEED RECORDED SEPTEMBER 28, 1990, <u>INSTRUMENT NO. 900117867, OFFICIAL RECORDS</u>.

<u>**PARCEL 25:**</u> APN: 075-020-38s (portion of)  (Fresno County)

ALL THAT PORTION OF THE SOUTHEAST QUARTER OF SECTION 4, TOWNSHIP 20 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA IN THE  COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, LYING EAST OF THE CENTERLINE OF ARROYO PASEJERO CREEK.

EXCEPTING THEREFROM ONE-HALF OF ALL OIL AND MINERAL RIGHTS AS RESERVED IN THE DEED FROM EDITH A. ELLIS, AS ADMINISTRATIVE OF THE ESTATE OF THOMAS J. ARLIN, DECEASED, TO GIFFEN, INC., A CORPORATION, DATED JANUARY 31, 1937, RECORDED MARCH 20, 1957, IN <u>BOOK 2505, PAGE 13</u>, AS DOCUMENT NO. 159353, OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ALL OF GRANTOR'S RIGHT, TITLE AND INTEREST IN AND TO ALL OIL, GAS AND MINERALS, AS RESERVED IN THE DEED FROM GIFFEN, INC. TO WAYMON E. WATTS, AS TRUSTEE OF THE ERIC TARENCE METZLER TRUST, ET AL, RECORDED NOVEMBER 22, 1974, IN BOOK 6730, PAGE 871, AS <u>DOCUMENT NO. 87691, OFFICIAL RECORDS</u>

<u>**PARCEL 26:**</u> APN: 075-020-38s (portion of)  (Fresno County)

ALL THAT PORTION OF THE SOUTHWEST QUARTER OF SECTION 4, TOWNSHIP 20 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA IN THE COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, LYING EAST OF THE CENTERLINE OF ARROYO PASEJERO CREEK.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND ALL MINERALS (INCLUDING THEREIN, OIL, GAS AND OTHER HYDROCARBON SUBSTANCES) IN OR UNDER SAID LAND, AS RESERVED IN THE DEED DATED AUGUST 21, 1959, FROM FRANCES M. HOFER AS EXECUTOR OF THE LAST WILL OF PAUL B. HOFER, DECEASED, TO GIFFEN, INC., A CALIFORNIA CORPORATION, RECORDED AUGUST 25, 1959 IN <u>BOOK 4265, PAGE 18 OF OFFICIAL RECORDS</u>, DOCUMENT NO. 59230.

ALSO EXCEPTING THEREFROM ALL OF GRANTOR'S RIGHT, TITLE AND INTEREST IN AND TO ALL OIL, GAS AND MINERALS, AS RESERVED IN THE DEED FROM GIFFEN, INC. TO WAYMON E. WATTS, AS TRUSTEE OF THE ERIC TARENCE METZLER TRUST, ET AL, RECORDED NOVEMBER 22, 1974, IN BOOK 6370, PAGE 871, AS <u>DOCUMENT NO. 87691, OFFICIAL RECORDS</u>.


<u>**ADDITIONAL PARCELS 27 THROUGH 66, ADDED TO PRELIM-C:**</u>

<u>**PARCEL 27: FRESNO COUNTY APN: 085-090-04:**</u>

5392769v1 | 101525-0001

The Northwest quarter of the Southeast quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

### PARCEL 28A: FRESNO COUNTY APN: 085-090-26s (PORTION OF):
The North half of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, a one-half interest in and to all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder TOGETHER WITH, all easements and rights necessary or convenient for the production, storage and transportation thereof and exploration and testing of the said real property and also the right to drill for, produce and use water from the said real property in connection with drilling or mining operations thereon, as reserved by Richard P. Heiser, as his separate property, in the Deed recorded March 7, 1952, in Book 3134, Page 320 of Official Records, as Document No. 12710.

### PARCEL 28B: FRESNO COUNTY APN: 085-090-26s (PORTION OF):
The Southwest quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas and mineral rights within or underlying said property, as excepted in the Deed executed by Leona H. Todd, recorded June 13, 1952, in Book 3177, Page 194 of Official Records, as Document NO. 31391, in which said Grantor agrees not to drill a well or carry on any operations for the production of oil or gas, etc., from said real property and in the event Grantor makes a lease for that purpose, such lease shall contain a proper provision protecting the owner of the surface rights as to any damages resulting from operations under said lease, which damages shall be paid by the lessee under such lease; nor will grantor consent to a the discharge of any explosives upon said real property without the consent of the owner of the surface. The foregoing provisions are binding upon my heirs, successors and assigns.

### PARCEL 29: FRESNO COUNTY APN: 085-090-90s:
The North half of the Northwest quarter of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

EXCEPTING THEREFROM, all of the mineral and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the herein above described property or that may be produced therefrom including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Pages 25 thru 28 of Official Records, as Document No. 104217.

**PARCEL 29A: FRESNO COUNTY APN: 085-090-26s (PORTION OF):**
A non-exclusive private road easement, over the North 60.00 feet of the Northeast quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

**PARCEL 30: FRESNO COUNTY APN: 085-090-92s:**
The South half of the Northwest quarter of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

EXCEPTING THEREFROM, all of the mineral and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the herein above described property or that may be produced therefrom including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Pages 25 thru 28 of Official Records, as Document No. 104217.

**PARCEL 30A: FRESNO COUNTY APN: 085-090-26s (PORTION OF):**
A non-exclusive private road easement, over the North 60.00 feet of the Northeast quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

**PARCEL 30B: FRESNO COUNTY APN: 085-090-90s, 91s, 92s, 93s, 94s, 95s, 96s & 97s (PORTION OF):**
A non-exclusive private road easement, over the North 60.00 feet of the West half of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof; and a strip of land being 60.00 feet in width, lying equally on each side of the East line of the West half of said Section 13, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

**PARCEL 31: FRESNO COUNTY APN: 085-090-94s:**
The North half of the Southwest quarter of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

EXCEPTING THEREFROM, all of the mineral and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the herein above described property or that may be produced therefrom including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products

5392769v1 | 101525-0001

derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Pages 25 thru 28 of Official Records, as Document No. 104217.

### PARCEL 31A: FRESNO COUNTY APN: 085-090-26s (PORTION OF):
A non-exclusive private road easement, over the North 60.00 feet of the Northeast quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

### PARCEL 31B: FRESNO COUNTY APN: 085-090-90s, 91s, 92s, 93s, 94s, 95s, 96s & 97s (PORTION OF):
A non-exclusive private road easement, over the North 60.00 feet of the West half of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof; and a strip of land being 60.00 feet in width, lying equally on each side of the East line of the West half of said Section 13, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

### PARCEL 32: FRESNO COUNTY APN: 085-090-96s:
The South half of the Southwest quarter of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

EXCEPTING THEREFROM, the South 175 feet of the West 220 feet of said Section 13, as conveyed to Westlands Water District, in the Deed recorded February 18, 1977, in Book 6743, Pages 213 thru 223 of Official Records, as Document No. 16643.

ALSO EXCEPTING THEREFROM, all of the mineral and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the herein above described property or that may be produced therefrom including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Pages 25 thru 28 of Official Records, as Document No. 104217.

### PARCEL 32A: FRESNO COUNTY APN: 085-090-26s (PORTION OF):
A non-exclusive private road easement, over the North 60.00 feet of the Northeast quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel

5392769v1 | 101525-0001

Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

**PARCEL 32B: FRESNO COUNTY APN: 085-090-90s, 91s, 92s, 93s, 94s, 95s, 96s & 97s (PORTION OF):**
A non-exclusive private road easement, over the North 60.00 feet of the West half of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof; and a strip of land being 60.00 feet in width, lying equally on each side of the East line of the West half of said Section 13, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

**PARCEL 33: FRESNO COUNTY APN: 027-050-01:**
The North half of the West half of the Northwest quarter of Fractional Section 3, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

**PARCEL 34: FRESNO COUNTY APN: 027-050-02s:**
The Fractional Northeast quarter of the Northwest quarter of the Fractional Section 3, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, one-half of all oil, gas and other minerals as heretofore reserved or conveyed of record, as stated in the following Deed; and
ALSO EXCEPTING THEREFROM, all remaining oil, gas and other minerals not previously reserved of record, as reserved by Edith E. Leslie and Barbara J. Dixson, in the Deed recorded May 11, 1983, as Document No. 83040881, of Official Records.

**PARCEL 35: FRESNO COUNTY APN: 027-050-07:**
The North half of the South half of the West half of the Northwest quarter of Fractional Section 3, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

**PARCEL 36: FRESNO COUNTY APN: 027-050-11s:**
The Southeast quarter of Fractional Section 3, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided one-half interest in and to all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder, as reserved y Maybelle C. Beckett, a single woman, and Retha B. Hopwood, aka Retha Hopwood, a widow, in the Deed recorded September 6, 1973, in Book 6210, Page 102 of Official Records as Document No. 81853.

**PARCEL 37: FRESNO COUNTY APN: 017-070-17:**

The Southwest quarter of Section 33, Township 14 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

**PARCEL 38: FRESNO COUNTY APN: 033-020-73s:**
The North 400.00 feet of the East 400.00 feet of Lot 297 of Valley Garden Farms, Subdivision-A, in the unincorporated area of the County of Fresno, State of California, according to map thereof recorded June 12, 1915, in Book 7, Pages 76 to 79 of Plats, in the office of the County Recorder of said County.

EXCEPTING THEREFROM, an undivided one-half interest in and to all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder, TOGETHER WITH, all easements and rights necessary or convenient for the production, storage and transportation thereof and the exploration and testing of the said real property, and also the right to drill for, produce and use water from the said real property in connection with drilling or mining operations thereon, as reserved by Peter G. Rusconi, also known as Peter Rusconi, who acquired title as a single man, in the Deed recorded June 2, 1971, in Book 5900, Page 328 of Official Records, as Document No. 43153.

**PARCEL 39: FRESNO COUNTY APN: 033-020-74s:**
Lot 297 and Lot 304 of Valley Garden Farms, Subdivision-A, in the unincorporated area of the County of Fresno, State of California, according to map thereof recorded June 12, 1915, in Book 7, Pages 76 to 79 of Plats, in the office of the County Recorder of said County.

EXCEPTING FROM, Lot 297, the North 400.00 feet of the East 400.00 feet, as conveyed to the City of San Joaquin, in the Deed recorded December 6, 2005, as Document No. 2005-0285097, of Official Records.

ALSO EXCEPTING THEREFROM, an undivided one-half interest in and to all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder, TOGETHER WITH, all easements and rights necessary or convenient for the production, storage and transportation thereof and the exploration and testing of the said real property, and also the right to drill for, produce and use water from the said real property in connection with drilling or mining operations thereon, as reserved by Peter G. Rusconi, also known as Peter Rusconi, who acquired title as a single man, in the Deed recorded June 2, 1971, in Book 5900, Page 328 of Official Records, as Document No. 43153.

**PARCEL 40: FRESNO COUNTY APN: 020-200-01:**
The Northwest quarter of the Northwest quarter of the Southwest quarter of Section 29, Township 4 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

**PARCEL 41: FRESNO COUNTY APN: 028-041-01:**
Lots 1 and 2 as shown on the Map of Subdivision No. 7 Tranquillity Colony (map shows 2-LL's), in Section 2, Township 15 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the map thereof recorded August 4, 1910, in Book 5, Page 50 of Record of Surveys, in the Office of the County Recorder of said County.

**PARCEL 42: FRESNO COUNTY APN: 028-041-02:**
Lots 4 and 5 as shown on the Map of Subdivision No. 3 Tranquillity Colony (map shows 2-LL's), in Section 1, Township 15 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area, County of Fresno, State of California, according to the Map thereof recorded April 18, 1908, in Book 4, Page 24, of Record of Surveys, in the Office of the County Recorder of said County.

**PARCEL 43: MADERA COUNTY APN: 041-190-006:**
All that portion of Section 21, Township 12 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, described as follows:

BEGINNING, on the East Section line of Section 21, Township l12 South, Range 14 East, Mount Diablo Base and Meridian;
Thence, North 0° 01' West 790.85 feet from the Southeast corner;
Thence, South 87° 02' West 1344.83 feet;
Thence, South 0° 01' East 709.02 feet to the South Section line;
Thence, North 89° 29' West 2528.32 feet to the East bank of the San Joaquin River Branch of Colombia Canal;
Thence, North 25° 43-1/2' West 352 feet;
Thence, North 13° 42' West 233.50 feet to the center line of a 60-foot road;
Thence, North 87° 02' East 1656.87 feet;
Thence, North 0° 01' West 2322.59 feet to a point in the centerline of a ditch drain;
Thence, Northwest along said centerline to the North Section line;
Thence, South 88° 53' East 2,861.20 feet, more or less, to the Southwest bank of Columbia Canal;
Thence, South 27° 51-½' East 64.04 feet;
Thence, South 46° 19-½' East 215.50 feet;
Thence, South 73° 19-½' East 130 feet;
Thence, North 76° 08-½' East 170 feet;
Thence, North 77° 45-½' East 209.83 feet;
Thence, South 68° 32 ½' East 49.04 feet;
Thence, South 11° 10-½' East 387.10 feet to the East Section line;
Thence, South 0° 01' East 155.02 feet;
Thence, South 0° 01' East 3776.98 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM, that portion described as BEGINNING at a point on the East line of Section 21, Township 12 South, Range 14 East, Mount Diablo Base and Meridian, according to the Official Plat thereof, which bears North 0° 01' West 790.85 feet from the Southeast corner;
Thence, along the East line of said Section 21, and the centerline of a 60-foot County Road;
Thence, North 0° 01' West 350.00 feet;
Thence, South 87° 02' West 350.00 feet;
Thence, South 0° 01' East 350.00 feet;
Thence, along the centerline of a 60-foot road easement, North 87° 02' East 350.00 feet to the POINT OF BEGINNING.

5392769v1 | 101525-0001

ALSO EXCEPTING THEREFROM, an undivided sixty percent (60%) of all oil, gas and mineral rights in and to said land, as reserved by Chauncey Yip, et al in the Deed recorded December 20, 1990, as Document No. 90-32420 of Official Records.

## PARCEL 44: MADERA COUNTY APN: 042-010-003:

All that portion of Section 28, Township 12 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, described as follows:

BEGINNING, North 89° 26' West 1343.28 feet from the Northeast corner of said Section 28;
Thence, South 1362,73 feet;
Thence, South 89° 35' West 91.06 feet;
Thence, South 46° 17' East 28.74 feet;
Thence, South 89° 35' West 2043.73 feet to the East bank of the Columbia Canal;
Thence, North 26° 07' West 23.13 feet;
Thence, North 11° 21' West 939.80 feet;
Thence, North 22° 35' West 423.49 feet;
Thence, North 25° 40-½' West 78.43 feet to the North line of Section 28;
Thence, South 89° 26' East 2528.32 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM, an undivided sixty percent (60%) of all oil, gas and mineral rights in and to said land, as reserved by Chauncey Yip, et al in the Deed recorded December 20, 1990, as Document No. 90-32420 of Official Records.

## PARCEL 45: KERN COUNTY APN: 059-160-42:

Parcel 1 of Parcel Map Waiver No. 1212, according to the Certificate of Compliance, recorded March 22, 1990, in Book 6361, Page 540 of Official Records, as Document No. 39852, described as follows:

The Northeast quarter of the Northeast quarter of Section 32, Township 26 South, Range 23 East, Mount Diablo Meridian, in the unincorporated area of the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, 75% of all minerals, oil, gas and hydrocarbons now or at any time hereafter situated within said land, TOGETHER WITH, the right to explore for, mine, drill, extract, and take such minerals, oil, gas, and hydrocarbons from said lands and to use the surface and sub-surface of said lands for such exploration, drilling and extraction, and for such derricks, machinery, structures, sumps, dumps, roads, pipe, tools, tanks, pipe lines, power lines, and plants, as in the opinion of the grantors, its successors or assigns, may be necessary or convenient at any time for the exploration for, mining, drilling, extraction, removal, storage, transportation, processing, and sale of such minerals within or removed from said lands, subject to the terms and conditions contained therein, all as excepted and reserved by Semi-Tropic Land & Water Co., a Corporation, in the Deed recorded July 2, 1947 in Book 1413, Page 402 of Official Records, as Document No. 24960.

ALSO EXCEPTING THEREFROM, the remainder of all oil, gas and other hydrocarbon substances and minerals within or underlying said land as excepted in Deed from Lila E. Gill, a widow, and Lila Eliza Gill, as Trustee, to Obie Hankins and Virginia Hankins, husband and wife, an undivided 1/2 interest, and J. G. Garrison and Juanita M. Garrison, husband and wife, an undivided 1/2 interest, in the Deed recorded January 13, 1967 in Book 4010

Page 809 of Official Records, as Document No. 01751.


