**KELLER BENVENUTTI KIM LLP**
TOBIAS S. KELLER (Cal. Bar No. 151445)
(tkeller@kbkllp.com)
JANE KIM (Cal. Bar No. 298192)
(jkim@kbkllp.com)
TRACI L. SHAFROTH (Cal. Bar No. 251673)
(tshafroth@kbkllp.com)
101 Montgomery Street, Suite 1950
San Francisco, California 94104
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

*Proposed Attorneys for Debtors and
Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re:<br>KW LAND COMPANY, LLC,[1]<br>    Debtor. | Case No. 25-50764 (MEH)<br>Chapter 11 |
| In re:<br>S3 GROUP, LLC,[2]<br>    Debtor. | Case No. 25-50765 (MEH)<br>Chapter 11<br>**DECLARATION OF LAKHVIR SRAN IN SUPPORT OF DEBTORS' JUNE 2, 2025 MOTIONS**<br>Date: June 5, 2025<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>    280 South First Street, Courtroom 11<br>    San Jose, California 95113-3099 |

---

[1] The last four digits of KW Land Company, LLC's tax identification number 8751. The address for service on that Debtor is P.O. Box 2428, Paso Robles, CA 93447.

[2] The last four digits of the Debtor's tax identification number 8605. The address for service on the Debtor is P.O. Box 401, Kerman, CA 93630.

I, Lakhvir Sran, hereby declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Manager of KW Land Company, LLC ("KW Land") and the Manager and a Member of S3 Group, LLC ("S3 Group"), each of which is a debtor and debtor in possession (a "Debtor" and, collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases").

2. I submit this declaration in support of the *Motion of Debtors Pursuant to 11 U.S.C. §§ 521(a) and 105(a) and Fed. R. Bankr. P. 1007(c) for Entry of an Order Extending Time to File Schedules of Assets and Liabilities and Statements of Financial Affairs* (the "Motion to Extend Time to File Statements and Schedules"), the *Motion of the Debtor Pursuant to 11 U.S.C. §§ 105(a) and 366 for Interim and Final Orders Establishing Adequate Assurance Procedures with Respect to the Debtor's Utility Providers* (the "Utilities Motion"), and the *Ex Parte Motion of Debtor Pursuant to B.L.R. 9006-1 Requesting Order Shortening Time for Hearing on Motions* (the "Motion to Shorten").[3] Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge; based upon information supplied to me by other members of the Debtors' management, employees, and professionals; learned from my review of relevant documents; or based upon my opinion based upon my experience and knowledge of the Debtors' operations and financial condition. If called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized by the Debtors to submit this declaration.

### *The Chapter 11 Cases*

3. On May 20, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California, thereby commencing the Chapter 11 Cases. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

//

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Supplemental Application.

4. The Debtors, along with their non-Debtor affiliates (collectively, the "Companies") are a vertically integrated farming operation based in Kerman, California, consisting of a total of twenty-three land owning entities, crop processing facilities, and sales and marketing entities, in addition to affiliated staffing companies. The Companies are in the business of farming and processing almonds and pistachio nuts, farming wine grapes, and bulk wine production. The Companies farm a total of approximately 7,000 acres of land, of which approximately 6,200 acres are planted with vineyards or orchards.

5. The Companies owe approximately $186 million in debt secured to nine different lenders. In addition, the Companies hold three revolving credit facilities on which they owe approximately $39 million. Several lenders whose debt is secured by real property are cross-collateralized. In addition, one of the two working capital lenders possesses second lien rights on numerous properties financed by other secured lenders.

6. The Companies have experienced significant financial challenges over the past several years, due largely to unfavorable market and growing conditions combined with high levels of indebtedness and rising interest rates. Addressing these challenges has drained needed cash away from company operations.

7. Because of these difficulties, the Companies have been unable to meet their obligations under their existing loans and revolving credit facilities, resulting in various defaults. The Companies' lenders have taken a variety of legal actions, ranging from amending credit agreements and entering forbearance agreements to initiating foreclosure actions. One lender successfully sought to have a receiver appointed and temporary restraining order entered that forbids the Companies from utilizing funds collected from the sale of their products. The revolving credit facilities are frozen. Five of the Companies' properties have been foreclosed on, and several other foreclosure actions are pending. The Debtors filed their petitions on the eve of one such foreclosure.

8. Promptly after filing these Chapter 11 Cases (and, in many cases, in the period leading up to the filing of these Chapter 11 Cases), the Companies and their advisors engaged with the Companies' lenders to pursue a consensual path forward, while ensuring that the lenders'

collateral (i.e., agricultural real property and the crops) are being maintained and preserved, including, to the extent necessary, obtaining postpetition financing and lender consent to the use of cash and other collateral. The Debtors expect to be before the Court shortly to provide an update on those discussions and to present more information about how the Debtors (and any other of the Companies that ultimately file for chapter 11 protection) plan to emerge from these Chapter 11 Cases.