**PARCEL 46: KERN COUNTY APN: 059-160-43:**
Parcel 2 of Parcel Map Waiver No. 1212, according to the Certificate of Compliance, recorded March 22, 1990, in Book 6361, Page 540 of Official Records, as Document No. 39852, described as follows:

The Southeast quarter of the Northeast quarter of Section 32, Township 26 South, Range 23 East, Mount Diablo Meridian, in the unincorporated area of the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the South thirty feet thereof.

ALSO EXCEPTING THEREFROM, 75% of all minerals, oil, gas and hydrocarbons now or at any time hereafter situated within said land, TOGETHER WITH, the right to explore for, mine, drill, extract, and take such minerals, oil, gas, and hydrocarbons from said lands and to use the surface and sub-surface of said lands for such exploration, drilling and extraction, and for such derricks, machinery, structures, sumps, dumps, roads, pipe, tools, tanks, pipe lines, power lines, and plants, as in the opinion of the grantors, its successors or assigns, may be necessary or convenient at any time for the exploration for, mining, drilling, extraction, removal, storage, transportation, processing, and sale of such minerals within or removed from said lands, subject to the terms and conditions contained therein, all as excepted and reserved by Semi-Tropic Land & Water Co., a Corporation, in the Deed recorded July 2, 1947 in Book 1413, Page 402 of Official Records, as Document No. 24960.

ALSO EXCEPTING THEREFROM, the remainder of all oil, gas and other hydrocarbon substances and minerals within or underlying said land as excepted in Deed from Lila E. Gill, a widow, and Lila Eliza Gill, as Trustee, to Obie Hankins and Virginia Hankins, husband and wife, an undivided 1/2 interest, and J. G. Garrison and Juanita M. Garrison, husband and wife, an undivided 1/2 interest, in the Deed recorded January 13, 1967 in Book 4010 Page 809 of Official Records, as Document No. 01751.


**PARCEL 47: KERN COUNTY APN: 059-160-44:**
Parcel 3 of Parcel Map Waiver No. 1212, according to the Certificate of Compliance, recorded March 22, 1990, in Book 6361, Page 540 of Official Records, as Document No. 39852, described as follows:

The East half of Section 32, Township 26 South, Range 23 East, Mount Diablo Meridian, in the unincorporated area, County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the Northeast quarter of the Northeast quarter of said Section 32; and
The Southeast quarter of the Northeast quarter of said Section 32.

ALSO EXCEPTING THEREFROM, the following described parcel:

BEGINNING, at the Southeast corner of said Section 32;
Thence, North along the East line of said Section 32, 305 feet;
Thence, West parallel to the South line of said Section 32, 530 feet;
Thence, South parallel with the East line of said Section 32, 305 feet to the South line of said Section 32;
Thence, East along the South line, 530 feet to the POINT OF BEGINNING.

5392769v1 | 101525-0001

ALSO EXCEPTING THEREFROM, 75% of all minerals, oil, gas and hydrocarbons now or at any time hereafter situated within said land, TOGETHER WITH, the right to explore for, mine, drill, extract, and take such minerals, oil, gas, and hydrocarbons from said lands and to use the surface and sub-surface of said lands for such exploration, drilling and extraction, and for such derricks, machinery, structures, sumps, dumps, roads, pipe, tools, tanks, pipe lines, power lines, and plants, as in the opinion of the grantors, its successors or assigns, may be necessary or convenient at any time for the exploration for, mining, drilling, extraction, removal, storage, transportation, processing, and sale of such minerals within or removed from said lands, subject to the terms and conditions contained therein, all as excepted and reserved by Semi-Tropic Land & Water Co., a Corporation, in the Deed recorded July 2, 1947 in Book 1413, Page 402 of Official Records, as Document No. 24960.

ALSO EXCEPTING THEREFROM, the remainder of all oil, gas and other hydrocarbon substances and minerals within or underlying said land as excepted in Deed from Lila E. Gill, a widow, and Lila Eliza Gill, as Trustee, to Obie Hankins and Virginia Hankins, husband and wife, an undivided 1/2 interest, and J. G. Garrison and Juanita M. Garrison, husband and wife, an undivided 1/2 interest, in the Deed recorded January 13, 1967 in Book 4010 Page 809 of Official Records, as Document No. 01751.

**PARCEL 48: KERN COUNTY APN: 059-180-01:**
The West 20 acres of the Northeast quarter of the Southwest quarter;
The North 10 acres of the Northwest quarter of the Southwest quarter; and
The Northwest quarter of the Southeast quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM all oil, gas, hydrocarbon substances and minerals in and under said land as reserved by Francis I. Sanger and Helen Z. Sanger, husband and wife, in the Deed recorded April 20, 1953 in Book 2071 Page 213 of Official Records, as Document No. 18814.

**PARCEL 49: KERN COUNTY APN: 059-180-03:**
The North half of the Southeast quarter of the Northeast quarter of the Southwest quarter;
The South half of the South half of the Northeast quarter of the Northeast quarter of the Southwest quarter; and
The North half of the Southeast quarter of the Northeast quarter of the Northeast quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

**PARCEL 50: KERN COUNTY APN: 059-180-11:**
The Northeast quarter of the Southeast quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

**PARCEL 51: KERN COUNTY APN: 059-180-12:**
The South half of the Southeast quarter of the Northeast quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas, hydrocarbon substances and minerals within or underlying said land, as

reserved by Katherine B. Belshaw, a widow, in the Deed recorded April 23, 1964, in <u>Book 3718 Page 82 of Official Records</u>, as Document No. 26638.

**PARCEL 52: KERN COUNTY APN: 059-180-13:**
The South 35 acres of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas, hydrocarbon substances and minerals within or underlying said land as reserved by G. A. Holtz, et ux, et al, in the Deed recorded March 20, 1964 in <u>Book 3706 Page 315 of Official Records</u>, as Document No. 18988.

**PARCEL 53: KERN COUNTY APN: 059-180-14:**
The North 5 acres of the Southwest quarter of the Southwest quarter and the South 30 acres of the Northwest quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas, hydrocarbon substances and minerals in and under said land as excepted in the Deed dated December 19, 1963 from J. T. Nighbert to Katherine Irene Gill, et al, recorded December 31, 1963 in <u>Book 3676 Page 962 of Official Records</u>, as Document No. 80914.

**PARCEL 54A: KERN COUNTY APN: 059-180-27 (PORTION OF):**
The South half of the South half of the Southeast quarter, and
The South half of the Southeast quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM 75% of all minerals, oil, gas and hydrocarbons now or at any time hereafter situated within said land, TOGETHER WITH, the right to explore for, mine, drill, extract, and take such minerals, oil, gas, and hydrocarbons from said lands and to use the surface and sub-surface of said lands for such exploration, drilling and extraction, and for such derricks, machinery, structures, sumps, dumps, roads, pipe, tools, tanks, pipe lines, power lines, and plants, as in the opinion of the grantors, its successors or assigns, may be necessary or convenient at any time for the exploration for, mining, drilling, extraction, removal, storage, transportation, processing, and sale of such minerals within or removed from said lands, subject to the terms and conditions contained therein, all as excepted and reserved by Semi-Tropic Land & Water Co., a Corporation, in the Deed recorded July 2, 1947 in <u>Book 1413, Page 402 of Official Records</u>, as Document No. 24960.

ALSO EXCEPTING THEREFROM, the remainder of all oil, gas and other hydrocarbon substances and minerals within or underlying said land as excepted in Deed from Lila E. Gill, a widow, and Lila Eliza Gill, as Trustee, to Obie Hankins and Virginia Hankins, husband and wife, an undivided 1/2 interest, and J. G. Garrison and Juanita M. Garrison, husband and wife, an undivided 1/2 interest, in the Deed recorded January 13, 1967 in <u>Book 4010 Page 809 of Official Records</u>, as Document No. 01751.

**PARCEL 54B: KERN COUNTY APN: 059-180-27 (PORTION OF):**
The North half of the Southeast quarter of the Southeast quarter and

The South half of the Northeast quarter of the Southeast quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas and other hydrocarbon substances deposited in, lying under, or flowing through said lands and all metals and minerals therein and thereon, TOGETHER WITH, the right to enter upon said lands and to drill for, produce, extract, take and remove said substances from said lands, as reserved by Gladys M. Leake, a married woman, in the Deed recorded September 5, 1941 in Book 1050 Page 37 of Official Records, as Document No. 23280.

**PARCEL 54C: KERN COUNTY APN: 059-180-27 (PORTION OF):**
The North half of the Northeast quarter of the Southeast quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas, minerals and other hydrocarbon substances within or underlying said land as excepted in the Deed from Lila E. Gill, a widow, and Lila Eliza Gill, as Trustee, recorded January 13, 1967 in Book 4010 Page 809 of Official Records, as Document No. 01751.

**PARCEL 55 KINGS COUNTY APN: 004-100-004; 004-070-026; &**
**APN 004-100-055 (PORTION) & 004-070-079 (PORTION):**
All of Lot 1 of Section 9;
All of Lot 32 of Section 4;
That portion of Lot 3 of Section 9; and
That portion of Lot 31 of Section 4, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records, described as follows:

BEGINNING, at a point in the North line of Section 9, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, from which the Northeast corner of said Section bears South 89° 48' East 1320 feet;
Thence, North 655 feet along the East line of Lot 31;
Thence, North 52° 30' West 190 feet;
Thence, South 76° 30' West 590 feet;
Thence, South 42° 30' West 115 feet;
Thence, South 13° 45' West 340 feet;
Thence, South 42° 20' West 216 feet;
Thence, South 71° 14' West 181 feet to a point in the South line of Section 4, from which the point of beginning bears South 89° 48' East 1200 feet;
Thence, South 59° 47' West 393.7 feet;
Thence, South 18° 27' West 176.2 feet;
Thence, South 83° 45' East 250 feet;
Thence, South 72° 30' East 400 feet;
Thence, South 66° 05' East 190 feet;
Thence, South 76° 50' East 170 feet;
Thence, North 86° 40' East 250 feet;
Thence, North 76° 00' East 170 feet;
Thence, North 50° 25' East 120 feet;

5392769v1 | 101525-0001

Thence, North 22° 30' East 316 feet;
Thence, North 44° 30' East 160 feet;
Thence, North 63° 30' East 130 feet;
Thence, North 80° 35' East 170 feet to a point in the north line of section 9;
Thence, North 89° 48' West 397 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM, a strip of land 30 feet wide along the margin of Kings River or any other defined water course running through or along the boundaries of said land and along all such margins.

ALSO EXCEPTING THEREFROM, any portion of the described property within the natural bed of Kings River below the line of ordinary high water.

ALSO EXCEPTING THEREFROM, an undivided one-half of all oil, hydrocarbon substances and minerals of all kinds, in or upon said land, TOGETHER WITH, the right to enter upon said premises to prospect for, drill for, capture and remove an undivided one-half of oil, gas, hydrocarbon substances and other minerals found upon the surface or under the surface of said land, with the right to build and maintain such drilling riggs, pipelines, sumpholes, power lines and buildings as may be necessary for mining for, drilling for, and capturing any of said substances hereinbefore mentioned and removing same from said premises, TOGETHER WITH, the right of ingress and egress at all times for said purposes, as reserved by David H. Moore and Ruth Moore, husband and wife, in the Deed recorded August 22, 1945 in Book 331, Page 413 of Official Records, as Document No. 4991.

**PARCEL 56 KINGS COUNTY APN: 004-070-079 (PORTION):**
Lot 30 in Section 3, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records.

EXCEPTING THEREFROM, a strip of land 30 feet in width along the margin of Kings River or any other defined water course running through or along the boundaries of said lands and along all such margins as reserved by Security First National Bank of Los Angeles, in the Deed recorded December 1, 1941 in Book 257, Page 445 of Official Records, as Document No. 7645.

ALSO EXCEPTING THEREFROM, any portion of the described property within the natural bed of the Kings River below the line of ordinary high water.

**PARCEL 57 KINGS COUNTY APN: 004-100-055 (PORTION):**
Lot 6 of Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records.

EXCEPTING THEREFROM, a strip of land 30 feet in width along the margin of Kings River or any other defined water course running through or along the boundaries of said lands and along all such margins as reserved by Security First National Bank of Los Angeles, in the Deed recorded December 1, 1941 in Book 257, Page 445 of Official Records, as Document No. 7645.

NOTE:  the map hereinabove referred to recites:

"all measurements are to centers of roads and all are figured to road centers."

ALSO EXCEPTING THEREFROM, any portion of the described property line within the natural bed of the Kings River below the line of ordinary high mark.

**PARCEL 58 KINGS COUNTY APN: 004-100-023:**
All that portion of Lots 2 and 3 in Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records, lying North of the following described line:

BEGINNING, at the Northeast corner of said Section 10;
Thence, South along the East line of said Section 10, 1496.96 feet to the TRUE POINT OF BEGINNING;
Thence, North 89° 35' 52" West 2640 feet, more or less, to the East line of Lot 9, In Said Section 10.

EXCEPTING FROM, all of the property hereinabove described all those portions thereof in the bed of the Kings River and also excepting from all of the property hereinabove described all those portions thereof included in a strip of land of variable width lying between the Outer Line of Kings River and the Meandered Boundary line of Lots as per said Map of Laguna de Tache Grant running downstream through said Section 10, and also a strip of land of variable width lying between the Meandered Boundary line of Lots on either side of Kings River as per said Map of Laguna de Tache Grant running downstream through said Section 10, all as described in the Deed to Tulare Lake Basin Water Storage District recorded August 6, 1928 in Book 34 at Page 416 of Official Records.

ALSO EXCEPTING THEREFROM, an undivided one-half interest of all oil, gas, other hydrocarbons and minerals in and under said real property. The Grantors shall have not right to drill any wells or take any other measures for the production of oil, gas, or other hydrocarbons or minerals on any of said property, subject to the terms and conditions contained therein, all as reserved by Oscar E. Goodreau and Margaret M. Goodreau, husband and wife, and Bernard Goodreau and Jessie Goodreau, husband and wife, in the Deed recorded January 23, 1951 in Book 482, Page 515 of Official Records, as Document No. 792.

**PARCEL 59 KINGS COUNTY APN: 004-100-022:**
Lots 3, 9 and 10 in Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records.

EXCEPTING THEREFROM, that portion of Lot 3 lying within the following described property:

All that portion of Lots 2 and 3 in Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records, lying north of the following described line:

BEGINNING, at the Northeast corner of said Section 10;
Thence, South along the East line of said Section 10, 1496.96 feet to the TRUE POINT OF BEGINNING;
Thence, North 89° 35' 52" West 2640 feet, more or less, to the East line of Lot 9, in said Section 10.

ALSO EXCEPTING THEREFROM, all of the property hereinabove described all those portions thereof in the bed of the Kings River and also excepting from all of the property hereinabove described all those portions thereof included in a strip of land of variable width lying between the Outer Line of Kings River and the Meandered Boundary line of Lots as per said Map of Laguna de Tache Grant running downstream through said Section 10,

and also a strip of land of variable width lying between the Meandered Boundary line of Lots on either side of Kings River as per said Map of Laguna de Tache Grant running downstream through said Section 10, all as described in the Deed to Tulare Lake Basin Water Storage District recorded August 6, 1928 in Book 34 at Page 416 of Official Records.

ALSO EXCEPTING THEREFROM, an undivided one-half interest of all oil, gas, other hydrocarbons and minerals in and under said real property. The Grantors shall have not right to drill any wells or take any other measures for the production of oil, gas, or other hydrocarbons or minerals on any of said property, subject to the terms and conditions contained therein, all as reserved by Oscar E. Goodreau and Margaret M. Goodreau, husband and wife, and Bernard Goodreau and Jessie Goodreau, husband and wife, in the Deed recorded January 23, 1951 in Book 482, Page 515 of Official Records, as Document No. 792.

**PARCEL 60 KINGS COUNTY APN: 004-100-039:**
All of Lots 5 and 7 in Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna De Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records.

EXCEPTING THEREFROM, all that portion of Lot 5 of Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, described as follows:

BEGINNING, at the Northeast corner of said Lot 5, as shown on the Map of Laguna De Tache Grant;
Thence, South 13° 35' West 131 feet;
Thence, South 71° 35' West 149.5 feet to the TRUE POINT OF BEGINNING;
Thence, along the Southeasterly line of said Lot, South 44° 35' West 208.7 feet;
Thence, North 45° 25' West 208.7 feet;
Thence, North 44° 35' East 208.7 feet;
Thence, South 45° 35' East 208.7 feet to the TRUE POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, any portion of the described property within the natural bed of the Kings River below the line of ordinary high water.