***The Motion to Extend Time to File Schedules and Statements***

9. By the Motion to Extend Time to File Schedules and Statements, the Debtors request entry of an order, substantially in the form attached to that motion as Exhibit A, extending the initial fourteen (14) day period to file their schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules and Statements") by forty-five (45) days, to allow the Debtors a total of fifty-nine (59) days after the Petition Date (as defined below) to file their Schedules and Statements (the "Schedules and Statements Deadline"), without prejudice to the Debtors' right to request additional time if necessary.

10. The Debtors, along with their non-Debtor affiliates, and their professional advisors currently are reviewing their complex businesses and finances and engaging with their lenders, as well as other potential postpetition financing sources, to determine a path forward through these Chapter 11 Cases that maximizes recoveries. This process, along with the substantial work involved in operating the Companies' interrelated businesses—including the critical work of maintaining and cultivating thousands of planted acres of almond and pistachio orchards and wine grape vineyards—has occupied nearly all of the Debtors' and their professional advisors' time, effort, energy, and resources. Allowing the Debtors and their professionals to continue to focus on this crucial work for a relatively short period of time will provide the best chance of a successful emergence from chapter 11 and is in the best interest of the Debtors' estates and their creditors.

11. For these reasons, the Debtors submit that ample cause exists to extend the time for filing the Schedules and Statements as requested in the Motion to Extend Time to File Schedules and Statements.

//

*The Utilities Motion*

12. By the *Motion of the Debtors Pursuant to 11 U.S.C. §§ 105(a) and 366 for Interim and Final Orders Establishing Adequate Assurance Procedures with Respect to the Debtors' Utility Providers* (the "Utilities Motion"), the Debtors request an order (i) establishing procedures for addressing any requests that a utility company (collectively, the "Utility Companies" and each, individually, a "Utility Company") may make for additional assurance of payment; (ii) prohibiting the Utility Companies from altering, refusing, or discontinuing services to, or discriminating against the Debtor; (iii) approving an adequate assurance deposit as adequate assurance of postpetition payment to the Utility Companies; and (iv) granting related relief.

13. The Debtor relies on utility services, including, but not limited to, telephone, internet, gas and electric, and waste removal services (collectively, the "Utility Services") provided by the Utility Companies, including those identified on Exhibit A attached to the Utilities Motion (the "Utility Service List"), to operate its businesses.[4] As discussed above, the Debtor operates a vertically integrated farming operation covering approximately 7,000 acres of land and producing almonds, pistachios, and wine grapes, the operations of which heavily depends on the Utility Services, for, *inter alia*, irrigation, waste management, and harvesting, which are essential components in maintaining the health and productivity of all the orchards and vineyards. Uninterrupted service from the Utility Companies is essential to administering this Chapter 11 Case. Any temporary or permanent discontinuation of Utility Services could irreparably disrupt the orderly administration of this case, damage the Debtor's assets, and, as a result, diminish recoveries to the Debtor's stakeholders and secured lenders.

14. The Debtor has calculated that its average monthly expenditure for Utility Services attributable to the Debtor's operations is $153,316. This figure is based on the average monthly

---

[4] For each Utility Company, Exhibit A identifies, to the extent known: (i) the name and type of service of the Utility Company and (ii) the address for the Utility Company. The inclusion of any entity on, or any omission of any entity from, Exhibit A is not an admission by the Debtor that such entity is or is not a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtor reserves its rights with respect thereto. In addition, the Debtor is requesting that this Motion apply to all of its utility companies, whether or not any given utility company is included on the Utility Service List.

charges incurred in the operation of the Debtor's business over the twelve-month period prior to the Petition Date.

### *The Motion Requesting an Order Shortening Time for the Hearing*

15. By the *Ex Parte Motion of Debtor Pursuant to B.L.R. 9006-1 Requesting Order Shortening Time for Hearing on Motions*, the Debtors request an order shortening time for a hearing (the "Hearing") on June 5, 2025, or as soon thereafter as is convenient for the Court, on the Motion to Extend Time to File Schedules and Statements and the Utilities Motion.

16. Both the Motion to Extend Time to File Schedules and Statements and the Utilities Motion seek relief that is narrowly tailored but necessary to ensure that the Debtors are able to continue to remain in these Chapter 11 Cases as they engage with their secured lenders during a limited period of time to pursue a path to emerge successfully. Accordingly, the Debtors submit that sufficient cause exists for the Court to grant the relief requested in the Motion to Shorten.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 2nd day of June 2025, in Kerman, California.

                                                                                                          _____
                                                                                                          Lakhvir Sran