ALSO EXCEPTING THEREFROM, all that portion of Lot 5 of Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, as shown on the Map of Laguna De Tache Grant, described as follows:

BEGINNING, at the Northeast corner of said Lot 5;
Thence South 13° 35' West 131 feet;
Thence South 71° 35' West 149.5 feet;
Thence South 44° 35' West 208.7 feet to the TRUE POINT OF BEGINNING;
Thence South 44° 35' West 59 feet;
Thence South 83° 50' West 182.07 feet;
Thence North 45° 25' West 142.8 feet;
Thence North 44° 35' East 200 feet;
Thence South 44° 25' East 258 feet to the TRUE POINT OF BEGINNING.
(removes 004-100-038)

ALSO EXCEPTING THEREFROM, one-half of all oil, gas, minerals, mineral rights and other hydrocarbon substances within or underlying said land as excepted and reserved in the Deed Executed by Joe Fagundes, et al, recorded June 10, 1980 in Book 1177 at Page 466, of Official Records, as Document No. 6904.

5392769v1 | 101525-0001

**PARCEL 61 KINGS COUNTY APN: 004-171-078:**
Parcel 2, of Lot Line Adjustment No. 09-05, in the unincorporated area of the County of Kings, State of California according to the Parcel Map Waiver recorded August 25, 2009 as Document No. 0915250, of Official Records, described as follows:

Lot 1 in Section 16, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, according to Map of Laguna De Tache Grant, recorded November 12, 1894 in Book 2, Page 98 of Record of Surveys, Fresno County Records; that part of lot 2 in the aforesaid Section 16, lying South and east of the south fork of the island canal, described as follows:

BEGINNING, at the Southeast corner of Lot 2 in Section 16;
Thence, along the South line of said Lot, North 89° 48' West 480 feet to a point in the center of South Fork of the Island Canal;
Thence, North 30°42' East 450 feet;
Thence, North 29°15' East 242 feet;
Thence, North 34°49' East 130 feet;
Thence, South on the East line of said Lot 2 a distance of 666 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM, that portion conveyed by Deed to Island Reclamation District No. 776, described as follows:

BEGINNING, at a point 818.4 feet South of corner common to Section 9, 10, 15 and 16 in said Township and Range;
Thence, South 62° 53' West, 675 feet to the intersection with the North line of right of way of Island Reclamation District;
Thence, along said line South 75° 05', East, 368.3 feet to a point;
Thence, North 61° 30', East 278.5 feet to a point on the East line of said Section;
Thence, North along said line 269.1 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, that portion described as follows:

All that portion of the aforesaid Lot 1, lying Northerly and Westerly of the centerline of the South Fork Island Canal.

ALSO EXCEPTING THEREFROM, any portion of the described property within the natural bed of the Kings River below the line of ordinary high water.

ALSO EXCEPTING THEREFROM, a strip of land 30 feet in width along the margin of Kings River and any other defined water course running through or along the boundaries of said land, and along all such margins.

ALSO EXCEPTING THEREFROM, one-half of all oil, gas, minerals, mineral rights and other hydrocarbon substances within or underlying said property, as excepted and reserved in the Deed executed by Edward L. Hurlburt, recorded May 31, 1977 in Book 1093, Page 812 of Official Records, as Document No. 7092.

**PARCEL 62 KINGS COUNTY APN: 004-172-001:**
Lot 3 in Section 15, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 98 of Record of Surveys, Fresno County Records.

5392769v1 | 101525-0001

EXCEPTING THEREFROM, that portion thereof described as follows:

BEGINNING, at a point 819.4 feet South of the Northwest corner of said Section 15;
Thence South 265.3 feet;
Thence North 53° 40' East 68.6 feet;
Thence North 21° East 320.3 feet;
Thence North 57° 25' East 130 feet;
Thence South 62° 53' West 314.90 feet to the POINT OF BEGINNING, as conveyed by Joe E. Costa, et al, to Island Reclamation District No. 776, in the Deed recorded In Book 199, Page 234 of Official Records.

ALSO EXCEPTING THEREFROM, any portion of the described property within the natural bed of the Kings River below the line of ordinary high water.

## PARCEL 63 KINGS COUNTY APN: 036-180-063:
Parcel 2, as shown on the Parcel Map recorded August 8, 2018, in Book 20, Page 90 of Parcel Maps, in the unincorporated area of the County of Kings, State of California, being a portion of the Southeast quarter of Section 31, Township 21 South, Range 18 East, Mount Diablo Base and Meridian, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil and gas, associated liquid and gaseous hydrocarbons, and all other minerals, whether hydrocarbon bearing or not, located on or under the Property. Aera expressly retains and reserves unto itself, and to Aera's successors and assigns, the right to use the Property for the purposes of:
(1) exploring, prospecting, conducting geophysical operations, drilling, operating, and producing oil and gas, associated liquid and gaseous hydrocarbons, and other minerals, whether contemporaneously produced with the oil and gas or not;
(2) laying pipelines and building tanks, communication lines, and other structures thereon, and maintaining such works to produce, save, take care of, treat, store, transport, and own such products obtained from and under the Property;
(3) constructing roads and bridges necessary for operations on the Property for the purposes contained in this subsection; and (4) full rights of ingress and egress to and from the Property for the purposes contained in this subsection. Aera, or Aera's successors and assigns, shall have the right to use as much of the Property as is reasonably necessary to carry out the purposes of this subsection. Aera, its successors and assigns, will lay pipelines in cultivated fields on the Property below plow depth. Aera, its successors and assigns, agrees that it will pay to Assignee, or Assignee's successors and assigns, or Assignee's tenant, as the case may be, reasonable damages caused by Aera's operations, or the operations of Aera's successors and assigns, to Assignee's livestock, crops, trees, existing fences, and other improvements upon the Property. Aera, its successors and assigns, shall hold Assignee harmless from all claims or liens of third parties by reason of any act or neglect on Aera's part, all as reserved by Area Energy LLC, A California Limited Liability Company, in the Document entitled "ASSIGNMENT AND CONVEYANCE" recorded April 12, 2002, as Instrument No. 0207620, of Official Records.

## PARCEL 64 STANISLAUS COUNTY PORTIONS OF APN: 057-026-008 & 009:
All that portion of Fractional Lot 6, which lies in the North half of the North half of the of the Southeast quarter of Section 8, Township 6 South, Range 9 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Stanislaus, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided one-half interest in all the minerals, mineral deposits, mineral oils, and natural gases of every kind and nature contained in or upon said lands, TOGETHER WITH, the right, in the

5392769v1 | 101525-0001

Grantors and their successors and Grantees, to prospect, mine and operate in and upon the said grounds for such minerals, mineral deposits, mineral oils, and natural gases in any and all miner like metacus deemed necessary in the judgment of Grantors or their agents or in the judgment of the successor of Grantors, for the property extraction of the said minerals and the removal of mineral deposits, mineral oils, and natural gases therefrom, all as reserved by G. L. Dutcher and Ethel Maud Dutcher, husband and wife, in the Deed recorded August 13, 1951, in <u>Volume 1043, page 259 of Official Records</u>, as <u>Document No. 18503</u>.

## <u>PARCEL 65 STANISLAUS COUNTY PORTIONS OF APN: 057-026-008 & 009:</u>

All that portion of Fractional Lot 6 which lies in the South half of the North half of the of the Southeast quarter of Section 8, Township 6 South, Range 9 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Stanislaus, State of California according to the Official Plat thereof;
and
All that portion of Swamp and Overflowed Land Survey Nos. 159 and 162, which lies in the South half of the Southeast quarter; and in the South half of the North half of the said Southeast quarter of Section 8, Township 6 South, Range 9 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Stanislaus, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided one-half interest in all the minerals, mineral deposits, mineral oils, and natural gases of every kind and nature contained in or upon said lands, TOGETHER WITH, the right, in the Grantors and their successors and Grantees, to prospect, mine and operate in and upon the said grounds for such minerals, mineral deposits, mineral oils, and natural gases in any and all minerlike metacus deemed necessary in the judgment of Grantors or their agents or in the judgment of the successor of Grantors, for the property extraction of the said minerals and the removal of mineral deposits, mineral oils, and natural gases therefrom, all as reserved by G. L. Dutcher and Ethel Maud Dutcher, husband and wife, in the Deed recorded August 13, 1951 in <u>Volume 1043, page 259 of Official Records</u>, as <u>Document No. 18503</u>.

ALSO EXCEPTING THEREFROM, any mobile home, trailer and/or manufactured home located thereon.

## <u>PARCEL 66 STANISLAUS COUNTY PORTION OF APN: 057-026-008:</u>

All that portion of Swamp and Overflowed Land <u>Survey No. 162</u>, which lies in the North half of the North half of the Southeast quarter of Section 8, Township 6 South, Range 9 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Stanislaus, State of California according to the Official Plat thereof.

5392769v1 | 101525-0001

Laura Avila, Assessor-Recorder
Kern County Official Records

BM
11/12/2024
08:00 AM

Recorded Electronically by:
55E Fidelity Natl Title CA Multi

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

**MORGAN HILLS CAPITAL, LLC**
4030 South Pipkin Road
Lakeland, Florida, 33811

DOC#: 224139389



224139389

| Stat Types: 1 | Pages: 34 |
|---|---|
| FEES | 123.00 |
| TAXES | .00 |
| OTHER | 225.00 |
| PAID | 348.00 |

---

Assessor's Parcel Nos.: (Fresno County): 015-315-25s, 001-300-10, 003-020-04, 003-040-01, 003-060-13, 001-280-26, 003-040-04, 003-030-15s, 003-030-24s, 003-020-09, 003-020-08, 045-170-62s, 045-170-86s, 065-110-06s, 065-110-17s, 085-050-39s, 085-090-91s, 085-090-93s, 085-090-95s, 085-090-97s, 033-200-13s, 033-200-14s, 033-200-03s, 033-200-04s, 075-020-38s, 085-090-26s, 085-090-90s, 085-090-92s, 085-090-94s, 085-090-96s, 085-090-04, 027-050-11, 017-070-17, 027-050-01, 027-050-02s, 027-050-07, 033-020-73s, 033-020-74s, 020-200-01, 028-041-01, 028-041-02, (Merced County): 091-160-006, 091-170-001, 091-170-006, 091-053-001, 091-190-005, 091-190-006, 083-230-036, (Madera County): 041-190-006, 042-010-003, (Kern County): 059-160-42, 059-160-43, 059-160-44, 059-180-01, 059-180-03, 059-180-11, 059-180-12, 059-180-13, 059-180-14, 059-180-27, (Kings County): 004-070-026, 004-070-079, 004-100-004, 004-100-022, 004-100-023, 004-100-039, 004-100-055, 004-171-078, 004-172-001, 036-180-063, (Stanislaus County): 057-026-008 and 057-026-009

Space Above This Line for Recorder's Use

# ASSIGNMENT OF DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND FIXTURE FILING

    For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to **MHC Almonds, LLC,** a Delaware limited liability company, whose address is C/O Amerherst Capital Management, 452 Fifth Avenue, 29th Floor, New York, NY 10018, all right, title and interest in and to that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing, dated December 20, 2022 ("Deed of Trust"), executed by NAVDEP SINGH SRAN and SUKHWINDER KAUR SRAN, Co-Trustees, as community property, or their successors in trust, under

Page 1

Assignment of Deed of Trust
SRAN [Loan No. 1503]

the 2005 SRAN FAMILY REVOCABLE TRUST dated 8/10/05 and any amendments thereto, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, as to Parcels 1, 12, 25, 26, 27 and 40, and as to an undivided one-third interest in Parcels 38-39 and 64-66 as Tenants in Common with S3 Group and Sran Vineyards, and who took title to Parcels 12 and 40 as NAVDEP SINGH SRAN and SUKHWINDER KAUR SRAN, Co-Trustees, under the 2005 SRAN FAMILY REVOCABLE TRUST, and who took title to the undivided one-third interest in Parcels 38-39 and 64-66 as NAVDEP SINGH SRAN and SUKHWINDER KAUR SRAN, Co-Trustees as community property under the 2005 SRAN FAMILY REVOCABLE TRUST dated 8/10/05 (collectively, the "Trust"); S3 GROUP, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, as to Parcels 2-11, 13-14, 24, 41-53, 54A, 54B, 54C, and 55-62, and as to an undivided one-third interest in Parcels 38-39 and 64-66 as Tenants in Common with the Trust and Sran Vineyards ("S3 Group"); SRAN CHILDREN ALMONDS, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, as to Parcels 15, 16, 16A, 16B, 17, 17A, 17B, 18, 18A, 18B, 19, 19A 19B and 63, subject to Item No. 283 ("Sran Children"); SRAN ALMONDS, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, as to Parcels 28A, 28B, 29, 29A, 30, 30A, 30B, 31, 31A, 31B, 32, 32A, 32B, 33 thru 37 ("Sran Almonds"); and SRAN VINEYARDS, LLC, a California limited liability company, whose address is 1758 N. Siskiyou Ave., Kerman, California 93630, as to an undivided one-third interest in Parcels 38-39 and 64-66 as Tenants in Common with the Trust and S3 Group, which took title as SRAN VINEYARDS, LLC, a California limited liability company a California limited liability company ("Sran Vineyards") (the Trust, S3 Group, Sran Children, Sran Almonds and Sran Vineyards are collectively the **"Trustor"**), for the benefit of Morgan Hills Capital, LLC, a Delaware limited liability company c/o AgAmerica Lending LLC, a Florida limited liability company, whose address is 4030 S. Pipkin Road, Lakeland, Florida 33811 (the **"Beneficiary"**), and recorded on December 28, 2022, as Instrument No. 2022-0152408, records of Fresno County, California, and recorded on December 28, 2022, as Instrument No. 2022043851, records of Merced County, California, and recorded on December 28, 2022, as Instrument No. 2022031801, records of Madera County, California, and recorded on December 28, 2022, as Instrument No. 222189115, records of Kern County, California, and recorded on December 29, 2022, as Instrument No. 2224395, records of Kings County, California, and recorded on December 28, 2022, as Instrument No. 2022-0080955, records of Stanislaus County, California, describing land therein as:

The real estate and any interest in the real estate located Fresno, Merced, Madera, Kern, Kings, and Stanislaus Counties, State of California, described in **EXHIBIT "A"**, attached hereto and incorporated herein, along with the Improvements, Equipment, and Water Rights defined in the Deed of Trust.

APN(s): (Fresno County): 015-315-25s, 001-300-10, 003-020-04, 003-040-01, 003-060-13, 001-280-26, 003-040-04, 003-030-15s, 003-030-24s, 003-020-09, 003-020-08, 045-170-62s, 045-170-86s, 065-110-06s, 065-110-17s, 085-050-39s, 085-090-91s, 085-090-93s, 085-090-95s, 085-090-97s, 033-200-13s, 033-200-14s, 033-200-03s, 033-200-04s, 075-020-38s, 085-090-26s, 085-090-90s, 085-090-92s, 085-090-94s, 085-090-96s, 085-090-04, 027-050-11, 017-070-17, 027-050-01, 027-050-02s, 027-050-07, 033-020-73s, 033-020-74s, 020-200-01, 028-041-01, 028-041-02, (Merced County): 091-160-006, 091-170-001, 091-170-006, 091-053-001, 091-190-005, 091-190-006, 083-230-036, (Madera County): 041-190-006, 042-010-003, (Kern County): 059-160-42, 059-160-43, 059-160-44, 059-180-01, 059-180-03, 059-180-11, 059-180-12, 059-180-13, 059-180-14, 059-180-27, (Kings County): 004-070-026, 004-070-079, 004-100-004, 004-100-022, 004-100-023, 004-100-039, 004-100-055, 004-171-078, 004-172-001, 036-180-063, (Stanislaus County): 057-026-008 and 057-026-009

Case: 25-50765   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:11   Page 228 of 261

Together with the note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated: _October 21_, 2024

**MORGAN HILLS CAPITAL, LLC,**
a Delaware limited liability company

By: AgAmerica Lending LLC, a Florida limited liability company, its authorized representative

By: Theodore R. M. Miller
Its: Director of Closing

**STATE OF FLORIDA**
**COUNTY OF POLK**

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization this _18th_ day of _October_, 2024, by Theodore R. M. Miller, as Director of Closing of AgAmerica Lending LLC, as authorized representative of Morgan Hills Capital, LLC, who is personally known to me or has produced _____ as identification.



NOTARY PUBLIC
Name: _Trevor Atchison_
My Commission expires: _1/18/25_

Notary Public State of Florida
Trevor Atchison
My Commission HH 081717
Expires 01/18/2025

Page 3

Assignment of Deed of Trust
SRAN [Loan No. 1503]

**For APN/Parcel ID(s):** **(Fresno County):, 015-315-25s, 001-300-10, 003-020-04, 003-040-01, 003-060-13, 001-280-26, 003-040-04, 003-030-15s, 003-030-24s, 003-020-09, 003-020-08, 045-170-62s, 045-170-86s, 065-110-06s, 065-110-17s, 085-050-39s, 085-090-91s, 085-090-93s, 085-090-95s, 085-090-97s, 033-200-13s, 033-200-14s, 033-200-03s, 033-200-04s, 075-020-38s, 085-090-26s, 085-090-90s, 085-090-92s, 085-090-94s, 085-090-96s, 085-090-04, 027-050-11, 017-070-17, 027-050-01, 027-050-02s, 027-050-07, 033-020-73s, 033-020-74s, 020-200-01, 028-041-01, 028-041-02, (Merced County):, 091-160-006, 091-170-001, 091-170-006, 091-053-001, 091-190-005, 091-190-006, 083-230-036, (Madera County):, 041-190-006, 042-010-003, (Kern County):, 059-160-42, 059-160-43, 059-160-44, 059-180-01, 059-180-03, 059-180-11, 059-180-12, 059-180-13, 059-180-14, 059-180-27, (Kings County):, 004-070-026, 004-070-079, 004-100-004, 004-100-022, 004-100-023, 004-100-039, 004-100-055, 004-171-078, 004-172-001, 036-180-063, (Stanislaus County):, 057-026-008 and 057-026-009**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTIES OF FRESNO AND MERCED, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

**PARCEL 1:**  APN 015-315-25s (Fresno County)

THE SOUTH HALF OF THE NORTH HALF OF THE WEST 80 ACRES OF THE SOUTH 5/8THS OF THE NORTHWEST QUARTER OF SECTION 36, TOWNSHIP 13 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA IN THE COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ANY AND ALL OIL, GAS AND/OR OTHER PETROLEUM PRODUCTS THAT MAY HEREAFTER BE FOUND, DISCOVERED AND/OR DEVELOPED UPON SAID LAND, AS RESERVED IN THE DEED DATED OCTOBER 6, 1936, FORM JOHN D. MORGAN, JR. AND HAZEL BEALL MORGAN, HUSBAND AND WIFE, RECORDED OCTOBER 19, 1936, IN BOOK 1527, PAGE 378 OF OFFICIAL RECORDS, AS DOCUMENT NO. 25058.

THIS LEGAL DESCRIPTION IS MADE PURSUANT TO THAT CERTAIN CERTIFICATE OF WAIVER OF PARCEL MAP NO. 8088, RECORDED NOVEMBER 8, 2012, AS INSTRUMENT NO. 2012-0161919 OF OFFICIAL RECORDS.

**PARCEL 2:**  APN: 001-300-10; 003-020-04; AND 003-040-01 (Fresno County); and APN: 091-160-006 & 091-170-001 & 006 (Merced County)

PARCEL 2 OF PARCEL MAP NO. 3071, PORTIONS OF WHICH ARE LOCATED IN BOTH THE UNINCORPORATED AREA OF THE COUNTIES OF FRESNO AND MERCED, STATE OF CALIFORNIA ACCORDING TO THE MAP THEREOF RECORDED NOVEMBER 23, 1974, IN BOOK 22, PAGE 54 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF FRESNO COUNTY, AND BY INSTRUMENT ENTITLED "CERTIFICATE OF COMPLETION REORGANIZATION OF THE FRESNO/MERCED COUNTY BOUNDARY CHANGE AREA INVOLVING FRESNO COUNTY SPECIAL DISTRICTS LAFCO FILE NO. 0652", WHICH RECORDED APRIL 22, 2010, AS DOCUMENT NO. 14973, IN THE OFFICE OF THE COUNTY RECORDER OF MERCED COUNTY.

**PARCEL 3:**  APN 091-053-001 (Merced County)

PARCEL 2 OF PARCEL MAP NO. 2030, IN THE UNINCORPORATED AREA OF THE COUNTY OF MERCED, (FORMERLY IN THE COUNTY OF FRESNO) STATE OF CALIFORNIA ACCORDING TO THE MAP THEREOF RECORDED APRIL 17, 1974, IN BOOK 12, PAGE 45 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY

RECORDER OF FRESNO COUNTY, AND BY INSTRUMENT ENTITLED "CERTIFICATE OF COMPLETION REORGANIZATION OF THE FRESNO/MERCED COUNTY BOUNDARY CHANGE AREA INVOLVING FRESNO COUNTY SPECIAL DISTRICTS LAFCO FILE NO. 0652", WHICH RECORDED APRIL 22, 2010, AS DOCUMENT NO. 14973, IN THE OFFICE OF THE COUNTY RECORDER OF MERCED COUNTY.

**PARCEL 4:** APN: 003-060-13 (Fresno County)

PARCEL 3 OF PARCEL MAP NO. 7400, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO STATE OF CALIFORNIA ACCORDING TO THE MAP THEREOF RECORDED FEBRUARY 22, 1991, IN BOOK 51, PAGE 47 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF FRESNO COUNTY.

**PARCEL 5:** APN: 001-280-26 (Fresno County)

LOTS 23, 24, 29, 30, 31, 32 AND 33 IN MILLER & LUX SUBDIVISION OF SECTION 17, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE MAP RECORDED OCTOBER 3, 1904 IN BOOK 2 PAGE 92 OF RECORD OF SURVEYS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM, THE WEST 452.71 FEET OF SAID LOTS 23, 24, 32 AND 33, PER UNRECORDED LOT LINE ADJUSTMENT NO. 98-22, AS APPROVED BY FRESNO COUNTY DEVELOPMENT DEPARTMENT, AS DISCLOSED BY DEEDS RECORDED MARCH 15, 1999, AS DOCUMENT NOS. 199-0038833 AND 1999-0038834 AND CORRECTED BY DEED RECORDED DECEMBER 21, 1999, AS DOCUMENT NO. 1999-0181326, OF OFFICIAL RECORDS.

**PARCEL 6:** APN: 003-040-04 (Fresno County)

THE SOUTH HALF OF THE SOUTHWEST QUARTER OF THE NORTHWEST QUARTER OF SECTION 20, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

**PARCEL 7:** APN: 003-030-15s (portion of) (Fresno County)

PORTION OF THE SOUTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT WHICH BEARS NORTH 0 05" WEST 1320 FEET FROM THE SOUTH QUARTER SECTION CORNER OF SAID SECTION 19;
THENCE, ALONG THE CENTER LINE OF A 60 FOOT ROAD RESERVATION, NORTH 0 05' WEST 660 FEET;
THENCE, LEAVING ROAD RESERVATION NORTH 89 55' EAST 1320 FEET;
THENCE, SOUTH 0 05' EAST 544.64 FEET;
THENCE, SOUTH 61 40' WEST 325.82 FEET;
THENCE, SOUTH 72 20' WEST 125.87 FEET;
THENCE, NORTH 69 40' WEST 214.46 FEET;
THENCE, SOUTH 84 50' WEST 219.95 FEET;
THENCE, NORTH 58 50' WEST 42.72 FEET;
THENCE, SOUTH 89 55' WEST 456.43 FEET TO THE POINT OF BEGINNING.

**PARCEL 7A:** APN: 003-030-15s (portion of) (Fresno County)

THE NORTH HALF OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

**PARCEL 7B:** APN: 003-030-15s (portion of) (Fresno County)

THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

**PARCEL 8:** APN: 003-030-24s (Fresno County)

THE WEST HALF OF THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM, THE EAST 389.00 FEET OF THE SOUTH 273.00 FEET THEREOF.

**PARCEL 9:** APN 091-190-005 and 006 (Merced County)

THE SOUTH 660 FEET OF THE FOLLOWING DESCRIBED PROPERTY, WHICH LIES EAST OF THE HOLLAND FARM DRAIN:

BEGINNING, AT A POINT WHICH BEARS NORTH 0° 05' WEST 660 FEET FROM THE SOUTH QUARTER SECTION CORNER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF MERCED (FORMERLY THE COUNTY OF FRESNO), STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, AND BY INSTRUMENT ENTITLED "CERTIFICATE OF COMPLETION REORGANIZATION OF THE FRESNO/MERCED COUNTY BOUNDARY CHANGE AREA INVOLVING FRESNO COUNTY SPECIAL DISTRICTS LAFCO FILE NO. 0652", WHICH RECORDED APRIL 22, 2010, AS <u>DOCUMENT NO. 14973</u>, IN THE OFFICE OF THE COUNTY RECORDER OF MERCED COUNTY;

THENCE, SOUTH 89° 55' WEST, 860.58 FEET TO THE EASTERLY RIGHT OF WAY LINE OF THE HOLLAND FARM DRAIN; THENCE, ALONG THE EASTERLY RIGHT OF WAY LINE OF THE HOLLAND FARM DRAIN NORTH 23° 52' WEST; 648.30 FEET; THENCE, NORTH 6° 52' WEST, 646.33 FEET;
THENCE, NORTH 45° 52' WEST, 121.80 FEET;
THENCE, LEAVING SAID DRAIN NORTH 89° 55' EAST, 1285.67 FEET;
THENCE, ALONG THE CENTER LINE OF A 60-FOOT ROAD RESERVATION SOUTH 0° 05' EAST, 1320 FEET TO THE POINT OF BEGINNING

TOGETHER WITH:

THE SOUTH HALF OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF MERCED (FORMERLY THE COUNTY OF FRESNO), STATE

5392769v1 | 101525-0001

OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, AND BY INSTRUMENT ENTITLED "CERTIFICATE OF COMPLETION REORGANIZATION OF THE FRESNO/MERCED COUNTY BOUNDARY CHANGE AREA INVOLVING FRESNO COUNTY SPECIAL DISTRICTS LAFCO FILE NO. 0652", WHICH RECORDED APRIL 22, 2010, AS <u>DOCUMENT NO. 14973</u>, IN THE OFFICE OF THE COUNTY RECORDER OF MERCED COUNTY.

EXCEPTING THEREFROM, THE FOLLOWING DESCRIBED RIGHT OF WAY FOR THE SO-CALLED HOLLAND FARM DRAIN:

BEGINNING, AT A POINT WHICH BEARS SOUTH 89° 55' WEST 276.40 FEET FROM THE SOUTH QUARTER SECTION CORNER OF SAID SECTION 19;
THENCE, NORTH 46° 24' WEST, 911.90 FEET;
THENCE, NORTH 23° 52' WEST, 32.78 FEET;
THENCE, NORTH 89° 55' EAST, 97.65 FEET;
THENCE, SOUTH 46° 24' EAST, 955.32 FEET;
THENCE, SOUTH 89° 55' WEST, 115.83 FEET TO THE POINT OF BEGINNING.

**PARCEL 10:** APN: 003-020-09 (Fresno County)

LOT 23 AND THE NORTH HALF OF LOTS 21 AND 22 OF MILLER AND LUX SUBDIVISION OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE MAP THEREOF RECORDED MAY 21, 1904 IN <u>BOOK 1 PAGE 29 OF MISCELLANEOUS MAPS</u>, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

SAID PROPERTY IS ALSO DESCRIBED AS:

THE NORTH HALF OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

**PARCEL 11:** APN: 003-020-08 (Fresno County)

LOT 24 AND THE SOUTH HALF OF LOTS 21 AND 22 OF MILLER AND LUX SUBDIVISION OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE MAP THEREOF RECORDED MAY 21, 1904 IN <u>BOOK 1 PAGE 29 OF MISCELLANEOUS MAPS</u>, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

SAID PROPERTY IS ALSO DESCRIBED AS:

THE SOUTH HALF OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

**PARCEL 12:** APN: 045-170-62s and 045-170- 86s (Fresno County)

SECTION 32, TOWNSHIP 17 SOUTH, RANGE 15 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM, THE INTEREST CONVEYED TO THE STATE OF CALIFORNIA FOR FREEWAY PURPOSES, IN DEED RECORDED DECEMBER 16, 1965 IN BOOK 5252 PAGE 209 OF OFFICIAL RECORDS, DOCUMENT NO. 100919.

ALSO EXCEPTING THEREFROM, THE INTEREST CONVEYED TO THE STATE OF CALIFORNIA FOR FREEWAY PURPOSES, IN DEEDS RECORDED JULY 21, 1966 IN BOOK 5339 PAGE 7 OF OFFICIAL RECORDS, DOCUMENT NO. 54303 AND RECORDED JULY 21, 1966 IN BOOK 5339 PAGE 14 OF OFFICIAL RECORDS, DOCUMENT NO. 54308.

ALSO EXCEPTING THEREFROM, THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING, AT A POINT OF INTERSECTION OF THE SOUTH LINE OF SAID SOUTHEAST QUARTER WITH THE NORTHEASTERLY BOUNDARY OF THE 59.518-ACRE PARCEL OF LAND DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA RECORDED JULY 21, 1966 IN BOOK 5339 PAGE 14 AS DOCUMENT NO. 54308, FRESNO COUNTY OFFICIAL RECORDS;

THENCE, (1) ALONG SAID NORTHEASTERLY BOUNDARY NORTH 40° 19' 23" WEST 110.00 FEET;
THENCE, (2) LEAVING SAID NORTHEASTERLY BOUNDARY NORTH 49° 40' 37" EAST 80.00 FEET;
THENCE, (3) SOUTH 40° 19' 23" EAST, 71.16 FEET;
THENCE, (4) SOUTH 0° 36' 09" WEST 81.76 FEET TO A POINT IN THE SOUTH LINE OF SAID SOUTHEAST QUARTER;
THENCE, (5) ALONG SAID SOUTH LINE, NORTH 89° 23' 51" WEST 35.00 FEET TO THE POINT OF BEGINNING, AS CONVEYED TO
WESTLANDS WATER DISTRICT, A PUBLIC AGENCY, IN DEED RECORDED AUGUST 24, 1972, IN BOOK 6062, PAGE 192, OF OFFICIAL
RECORDS. DOCUMENT NO. 76512.

ALSO EXCEPTING THEREFROM, THE INTEREST IN ALL OIL, GAS, MINERALS RIGHTS IN SAID LAND, TOGETHER WITH THE RIGHT TO GO UPON SAID PROPERTY AT ANY TIME HEREAFTER FOR THE PURPOSE OF DEVELOPING AND EXTRACTING OIL, GAS, MINERALS AND OTHER HYDROCARBONS SUBSTANCES FROM SAID LANDS, AS RESERVED IN THE FOLLOWING DEEDS:

DEED FROM HARRY S. CLEARIE, THE DULY APPOINTED, QUALIFIED AND ACTING ADMINISTRATOR OF HE ESTATE OF ABBEY CLEARIE, ALSO KNOW AS ABBEY CLEARIE, ABBEY R. CLEARIE AND AS ABBIE R. CLEARIE, DECEASED, TO JOHN G. INDART, RECORDED MAY 23, 1951, IN BOOK 3020 PAGE 302, OF OFFICIAL RECORDS, DOCUMENT NO. 30133.

DEED FROM MAUD E. ROOT AND ZOE E. ROOT, TO JOHN G. INDART, RECORDED MAY 23, 1951, IN BOOK 3020 PAGE 306, OF OFFICIAL RECORDS, DOCUMENT NO. 30134.

PARCEL 13: APN: 065-110-06S (Fresno County)

THE REAL PROPERTY SITUATE IN THE COUNTY OF FRESNO, STATE OF CALIFORNIA, COMMONLY KNOWN AS THE HURON 1 RANCH AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THE SOUTHWEST QUARTER OF FRACTIONAL SECTION 36, TOWNSHIP 19 SOUTH, RANGE 16 EAST,

5392769v1 | 101525-0001

MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM, ALL OIL, GAS, ASPHALTUM AND-OTHER HYDROCARBONS AND OTHER MINERALS WITHIN OR UNDERLYING OR THAT MAY BE PRODUCED FROM SAID LAND, TOGETHER WITH, ANY AND ALL EASEMENTS, RIGHTS OF WAY AND SERVITUDES IN, UNDER AND UPON SAID LAND, NECESSARY OR CONVENIENT TO DRILL FOR, MINE FOR, PRODUCE, EXTRACT AND TAKE ANY OF SAID MINERALS FROM SAID LAND; TO CONSTRUCT, RECONSTRUCT, USE, MAINTAIN, ERECT, REPAIR, RENEW, CHANGE THE SIZE OF AND LOCATION OF INCREASE THE NUMBER OF AND REMOVE IN, UNDER, ON AND FROM SAID LAND ALL PIPELINES, POWER LINES, TELEPHONE AND TELEGRAPH LINES AND OTHER STRUCTURES AND EQUIPMENT WITH GRANTORS, THEIR HEIRS AND ASSIGNS MAY REQUIRE IN CARRYING ON ANY OF SAID OPERATIONS, AS RESERVED IN DEEDS RECORDED NOVEMBER 25, 1946 IN BOOK 2451, PAGE 123 OF OFFICIAL RECORDS, AS DOCUMENT NO. 79037; NOVEMBER 25, 1946, IN BOOK 2472, PAGE 171 OF OFFICIAL RECORDS, AS DOCUMENT NO. 79038; NOVEMBER 25, 1946, IN BOOK 2465, PAGE 237 OF OFFICIAL RECORDS, AS DOCUMENT NO. 79039; APRIL 24, 1947 IN BOOK 2516, PAGE 266 OF OFFICIAL RECORDS, AS DOCUMENT NO. 22754; AND MARCH 20, 1951, IN BOOK 2988, PAGE 274 OF OFFICIAL RECORDS, AS DOCUMENT NO. 16723.

**PARCEL 14:** APN: 065-110-17S (Fresno County)

THE NORTHWEST QUARTER OF SECTION 36, TOWNSHIP 19 SOUTH, RANGE 16 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING FROM, THE SOUTHWEST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY WILLIAM L. FISHER AND DOLLY FISHER, HUSBAND AND WIFE, ET AL IN THE DEED RECORDED JULY 17, 1947 IN VOLUME 2535, PAGE 364 OF OFFICIAL RECORDS, AS DOCUMENT NO. 37785.

EXCEPTING FROM, THE EAST HALF OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY HARRY M. DAVIS AND FRANCIS DAVIS, HUSBAND AND WIFE, ET AL IN THE DEED RECORDED JULY 29, 1947 IN VOLUME 2540, PAGE 432 OF OFFICIAL RECORDS, AS DOCUMENT NO. 39794.

EXCEPTING FROM, THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE

EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY CLARENCE A. WILLIAMSON AND BESSIE P. WILLIAMSON, HUSBAND AND WIFE, THE DEED RECORDED JULY 29, 1947 IN VOLUME 2549, PAGE 335 OF OFFICIAL RECORDS, AS DOCUMENT NO. 39795.

EXCEPTING FROM, THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER; AND THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY EARL FLEISHER AND LEANORE FLEISHER, HIS WIFE, ET AL IN THE DEED RECORDED JULY 29, 1947 IN VOLUME 2517, PAGE 410 OF OFFICIAL RECORDS, AS DOCUMENT NO. 39796.

EXCEPTING FROM, THE SOUTHWEST QUARTER OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY RICHARD L. LAWSON AND MARTHA C. LAWSON, HUSBAND AND WIFE, IN THE DEED RECORDED AUGUST 5, 1947 IN VOLUME 2548, PAGE 340 OF OFFICIAL RECORDS, AS DOCUMENT NO. 40944.

EXCEPTING FROM, THE NORTH HALF OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY JAMES MURPHY AND MARTHA C. MURPHY, HUSBAND AND WIFE, IN THE DEED RECORDED AUGUST 6, 1947 IN VOLUME 2561, PAGE 361 OF OFFICIAL RECORDS, AS DOCUMENT NO. 41200.

EXCEPTING FROM, THE NORTHWEST QUARTER OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SAID SECTION 36, ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF, AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM THE SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, UPON THE TERMS AND CONDITIONS CONTAINED THEREIN, AS RESERVED BY MARY C. MAY, ET AL IN THE DEED RECORDED JUNE 29, 1948 IN VOLUME 2637, PAGE 424 OF OFFICIAL RECORDS, AS DOCUMENT NO. 31252.

5392769v1 | 101525-0001

**PARCEL 15:** APN 085-050-39S (Fresno County)

THE SOUTHEAST QUARTER OF SECTION 12, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATE IN AND UNDER THE SOUTHEAST QUARTER OF SECTION 12, TOGETHER WITH, ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF AND THE EXPLORATION AND TESTING OF SAID REAL PROPERTY AND ALSO THE RIGHT TO DRILL FOR, PRODUCT AND USE WATER FROM SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON, AS SET FORTH IN THE JUDGMENT CONFIRMING REPORT OF REFEREES MAKING ACTUAL PARTITION, RECORDED SEPTEMBER 28, 1956 IN BOOK 3827, PAGE 89 OF OFFICIAL RECORDS, AS DOCUMENT NO. 69880.

**PARCEL 16:** APN: 085-090-91S (Fresno County)

THE NORTH HALF OF THE NORTHEAST QUARTER OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE CERTIFICATE OF WAIVER OF PARCEL MAP NO. 2011-13, RECORDED AUGUST 17, 2012, AS DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS.

EXCEPTING THEREFROM, (ALL OF SECTION 13) ALL OF THE MINERAL AND MINERAL ORES OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED UPON, WITHIN OR UNDERLYING THE HEREIN ABOVE DESCRIBED PROPERTY OR THAT MAY BE PRODUCED THEREFROM INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL OIL, NATURAL GAS AND HYDROCARBON SUBSTANCES, GEOTHERMAL STEAM, BRINES AND MINERALS IN SOLUTION, AND SAND, GRAVEL AND AGGREGATES, AND PRODUCTS DERIVED THEREFROM, TOGETHER WITH, THE EXCLUSIVE AND PERPETUAL RIGHT OF SAID GRANTEE, ITS SUCCESSORS AND ASSIGNS, OF INGRESS AND EGRESS IN, UPON OR OVER SAID PROPERTY TO EXPLORE AND PROSPECT FOR, EXTRACT, DEVELOP, SAVE, CONVEY, STORE, REFINE, PROCESS AND REMOVE THE SAME AND TO MAKE SUCH USE OF SAID PROPERTY AND THE SURFACE THEREOF AS IS NECESSARY OR USEFUL IN CONNECTION THEREWITH, WHICH USE MAY INCLUDE THE SINKING, BORING, DIGGING OR DRILLING OF WELLS, SHAFTS OR TUNNELS, EXCAVATING, OPEN PIT MINING AND CONSTRUCTING, MAINTAINING AND REMOVING ROADS, WAYS, PIPE LINES, POLE LINES, TANKS, BUILDINGS, STRUCTURES AND FACILITIES, AS CONVEYED TO BRAVO OIL COMPANY IN DEED RECORDED DECEMBER 29, 1965 IN BOOK 5257, PAGE 19 OF OFFICIAL RECORDS, AS DOCUMENTS NO. 104215.

**PARCEL 16A:**

AN EASEMENT FOR A NON-EXCLUSIVE PRIVATE ROAD EASEMENT, OVER THE NORTH 60.00 FEET OF THE NORTHEAST QUARTER OF SECTION 14, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, EXCEPTING THEREFROM THE WEST 50 FEET THEREOF, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE GRANT OF EASEMENT, RECORDED JULY 23, 2012, AS DOCUMENT NO. 2012-0101881 , OF OFFICIAL RECORDS.

**PARCEL 16B:**

5392769v1 | 101525-0001

AN EASEMENT FOR A NON-EXCLUSIVE EASEMENT FOR ROAD PURPOSES, OVER THE NORTH 60.00 FEET OF THE WEST HALF OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF; AND A STRIP OF LAND BEING 60.00 FEET IN WIDTH, LYING EQUALLY ON EACH SIDE OF THE EAST LINE OF THE WEST HALF OF SAID SECTION 13, ACCORDING TO THE CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17, 2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

**PARCEL 17:** APN: 085-090-93S (Fresno County)

THE SOUTH HALF OF THE NORTHEAST QUARTER OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17, 2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

EXCEPTING THEREFROM, (ALL OF SECTION 13) ALL OF THE MINERAL AND MINERAL ORES OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED UPON, WITHIN OR UNDERLYING THE HEREIN ABOVE DESCRIBED PROPERTY OR THAT MAY BE PRODUCED THEREFROM INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL OIL, NATURAL GAS AND HYDROCARBON SUBSTANCES, GEOTHERMAL STEAM, BRINES AND MINERALS IN SOLUTION, AND SAND, GRAVEL AND AGGREGATES, AND PRODUCTS DERIVED THEREFROM, TOGETHER WITH, THE EXCLUSIVE AND PERPETUAL RIGHT OF SAID GRANTEE, ITS SUCCESSORS AND ASSIGNS, OF INGRESS AND EGRESS IN, UPON OR OVER SAID PROPERTY TO EXPLORE AND PROSPECT FOR, EXTRACT, DEVELOP, SAVE, CONVEY, STORE, REFINE, PROCESS AND REMOVE THE SAME AND TO MAKE SUCH USE OF SAID PROPERTY AND THE SURFACE THEREOF AS IS NECESSARY OR USEFUL IN CONNECTION THEREWITH, WHICH USE MAY INCLUDE THE SINKING, BORING, DIGGING OR DRILLING OF WELLS, SHAFTS OR TUNNELS, EXCAVATING, OPEN PIT MINING AND CONSTRUCTING, MAINTAINING AND REMOVING ROADS, WAYS, PIPE LINES, POLE LINES, TANKS, BUILDINGS, STRUCTURES AND FACILITIES, AS CONVEYED TO BRAVO OIL COMPANY IN DEED RECORDED DECEMBER 29, 1965 IN <u>BOOK 5257, PAGE 19 OF OFFICIAL RECORDS</u>, AS DOCUMENTS NO. 104215.

**PARCEL 17A:**

AN EASEMENT FOR A NON-EXCLUSIVE PRIVATE ROAD EASEMENT, OVER THE NORTH 60.00 FEET OF THE NORTHEAST QUARTER OF SECTION 14, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, EXCEPTING THEREFROM THE WEST 50 FEET THEREOF, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE GRANT OF EASEMENT, RECORDED JULY 23, 2012, AS <u>DOCUMENT NO. 2012-0101881, OF OFFICIAL RECORDS</u>.

**PARCEL 17B:**

AN EASEMENT FOR A NON-EXCLUSIVE EASEMENT FOR ROAD PURPOSES, OVER THE NORTH 60.00 FEET OF THE WEST HALF OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF; AND A STRIP OF LAND BEING 60.00 FEET IN WIDTH, LYING EQUALLY ON EACH SIDE OF THE EAST LINE OF THE WEST HALF OF SAID SECTION 13, ACCORDING TO THE CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17,

5392769v1 | 101525-0001

2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

**PARCEL 18:** APN: 085-090-95S (Fresno County)

THE NORTH HALF OF THE SOUTHEAST QUARTER OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17, 2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

EXCEPTING THEREFROM, (ALL OF SECTION 13) ALL OF THE MINERAL AND MINERAL ORES OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED UPON, WITHIN OR UNDERLYING THE HEREIN ABOVE DESCRIBED PROPERTY OR THAT MAY BE PRODUCED THEREFROM INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL OIL, NATURAL GAS AND HYDROCARBON SUBSTANCES, GEOTHERMAL STEAM, BRINES AND MINERALS IN SOLUTION, AND SAND, GRAVEL AND AGGREGATES, AND PRODUCTS DERIVED THEREFROM, TOGETHER WITH, THE EXCLUSIVE AND PERPETUAL RIGHT OF SAID GRANTEE, ITS SUCCESSORS AND ASSIGNS, OF INGRESS AND EGRESS IN, UPON OR OVER SAID PROPERTY TO EXPLORE AND PROSPECT FOR, EXTRACT, DEVELOP, SAVE, CONVEY, STORE, REFINE, PROCESS AND REMOVE THE SAME AND TO MAKE SUCH USE OF SAID PROPERTY AND THE SURFACE THEREOF AS IS NECESSARY OR USEFUL IN CONNECTION THEREWITH, WHICH USE MAY INCLUDE THE SINKING, BORING, DIGGING OR DRILLING OF WELLS, SHAFTS OR TUNNELS, EXCAVATING, OPEN PIT MINING AND CONSTRUCTING, MAINTAINING AND REMOVING ROADS, WAYS, PIPE LINES, POLE LINES, TANKS, BUILDINGS, STRUCTURES AND FACILITIES, AS CONVEYED TO BRAVO OIL COMPANY IN DEED RECORDED DECEMBER 29, 1965 IN <u>BOOK 5257, PAGE 19 OF OFFICIAL RECORDS</u>, AS DOCUMENTS NO. 104215.

**PARCEL 18A:**

AN EASEMENT FOR A NON-EXCLUSIVE PRIVATE ROAD EASEMENT, OVER THE NORTH 60.00 FEET OF THE NORTHEAST QUARTER OF SECTION 14, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, EXCEPTING THEREFROM THE WEST 50 FEET THEREOF, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE GRANT OF EASEMENT, RECORDED JULY 23, 2012, AS <u>DOCUMENT NO. 2012-0101881, OF OFFICIAL RECORDS</u>.

**PARCEL 18B:**

AN EASEMENT FOR A NON-EXCLUSIVE EASEMENT FOR ROAD PURPOSES, OVER THE NORTH 60.00 FEET OF THE WEST HALF OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF; AND A STRIP OF LAND BEING 60.00 FEET IN WIDTH, LYING EQUALLY ON EACH SIDE OF THE EAST LINE OF THE WEST HALF OF SAID SECTION 13, ACCORDING TO THE CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17, 2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

**PARCEL 19:** APN: 085-090-97S (Fresno County)

THE SOUTH HALF OF THE SOUTHEAST QUARTER OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE

5392769v1 | 101525-0001

CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17, 2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

EXCEPTING THEREFROM, (ALL OF SECTION 13) ALL OF THE MINERAL AND MINERAL ORES OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED UPON, WITHIN OR UNDERLYING THE HEREIN ABOVE DESCRIBED PROPERTY OR THAT MAY BE PRODUCED THEREFROM INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL OIL, NATURAL GAS AND HYDROCARBON SUBSTANCES, GEOTHERMAL STEAM, BRINES AND MINERALS IN SOLUTION, AND SAND, GRAVEL AND AGGREGATES, AND PRODUCTS DERIVED THEREFROM, TOGETHER WITH, THE EXCLUSIVE AND PERPETUAL RIGHT OF SAID GRANTEE, ITS SUCCESSORS AND ASSIGNS, OF INGRESS AND EGRESS IN, UPON OR OVER SAID PROPERTY TO EXPLORE AND PROSPECT FOR, EXTRACT, DEVELOP, SAVE, CONVEY, STORE, REFINE, PROCESS AND REMOVE THE SAME AND TO MAKE SUCH USE OF SAID PROPERTY AND THE SURFACE THEREOF AS IS NECESSARY OR USEFUL IN CONNECTION THEREWITH, WHICH USE MAY INCLUDE THE SINKING, BORING, DIGGING OR DRILLING OF WELLS, SHAFTS OR TUNNELS, EXCAVATING, OPEN PIT MINING AND CONSTRUCTING, MAINTAINING AND REMOVING ROADS, WAYS, PIPE LINES, POLE LINES, TANKS, BUILDINGS, STRUCTURES AND FACILITIES, AS CONVEYED TO BRAVO OIL COMPANY IN DEED RECORDED DECEMBER 29, 1965 IN <u>BOOK 5257, PAGE 19 OF OFFICIAL RECORDS</u>, AS DOCUMENTS NO. 104215.

**PARCEL 19A:**

AN EASEMENT FOR A NON-EXCLUSIVE PRIVATE ROAD EASEMENT, OVER THE NORTH 60.00 FEET OF THE NORTHEAST QUARTER OF SECTION 14, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, EXCEPTING THEREFROM THE WEST 50 FEET THEREOF, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF, ACCORDING TO THE GRANT OF EASEMENT, RECORDED JULY 23, 2012, AS <u>DOCUMENT NO. 2012-0101881</u> , OF OFFICIAL RECORDS.

**PARCEL 19B:**

AN EASEMENT FOR A NON-EXCLUSIVE EASEMENT FOR ROAD PURPOSES, OVER THE NORTH 60.00 FEET OF THE WEST HALF OF SECTION 13, TOWNSHIP 21 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA ACCORDING TO THE OFFICIAL PLAT THEREOF; AND A STRIP OF LAND BEING 60.00 FEET IN WIDTH, LYING EQUALLY ON EACH SIDE OF THE EAST LINE OF THE WEST HALF OF SAID SECTION 13, ACCORDING TO THE CERTIFICATE OF WAIVER OF <u>PARCEL MAP NO. 2011-13</u>, RECORDED AUGUST 17, 2012, AS <u>DOCUMENT NO 2012-0115401, OF OFFICIAL RECORDS</u>.

**PARCEL 20:** APN: 083-230-036 (Merced County)

ALL THAT PORTION OF THE NORTHEAST ONE-QUARTER OF SECTION 35, TOWNSHIP 10 SOUTH, RANGE 10 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA IN THE COUNTY OF MERCED, STATE OF CALIFORNIA, AS GRANTED TO ARTHUR MONEZ DE SA, ET AL, BY DOCUMENT RECORDED APRIL 8, 1976 IN <u>VOLUME 2026 OF OFFICIAL RECORDS, AT PAGE 909</u> THEREOF, RECORDS OF MERCED COUNTY, CALIFORNIA AND AS GRANTED TO ANTONE PEREIRA, ET AL, BY DOCUMENT RECORDED MAY 27, 1983 IN <u>VOLUME 2373 OF OFFICIAL RECORDS, AT PAGE 477</u> THEREOF, RECORDS OF SAID MERCED COUNTY, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A ONE-INCH IRON PIPE, WITH A PLASTIC PLUG STAMPED L.S. 4403, ACCEPTED AS A

5392769v1 | 101525-0001

POINT ON THE SOUTHERLY LINE OF SAID NORTHEAST ONE-QUARTER, WHICH BEARS NORTH 89° 57' 39" WEST, A DISTANCE OF 30.00 FEET FROM THE ONE-QUARTER SECTION CORNER ON THE EAST LINE OF SAID SECTION, SAID POINT OF BEGINNING BEING ALSO ON THE WESTERLY LINE OF MERCY SPRINGS ROAD, 60.00 FEET WIDE, THENCE NORTH 89° 57' 39" WEST, ALONG THE SOUTHERLY LINE OF SAID NORTHEAST ONE-QUARTER, A DISTANCE OF 2631.07 FEET TO THE ONE-HALF SECTION LINE, RUNNING NORTH AND SOUTH THROUGH SAID SECTION;

THENCE, NORTH 02° 07' 50" EAST, ALONG SAID ONE-HALF SECTION LINE, 2647.57 FEET TO THE SOUTHERLY LINE OF COPA DE ORA AVENUE, 60.00 FEET WIDE; THENCE, NORTH 89° 56' 02" EAST, ALONG THE SOUTHERLY LINE OF SAID AVENUE, A DISTANCE OF 872.23 FEET TO A ONE-INCH IRON PIPE, WITH A BRASS TAG STAMPED L.S. 2402, ACCEPTED FOR THE CENTERLINE OF A CONCRETE IRRIGATION DITCH;

THENCE, SOUTH 06° 07' 10" WEST, A DISTANCE OF 1025.58 FEET TO A ONE-INCH IRON PIPE, WITH A BRASS TAG STAMPED L.S. 2402, ACCEPTED FOR THE CENTERLINE OF A CONCRETE IRRIGATION DITCH, THENCE, SOUTH 06° 07' 10" WEST, CONTINUING ALONG SAID ACCEPTED LINE, A DISTANCE OF 99.78 FEET;

THENCE, SOUTH 27° 27' 54" EAST, ALONG AN ADJUSTED PROPERTY LINE, A DISTANCE OF 860.49 FEET TO THE POSITION OF A SCREW-ROD FOR A DITCH GATE-VALVE, AS SHOWN BY A "RECORD OF SURVEY FOR LAWRENCE L. BOWERS", VOLUME 33 PAGES 50 THROUGH 52, MERCED COUNTY RECORDS, THE ACTUAL SCREW-ROD BEARS NORTH 58° 49' 09" WEST, A DISTANCE OF 97.28 FEET;

THENCE, SOUTH 57° 48' 02" EAST, ALONG AN ADJUSTED PROPERTY LINE, A DISTANCE OF 688.86 FEET TO A ONE-INCH IRON PIPE, WITH A PLASTIC PLUG STAMPED L.S. 4403;

THENCE, SOUTH 89° 57' 43" EAST, ALONG AN ADJUSTED LINE, A DISTANCE OF 818.43 FEET TO THE WESTERLY LINE OF SAID MERCY SPRINGS ROAD;

THENCE, SOUTH 02° 33' 42" WEST, ALONG SAID WESTERLY LINE, A DISTANCE OF 398.87 FEET TO THE POINT OF BEGINNING.

PURSUANT TO THAT CERTAIN CERTIFICATE OF COMPLIANCE NO. 01045, RECORDED NOVEMBER 19, 2001 IN VOLUME 4314 PAGE 983 AS DOCUMENT NO. 52402 OF OFFICIAL RECORDS.

PARCEL 21: APN: 033-200-13s (Fresno County)

PARCEL 1 OF PARCEL MAP 99-03, IN THE CITY OF SAN JOAQUIN, COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE MAP THEREOF RECORDED IN BOOK 61, PAGES 3 AND 4 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATE THEREIN AND THEREUNDER, TOGETHER WITH ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON AS RESERVED BY PETER G. RUSCONI IN DEED RECORDED JUNE 2, 1971, INSTRUMENT NO. 43153, IN BOOK 5900, PAGE 328, OFFICIAL RECORDS.

5392769v1 | 101525-0001

**PARCEL 22:** APN: 033-200-14s (Fresno County)

PARCEL 2 OF PARCEL MAP 99-03, IN THE CITY OF SAN JOAQUIN, COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE MAP THEREOF RECORDED IN BOOK 61, PAGES 3 AND 4 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATE THEREIN AND THEREUNDER, TOGETHER WITH ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON AS RESERVED BY PETER G. RUSCONI IN DEED RECORDED JUNE 2, 1971, INSTRUMENT NO. 43153, IN BOOK 5900, PAGE 328, OFFICIAL RECORDS.

**PARCEL 23:** APN: 033-200-03s (Fresno County)

PARCEL 3 OF PARCEL MAP NO. 84-01, IN THE CITY OF SAN JOAQUIN, COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF RECORDED IN BOOK 42, PAGE 79 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATE THEREIN AND THEREUNDER, TOGETHER WITH ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON AS RESERVED BY PETER G. RUSCONI IN DEED RECORDED JUNE 2, 1971, INSTRUMENT NO. 43153, IN BOOK 5900, PAGE 328, OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM AN UNDIVIDED 1/2 OF GRANTOR'S INTEREST IN AND TO ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES LYING BENEATH A DEPTH OF 600 FEET OF SAID PROPERTY, WHICH SHALL BE WITHOUT THE RIGHT OF SURFACE ENTRY FROM AND/OR TO THE SUBJECT PROPERTY, AS RESERVED BY DON GRAGNANI AND IRENE GRAGNANI, HUSBAND AND WIFE, IN DEED RECORDED OCTOBER 23, 1985, INSTRUMENT NO. 850107491, OFFICIAL RECORDS.

**PARCEL 24:** APN: 033-200-04s (Fresno County)

PARCEL 1 OF PARCEL MAP NO. 90-01, IN THE CITY OF SAN JOAQUIN, COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF RECORDED IN BOOK 50, PAGE 89 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ALL OIL, GAS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATE THEREIN AND THEREUNDER, TOGETHER WITH ALL EASEMENTS AND RIGHTS NECESSARY OR CONVENIENT FOR THE PRODUCTION, STORAGE AND TRANSPORTATION THEREOF AND THE EXPLORATION AND TESTING OF THE SAID REAL PROPERTY, AND ALSO THE RIGHT TO DRILL FOR, PRODUCE AND USE WATER FROM SAID REAL PROPERTY IN CONNECTION WITH DRILLING OR MINING OPERATIONS THEREON AS

5392769v1 | 101525-0001

RESERVED BY PETER G. RUSCONI IN DEED RECORDED JUNE 2, 1971, <u>INSTRUMENT NO. 43153</u>, IN <u>BOOK 5900, PAGE 328, OFFICIAL RECORDS</u>.

ALSO EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ANY OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND, AS RESERVED BY DON GRAGNANI AND IRENE GRAGNANI IN DEED RECORDED SEPTEMBER 28, 1990, <u>INSTRUMENT NO. 900117867, OFFICIAL RECORDS</u>.

<u>PARCEL 25:</u> APN: 075-020-38s (portion of)  (Fresno County)

ALL THAT PORTION OF THE SOUTHEAST QUARTER OF SECTION 4, TOWNSHIP 20 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA IN THE  COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, LYING EAST OF THE CENTERLINE OF ARROYO PASEJERO CREEK.

EXCEPTING THEREFROM ONE-HALF OF ALL OIL AND MINERAL RIGHTS AS RESERVED IN THE DEED FROM EDITH A. ELLIS, AS ADMINISTRATIVE OF THE ESTATE OF THOMAS J. ARLIN, DECEASED, TO GIFFEN, INC., A CORPORATION, DATED JANUARY 31, 1937, RECORDED MARCH 20, 1957, IN <u>BOOK 2505, PAGE 13</u>, AS DOCUMENT NO. 159353, OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ALL OF GRANTOR'S RIGHT, TITLE AND INTEREST IN AND TO ALL OIL, GAS AND MINERALS, AS RESERVED IN THE DEED FROM GIFFEN, INC. TO WAYMON E. WATTS, AS TRUSTEE OF THE ERIC TARENCE METZLER TRUST, ET AL, RECORDED NOVEMBER 22, 1974, IN BOOK 6730, PAGE 871, AS <u>DOCUMENT NO. 87691, OFFICIAL RECORDS</u>

<u>PARCEL 26:</u> APN: 075-020-38s (portion of)  (Fresno County)

ALL THAT PORTION OF THE SOUTHWEST QUARTER OF SECTION 4, TOWNSHIP 20 SOUTH, RANGE 17 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA IN THE COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, LYING EAST OF THE CENTERLINE OF ARROYO PASEJERO CREEK.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND ALL MINERALS (INCLUDING THEREIN, OIL, GAS AND OTHER HYDROCARBON SUBSTANCES) IN OR UNDER SAID LAND, AS RESERVED IN THE DEED DATED AUGUST 21, 1959, FROM FRANCES M. HOFER AS EXECUTOR OF THE LAST WILL OF PAUL B. HOFER, DECEASED, TO GIFFEN, INC., A CALIFORNIA CORPORATION, RECORDED AUGUST 25, 1959 IN <u>BOOK 4265, PAGE 18 OF OFFICIAL RECORDS</u>, DOCUMENT NO. 59230.

ALSO EXCEPTING THEREFROM ALL OF GRANTOR'S RIGHT, TITLE AND INTEREST IN AND TO ALL OIL, GAS AND MINERALS, AS RESERVED IN THE DEED FROM GIFFEN, INC. TO WAYMON E. WATTS, AS TRUSTEE OF THE ERIC TARENCE METZLER TRUST, ET AL, RECORDED NOVEMBER 22, 1974, IN BOOK 6370, PAGE 871, AS <u>DOCUMENT NO. 87691, OFFICIAL RECORDS</u>.


**<u>ADDITIONAL PARCELS 27 THROUGH 66, ADDED TO PRELIM-C:</u>**

**<u>PARCEL 27: FRESNO COUNTY APN: 085-090-04:</u>**

5392769v1 | 101525-0001

The Northwest quarter of the Southeast quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

**PARCEL 28A: FRESNO COUNTY APN: 085-090-26s (PORTION OF):**
The North half of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, a one-half interest in and to all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder TOGETHER WITH, all easements and rights necessary or convenient for the production, storage and transportation thereof and exploration and testing of the said real property and also the right to drill for, produce and use water from the said real property in connection with drilling or mining operations thereon, as reserved by Richard P. Heiser, as his separate property, in the Deed recorded March 7, 1952, in Book 3134, Page 320 of Official Records, as Document No. 12710.

**PARCEL 28B: FRESNO COUNTY APN: 085-090-26s (PORTION OF):**
The Southwest quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas and mineral rights within or underlying said property, as excepted in the Deed executed by Leona H. Todd, recorded June 13, 1952, in Book 3177, Page 194 of Official Records, as Document NO. 31391, in which said Grantor agrees not to drill a well or carry on any operations for the production of oil or gas, etc., from said real property and in the event Grantor makes a lease for that purpose, such lease shall contain a proper provision protecting the owner of the surface rights as to any damages resulting from operations under said lease, which damages shall be paid by the lessee under such lease; nor will grantor consent to a the discharge of any explosives upon said real property without the consent of the owner of the surface. The foregoing provisions are binding upon my heirs, successors and assigns.

**PARCEL 29: FRESNO COUNTY APN: 085-090-90s:**
The North half of the Northwest quarter of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

EXCEPTING THEREFROM, all of the mineral and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the herein above described property or that may be produced therefrom including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Pages 25 thru 28 of Official Records, as Document No. 104217.

5392769v1 | 101525-0001

**PARCEL 29A: FRESNO COUNTY APN: 085-090-26s (PORTION OF):**
A non-exclusive private road easement, over the North 60.00 feet of the Northeast quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

**PARCEL 30: FRESNO COUNTY APN: 085-090-92s:**
The South half of the Northwest quarter of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

EXCEPTING THEREFROM, all of the mineral and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the herein above described property or that may be produced therefrom including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Pages 25 thru 28 of Official Records, as Document No. 104217.

**PARCEL 30A: FRESNO COUNTY APN: 085-090-26s (PORTION OF):**
A non-exclusive private road easement, over the North 60.00 feet of the Northeast quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

**PARCEL 30B: FRESNO COUNTY APN: 085-090-90s, 91s, 92s, 93s, 94s, 95s, 96s & 97s (PORTION OF):**
A non-exclusive private road easement, over the North 60.00 feet of the West half of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof; and a strip of land being 60.00 feet in width, lying equally on each side of the East line of the West half of said Section 13, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

**PARCEL 31: FRESNO COUNTY APN: 085-090-94s:**
The North half of the Southwest quarter of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

EXCEPTING THEREFROM, all of the mineral and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the herein above described property or that may be produced therefrom including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products

5392769v1 | 101525-0001

derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Pages 25 thru 28 of Official Records, as Document No. 104217.

**PARCEL 31A: FRESNO COUNTY APN: 085-090-26s (PORTION OF):**
A non-exclusive private road easement, over the North 60.00 feet of the Northeast quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

**PARCEL 31B: FRESNO COUNTY APN: 085-090-90s, 91s, 92s, 93s, 94s, 95s, 96s & 97s (PORTION OF):**
A non-exclusive private road easement, over the North 60.00 feet of the West half of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof; and a strip of land being 60.00 feet in width, lying equally on each side of the East line of the West half of said Section 13, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

**PARCEL 32: FRESNO COUNTY APN: 085-090-96s:**
The South half of the Southwest quarter of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

EXCEPTING THEREFROM, the South 175 feet of the West 220 feet of said Section 13, as conveyed to Westlands Water District, in the Deed recorded February 18, 1977, in Book 6743, Pages 213 thru 223 of Official Records, as Document No. 16643.

ALSO EXCEPTING THEREFROM, all of the mineral and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the herein above described property or that may be produced therefrom including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Pages 25 thru 28 of Official Records, as Document No. 104217.

**PARCEL 32A: FRESNO COUNTY APN: 085-090-26s (PORTION OF):**
A non-exclusive private road easement, over the North 60.00 feet of the Northeast quarter of Section 14, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, according to the Certificate of Waiver of Parcel

Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.

**PARCEL 32B: FRESNO COUNTY APN: 085-090-90s, 91s, 92s, 93s, 94s, 95s, 96s & 97s (PORTION OF):**
A non-exclusive private road easement, over the North 60.00 feet of the West half of Section 13, Township 21 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof; and a strip of land being 60.00 feet in width, lying equally on each side of the East line of the West half of said Section 13, according to the Certificate of Waiver of Parcel Map No. 2011-13, recorded August 17, 2012, as Document No. 2012-0115401, of Official Records.


**PARCEL 33: FRESNO COUNTY APN: 027-050-01:**
The North half of the West half of the Northwest quarter of Fractional Section 3, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.


**PARCEL 34: FRESNO COUNTY APN: 027-050-02s:**
The Fractional Northeast quarter of the Northwest quarter of the Fractional Section 3, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, one-half of all oil, gas and other minerals as heretofore reserved or conveyed of record, as stated in the following Deed; and
ALSO EXCEPTING THEREFROM, all remaining oil, gas and other minerals not previously reserved of record, as reserved by Edith E. Leslie and Barbara J. Dixson, in the Deed recorded May 11, 1983, as Document No. 83040881, of Official Records.


**PARCEL 35: FRESNO COUNTY APN: 027-050-07:**
The North half of the South half of the West half of the Northwest quarter of Fractional Section 3, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.


**PARCEL 36: FRESNO COUNTY APN: 027-050-11s:**
The Southeast quarter of Fractional Section 3, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided one-half interest in and to all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder, as reserved y Maybelle C. Beckett, a single woman, and Retha B. Hopwood, aka Retha Hopwood, a widow, in the Deed recorded September 6, 1973, in Book 6210, Page 102 of Official Records as Document No. 81853.


**PARCEL 37: FRESNO COUNTY APN: 017-070-17:**

5392769v1 | 101525-0001

The Southwest quarter of Section 33, Township 14 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.


**PARCEL 38: FRESNO COUNTY APN: 033-020-73s:**
The North 400.00 feet of the East 400.00 feet of Lot 297 of Valley Garden Farms, Subdivision-A, in the unincorporated area of the County of Fresno, State of California, according to map thereof recorded June 12, 1915, in Book 7, Pages 76 to 79 of Plats, in the office of the County Recorder of said County.

EXCEPTING THEREFROM, an undivided one-half interest in and to all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder, TOGETHER WITH, all easements and rights necessary or convenient for the production, storage and transportation thereof and the exploration and testing of the said real property, and also the right to drill for, produce and use water from the said real property in connection with drilling or mining operations thereon, as reserved by Peter G. Rusconi, also known as Peter Rusconi, who acquired title as a single man, in the Deed recorded June 2, 1971, in Book 5900, Page 328 of Official Records, as Document No. 43153.


**PARCEL 39: FRESNO COUNTY APN: 033-020-74s:**
Lot 297 and Lot 304 of Valley Garden Farms, Subdivision-A, in the unincorporated area of the County of Fresno, State of California, according to map thereof recorded June 12, 1915, in Book 7, Pages 76 to 79 of Plats, in the office of the County Recorder of said County.

EXCEPTING FROM, Lot 297, the North 400.00 feet of the East 400.00 feet, as conveyed to the City of San Joaquin, in the Deed recorded December 6, 2005, as Document No. 2005-0285097, of Official Records.

ALSO EXCEPTING THEREFROM, an undivided one-half interest in and to all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder, TOGETHER WITH, all easements and rights necessary or convenient for the production, storage and transportation thereof and the exploration and testing of the said real property, and also the right to drill for, produce and use water from the said real property in connection with drilling or mining operations thereon, as reserved by Peter G. Rusconi, also known as Peter Rusconi, who acquired title as a single man, in the Deed recorded June 2, 1971, in Book 5900, Page 328 of Official Records, as Document No. 43153.


**PARCEL 40: FRESNO COUNTY APN: 020-200-01:**
The Northwest quarter of the Northwest quarter of the Southwest quarter of Section 29, Township 4 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.


**PARCEL 41: FRESNO COUNTY APN: 028-041-01:**
Lots 1 and 2 as shown on the Map of Subdivision No. 7 Tranquillity Colony (map shows 2-LL's), in Section 2, Township 15 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the map thereof recorded August 4, 1910, in Book 5, Page 50 of Record of Surveys, in the Office of the County Recorder of said County.

**PARCEL 42: FRESNO COUNTY APN: 028-041-02:**

Lots 4 and 5 as shown on the Map of Subdivision No. 3 Tranquillity Colony (map shows 2-LL's), in Section 1, Township 15 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area, County of Fresno, State of California, according to the Map thereof recorded April 18, 1908, in Book 4, Page 24, of Record of Surveys, in the Office of the County Recorder of said County.

**PARCEL 43: MADERA COUNTY APN: 041-190-006:**

All that portion of Section 21, Township 12 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, described as follows:

BEGINNING, on the East Section line of Section 21, Township l12 South, Range 14 East, Mount Diablo Base and Meridian;
Thence, North 0° 01' West 790.85 feet from the Southeast corner;
Thence, South 87° 02' West 1344.83 feet;
Thence, South 0° 01' East 709.02 feet to the South Section line;
Thence, North 89° 29' West 2528.32 feet to the East bank of the San Joaquin River Branch of Colombia Canal;
Thence, North 25° 43-1/2' West 352 feet;
Thence, North 13° 42' West 233.50 feet to the center line of a 60-foot road;
Thence, North 87° 02' East 1656.87 feet;
Thence, North 0° 01' West 2322.59 feet to a point in the centerline of a ditch drain;
Thence, Northwest along said centerline to the North Section line;
Thence, South 88° 53' East 2,861.20 feet, more or less, to the Southwest bank of Columbia Canal;
Thence, South 27° 51-½' East 64.04 feet;
Thence, South 46° 19-½' East 215.50 feet;
Thence, South 73° 19-½' East 130 feet;
Thence, North 76° 08-½' East 170 feet;
Thence, North 77° 45-½' East 209.83 feet;
Thence, South 68° 32 ½' East 49.04 feet;
Thence, South 11° 10-½' East 387.10 feet to the East Section line;
Thence, South 0° 01' East 155.02 feet;
Thence, South 0° 01' East 3776.98 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM, that portion described as BEGINNING at a point on the East line of Section 21, Township 12 South, Range 14 East, Mount Diablo Base and Meridian, according to the Official Plat thereof, which bears North 0° 01' West 790.85 feet from the Southeast corner;
Thence, along the East line of said Section 21, and the centerline of a 60-foot County Road;
Thence, North 0° 01' West 350.00 feet;
Thence, South 87° 02' West 350.00 feet;
Thence, South 0° 01' East 350.00 feet;
Thence, along the centerline of a 60-foot road easement, North 87° 02' East 350.00 feet to the POINT OF BEGINNING.

5392769v1 | 101525-0001

ALSO EXCEPTING THEREFROM, an undivided sixty percent (60%) of all oil, gas and mineral rights in and to said land, as reserved by Chauncey Yip, et al in the Deed recorded December 20, 1990, as <u>Document No. 90-32420 of Official Records</u>.


**PARCEL 44: MADERA COUNTY APN: 042-010-003:**
All that portion of Section 28, Township 12 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, described as follows:

BEGINNING, North 89° 26' West 1343.28 feet from the Northeast corner of said Section 28;
Thence, South 1362,73 feet;
Thence, South 89° 35' West 91.06 feet;
Thence, South 46° 17' East 28.74 feet;
Thence, South 89° 35' West 2043.73 feet to the East bank of the Columbia Canal;
Thence, North 26° 07' West 23.13 feet;
Thence, North 11° 21' West 939.80 feet;
Thence, North 22° 35' West 423.49 feet;
Thence, North 25° 40-½' West 78.43 feet to the North line of Section 28;
Thence, South 89° 26' East 2528.32 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM, an undivided sixty percent (60%) of all oil, gas and mineral rights in and to said land, as reserved by Chauncey Yip, et al in the Deed recorded December 20, 1990, as <u>Document No. 90-32420 of Official Records</u>.


**PARCEL 45: KERN COUNTY APN: 059-160-42:**
Parcel 1 of Parcel Map Waiver No. 1212, according to the Certificate of Compliance, recorded March 22, 1990, in <u>Book 6361, Page 540 of Official Records</u>, as Document No. 39852, described as follows:

The Northeast quarter of the Northeast quarter of Section 32, Township 26 South, Range 23 East, Mount Diablo Meridian, in the unincorporated area of the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, 75% of all minerals, oil, gas and hydrocarbons now or at any time hereafter situated within said land, TOGETHER WITH, the right to explore for, mine, drill, extract, and take such minerals, oil, gas, and hydrocarbons from said lands and to use the surface and sub-surface of said lands for such exploration, drilling and extraction, and for such derricks, machinery, structures, sumps, dumps, roads, pipe, tools, tanks, pipe lines, power lines, and plants, as in the opinion of the grantors, its successors or assigns, may be necessary or convenient at any time for the exploration for, mining, drilling, extraction, removal, storage, transportation, processing, and sale of such minerals within or removed from said lands, subject to the terms and conditions contained therein, all as excepted and reserved by Semi-Tropic Land & Water Co., a Corporation, in the Deed recorded July 2, 1947 in <u>Book 1413, Page 402 of Official Records</u>, as Document No. 24960.

ALSO EXCEPTING THEREFROM, the remainder of all oil, gas and other hydrocarbon substances and minerals within or underlying said land as excepted in Deed from Lila E. Gill, a widow, and Lila Eliza Gill, as Trustee, to Obie Hankins and Virginia Hankins, husband and wife, an undivided 1/2 interest, and J. G. Garrison and Juanita M. Garrison, husband and wife, an undivided 1/2 interest, in the Deed recorded January 13, 1967 in Book 4010

5392769v1 | 101525-0001

Page <u>809 of Official Records</u>, as Document No. 01751.


**<u>PARCEL 46: KERN COUNTY APN: 059-160-43:</u>**
Parcel 2 of Parcel Map Waiver No. 1212, according to the Certificate of Compliance, recorded March 22, 1990, in <u>Book 6361, Page 540 of Official Records</u>, as Document No. 39852, described as follows:

The Southeast quarter of the Northeast quarter of Section 32, Township 26 South, Range 23 East, Mount Diablo Meridian, in the unincorporated area of the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the South thirty feet thereof.

ALSO EXCEPTING THEREFROM, 75% of all minerals, oil, gas and hydrocarbons now or at any time hereafter situated within said land, TOGETHER WITH, the right to explore for, mine, drill, extract, and take such minerals, oil, gas, and hydrocarbons from said lands and to use the surface and sub-surface of said lands for such exploration, drilling and extraction, and for such derricks, machinery, structures, sumps, dumps, roads, pipe, tools, tanks, pipe lines, power lines, and plants, as in the opinion of the grantors, its successors or assigns, may be necessary or convenient at any time for the exploration for, mining, drilling, extraction, removal, storage, transportation, processing, and sale of such minerals within or removed from said lands, subject to the terms and conditions contained therein, all as excepted and reserved by Semi-Tropic Land & Water Co., a Corporation, in the Deed recorded July 2, 1947 in <u>Book 1413, Page 402 of Official Records</u>, as Document No. 24960.

ALSO EXCEPTING THEREFROM, the remainder of all oil, gas and other hydrocarbon substances and minerals within or underlying said land as excepted in Deed from Lila E. Gill, a widow, and Lila Eliza Gill, as Trustee, to Obie Hankins and Virginia Hankins, husband and wife, an undivided 1/2 interest, and J. G. Garrison and Juanita M. Garrison, husband and wife, an undivided 1/2 interest, in the Deed recorded January 13, 1967 in <u>Book 4010 Page 809 of Official Records</u>, as Document No. 01751.


**<u>PARCEL 47: KERN COUNTY APN: 059-160-44:</u>**
Parcel 3 of Parcel Map Waiver No. 1212, according to the Certificate of Compliance, recorded March 22, 1990, in <u>Book 6361, Page 540 of Official Records</u>, as Document No. 39852, described as follows:

The East half of Section 32, Township 26 South, Range 23 East, Mount Diablo Meridian, in the unincorporated area, County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the Northeast quarter of the Northeast quarter of said Section 32; and
The Southeast quarter of the Northeast quarter of said Section 32.

ALSO EXCEPTING THEREFROM, the following described parcel:

BEGINNING, at the Southeast corner of said Section 32;
Thence, North along the East line of said Section 32, 305 feet;
Thence, West parallel to the South line of said Section 32, 530 feet;
Thence, South parallel with the East line of said Section 32, 305 feet to the South line of said Section 32;
Thence, East along the South line, 530 feet to the POINT OF BEGINNING.

5392769v1 | 101525-0001

ALSO EXCEPTING THEREFROM, 75% of all minerals, oil, gas and hydrocarbons now or at any time hereafter situated within said land, TOGETHER WITH, the right to explore for, mine, drill, extract, and take such minerals, oil, gas, and hydrocarbons from said lands and to use the surface and sub-surface of said lands for such exploration, drilling and extraction, and for such derricks, machinery, structures, sumps, dumps, roads, pipe, tools, tanks, pipe lines, power lines, and plants, as in the opinion of the grantors, its successors or assigns, may be necessary or convenient at any time for the exploration for, mining, drilling, extraction, removal, storage, transportation, processing, and sale of such minerals within or removed from said lands, subject to the terms and conditions contained therein, all as excepted and reserved by Semi-Tropic Land & Water Co., a Corporation, in the Deed recorded July 2, 1947 in Book 1413, Page 402 of Official Records, as Document No. 24960.

ALSO EXCEPTING THEREFROM, the remainder of all oil, gas and other hydrocarbon substances and minerals within or underlying said land as excepted in Deed from Lila E. Gill, a widow, and Lila Eliza Gill, as Trustee, to Obie Hankins and Virginia Hankins, husband and wife, an undivided 1/2 interest, and J. G. Garrison and Juanita M. Garrison, husband and wife, an undivided 1/2 interest, in the Deed recorded January 13, 1967 in Book 4010 Page 809 of Official Records, as Document No. 01751.

**PARCEL 48: KERN COUNTY APN: 059-180-01:**
The West 20 acres of the Northeast quarter of the Southwest quarter;
The North 10 acres of the Northwest quarter of the Southwest quarter; and
The Northwest quarter of the Southeast quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM all oil, gas, hydrocarbon substances and minerals in and under said land as reserved by Francis I. Sanger and Helen Z. Sanger, husband and wife, in the Deed recorded April 20, 1953 in Book 2071 Page 213 of Official Records, as Document No. 18814.

**PARCEL 49: KERN COUNTY APN: 059-180-03:**
The North half of the Southeast quarter of the Northeast quarter of the Southwest quarter;
The South half of the South half of the Northeast quarter of the Northeast quarter of the Southwest quarter; and
The North half of the Southeast quarter of the Northeast quarter of the Northeast quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

**PARCEL 50: KERN COUNTY APN: 059-180-11:**
The Northeast quarter of the Southeast quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

**PARCEL 51: KERN COUNTY APN: 059-180-12:**
The South half of the Southeast quarter of the Northeast quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas, hydrocarbon substances and minerals within or underlying said land, as

reserved by Katherine B. Belshaw, a widow, in the Deed recorded April 23, 1964, in <u>Book 3718 Page 82 of Official Records</u>, as Document No. 26638.

**PARCEL 52: KERN COUNTY APN: 059-180-13:**
The South 35 acres of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas, hydrocarbon substances and minerals within or underlying said land as reserved by G. A. Holtz, et ux, et al, in the Deed recorded March 20, 1964 in <u>Book 3706 Page 315 of Official Records</u>, as Document No. 18988.

**PARCEL 53: KERN COUNTY APN: 059-180-14:**
The North 5 acres of the Southwest quarter of the Southwest quarter and the South 30 acres of the Northwest quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas, hydrocarbon substances and minerals in and under said land as excepted in the Deed dated December 19, 1963 from J. T. Nighbert to Katherine Irene Gill, et al, recorded December 31, 1963 in <u>Book 3676 Page 962 of Official Records</u>, as Document No. 80914.

**PARCEL 54A: KERN COUNTY APN: 059-180-27 (PORTION OF):**
The South half of the South half of the Southeast quarter, and
The South half of the Southeast quarter of the Southwest quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM 75% of all minerals, oil, gas and hydrocarbons now or at any time hereafter situated within said land, TOGETHER WITH, the right to explore for, mine, drill, extract, and take such minerals, oil, gas, and hydrocarbons from said lands and to use the surface and sub-surface of said lands for such exploration, drilling and extraction, and for such derricks, machinery, structures, sumps, dumps, roads, pipe, tools, tanks, pipe lines, power lines, and plants, as in the opinion of the grantors, its successors or assigns, may be necessary or convenient at any time for the exploration for, mining, drilling, extraction, removal, storage, transportation, processing, and sale of such minerals within or removed from said lands, subject to the terms and conditions contained therein, all as excepted and reserved by Semi-Tropic Land & Water Co., a Corporation, in the Deed recorded July 2, 1947 in <u>Book 1413, Page 402 of Official Records</u>, as Document No. 24960.

ALSO EXCEPTING THEREFROM, the remainder of all oil, gas and other hydrocarbon substances and minerals within or underlying said land as excepted in Deed from Lila E. Gill, a widow, and Lila Eliza Gill, as Trustee, to Obie Hankins and Virginia Hankins, husband and wife, an undivided 1/2 interest, and J. G. Garrison and Juanita M. Garrison, husband and wife, an undivided 1/2 interest, in the Deed recorded January 13, 1967 in <u>Book 4010 Page 809 of Official Records</u>, as Document No. 01751.

**PARCEL 54B: KERN COUNTY APN: 059-180-27 (PORTION OF):**
The North half of the Southeast quarter of the Southeast quarter and

5392769v1 | 101525-0001

The South half of the Northeast quarter of the Southeast quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas and other hydrocarbon substances deposited in, lying under, or flowing through said lands and all metals and minerals therein and thereon, TOGETHER WITH, the right to enter upon said lands and to drill for, produce, extract, take and remove said substances from said lands, as reserved by Gladys M. Leake, a married woman, in the Deed recorded September 5, 1941 in <u>Book 1050 Page 37 of Official Records</u>, as Document No. 23280.

**<u>PARCEL 54C: KERN COUNTY APN: 059-180-27 (PORTION OF):</u>**
The North half of the Northeast quarter of the Southeast quarter of Section 29, Township 26 South, Range 23 East, Mount Diablo Base and Meridian, in the County of Kern, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas, minerals and other hydrocarbon substances within or underlying said land as excepted in the Deed from Lila E. Gill, a widow, and Lila Eliza Gill, as Trustee, recorded January 13, 1967 in <u>Book 4010 Page 809 of Official Records</u>, as Document No. 01751.

**<u>PARCEL 55 KINGS COUNTY APN: 004-100-004; 004-070-026; &</u>**
**<u>APN 004-100-055 (PORTION) & 004-070-079 (PORTION):</u>**
All of Lot 1 of Section 9;
All of Lot 32 of Section 4;
That portion of Lot 3 of Section 9; and
That portion of Lot 31 of Section 4, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in <u>Book 2, Page 97 of Record of Surveys</u>, Fresno County Records, described as follows:

BEGINNING, at a point in the North line of Section 9, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, from which the Northeast corner of said Section bears South 89° 48' East 1320 feet;
Thence, North 655 feet along the East line of Lot 31;
Thence, North 52° 30' West 190 feet;
Thence, South 76° 30' West 590 feet;
Thence, South 42° 30' West 115 feet;
Thence, South 13° 45' West 340 feet;
Thence, South 42° 20' West 216 feet;
Thence, South 71° 14' West 181 feet to a point in the South line of Section 4, from which the point of beginning bears South 89° 48' East 1200 feet;
Thence, South 59° 47' West 393.7 feet;
Thence, South 18° 27' West 176.2 feet;
Thence, South 83° 45' East 250 feet;
Thence, South 72° 30' East 400 feet;
Thence, South 66° 05' East 190 feet;
Thence, South 76° 50' East 170 feet;
Thence, North 86° 40' East 250 feet;
Thence, North 76° 00' East 170 feet;
Thence, North 50° 25' East 120 feet;

5392769v1 | 101525-0001

Thence, North 22° 30' East 316 feet;
Thence, North 44° 30' East 160 feet;
Thence, North 63° 30' East 130 feet;
Thence, North 80° 35' East 170 feet to a point in the north line of section 9;
Thence, North 89° 48' West 397 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM, a strip of land 30 feet wide along the margin of Kings River or any other defined water course running through or along the boundaries of said land and along all such margins.

ALSO EXCEPTING THEREFROM, any portion of the described property within the natural bed of Kings River below the line of ordinary high water.

ALSO EXCEPTING THEREFROM, an undivided one-half of all oil, hydrocarbon substances and minerals of all kinds, in or upon said land, TOGETHER WITH, the right to enter upon said premises to prospect for, drill for, capture and remove an undivided one-half of oil, gas, hydrocarbon substances and other minerals found upon the surface or under the surface of said land, with the right to build and maintain such drilling riggs, pipelines, sumpholes, power lines and buildings as may be necessary for mining for, drilling for, and capturing any of said substances hereinbefore mentioned and removing same from said premises, TOGETHER WITH, the right of ingress and egress at all times for said purposes, as reserved by David H. Moore and Ruth Moore, husband and wife, in the Deed recorded August 22, 1945 in Book 331, Page 413 of Official Records, as Document No. 4991.

**PARCEL 56 KINGS COUNTY APN: 004-070-079 (PORTION):**
Lot 30 in Section 3, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records.

EXCEPTING THEREFROM, a strip of land 30 feet in width along the margin of Kings River or any other defined water course running through or along the boundaries of said lands and along all such margins as reserved by Security First National Bank of Los Angeles, in the Deed recorded December 1, 1941 in Book 257, Page 445 of Official Records, as Document No. 7645.

ALSO EXCEPTING THEREFROM, any portion of the described property within the natural bed of the Kings River below the line of ordinary high water.

**PARCEL 57 KINGS COUNTY APN: 004-100-055 (PORTION):**
Lot 6 of Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records.

EXCEPTING THEREFROM, a strip of land 30 feet in width along the margin of Kings River or any other defined water course running through or along the boundaries of said lands and along all such margins as reserved by Security First National Bank of Los Angeles, in the Deed recorded December 1, 1941 in Book 257, Page 445 of Official Records, as Document No. 7645.

NOTE:  the map hereinabove referred to recites:

"all measurements are to centers of roads and all are figured to road centers."

ALSO EXCEPTING THEREFROM, any portion of the described property line within the natural bed of the Kings River below the line of ordinary high mark.


**PARCEL 58 KINGS COUNTY APN: 004-100-023:**
All that portion of Lots 2 and 3 in Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records, lying North of the following described line:

BEGINNING, at the Northeast corner of said Section 10;
Thence, South along the East line of said Section 10, 1496.96 feet to the TRUE POINT OF BEGINNING;
Thence, North 89° 35' 52" West 2640 feet, more or less, to the East line of Lot 9, In Said Section 10.

EXCEPTING FROM, all of the property hereinabove described all those portions thereof in the bed of the Kings River and also excepting from all of the property hereinabove described all those portions thereof included in a strip of land of variable width lying between the Outer Line of Kings River and the Meandered Boundary line of Lots as per said Map of Laguna de Tache Grant running downstream through said Section 10, and also a strip of land of variable width lying between the Meandered Boundary line of Lots on either side of Kings River as per said Map of Laguna de Tache Grant running downstream through said Section 10, all as described in the Deed to Tulare Lake Basin Water Storage District recorded August 6, 1928 in Book 34 at Page 416 of Official Records.

ALSO EXCEPTING THEREFROM, an undivided one-half interest of all oil, gas, other hydrocarbons and minerals in and under said real property. The Grantors shall have not right to drill any wells or take any other measures for the production of oil, gas, or other hydrocarbons or minerals on any of said property, subject to the terms and conditions contained therein, all as reserved by Oscar E. Goodreau and Margaret M. Goodreau, husband and wife, and Bernard Goodreau and Jessie Goodreau, husband and wife, in the Deed recorded January 23, 1951 in Book 482, Page 515 of Official Records, as Document No. 792.


**PARCEL 59 KINGS COUNTY APN: 004-100-022:**
Lots 3, 9 and 10 in Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records.

EXCEPTING THEREFROM, that portion of Lot 3 lying within the following described property:

All that portion of Lots 2 and 3 in Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records, lying north of the following described line:

BEGINNING, at the Northeast corner of said Section 10;
Thence, South along the East line of said Section 10, 1496.96 feet to the TRUE POINT OF BEGINNING;
Thence, North 89° 35' 52" West 2640 feet, more or less, to the East line of Lot 9, in said Section 10.

ALSO EXCEPTING THEREFROM, all of the property hereinabove described all those portions thereof in the bed of the Kings River and also excepting from all of the property hereinabove described all those portions thereof included in a strip of land of variable width lying between the Outer Line of Kings River and the Meandered Boundary line of Lots as per said Map of Laguna de Tache Grant running downstream through said Section 10,

5392769v1 | 101525-0001

and also a strip of land of variable width lying between the Meandered Boundary line of Lots on either side of Kings River as per said Map of Laguna de Tache Grant running downstream through said Section 10, all as described in the Deed to Tulare Lake Basin Water Storage District recorded August 6, 1928 in Book 34 at Page 416 of Official Records.

ALSO EXCEPTING THEREFROM, an undivided one-half interest of all oil, gas, other hydrocarbons and minerals in and under said real property. The Grantors shall have not right to drill any wells or take any other measures for the production of oil, gas, or other hydrocarbons or minerals on any of said property, subject to the terms and conditions contained therein, all as reserved by Oscar E. Goodreau and Margaret M. Goodreau, husband and wife, and Bernard Goodreau and Jessie Goodreau, husband and wife, in the Deed recorded January 23, 1951 in Book 482, Page 515 of Official Records, as Document No. 792.


**PARCEL 60 KINGS COUNTY APN: 004-100-039:**
All of Lots 5 and 7 in Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna De Tache Grant, recorded November 12, 1894 in Book 2, Page 97 of Record of Surveys, Fresno County Records.

EXCEPTING THEREFROM, all that portion of Lot 5 of Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, described as follows:

BEGINNING, at the Northeast corner of said Lot 5, as shown on the Map of Laguna De Tache Grant;
Thence, South 13° 35' West 131 feet;
Thence, South 71° 35' West 149.5 feet to the TRUE POINT OF BEGINNING;
Thence, along the Southeasterly line of said Lot, South 44° 35' West 208.7 feet;
Thence, North 45° 25' West 208.7 feet;
Thence, North 44° 35' East 208.7 feet;
Thence, South 45° 35' East 208.7 feet to the TRUE POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, any portion of the described property within the natural bed of the Kings River below the line of ordinary high water.

ALSO EXCEPTING THEREFROM, all that portion of Lot 5 of Section 10, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, as shown on the Map of Laguna De Tache Grant, described as follows:

BEGINNING, at the Northeast corner of said Lot 5;
Thence South 13° 35' West 131 feet;
Thence South 71° 35' West 149.5 feet;
Thence South 44° 35' West 208.7 feet to the TRUE POINT OF BEGINNING;
Thence South 44° 35' West 59 feet;
Thence South 83° 50' West 182.07 feet;
Thence North 45° 25' West 142.8 feet;
Thence North 44° 35' East 200 feet;
Thence South 44° 25' East 258 feet to the TRUE POINT OF BEGINNING.
(removes 004-100-038)

ALSO EXCEPTING THEREFROM, one-half of all oil, gas, minerals, mineral rights and other hydrocarbon substances within or underlying said land as excepted and reserved in the Deed Executed by Joe Fagundes, et al, recorded June 10, 1980 in Book 1177 at Page 466, of Official Records, as Document No. 6904.

**PARCEL 61 KINGS COUNTY APN: 004-171-078:**
Parcel 2, of Lot Line Adjustment No. 09-05, in the unincorporated area of the County of Kings, State of California according to the Parcel Map Waiver recorded August 25, 2009 as <u>Document No. 0915250, of Official Records</u>, described as follows:

Lot 1 in Section 16, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, according to Map of Laguna De Tache Grant, recorded November 12, 1894 in <u>Book 2, Page 98 of Record of Surveys</u>, Fresno County Records; that part of lot 2 in the aforesaid Section 16, lying South and east of the south fork of the island canal, described as follows:

BEGINNING, at the Southeast corner of Lot 2 in Section 16;
Thence, along the South line of said Lot, North 89° 48' West 480 feet to a point in the center of South Fork of the Island Canal;
Thence, North 30°42' East 450 feet;
Thence, North 29°15' East 242 feet;
Thence, North 34°49' East 130 feet;
Thence, South on the East line of said Lot 2 a distance of 666 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM, that portion conveyed by Deed to Island Reclamation District No. 776, described as follows:

BEGINNING, at a point 818.4 feet South of corner common to Section 9, 10, 15 and 16 in said Township and Range;
Thence, South 62° 53' West, 675 feet to the intersection with the North line of right of way of Island Reclamation District;
Thence, along said line South 75° 05', East, 368.3 feet to a point;
Thence, North 61° 30', East 278.5 feet to a point on the East line of said Section;
Thence, North along said line 269.1 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, that portion described as follows:

All that portion of the aforesaid Lot 1, lying Northerly and Westerly of the centerline of the South Fork Island Canal.

ALSO EXCEPTING THEREFROM, any portion of the described property within the natural bed of the Kings River below the line of ordinary high water.

ALSO EXCEPTING THEREFROM, a strip of land 30 feet in width along the margin of Kings River and any other defined water course running through or along the boundaries of said land, and along all such margins.

ALSO EXCEPTING THEREFROM, one-half of all oil, gas, minerals, mineral rights and other hydrocarbon substances within or underlying said property, as excepted and reserved in the Deed executed by Edward L. Hurlburt, recorded May 31, 1977 in <u>Book 1093, Page 812 of Official Records</u>, as Document No. 7092.

**PARCEL 62 KINGS COUNTY APN: 004-172-001:**
Lot 3 in Section 15, Township 18 South, Range 20 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to Map of Laguna de Tache Grant, recorded November 12, 1894 in <u>Book 2, Page 98 of Record of Surveys</u>, Fresno County Records.

5392769v1 | 101525-0001

EXCEPTING THEREFROM, that portion thereof described as follows:

BEGINNING, at a point 819.4 feet South of the Northwest corner of said Section 15;
Thence South 265.3 feet;
Thence North 53° 40' East 68.6 feet;
Thence North 21° East 320.3 feet;
Thence North 57° 25' East 130 feet;
Thence South 62° 53' West 314.90 feet to the POINT OF BEGINNING, as conveyed by Joe E. Costa, et al, to Island Reclamation District No. 776, in the Deed recorded In Book 199, Page 234 of Official Records.

ALSO EXCEPTING THEREFROM, any portion of the described property within the natural bed of the Kings River below the line of ordinary high water.

### PARCEL 63 KINGS COUNTY APN: 036-180-063:
Parcel 2, as shown on the Parcel Map recorded August 8, 2018, in Book 20, Page 90 of Parcel Maps, in the unincorporated area of the County of Kings, State of California, being a portion of the Southeast quarter of Section 31, Township 21 South, Range 18 East, Mount Diablo Base and Meridian, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil and gas, associated liquid and gaseous hydrocarbons, and all other minerals, whether hydrocarbon bearing or not, located on or under the Property. Aera expressly retains and reserves unto itself, and to Aera's successors and assigns, the right to use the Property for the purposes of:
(1) exploring, prospecting, conducting geophysical operations, drilling, operating, and producing oil and gas, associated liquid and gaseous hydrocarbons, and other minerals, whether contemporaneously produced with the oil and gas or not;
(2) laying pipelines and building tanks, communication lines, and other structures thereon, and maintaining such works to produce, save, take care of, treat, store, transport, and own such products obtained from and under the Property;
(3) constructing roads and bridges necessary for operations on the Property for the purposes contained in this subsection; and (4) full rights of ingress and egress to and from the Property for the purposes contained in this subsection. Aera, or Aera's successors and assigns, shall have the right to use as much of the Property as is reasonably necessary to carry out the purposes of this subsection. Aera, its successors and assigns, will lay pipelines in cultivated fields on the Property below plow depth. Aera, its successors and assigns, agrees that it will pay to Assignee, or Assignee's successors and assigns, or Assignee's tenant, as the case may be, reasonable damages caused by Aera's operations, or the operations of Aera's successors and assigns, to Assignee's livestock, crops, trees, existing fences, and other improvements upon the Property. Aera, its successors and assigns, shall hold Assignee harmless from all claims or liens of third parties by reason of any act or neglect on Aera's part, all as reserved by Area Energy LLC, A California Limited Liability Company, in the Document entitled "ASSIGNMENT AND CONVEYANCE" recorded April 12, 2002, as Instrument No. 0207620, of Official Records.

### PARCEL 64 STANISLAUS COUNTY PORTIONS OF APN: 057-026-008 & 009:
All that portion of Fractional Lot 6, which lies in the North half of the North half of the of the Southeast quarter of Section 8, Township 6 South, Range 9 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Stanislaus, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided one-half interest in all the minerals, mineral deposits, mineral oils, and natural gases of every kind and nature contained in or upon said lands, TOGETHER WITH, the right, in the

Grantors and their successors and Grantees, to prospect, mine and operate in and upon the said grounds for such minerals, mineral deposits, mineral oils, and natural gases in any and all miner like metacus deemed necessary in the judgment of Grantors or their agents or in the judgment of the successor of Grantors, for the property extraction of the said minerals and the removal of mineral deposits, mineral oils, and natural gases therefrom, all as reserved by G. L. Dutcher and Ethel Maud Dutcher, husband and wife, in the Deed recorded August 13, 1951, in Volume 1043, page 259 of Official Records, as Document No. 18503.

## PARCEL 65 STANISLAUS COUNTY PORTIONS OF APN: 057-026-008 & 009:

All that portion of Fractional Lot 6 which lies in the South half of the North half of the of the Southeast quarter of Section 8, Township 6 South, Range 9 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Stanislaus, State of California according to the Official Plat thereof;
and
All that portion of Swamp and Overflowed Land Survey Nos. 159 and 162, which lies in the South half of the Southeast quarter; and in the South half of the North half of the said Southeast quarter of Section 8, Township 6 South, Range 9 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Stanislaus, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided one-half interest in all the minerals, mineral deposits, mineral oils, and natural gases of every kind and nature contained in or upon said lands, TOGETHER WITH, the right, in the Grantors and their successors and Grantees, to prospect, mine and operate in and upon the said grounds for such minerals, mineral deposits, mineral oils, and natural gases in any and all minerlike metacus deemed necessary in the judgment of Grantors or their agents or in the judgment of the successor of Grantors, for the property extraction of the said minerals and the removal of mineral deposits, mineral oils, and natural gases therefrom, all as reserved by G. L. Dutcher and Ethel Maud Dutcher, husband and wife, in the Deed recorded August 13, 1951 in Volume 1043, page 259 of Official Records, as Document No. 18503.

ALSO EXCEPTING THEREFROM, any mobile home, trailer and/or manufactured home located thereon.

## PARCEL 66 STANISLAUS COUNTY PORTION OF APN: 057-026-008:

All that portion of Swamp and Overflowed Land Survey No. 162, which lies in the North half of the North half of the Southeast quarter of Section 8, Township 6 South, Range 9 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Stanislaus, State of California according to the Official Plat thereof.

5392769v1 | 101525-0001

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I, the undersigned, declare and certify as follows:

I am over the age of eighteen years, not a party to the within action and employed in the County of Los Angeles, State of California. I am employed in the office of Frandzel Robins Bloom & Csato, L.C., members of the Bar of the above-entitled Court, and I made the service referred to below at their direction. My business address is 1000 Wilshire Boulevard, Nineteenth Floor, Los Angeles, CA 90017-2427.

On June 1, 2025, I served a true copy of the foregoing DECLARATION OF JOHN C. COVINGTON IN SUPPORT OF MOTION TO CONFIRM THAT THE AUTOMATIC STAY DOES NOT APPLY PURSUANT TO 11 U.S.C. § 362(b)(3), OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY AND ANNULMENT OF THE STAY PURSUANT TO 11 U.S.C. § 362(d)(1), as follows:

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 1, 2025, at Long Beach, California.

*/s/ David T. Moore*
David T. Moore

Case: 25-50769   Doc# 30   Filed: 06/01/25   Entered: 06/01/25 20:57:47   Page 261 of 261
DECLARATION IN SUPPORT OF MOTION TO CONFIRM STAY IS INEFFECTIVE, OR, ALTERNATIVELY, FOR RELIEF FROM STAY